1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| THE BOARD OF REGENTS OF THE UNIVERSITY OF WASHINGTON, | No. 22-2-15472-1 |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | |
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, A LIBERTY MUTUAL COMPANY, | |
| Defendant. | |

Plaintiff, The Board of Regents of the University of Washington ("University of Washington" or "UW"), for its Complaint for breach of contract, declaratory judgment pursuant to RCW 7.24.010, *et seq.*, and damages for the breach of the duty of good faith and fair dealing and under Washington's Consumer Protection Act ("WCPA") and the Insurance Fair Conduct Act, RCW 48.30.015, ("IFCA") against Defendant, Employers Insurance Company of Wausau ("Insurer"), alleges as follows:

COMPLAINT – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

**INTRODUCTION**

1.      This is a civil action seeking multiple declaratory judgements, as well as damages for breaches of contract, insurer bad faith, and violations of WCPA and IFCA arising out of Insurer's wrongful failure and refusal to provide coverage under a series of "all risk" insurance policies issued to the University of Washington for its hundreds of millions of dollars in unreimbursed losses, costs, and expenses due to direct physical loss of or damage to its various medical and athletic properties located throughout Seattle, Washington, all of which arose out of the physical presence of the novel coronavirus ("COVID-19") at its properties.

2.      As alleged in further detail below, and as supported by scientific studies and reports, COVID–19 caused *direct physical damage* to UW's properties by physically altering and impairing them.  COVID-19 additionally caused *direct physical loss* to UW's properties because the presence of COVID-19 was a physical condition that impacted the properties, rendering them unfit, in whole or in part, for their intended purposes and/or uninhabitable resulting in a loss of use.  This is exactly the type of situation that the Washington Supreme Court recently confirmed qualifies as "direct physical loss of or damage to" property.  *See Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, No. 100168-1, --- P.3d ---, 2022 WL 4241893, at *11-*12 (Wash. Sept. 15, 2022) ("conclud[ing] that 'direct physical loss [or] . . . damage' refers to the deprivation or dispossession of or injury to the insured property," noting that "for coverage . . . the loss of use of the insured property must be caused by some physical condition impacting the insured property," and favorably citing cases holding that "a loss of use claim is appropriate where the insured property is rendered unfit for its intended purpose or uninhabitable based on some change in the physical condition of the property"); *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 515 P.3d 525, 533 (Wash.

COMPLAINT – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

2022) (distinguishing a loss caused solely by government orders from a case that, as here, alleges loss due to the actual presence of COVID-19 because the policyholder did not allege "imminent danger to the property, [ ] contamination with a problematic substance, and [anything] that physically prevented use of the property or rendered it useless; . . . [or] rendered [property] unsafe or uninhabitable because of a dangerous physical condition").

3.     Washington requires that "[e]very insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time."  Wash. Admin. Code § 284-30-370.  UW provided Insurer with notice of the claims at issue in this action in or around July 2020.  Yet, Insurer has failed for more than **two years** to complete its statutory investigation duties and honor its coverage obligations.  The Insurer's unreasonable delay and refusal is particularly egregious because none of its policies contain a communicable disease exclusion, many of the policies contain extensions of coverage for communicable disease, the UW's operations were plainly interrupted by the presence of publicly known cases of communicable disease at UW properties, and universally known and publicly available orders restricted access to UW properties, including orders directing UW customers, employees, and students to stay at home.

## PARTIES

4.     Plaintiff is the statutorily authorized governing board of the University of Washington, a state institution of higher education and an instrumentality of the State of Washington.

5.     Defendant, Employers Insurance Company of Wausau, is a stock insurance company incorporated in the state of Wisconsin, with a principal place of business in Wausau, Wisconsin.  Insurer is a subsidiary of Liberty Mutual Holding Company Inc., which is a Massachusetts holding company.

COMPLAINT – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

**JURISDICTION AND VENUE**

6.      This Court has personal jurisdiction over Insurer because the policies that it issued to UW insure UW's properties, which are located within King County, in the State of Washington, and were delivered to UW in King County, Washington.  This constitutes evidence that Insurer has purposefully availed itself of the benefits and protections of the State of Washington by transacting business with UW and assuming continuing obligations to UW in the State of Washington, as well as purposefully directing its activities at UW in King County, Washington.  Moreover, Insurer has purposefully availed itself of the Court's jurisdiction and targeted Washington customers by registering with the Washington State Office of the Insurance Commissioner for the purpose of issuing property insurance policies in Washington.  The policies at issue in this lawsuit were delivered in Washington.  Finally, the policies contain a provision whereby "[a]ny disputes arising [under the policies] will be exclusively subject to a State or Federal jurisdiction within the United State of America."

7.      The Court has subject-matter jurisdiction over the controversy pursuant to RCW 2.08.0210.

8.      Venue is proper in this District pursuant to RCW 4.12.025(1) because Insurer transacted business in King County, Washington by issuing insurance policies to UW—a King County, Washington resident—that insured property located in King County, Washington.

**FACTUAL BACKGROUND**

A.      **The Medical Centers and Athletic Programs of the University of Washington**

9.      This lawsuit involves the medical centers and athletic programs and facilities of the University of Washington.  The medical centers involved include the University of Washington Medical Center, a medical center with both a Montlake campus ("UWMC") and a Northwest campus ("NWH"); and Harborview Medical Center ("HMC"), a hospital owned

COMPLAINT – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

by King County, but operated and managed by the UW pursuant to a Hospital Services Agreement between King County and the University of Washington.  Both HMC and UWMC are part of UW Medicine, an integrated clinical, research, and learning health system with a single mission to improve the health of the public.  The athletic programs involved include the University of Washington's Husky Stadium ("Husky Stadium") and the University of Washington's other athletic department-related properties ("Athletics").

10.     Between the two campuses, UWMC and NWH, are an 810-bed hospital that provides comprehensive healthcare services to the Puget Sound community and patients from throughout the Pacific Northwest and beyond.  UWMC is located on the UW campus at 1959 N.E. Pacific Street, Seattle, WA 98195, and NWH is located in north Seattle at 1550 N. 115th Street, Seattle, WA 98133.  Prior to becoming UWMC's second campus on January 1, 2020, NWH was a community hospital originally formed as a nonprofit Washington corporation.  During normal operations, more than 27,000 patients receive inpatient care at this two campus hospital each year.

11.     Harborview Medical Center ("HMC") is a hospital and level I adult and pediatric trauma center located in Seattle, Washington.  It is owned by King County but has been managed by the UW under a management contract between King County and the Board of Regents since 1967.  In February 2016, the UW and King County entered into a Hospital Services Agreement that, among other things, renewed UW's authority and responsibility to manage the business and clinical affairs of HMC.  The agreement has a ten-year term that may be renewed for two successive ten-year terms if consented to by both parties.  In 2019, HMC admitted over 16,000 patients.

12.     Husky Stadium is located less than one mile from UWMC's Montlake campus.  It is home to the 17-time Pac-12 Conference champion University of Washington Huskies

COMPLAINT – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

football team.  In addition to hosting football games, it also serves as an events center throughout the year.  During normal operations, Husky Stadium typically hosts up to seven events and 475,000 people a year.

13.     Athletics is comprised of the various recreational and athletic department buildings and sports fields, all of which are located near UWMC's Montlake campus and Husky Stadium.  During normal operations, these facilities host approximately 120 events and 300,000 people each year.

**B.     The Insurance Policies**

14.     Insurer issued five "all risk" Premier Property Protector insurance policies ("Policies") to the UW-controlled and managed entities above as follows:

   a.   Policy No. YAC-L9L-469720-039 to UWMC ("UWMC Policy"), attached hereto as **Exhibit 1**;

   b.   Policy No. YAC-L9L469720-029 to NWH ("NWH Policy"), attached hereto as **Exhibit 2**;

   c.   Policy No. YAC-L9L-46970-049 identifying the Board of Regents of the University of Washington, Harborview Board of Trustees, and King County ("HMC Policy"), attached hereto as **Exhibit 3**;

   d.   Policy No. YAC-L9L-450425-020 identifying the Board of Regents of the University of Washington Husky Stadium ("Stadium Policy"), attached hereto as **Exhibit 4**; and

   e.   Policy No. YAC-L9L-450425-030 identifying the Board of Regents of the University of Washington Athletics ("Athletics Policy"), attached hereto as **Exhibit 5**.

15.     The Policies each cover "property, as described in this Policy, against ***all risks*** of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy."  *See, e.g.*, UWMC Policy, Policy Cover Page (emphasis added).

16.     As discussed below, the Policies are substantially similar but contain certain limited differences.

COMPLAINT – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

### i.    *The UWMC Policy*

17.    The term of the UWMC Policy is July 1, 2019 through July 1, 2020 and has an extended period of liability of 365 consecutive days.  This means that this policy covers all risks of direct physical loss or damage, including time element loss, unless specifically excluded, that occur during the period of liability and covers loss that is incurred up to 365 days after the end of the period of liability.

18.    The UWMC Policy's limit of liability is $600,000,000.  The UWMC Policy contains various sublimits, including without limitation, for civil or military authority ($10,000,000), communicable disease decontamination costs ($2,500,000), time element loss due to contamination by communicable disease ($1,000,000), and research and development ($5,000,000).

19.    The UWMC Policy provides coverage for UWMC's "Covered Locations" as specified in a Schedule of Locations on file with the Insurer.  The "Covered Locations" include multiple locations, including, but not limited to, the inpatient campus location in Montlake and various other locations in Seattle, Bellevue, and Edmonds (the "UWMC Properties").

20.    The UWMC Policy contains several different coverage provisions implicated by this lawsuit, including but not limited to:

    a.    **COVERED PROPERTY.**  "We cover your insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered location, unless otherwise excluded: a. Real Property . . . b. Personal Property…."  Real Property includes property such as "Building(s) and any other structures."  Personal Property includes property such as "Furniture, fixtures, . . . Materials, supplies."

    b.    **PROPERTY DAMAGES COVERAGES AND LIMITATIONS - EXPEDITING EXPENSE.**  "We cover your reasonable and necessary costs: (1) For the temporary repair of covered property from a covered loss;

COMPLAINT – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

and (2) To expedite the permanent repair or replacement of such damaged property."

c.  **TIME ELEMENT LOSS.**  "We cover your actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy: a. To property described elsewhere in this Policy and not otherwise excluded by this Policy, b. Used by you, or by others with whom you have a contract, c. At a covered location or while in transit as provided by this Policy, d. During the applicable PERIOD OF LIABILITY described in this section."

d.  **TIME ELEMENT COVERAGES - EXTRA EXPENSE.**  "We cover your reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable: (1) To temporarily continue as nearly normal as practicable the conduct of your business; and (2) The temporary use of property or facilities of yours or others."

e.  **TIME ELEMENT COVERAGES AND LIMITATIONS - CIVIL OR MILITARY AUTHORITY.**  "We cover your actual loss sustained and EXTRA EXPENSE during the period of interruption if an order of civil or military authority prohibits access to a covered location provided such order is caused by physical loss or damage of the type insured by this Policy at a covered location or within the number of statue miles specified in the LIMITS OF LIABILITY Table in the Declarations."

f.  **TIME ELEMENT COVERAGES AND LIMITATIONS - CONTINGENT TIME ELEMENT.**  "We cover your actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at Direct Dependent Time Element Location(s) and Indirect Dependent Time Element Location(s) located within the territory of this Policy."

g.  **TIME ELEMENT COVERAGES AND LIMITATIONS - INGRESS / EGRESS.**  "We cover your actual loss sustained and EXTRA EXPENSE due to the necessary interruption of your business if ingress to or egress from a covered location is prevented, whether or not your premises or property is damaged, provided that such prevention is the result of physical loss or damage of the type insured to property of the type insured."

h.  **TIME ELEMENT COVERAGES AND LIMITATIONS - RESEARCH AND DEVELOPMENT.**  "We cover your actual loss sustained of fixed charges and ordinary payroll directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a covered loss."

COMPLAINT – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

i.   **COMMUNICABLE DISEASE DECONTAMINATION COST ENDORSEMENT.** "If your covered property at a covered location shown on the Schedule of this endorsement is contaminated by a communicable disease as the direct result of a covered loss, and there is in force at the time of that covered loss a law or ordinance that requires you to decontaminate that covered property as a result of this contamination by a communicable disease, we will pay up to the limit as specific in the LIMITS OF LIABILITY Table in the Declarations in any one (1) occurrence for those decontamination costs incurred by you, but only to satisfy the minimum requirements of that applicable law or ordinance."

ii.   *The NWH Policy*

21.     The term of the NWH Policy is July 1, 2019 through July 1, 2020 and has an extended period of liability of 365 consecutive days. This means that this policy covers all risks of direct physical loss or damage, including time element loss, unless specifically excluded, that occur during the period of liability and covers loss that is incurred up to 365 days after the end of the period of liability.

22.     The NWH Policy's limit of liability is $500,000,000.  The NWH Policy contains various sublimits, including without limitation, for civil or military authority ($10,000,000), communicable disease decontamination costs ($2,500,000), time element loss due to contamination by communicable disease ($1,000,000), and research and development ($5,000,000).

23.     The NWH Policy provides coverage for NWS's "Covered Locations" as specified in a Schedule of Locations on file with the Insurer.  The "Covered Locations" include, but are not limited to, the inpatient campus location in north Seattle as well as several leased properties throughout Seattle, Lake Forest Park, Mill Creek, and Montlake Terrace ("NWH Properties").

24.     The NWH Policy contains several different coverage provisions implicated by this lawsuit, including but not limited to:

COMPLAINT – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

a. **COVERED PROPERTY.**  "We cover your insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered location, unless otherwise excluded: a. Real Property . . . b. Personal Property…."  Real Property includes property such as "Building(s) and any other structures."  Personal Property includes property such as "Furniture, fixtures, . . . Materials, supplies."

b. **PROPERTY DAMAGES COVERAGES AND LIMITATIONS - EXPEDITING EXPENSE.**  "We cover your reasonable and necessary costs: (1) For the temporary repair of covered property from a covered loss; and (2) To expedite the permanent repair or replacement of such damaged property."

c. **TIME ELEMENT LOSS.**  "We cover your actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy: a. To property described elsewhere in this Policy and not otherwise excluded by this Policy, b. Used by you, or by others with whom you have a contract, c. At a covered location or while in transit as provided by this Policy, d. During the applicable PERIOD OF LIABILITY described in this section."

d. **TIME ELEMENT COVERAGES - EXTRA EXPENSE.**  "We cover your reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable: (1) To temporarily continue as nearly normal as practicable the conduct of your business; and (2) The temporary use of property or facilities of yours or others."

e. **TIME ELEMENT COVERAGES - LEASEHOLD INTEREST.**  "We cover the following: (1) If the lease agreement requires continuation of rent as a result of a covered loss, and if the covered property is wholly or partially untenantable or unusable, the actual rent payable while the covered property is untenantable or until the lease is terminated, but not exceeding the unexpired term of the lease."

f. **TIME ELEMENT COVERAGES AND LIMITATIONS - CIVIL OR MILITARY AUTHORITY.**  "We cover your actual loss sustained and EXTRA EXPENSE during the period of interruption if an order of civil or military authority prohibits access to a covered location provided such order is caused by physical loss or damage of the type insured by this Policy at a covered location or within the number of statue miles specified in the LIMITS OF LIABILITY Table in the Declarations."

g. **TIME ELEMENT COVERAGES AND LIMITATIONS - CONTINGENT TIME ELEMENT.**  "We cover your actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this

COMPLAINT – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

Policy at Direct Dependent Time Element Location(s) and Indirect Dependent Time Element Location(s) located within the territory of this Policy."

h. **TIME ELEMENT COVERAGES AND LIMITATIONS - INGRESS / EGRESS.** "We cover your actual loss sustained and EXTRA EXPENSE due to the necessary interruption of your business if ingress to or egress from a covered location is prevented, whether or not your premises or property is damaged, provided that such prevention is the result of physical loss or damage of the type insured to property of the type insured."

i. **TIME ELEMENT COVERAGES AND LIMITATIONS - RESEARCH AND DEVELOPMENT.** "We cover your actual loss sustained of fixed charges and ordinary payroll directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a covered loss."

j. **COMMUNICABLE DISEASE DECONTAMINATION COST ENDORSEMENT.** "If your covered property at a covered location shown on the Schedule of this endorsement is contaminated by a communicable disease as the direct result of a covered loss, and there is in force at the time of that covered loss a law or ordinance that requires you to decontaminate that covered property as a result of this contamination by a communicable disease, we will pay up to the limit as specific in the LIMITS OF LIABILITY Table in the Declarations in any one (1) occurrence for those decontamination costs incurred by you, but only to satisfy the minimum requirements of that applicable law or ordinance."

k. **TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE.** "If your covered property at a covered location is contaminated by a communicable disease, and there is in force at the time of that covered loss a law or ordinance that requires you to suspend your operations on account of that contamination, we will pay the actual loss of GROSS PROFIT or GROSS EARNINGS you sustain due to the necessary suspension of your normal operations at that covered location because it is either partially or totally closed by order of authority described in b. below."

### iii. *The HMC Policy*

25.     The term of the HMC Policy is July 1, 2019 through July 1, 2020 and has an extended period of liability of 365 consecutive days.  This means that this policy covers all risks of direct physical loss or damage, including time element loss, unless specifically

COMPLAINT – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

excluded, that occur during the period of liability and covers loss that is incurred up to 365 days after the end of the period of liability.

26.     The HMC Policy's limit of liability is $600,000,000.   The HMC Policy contains various sublimits, including without limitation, for civil or military authority ($10,000,000), communicable disease decontamination costs ($2,500,000), time element loss due to contamination by communicable disease ($1,000,000), and research and development ($5,000,000).

27.     The HMC Policy provides coverage for HMC's "Covered Locations" as specified in a Schedule of Locations on file with the Insurer.   The "Covered Locations" include multiple locations, including, but not limited to, the main center, parking garages, and various other locations throughout Seattle ("HMC Properties").

28.     The HMC Policy contains several different coverage provisions implicated by this lawsuit, including but not limited to:

  a.  **COVERED PROPERTY.**   "We cover your insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered location, unless otherwise excluded: a. Real Property . . . b. Personal Property…."   Real Property includes property such as "Building(s) and any other structures."   Personal Property includes property such as "Furniture, fixtures, . . . Materials, supplies."

  b.  **PROPERTY DAMAGES COVERAGES AND LIMITATIONS - EXPEDITING EXPENSE.**   "We cover your reasonable and necessary costs: (1) For the temporary repair of covered property from a covered loss; and (2) To expedite the permanent repair or replacement of such damaged property."

  c.  **TIME ELEMENT LOSS.**   "We cover your actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy: a. To property described elsewhere in this Policy and not otherwise excluded by this Policy, b. Used by you, or by others with whom you have a contract, c. At a covered location or while in transit as provided by this Policy, d. During the applicable PERIOD OF LIABILITY described in this section."

COMPLAINT – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

d. **TIME ELEMENT COVERAGES - EXTRA EXPENSE.** "We cover your reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable: (1) To temporarily continue as nearly normal as practicable the conduct of your business; and (2) The temporary use of property or facilities of yours or others."

e. **TIME ELEMENT COVERAGES AND LIMITATIONS - CIVIL OR MILITARY AUTHORITY.** "We cover your actual loss sustained and EXTRA EXPENSE during the period of interruption if an order of civil or military authority prohibits access to a covered location provided such order is caused by physical loss or damage of the type insured by this Policy at a covered location or within the number of statue miles specified in the LIMITS OF LIABILITY Table in the Declarations."

f. **TIME ELEMENT COVERAGES AND LIMITATIONS - CONTINGENT TIME ELEMENT.** "We cover your actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at Direct Dependent Time Element Location(s) and Indirect Dependent Time Element Location(s) located within the territory of this Policy."

g. **TIME ELEMENT COVERAGES AND LIMITATIONS - INGRESS / EGRESS.** "We cover your actual loss sustained and EXTRA EXPENSE due to the necessary interruption of your business if ingress to or egress from a covered location is prevented, whether or not your premises or property is damaged, provided that such prevention is the result of physical loss or damage of the type insured to property of the type insured."

h. **TIME ELEMENT COVERAGES AND LIMITATIONS - RESEARCH AND DEVELOPMENT.** "We cover your actual loss sustained of fixed charges and ordinary payroll directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a covered loss."

i. **COMMUNICABLE DISEASE DECONTAMINATION COST ENDORSEMENT.** "If your covered property at a covered location shown on the Schedule of this endorsement is contaminated by a communicable disease as the direct result of a covered loss, and there is in force at the time of that covered loss a law or ordinance that requires you to decontaminate that covered property as a result of this contamination by a communicable disease, we will pay up to the limit as specific in the LIMITS OF LIABILITY Table in the Declarations in any one (1) occurrence for those decontamination costs incurred by you, but only to satisfy the minimum requirements of that applicable law or ordinance."

COMPLAINT – 13

158764723.1

j.  **TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE.**  "If your covered property at a covered location is contaminated by a communicable disease, and there is in force at the time of that covered loss a law or ordinance that requires you to suspend your operations on account of that contamination, we will pay the actual loss of GROSS PROFIT or GROSS EARNINGS you sustain due to the necessary suspension of your normal operations at that covered location because it is either partially or totally closed by order of authority described in b. below."

*iv.*    ***The Stadium Policy***

29.    The term of the Stadium Policy is March 1, 2020 through March 1, 2021 and has an extended period of liability of 365 consecutive days.  This means that this policy covers all risks of direct physical loss or damage, including time element loss, unless specifically excluded, that occur during the period of liability and covers loss that is incurred up to 365 days after the end of the period of liability.

30.    The Stadium Policy's limit of liability is $331,055,581.  The Stadium Policy contains various sublimits, including without limitation, for time element ($23,567,631), civil or military authority ($1,000,000), decontamination costs ($1,000,000), and extra expense ($10,000,000).

31.    The Stadium Policy provides coverage for the Stadium's "Covered Locations" as specified in a Schedule of Locations on file with the Insurer.  The "Covered Locations" include Husky Stadium ("Stadium Properties").

32.    The Stadium Policy contains several different coverage provisions implicated by this lawsuit, including but not limited to:

a.  **COVERED PROPERTY.**  "We cover your insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered location, unless otherwise excluded: a. Real Property . . . b. Personal Property…."  Real Property includes property such as "Building(s) and any other structures."  Personal Property includes property such as "Furniture, fixtures, . . . Materials, supplies."

COMPLAINT – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

b. **PROPERTY DAMAGES COVERAGES AND LIMITATIONS - EXPEDITING EXPENSE.** "We cover your reasonable and necessary costs: (1) For the temporary repair of covered property from a covered loss; and (2) To expedite the permanent repair or replacement of such damaged property."

c. **TIME ELEMENT LOSS.** "We cover your actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy: a. To property described elsewhere in this Policy and not otherwise excluded by this Policy, b. Used by you, or by others with whom you have a contract, c. At a covered location or while in transit as provided by this Policy, d. During the applicable PERIOD OF LIABILITY described in this section."

d. **TIME ELEMENT COVERAGES - EXTRA EXPENSE.** "We cover your reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable: (1) To temporarily continue as nearly normal as practicable the conduct of your business; and (2) The temporary use of property or facilities of yours or others."

e. **TIME ELEMENT COVERAGES AND LIMITATIONS - ATTRACTION PROPERTY.** "We cover your actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by this Policy to property of the type insured at an attraction property within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of that (1) Starts at the time of such physical loss or damage happens; (2) Ends when the attraction property is (a) Repaired or replaced; and (b) Made ready for operations . . . the term attraction property is a property that (1) Is operated by others; and (2) You depend on to attract customers to your covered location."

f. **TIME ELEMENT COVERAGES AND LIMITATIONS - CIVIL OR MILITARY AUTHORITY.** "We cover your actual loss sustained and EXTRA EXPENSE during the period of interruption if an order of civil or military authority prohibits access to a covered location provided such order is caused by physical loss or damage of the type insured by this Policy at a covered location or within the number of statue miles specified in the LIMITS OF LIABILITY Table in the Declarations."

g. **TIME ELEMENT COVERAGES AND LIMITATIONS - CONTINGENT TIME ELEMENT.** "We cover your actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at Direct Dependent Time Element Location(s) and Indirect

COMPLAINT – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

Dependent Time Element Location(s) located within the territory of this Policy."

h. **TIME ELEMENT COVERAGES AND LIMITATIONS - INGRESS / EGRESS.** "We cover your actual loss sustained and EXTRA EXPENSE due to the necessary interruption of your business if ingress to or egress from a covered location is prevented, whether or not your premises or property is damaged, provided that such prevention is the result of physical loss or damage of the type insured to property of the type insured."

i. **TIME ELEMENT COVERAGES AND LIMITATIONS - RESEARCH AND DEVELOPMENT.** "We cover your actual loss sustained of fixed charges and ordinary payroll directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a covered loss."

j. **TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE.** "If your covered property at a covered location is contaminated by a communicable disease, and there is in force at the time of that covered loss a law or ordinance that requires you to suspend your operations on account of that contamination, we will pay the actual loss of GROSS PROFIT or GROSS EARNINGS you sustain due to the necessary suspension of your normal operations at that covered location because it is either partially or totally closed by order of authority described in b. below."

*v.* *The Athletics Policy*

33.    The term of the Athletics Policy is March 1, 2020 through March 1, 2021 and has an extended period of liability of 365 consecutive days.  This means that this policy covers all risks of direct physical loss or damage, including time element loss, unless specifically excluded, that occur during the period of liability and covers loss that is incurred up to 365 days after the end of the period of liability.

34.    The Athletics Policy's limit of liability is $250,000,000.  The Athletics Policy also contains various sublimits, including without limitation, for time element ($4,345,657), civil or military authority ($10,000,000), decontamination costs ($1,000,000), and extra expense ($25,000,000).

COMPLAINT – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

35.     The Athletics Policy provides coverage for the Athletics' "Covered Locations" as reflected on the scheduled locations which include, but are not limited to, Nordstrom Tennis Facility, Conibear Shell House, Graves Annex, Tubby Graves Building, Hec Edmonson Pavilion, Women's Softball Facility, Dempsey Indoor Practice Facility, Baseball Team Building, Stadium/Hec Edmonson Scoreboard Equipment Daktronics ICA Digital Scoreboard System, and ICA Husky Ballpark ("Athletic Properties").

36.     The Athletic Policy contains several different coverage provisions implicated by this lawsuit, including but not limited to:

   a.  **COVERED PROPERTY.**  "We cover your insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered location, unless otherwise excluded: a. Real Property . . . b. Personal Property…."  Real Property includes property such as "Building(s) and any other structures."  Personal Property includes property such as "Furniture, fixtures, . . . Materials, supplies."

   b.  **PROPERTY DAMAGES COVERAGES AND LIMITATIONS - EXPEDITING EXPENSE.**  "We cover your reasonable and necessary costs: (1) For the temporary repair of covered property from a covered loss; and (2) To expedite the permanent repair or replacement of such damaged property."

   c.  **TIME ELEMENT LOSS.**  "We cover your actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy: a. To property described elsewhere in this Policy and not otherwise excluded by this Policy. b. Used by you, or by others with whom you have a contract, c. At a covered location or while in transit as provided by this Policy, d. During the applicable PERIOD OF LIABILITY described in this section."

   d.  **TIME ELEMENT COVERAGES - EXTRA EXPENSE.**  "We cover your reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable: (1) To temporarily continue as nearly normal as practicable the conduct of your business; and (2) The temporary use of property or facilities of yours or others."

   e.  **TIME ELEMENT COVERAGES AND LIMITATIONS - ATTRACTION PROPERTY.**  "We cover your actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by

COMPLAINT – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

this Policy to property of the type insured at an attraction property within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of that (1) Starts at the time of such physical loss or damage happens; (2) Ends when the attraction property is (a) Repaired or replaced; and (b) Made ready for operations . . . the term attraction property is a property that (1) Is operated by others; and (2) You depend on to attract customers to your covered location."

f. **TIME ELEMENT COVERAGES AND LIMITATIONS - CIVIL OR MILITARY AUTHORITY.** "We cover your actual loss sustained and EXTRA EXPENSE during the period of interruption if an order of civil or military authority prohibits access to a covered location provided such order is caused by physical loss or damage of the type insured by this Policy at a covered location nor within the number of statue miles specified in the LIMITS OF LIABILITY Table in the Declarations."

g. **TIME ELEMENT COVERAGES AND LIMITATIONS - CONTINGENT TIME ELEMENT.** "We cover your actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at Direct Dependent Time Element Location(s) and Indirect Dependent Time Element Location(s) located within the territory of this Policy."

h. **TIME ELEMENT COVERAGES AND LIMITATIONS - INGRESS / EGRESS.** "We cover your actual loss sustained and EXTRA EXPENSE due to the necessary interruption of your business if ingress to or egress from a covered location is prevented, whether or not your premises or property is damaged, provided that such prevention is the result of physical loss or damage of the type insured to property of the type insured."

i. **TIME ELEMENT COVERAGES AND LIMITATIONS - RESEARCH AND DEVELOPMENT.** "We cover your actual loss sustained or fixed charges and ordinary payroll directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a covered loss."

COMPLAINT – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

## C.    The COVID-19 Pandemic

### i.    *The Nature and Spread of COVID-19*

37.    COVID-19 is a communicable disease caused by a novel coronavirus known as SARS-CoV-2.  The SARS-CoV-2 virus can cause systemic illness and death.[1]

38.    On January 30, 2020, the World Health Organization ("WHO") declared COVID-19 a Public Health Emergency of International Concern.  On March 11, 2020, the WHO upgraded its declaration to recognize COVID-19 as a global pandemic.

39.    The WHO reporting reflects that COVID-19 is highly transmissible and can be passed, among other ways, through:

a.    "direct, indirect, or close contact with infected people;"

b.    exposure to respiratory droplets from a person "in close contact (within 1 metre) with an infected person who has respiratory symptoms (*e.g.* coughing or sneezing) or who is talking or singing;"

c.    airborne or aerosol transmission where droplets remain in the air for extended periods of time and over long distances; and

d.    coming into contact with an infected surface as "viable SARS-CoV-2 virus and/or RNA . . . can be found on . . . surfaces for periods ranging from hours to days, depending on the ambient environment (including temperature and humidity) and the type of surface."[2]

40.    The U.S. Centers for Disease Control and Prevention ("CDC") has similarly concluded that COVID-19 "is spreading very easily and sustainably between people."[3]

---

[1]  Tianna Hicklin, *Immune cells for common cold may recognize SARS-COV-2*, NAT'L INST. HEALTH (Aug. 18, 2020), https://www.nih.gov/news-events/nih-research-matters/immune-cells-common-cold-may-recognize-sars-cov-2 (last visited Aug. 5, 2021).

[2]  *Transmission of SARS-CoV-2: implications for infection prevention precautions*, World Health Org. (Jul. 9, 2020), https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions.

[3]  *How it Spreads*, Ctr. for Disease Control and Prevention (Updated Jun. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.

COMPLAINT – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

41.     At least one aerosols expert, University of Colorado chemistry professor Jose-Luis Jimenez, stated in a March 2020 interview that individuals should maintain at least 25 feet of distance between themselves and others to prevent the aerosol spread of SARS-CoV-2.[4]

42.     Due to the pervasive spread and presence of SARS-CoV-2 and COVID-19 worldwide, both are presumed to be present or imminently present everywhere.[5]

43.     With respect to surfaces, a March 2020 National Institutes of Health study published in the *New England Journal of Medicine* reported that SARS-CoV-2 "remained active on plastic and stainless-steel surfaces for two to three days" and "remained infectious for up to 24 hours on cardboard and four hours on copper."[6]  The same study found that SARS-CoV-2 "was detectable in aerosols for up to three hours."  All of these materials are present at UW's Properties.

44.     Other studies have found that SARS-CoV-2 may be found on various surfaces for even longer periods of time.  For example, the CDC determined that SARS-CoV-2 RNA was identifiable on surfaces within the Diamond Princess cruise ship up to 17 days after the cabins had been vacated.[7]

---

[4]  Chris Bianchi, *Coronavirus: Tips to stay safe while exercising outdoors*, PIONEER PRESS (March 27, 2020), https://www.twincities.com/2020/03/27/coronavirus-exercising-outdoors-jogging-staying-safe-tips/

[5]  *See, e.g.*, Christopher Ingraham, *At the population level, the coronavirus is almost literally everywhere,* WASH. POST (Apr. 1, 2020), https://www.washingtonpost.com/business/2020/04/01/population-level-coronavirus-is-almost-literally-everywhere/ (last visited Aug. 5, 2021).

[6]  *Study Suggests New Coronavirus May Remain on Surfaces for Days*, Nat'l Inst. of Health (Mar. 24, 2020), https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days.

[7]  Leah F. Moriarty, et al., *Public Health Responses to COVID-19 Outbreaks on Cruise Ships — Worldwide, February-March 2020*, Ctr. for Disease Control and Prevention (Mar. 27, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm.

COMPLAINT – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

45.     Another study published on October 7, 2020 in the *Virology Journal* determined that "SARS-CoV-2 can be recovered from non-porous surfaces for at least 28 days at ambient temperature and humidity (20 °C and 50% RH)."[8]

46.     The presence of COVID-19 is not simply reflected in reported cases or individuals' positive test results, which drastically underestimate the number of cases because only a portion of the population gets tested.  The CDC estimated that the number of people in the United States who had been infected with COVID-19 was ten times higher than the number of reported cases in June 2020.[9]  And at least 40% of people infected with COVID-19 are asymptomatic.[10]  Scientific studies suggest that even asymptomatic individuals can shed and/or transmit SARS-CoV-2 particles at a level sufficient to infect others.

47.     COVID-19 is particularly dangerous because it has an incubation period (the time between exposure and manifesting symptoms) of up to 14 days, during which time infected people can unknowingly transmit COVID-19 and release infectious droplets and aerosols into the air and onto surfaces.[11]

---

[8]  Riddell, S., Goldie, S., Hill, A. et al. *The effect of temperature on persistence of SARS-CoV-2 on common surfaces*, Virol J 17, 145 (2020), https://doi.org/10.1186/s12985-020-01418-7.

[9]  Lena H. Sun & Joel Achenbach, *CDC chief says coronavirus cases may be 10 times higher than reported,* WASH. POST (June 25, 2020), https://www.washingtonpost.com/health/2020/06/25/coronavirus-cases-10-times-larger/ (last visited Aug. 5, 2021).

[10]  Ellen Cranley, *40% of people infected with covid-19 are asymptomatic, a new CDC estimate says,* BUS. INSIDER (July 12, 2020), https://www.businessinsider.com/cdc-estimate-40-percent-infected-with-covid-19-asymptomatic-2020-7 (last visited Aug 5, 2021), *see also* Apoorva Mandavilli, *Even Asymptomatic People Carry the Coronavirus in High Amounts*, N.Y. TIMES (Aug. 6, 2020), https://www.nytimes.com/2020/08/06/health/coronavirus-asymptomatic-transmission.html (last visited Aug. 11, 2021); *see also* Erika Edwards, *Asymptomatic COVID-19 Cases May Be More Common Than Suspected* (May 27, 2020), https://www.nbcnews.com/health/health-news/asymptomatic-covid-19-cases-maybe-more-common-suspected-n1215481 (last visited Aug. 11, 2021).

[11]  *Coronavirus Disease (COVID-19) Situation Report - 73*, World Health Org. (Apr. 2, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19; Minghui Yang et al., *SARS-CoV-2 Detected on Environmental Fomites for Both Asymptomatic and Symptomatic Patients with COVID-19*, 203 AM. J. RESPIRATORY & CRITICAL

COMPLAINT – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

48.    Pre-symptomatic individuals carry high levels of "viral load" during a period when they are not aware that they are infectious, and therefore pose an even greater risk to transmit COVID-19.[12]   According to the National Academy of Sciences, "the majority of transmission is attributable to people who are not exhibiting symptoms, either because they are still in the pre-symptomatic stage, or the infection is asymptomatic."[13]

49.    Due to the prevalence of COVID-19 infections in the United States and globally, UW's locations would have had consistently high risks for presence of the SARS-CoV-2 virus in the air and/or on surfaces from infected patients and employees, some of whom would have been asymptomatic or presymptomatic unknowing spreaders or superspreaders of SARS-CoV-2.

50.    The SARS-CoV-2 virus is released into the air when infected persons breathe, talk, cough, or sneeze, and such releases can infiltrate ventilation systems and land on numerous other surfaces, including high-touch areas such as counters and door handles. SARS-CoV-2 has and continues to deposit, and therefore elevates contagion risks on, numerous surfaces that people touch, which have been transformed into disease-spreading fomites.

51.    The presence of SARS-CoV-2 in the air and on surfaces has caused physical damage to UW's property and, in turn, caused a direct physical loss of that property by making

---

CARE MED. 3 (Dec. 16, 2020), https://www.atsjournals.org/doi/10.1164/rccm.202006-2136LE (last visited Aug. 5, 2021).

[12] *See, e.g.*, Xi He et al., *Temporal dynamics in viral shedding and transmissibility of COVID-19,* 26 NATURE MED. 672, 674 (Apr. 15, 2020), https://www.nature.com/articles/s41591-020-0869-5 (last visited Aug. 5, 2021); Lirong Zou, M.Sc., *et al., SARS-CoV-2 Viral Load in Upper Respiratory Specimens of Infected Patients,* NEW ENG. J. MED. 382, 1177-79 (Mar. 19, 2020), https://www.nejm.org/doi/full/10.1056/NEJMc2001737 (last visited Aug. 5, 2021).

[13]  Seyed M. Moghadas et al., *The implications of silent transmission for the control of COVID-19 outbreaks*, 117 PNAS 30, 17513-15 (July 28, 2020), https://www.pnas.org/content/117/30/17513 (last visited Aug. 5, 2021).

COMPLAINT – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

unfit for its intended uses and/or and uninhabitable.  *See Seattle Tunnel Partners* 2022 WL 4241893, at *11-*12.

52.     According to the CDC, the COVID-19 communicable disease has spread freely throughout the United States without the ability to document the source of new infections. This is known as community transmission or community spread.

53.     COVID-19 is extremely contagious.  Contagiousness of an infectious disease is measured by $R_0$, a term that defines the average number of other people who are likely to become infected by one person with that disease.  The $R_0$ is a measure of the transmissibility of a pathogen and is determined by estimating the susceptibility of individuals in the population to disease, the transmissibility of the pathogen, and the likelihood and duration of contact between individuals in a population.[14]  Studies have concluded that one person with COVID-19 could infect as many as 5.7 other people ($R_0 \approx 5.7$), which is more than triple the rate of seasonal influenza for example, where one person will infect only 1.3 others on average ($R_0 \approx 1.3$).[15]

54.     SARS-CoV-2 can survive for up to 28 days at room temperature on numerous surfaces, such as glass, steel, vinyl, plastic, and paper.[16]  For example, as mentioned above,

---

[14]  Anthony R. Ives & Claudio Bozzuto, *Estimating and explaining the spread of COVID-19 at the county level in the USA*, 4 COMMC'NS BIOLOGY 60 (Jan. 20, 2021), https://www.nature.com/articles/s42003-020-01609-6 (last visited Aug. 5, 2021).

[15]  M. Cevik, C.C.G. Bamford & A. Ho, *COVID-19 pandemic-a focused review for clinicians*, 26 CLINICAL MICROBIOLOGY & INFECTION 7, 842-47 (July 1, 2020), https://www.clinicalmicrobiologyandinfection.com/article/S1198-743X(20)30231-7/fulltext (last visited Aug. 5, 2021).

[16]  Shane Riddell et al., *The effect of temperature on persistence of SARS-CoV-2 on common surfaces*, 17 VIROLOGY J. 145 (Oct. 7, 2020), https://virologyj.biomedcentral.com/articles/10.1186/s12985-020-01418-7 (last visited Aug. 5, 2021).

COMPLAINT – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

the virus was identified on surfaces in cruise ship cabins 17 days after they had been vacated but prior to disinfection.[17]

55.     UW has such surfaces in its Properties.

56.     According to the WHO, COVID-19 primarily spreads through small droplets from the nose or mouth.  People can catch COVID-19 by breathing in these droplets in the air—especially if they are within one meter (~3 feet) of an infected person—or by touching surfaces—such as tables, doorknobs, elevator buttons, and handrails—on which droplets have landed and then touching their eyes, nose, or mouth.[18]

### ii.     *COVID-19 Causes Direct Physical Damage to Property*

57.     The COVID-19 communicable disease causes direct physical damage to property in multiple ways.

58.     First, the presence of the virus carrying COVID-19 physically transforms the content of the air in any location where it is present, rendering the air unsafe for individuals to breathe.

59.     Larger SARS-CoV-2 particles in respiratory droplets can be transmitted about six feet when expelled by a human.

60.     Smaller SARS-CoV-2 viral particles can remain airborne "indefinitely under most indoor conditions."[19]

---

[17]  Leah F. Moriarty et al., *Public Health Responses to COVID-19 Outbreaks on Cruise Ships — Worldwide, February–March 2020*, 69 MMWR 12, 347-52 (Mar. 27, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm (last visited Aug. 5, 2021).
[18]  *Q&A on coronaviruses (COVID-19)*, WHO (updated Apr. 17, 2020), https://web.archive.org/web/20200506094904/https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses (last visited Aug. 5, 2021).
[19]  Kevin P. Fennelly, *Particle sizes of infectious aerosols: implications for infection control*, 8 LANCET RESPIRATORY MED. 9, P914-24 (Sept. 1, 2020), https://www.thelancet.com/journals/lanres/article/PIIS2213-2600(20)30323-4/fulltext (last visited Aug. 5, 2021).

COMPLAINT – 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

61.     Humans produce infectious aerosols in a wide range of particle sizes, although pathogens predominate in smaller particles.[20]   An M.I.T. researcher determined clouds of "pathogen-bearing droplets of all sizes can travel 23 to 27 feet."[21]   According to the Annals of Internal Medicine, "there is abundant evidence that proximity is a key determinant of transmission risk."[22]

62.     Consequently, the risk of disease transmission increases substantially in indoor settings.  In fact, a contact-tracing study suggests "an 18.7-fold higher risk of transmissions indoors compared with outdoor environments."[23]   UW's Properties are prime examples of such environments.

63.     Even worse, air circulation systems such as those in UW's Properties may compound the risk of SARS-CoV-2 viral transmission in indoor settings, causing a further direct physical transformation of the air within each Property.

64.     A research letter from the CDC concluded that, in one example, a restaurant's air conditioning system spread the virus to people who sat at tables downstream from the restaurant's airflow, infecting a total of ten people from three families who had eaten at the same restaurant.[24]   In another study, SARS-CoV-2 was detected in the HVAC system

---

[20] *Id.*

[21] Lydia Bourouiba, *Turbulent Gas Clouds and Respiratory Pathogen Emissions, Potential Implications for Reducing Transmission of COVID-19*, 323 JAMA 18, 1837-38 (Mar. 26, 2020), https://jamanetwork.com/journals/jama/fullarticle/2763852 (last visited Aug. 5, 2021).

[22] Eric A. Meyerowitz et al., *Transmission of SARS-CoV-2: A Review of Viral, Host, and Environmental Factors*, Annals Internal Med. (Jan. 2021), https://www.acpjournals.org/doi/10.7326/M20-5008 (last visited Aug. 5, 2021).

[23] Muge Cevik et al., *Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) Transmission Dynamics Should Inform Policy*, CLINICAL INFECTIOUS DISEASES (Sept. 23, 2020), https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciaa1442/5910315 (last visited Aug. 5, 2021).

[24] Jianyun Lu et al., *COVID-19 outbreak associated with air conditioning in restaurant, Guangzhou, China*, 2020, 26 EMERGING INFECTIOUS DISEASES 7 (July 2020), https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article (last visited Aug. 5, 2021).

COMPLAINT – 25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

connected to hospital rooms for patients infected with COVID-19, including in vent openings, vent exhaust filters and ducts located over 183 from the rooms with COVID-19 patients.[25] The CDC has also identified numerous tools to improve ventilation to reduce exposures to SARS-CoV-2 in indoor spaces, including increasing air flow and air filtration and using high-efficiency particulate air (HEPA) fan/filtration systems to enhance air cleaning.[26] Even then, these remedial measures merely reduce the presence of SAR-CoV-2 in indoor spaces; they do not eliminate the virus entirely.

65.     Second, the SARS-CoV-2 virus causes direct physical damage to property by transforming physical objects, materials, or surfaces into "fomites."  "Fomites" are objects "that may be contaminated with infectious agents (such as bacteria or viruses) and serve in their transmission."[27]  In other words, when an individual knowingly or unknowingly carrying the SARS-CoV-2 virus touches and/or breathes on physical objects, materials, or surfaces, he or she expels viral particles that land on such objects, materials, or surfaces, causing direct physical loss or damage.

66.     Fomite transmission is estimated to have contributed to as much as 25% of COVID-19 deaths by enhancing the overall transmission rate of the virus.[28]

---

[25] Karolina Nissen et al., *Long-distance airborne dispersal of SARS-CoV-2 in COVID-19 wards*, SCI. REPS. 10, 19589 (Nov. 11, 2020), https://www.nature.com/articles/s41598-020-76442-2(last visited Aug. 5, 2021).

[26] *Ventilation in Buildings*, CDC (updated Mar. 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/ventilation.html#:~:text=HEPA%20filters%20are%20even%20more,with%20SARS%2DCoV%2D2 (last visited Aug. 5, 2021).

[27] *Fomite*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/fomite (last visited Aug. 5, 2021).

[28] A. Meiksin, *Dynamics of COVID-19 transmission including indirect transmission mechanisms: a mathematical analysis*, 148 EPIDEMIOLOGY & INFECTION e257, 1-7 (Oct. 23, 2020), https://www.cambridge.org/core/journals/epidemiology-and-infection/article/dynamics-of-covid19-transmission-including-indirect-transmission-mechanisms-a-mathematical-analysis/A134C5182FD44BEC9E2BA6581EF805D3 (last visited Aug. 5, 2021).

COMPLAINT – 26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

67. Citing numerous studies on the transmission of COVID-19, the WHO described fomite transmission as follows:

> Respiratory secretions or droplets expelled by infected individuals can contaminate surfaces and objects, creating fomites (contaminated surfaces). **Viable SARS-CoV-2 virus and/or RNA detected by RT-PCR can be found on those surfaces for periods ranging from hours to days**, depending on the ambient environment (including temperature and humidity) and the type of surface, in particular at high concentration in health care facilities where COVID-19 patients were being treated. Therefore, transmission may also occur indirectly through touching surfaces in the immediate environment or objects contaminated with virus from an infected person . . . .[29] (emphasis added).

68. Because COVID-19 can be spread by touching contaminated surfaces,[30] fomites transform objects, materials, and/or surfaces and can render such objects, materials, and/or surfaces at UW's Properties unsafe for their intended purposes.

69. Based on this evidence, SARS-CoV-2 causes direct physical loss of or damage to property. Specifically, the presence of SARS-CoV-2 in and on property, specifically in the air and on surfaces and objects, causes direct physical loss of or damage to property by causing physical harm to the property and otherwise making it unsafe and incapable of being used for its intended purpose.

70. The presence of COVID-19 makes a tangible alteration to everyday surfaces and objects by turning this property into a transmission vehicle for spreading COVID-19 from one person to the next. The WHO's description of fomite transmission expressly recognizes that COVID-19 physically alters property, describing respiratory secretions and droplets from

---

[29] *See, e.g.*, *Transmission of SARS-CoV-2: implications for infection prevention precautions*, WHO (Jul. 9, 2020), https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions (last visited Aug. 5, 2021).

[30] *See Coronavirus disease 2019 (COVID-19) Situation Report - 73*, WHO (Apr. 2, 2020), https://apps.who.int/iris/bitstream/handle/10665/331686/nCoVsitrep02Apr2020-eng.pdf?sequence=1&isAllowed=y (last visited Aug. 5, 2021)

COMPLAINT – 27

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

infected individuals as "**creating** fomites (contaminated surfaces)"[31] (emphasis added).  Thus, viral droplets and respiratory secretions alter surfaces and objects by changing them to fomites capable of transmitting COVID-19.

71.     COVID-19 adheres to objects and surfaces, causing physical harm and alteration by becoming a part of the object's surface and making that object unsafe for its ordinary and intended use.  Once COVID-19 is in, on, or near property, it is easily spread by the air, people, and objects, causing additional direct physical loss of or damage to property.

72.     Even if routine cleaning and disinfection may reduce the odds of fomite transfer, the risk of such transfer cannot be entirely removed or eliminated.

73.     No amount of routine cleaning or disinfection can entirely remove aerosolized SARS-CoV-2 suspended in the air at UW's Properties, making those locations more dangerous, and therefore less safe and unfit for their intended uses.

74.     Finally, the presence of SARS-CoV-2 in and on property, including in indoor air and on surfaces, materials, and/or objects, causes direct physical loss or damage to property because it renders the property no longer safe or fit for its normal and intended use. Respiratory droplets, aerosols, and fomites are physical substances that alter the physical properties of building interiors and—based on the health risks associated with COVID-19— make such property unsafe, uninhabitable, and incapable of being used for its intended purpose.

### iii.     COVID-19 Causes Direct Physical Loss to Property

75.     The Washington Supreme Court has specified that a "direct physical loss" includes "the loss of use of the insured property" that is "caused by some physical condition

---

[31] *See, e.g.*, *Transmission of SARS-CoV-2: implications for infection prevention precautions*, WHO (Jul. 9, 2020), https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions (last visited Aug. 5, 2021).

COMPLAINT – 28

158764723.1

impacting the insured property." *Seattle Tunnel Partners*, 2022 WL 4241893, at *11.  The Court has elaborated that "a loss of use claim is appropriate where the insured property is rendered unfit for its intended purpose or uninhabitable based on some change in the physical condition of the property." *Id.* at *12.

76.     While government orders alone may not cause a "direct physical loss," a "direct physical loss" exists where government orders are coupled with allegations of "imminent danger to the property, [ ] contamination with a problematic substance, and [anything] that physically prevented use of the property or rendered it useless; . . . [or] rendered [property] unsafe or uninhabitable because of a dangerous physical condition." *Hill & Stout*, 515 P.3d at 533 (Wash. 2022).

77.     COVID-19 is a communicable disease and, certainly, a "problematic substance" under any reasonable definition.  Its mere presence causes the loss of use of property in whole or in part.

78.     Indeed, the presence of COVID-19 is so severe as to render some or all of any property it touches to be unfit for its intended purposes, useless, and/or uninhabitable.

### iv.     *The Physical Presence of COVID-19 Caused Direct Physical Loss of or Damage to the UWMC, NWH, HMC, Stadium, and Athletic Properties*

79.     COVID-19 was first reported in Wuhan City, China in or around December 2019.[32]  Available evidence "suggests that the start of the outbreak resulted from a single point introduction in the human population around the time that the virus was first reported in humans in Wuhan, China in December 2019."[33]

---

[32] *Coronavirus Disease (COVID-19) Situation Report - 94*, World Health Org. (Apr. 23, 2020), https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200423-sitrep-94-covid-19 (last visited Aug. 5, 2021).

[33] *Id.*

COMPLAINT – 29

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

80.    On or about January 21, 2020, the United States confirmed what was then believed to be the first known case of COVID-19 in the country, involving an individual who entered the United States in Seattle, Washington and resided in Washington State.

81.    On January 31, 2020, Health and Human Services Secretary Alex M. Azar II declared a public health emergency to combat COVID-19.[34]

82.    Thereafter, COVID-19 began to rapidly spread across the United States, including in, at, and near UW's Properties and nearby locations

83.    After the late January/early February time period, COVID-19 spread rapidly across the country, going from 24 confirmed cases at the end of February to over 186,000 confirmed cases by the end of March.

84.    Upon information and belief, many thousands (if not millions) more cases of COVID-19 went unconfirmed due to, among other things, (a) lack of adequate testing infrastructure and capacity; and (b) lack of public and scientific understanding about COVID-19, including the ability for individuals to carry and/or shed the virus while pre-symptomatic and/or asymptomatic.

85.    In response to the rapid spread of COVID-19, states began enacting stay at home orders.

86.    On March 11, 2020, the WHO declared COVID-19 to be a "pandemic."

87.    On March 13, 2020, the White House issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak.

---

[34] *Secretary Azar Declares Public Health Emergency for United States for 2019 Novel Coronavirus*, U.S. Dep't of Health and Human Serv. (Jan. 31, 2020), https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html (last visited Aug. 5, 2021).

COMPLAINT – 30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

88.     On February 29, 2020, Washington Governor Jay Inslee issued Proclamation 20-05, attached hereto as **Exhibit 6**, declaring a State of Emergency in all counties in the State of Washington arising out of the presence and risks of COVID-19.  The same day, King County confirmed the first COVID-19 fatality in Washington State—a patient located near the Properties in Kirkland, Washington.

89.     On March 11, 2020, Governor Inslee issued Proclamation 20-07, attached hereto as **Exhibit 7**, banning "[g]atherings of 250 people or more for social, spiritual and recreational activities including, but not limited to, community, civic, public, leisure, faith-based, *or sporting events*; parades; concerts; festivals; conventions; fundraisers; and similar activities" in King County (among others) until March 31, 2020 unless extended beyond that date.  Ex. 7 at 2 (emphasis added).  Proclamation 20-07 recognized that COVID-19 is "a respiratory disease that spreads easily from person to person and may result in serious illness or death, has been confirmed in 9 counties of Washington State resulting in 24 deaths, with **significant community spread** in King, Pierce, and Snohomish counties." *Id.* at 1 (emphasis added).

90.     On March 16, 2020, Governor Inslee issued Proclamation 20-13, attached hereto as **Exhibit 8**, which "prohibit[ed] any number of people from gathering in any public venue in which people congregate for purposes of public entertainment . . . to include all public venues in which the serving, provision, or consumption of prepared food or beverages occurs at a table, bar, or for consumption within." *See* Ex. 8.  This Proclamation also "prohibit[ed] the operation of public venues in which people congregate for entertainment, social or recreational purposes." *Id.*

91.     That same day, Governor Inslee also issued Proclamation 20-14, attached hereto as **Exhibit 9**, which barred gatherings of greater than 50 people and limited gatherings

COMPLAINT – 31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

of less than 50 people only to those activities that "comply with social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines."

92.    On March 19, 2020, Governor Inslee issued Proclamation 20-24, attached hereto as **Exhibit 10**, entitled "Restrictions on Non Urgent Medical Procedures." Proclamation 20-24 recognized that COVID-19 "has broadly spread throughout Washington State" and declared that: "[t]o curtail the spread of the COVID-19 pandemic in Washington State and to protect our health care workers as they provide health care services, it is necessary to immediately prohibit all hospitals . . . in Washington State from providing health care services, procedures and surgeries that require personal protective equipment, which if delayed, are not anticipated to cause harm to the patient within the next three months, except as provided herein."  Ex. 10 at 1.  Proclamation 20-24 also notes that the ban on certain procedures—which included "most joint replacements, most cataract and lens surgeries, non-urgent cardiac procedures, cosmetic procedures, some endoscopy, and some interventional radiology services"—was being done "to help preserve and maintain life, health, *property* or the public peace."  *Id*. at 2 (emphasis added).  Proclamation 20-24 was initially in effect from March 19, 2020 to May 18, 2020.

93.    On March 23, 2020, Governor Inslee issued Proclamation 20-25, attached hereto as **Exhibit 11**, entitled "Stay Home–Stay Healthy," which recognized " at least 2,221 cases of COVID-19 in Washington State" at the time and ordered that "[a]ll people in Washington State shall immediately cease leaving their home or place of residence except: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business services" until April 6, 2020 or beyond.  Proclamation 20-25 further banned all public gatherings and ordered that "[e]ffective midnight on March 25, 2020, all non-essential

COMPLAINT – 32

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

businesses in Washington State shall cease operations except for performing basic minimum operations." Ex. 11, at ¶ 3.

94.     On May 18, 2020, Governor Inslee issued Proclamation 20-24.1, attached hereto as **Exhibit 12**, which extended Washington's prohibition on hospitals (among other facilities) "from providing non-urgent health care and dental services, procedures, and surgeries" until "until the state of emergency, issued on February 29, 2020, pursuant to Proclamation 20-05, is rescinded, or until this order is amended or rescinded, whichever occurs first."  Proclamation 20-24.1 provided exceptions to the ban on non-urgent services, procedures, and surgeries where facilities "act in good faith and with reasonable clinical judgment to meet and follow the procedures and criteria" outlined in the Proclamation.  Ex. 12 at 3.  Notably, Proclamation 20-24.1 recognized that COVID-19 "remains a public disaster affecting . . . property."  *Id*. at 2.

95.     Beyond Proclamation 20-24, Washington extended the above-referenced orders several times, including extending the "Stay Home–Stay Healthy" Proclamation 20-25 through May 31, 2020, after which time Washington began a phased re-opening plan.  *See, e.g*., Proclamation 20-25.4, attached hereto as **Exhibit 13**.

96.     In March 2020, as COVID-19 spread uncontrollably throughout King County, Washington, including at the UW Properties, UWMC, NWH, and HMC began to significantly limit the number of patients they took in and procedures they performed as a direct result of COVID-19 and the Executive Orders.  This was done for various reasons, including, but not limited to: (1) limiting the spread of COVID-19 by decreasing the number of people on the Properties; (2) allowing additional cleaning in between procedures in attempts to reduce transmission; (3) protecting, but also coping with the lack of, workforce and available personal protective equipment; (4) ceasing elective procedures in response to the Executive Orders;

COMPLAINT – 33

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

and (5) shifting certain resources to set-up COVID-19 testing sites and free-up laboratory availability to process those tests. These safety and mandatory protocols rendered the UWMC, NWH, and HMC Properties physically incapable of performing their intended purpose, which is to treat patients.

97.    UWMC, NWH, and HMC have operated at a reduced capacity ever since the national emergency was declared.

98.    By no later than mid-March 2020, COVID-19 was present at the UWMC, NWH, and HMC Properties.

99.    Since then, thousands of more confirmed COVID-19 cases have been reported at the UWMC, NWH, and HMC Properties.

100.    As a result of the presence of COVID-19, UW incurred direct physical loss and damage to the UWMC, NWH, and HMC Properties and it had to, among other things, turn away numerous patients it would have otherwise treated and stop numerous procedures that it would have otherwise performed due to COVID-19, rendering certain portions of the Properties physically altered, unusable for their intended purposes, and/or inhabitable. In addition, some patients were understandably unable and unwilling to come to any hospital, out of a fear of exposure to COVID-19. As of the date of this filing, the UWMC, NWH, and HMC Properties have not returned to pre-pandemic capacity.

101.    In addition, prior to February 2020, UW Medicine had completed a comprehensive strategic plan that included growth plans for prioritized service lines that would have resulted in increased revenues. The UW was not able to implement this plan because of COVID-19. The plan is in the early implementation phases now because of the delay caused by the pandemic. The UW experienced lost revenue due to the delayed implementation of this plan.

COMPLAINT – 34

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

102.    Further, UW has incurred costs in preparing to safely operate in compliance with applicable orders concerning COVID-19.  Among other things, UW was forced to repeatedly remove COVID-19 from the UWMC, NWH, and HMC Properties, undertaking expensive and extensive cleaning and disinfecting procedures (among other things).

103.    With respect to the Stadium and Athletic Properties, on March 11, 2020, UW began to restrict the type and number of spectators at home events.  Notably, only competing student-athletes and their families, coaches, essential workers, and recruits were permitted to attend home events.  As a result, UW offered either credit or refunds to those who had purchased single-game tickets.  At that time, UW offered credit to season ticket holders for cancelled games.

104.    A few days later, on March 14, 2020, the PAC-12 Conference—of which the UW is a member—cancelled the remainder of the PAC-12 sports competitions and championships through the end of the academic year (early June).  This impacted UW revenues from such competitions.

105.    On July 9, 2020, UW announced that the much anticipated Washington versus Michigan football game, scheduled for September 5, 2020, had been cancelled.  The following day, on July 10, 2020, UW announced its decision to hold conference-only games for football, soccer, and volleyball.  Football did not end up resuming until November 2020.  Some of these conference-only games, however, were cancelled due to COVID-19 outbreaks among the teams.  Spectators continued to not be allowed at these games.

106.    In addition to loss of ticket sales, UW also experienced loss of concessions, TV revenue, and lower sponsorship revenue due to no spectators at the events.

107.    UW took the above actions as a direct result of COVID-19 and the Executive Orders.  UW's Athletic Department began testing for COVID-19 at the Stadium and Athletics

COMPLAINT – 35

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Properties in June 2020; and between June 10, 2020 and January 29, 2021, it recorded 55 positive cases at the Stadium Properties and 37 positive cases at the Athletics Properties. The Athletic Department also administered antibody tests to all returning students and a number tested positive, meaning they had been infected with COVID-19 in the three months leading up to June.

108.    Since then, numerous more confirmed COVID-19 cases have been reported at the Stadium and Athletics Properties.

109.    Further, on information and belief, given the unmitigated spread of COVID-19, the statistics of the number of people infected with COVID-19 in proportion to deaths due to the disease, and the number of people at the Stadium and Athletics Properties in March 2020, it is statistically certain there were cases of COVID-19 at these Properties in March 2020.

110.    As a result of the presence of COVID-19, UW incurred direct physical loss of and damage to the Husky Stadium and Athletics Properties because it had to, among other things, cancel games that it would have otherwise hosted if it were not for COVID-19. COVID-19 therefore rendered the Properties in whole or in part physically altered, unusable for their intended purposes, and/or inhabitable.

111.    Further, UW has incurred costs in preparing to safely operate in compliance with applicable Executive Orders. Among other things, UW has been forced to remove COVID-19 from the Husky Stadium and Athletics Properties, undertaking expensive and extensive cleaning and disinfecting procedures.

COMPLAINT – 36

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

**D.      Insurer's Denial of Coverage, Failure to Investigate, and Bad Faith Refusal to Accept Coverage**

112.      Starting in July 2020, UW provided Insurer with notices of claims under each of the Policies ("Claims").

113.      Starting in August 2020 and continuing through June 7, 2021, Insurer sent UW a series of letters that collectively denied coverage for all of UW's Claims.  Insurer took the legal position that no coverages under the Policies could be triggered by COVID-19, because COVID-19 was not responsible for "direct physical loss or damage."  As such, there was no further information the Insurer would have accepted from the UW to substantiate this claim. Insurer confirmed its denials for all such claims in subsequent correspondence, including stating as follows in a letter to UW dated August 2, 2022:

> By letters dated August 25, 2020, March 23, 2021, March 25, 2021, and May 28, 2021, Employers notified the University that there was no coverage for the Claims submitted, respectively, under Policy Numbers YAC-L9L-450425-040, YAC-L9L-450425-030 , YAC-L9L-450425-020, and YAC-L9L-469720-019. Additionally, by letters dated May 28, 2021 and June 7, 2021, Employers notified the University that there was no coverage for the Claims submitted, respectively under Policy Numbers YAC-L9L-469720-029, YAC-L9L-469720-039, and YAC-L9L-469720-049.

114.      During the adjustment of the Claims, Insurer asserted that UW could be barred from bringing this action by a purported two-year suit limitations period contained in the Policies.  Based on Insurer's representations, UW and Insurer entered into multiple agreed-upon written extensions of the purported limitations period.

115.      UW has brought this action within the time period contemplated by the written extensions to which UW and Insurer agreed.  UW, however, was forced to bring, and only brought, this action after Insurer refused to grant further extensions of the purported limitations period.

COMPLAINT – 37

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

116.    On September 26, 2022, UW sent Insurer a written notice informing Insurer of its violations of the IFCA and providing it with an opportunity to cure such violations.  UW provided a copy of such notice to the Washington Office of the Insurance Commissioner on the same day.

117.    On October 17, 2022, Insurer's coverage counsel, Robins Kaplan, responded to UW's notice letter. In the letter, Robins Kaplan denied any Insurer liability under the IFCA and continued to maintain Insurer's wrongful denial of coverage for the Claims.

**E.      UW's Claims for COVID-19 Related Damage and Losses Trigger the All Risks Policies and Various Coverages in the Policies**

**i.      *COVID-19 Triggers the Policies' Property Damage Coverages***

118.    The presence of COVID-19 at UW's Properties caused direct physical loss and damage to covered properties at covered locations that were caused by a covered loss.

119.    COVID-19 is a covered cause of loss that caused direct physical loss or damage to UW's Properties by, among other things, causing material alterations to the Properties and operations and systems used therein; forcing complete or partial closure of some of the Properties; and rendering the Properties physically nonfunctional and inaccessible, either partially or totally, for the conduct of UW's ordinary business operations.

**ii.     *COVID-19 Triggers the Policies' Time Element Coverages***

120.    The spread of COVID-19 to UW's Properties caused UW to suffer a necessary interruption of business, both partial and total, of its business activities at its Properties.  This necessary interruption of business was caused by direct physical loss or damage to the Properties.  The cause was a covered loss under all of the Policies and occurred during all of the Policies' policy periods.

COMPLAINT – 38

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

121.    This necessary interruption of business triggers all of the Policies' Time Element coverages, including, but not limited to, Gross Earnings, Extended Period of Liability, Extra Expense, and Civil or Military Authority coverages as defined by all of the Policies.

122.    UW's necessary interruption of business is on-going due to the continuing physical loss of or damage to its Properties caused by COVID-19's presence at the Properties.

iii.    *COVID-19 Triggers the Policies' Gross Earnings and Extended Period of Liability Coverages*

123.    The presence of COVID-19 has caused a necessary interruption of business, from the start of the pandemic and remaining to this day, resulting in an actual loss of gross earnings sustained by UW during all of the Policies' periods of liability, thus triggering the Policies' Gross Earnings coverages.  Furthermore, at the conclusion of the Policies' periods of liability, the Policies' extended periods of liability coverages are triggered for actual gross earnings loss resulting from the necessary business interruption for up to an additional 365 days.

124.    The duration and amount of the Policies' Gross Earnings coverages and extended period of liability coverages will be proven at trial.

iv.    *COVID-19 Triggers the Policies' Extra Expense Coverages*

125.    The presence of COVID-19 has caused direct physical loss or damage to UW's Properties.  This has forced UW to incur reasonable and necessary costs in excess of the costs it would have normally incurred to conduct its businesses had no physical loss or damage to the Properties occurred.

126.    Such extra expenses were based on operational modifications made necessary by the constant presence of COVID-19.

COMPLAINT – 39

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

127.    UW's extra expenses trigger all of the Policies' Extra Expense coverages, for a duration and in an amount to be proven at trial.

### v.    COVID-19 Triggers the NWH Policy's Leasehold Interest Coverage

128.    Various NWH Properties leased by UW became wholly or partially untenantable or unusable as a result of direct physical loss or damage caused by SARS-CoV-2 and the Executive Orders.  UW has incurred Leasehold Interest loss as a result of rent it paid as a lessee of such building premises, for which it remained obligated to pay.

129.    The foregoing and any similar expenses incurred by UW trigger the NWH Policy's Leasehold Interest coverage, for a duration and in an amount to be proven at trial.

### vi.    COVID-19 Triggers the Stadium and Athletics Policies' Attraction Property Coverages

130.    On information and belief, COVID-19 was present at and caused direct physical loss or damage to properties not owned by UW, but within one mile of UW's Properties, that attract business to UW's Properties.

131.    Such attraction properties include, but are not limited to, the University Village shopping center and the Arboretum.

132.    The presence of COVID-19, the direct physical loss or damage caused by COVID-19, and the Executive Orders issued in response to the pandemic, impacted the "attraction properties" nearby and caused UW to incur substantial losses at its Stadium and Athletics Properties in an amount and for a duration to be proven at trial, thus triggering the Stadium and Athletics Policies' Attraction Property coverages.

### vii.    COVID-19-related Executive Orders Trigger the Policies' Civil or Military Authority Coverages

133.    Starting in March 2020, state and local governments in jurisdictions where UW does business issued orders that, among other things, closed all but "essential" businesses;

COMPLAINT – 40

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

imposed occupancy restrictions; barred sporting events; urged and/or required the public to avoid all non-essential travel; barred large group gatherings and events; and, even if spaces remained open, required UW to incur costs to provide for safety measures such as social distancing of patients and employees and extra cleaning.

134.    COVID-19 and/or the state and local municipal orders partially or completely prohibited access to UW's Properties making them either partially or completely unfit for their intended purposes or partially or completely uninhabitable.

135.    Such orders were issued as a result of the COVID-19 pandemic and public health crisis, which are covered losses under all of the Policies, and led UW to incur substantial losses at its Properties, thus triggering all of the Policies' Civil or Military Authority coverages, for a duration and in an amount to be proven at trial.

### viii.    *COVID-19 Triggers the Policies' Contingent Time Element Coverages*

136.    UW's claims under the Policies include loss resulting from a necessary business interruption of UW's business at the Properties caused by direct physical loss of or damage to the properties of UW's suppliers, contract manufacturers, and/or contract service providers in connection with the COVID-19 pandemic.  As a result of that loss or damage, UW's suppliers, contract manufacturers, and/or contract service providers were prevented from being able to accept or deliver the goods or services required or provided by UW.

137.    In other words, and without limitation, because individuals or businesses that would have otherwise supplied UW with goods or services could not do so due to the loss or damage to their own properties caused by the COVID-19 pandemic and Executive Orders, UW itself incurred a necessary business interruption that triggers all of the Policies' Contingent Time Element coverages, for a duration and in an amount to be proven at trial.

COMPLAINT – 41

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

### ix.   COVID-19-related Executive Orders Trigger the Policies' Ingress/Egress Coverages

138.   UW has sustained an actual time element loss due to the necessary interruption of its business at the Properties because either partial or complete ingress or egress to the Properties was prevented or limited due to direct physical loss or damage to the Properties or within one mile of the Properties caused by the COVID-19 pandemic and Executive Orders.

139.   The foregoing necessary interruption of business incurred by UW triggers all of the Policies' Ingress/Egress coverages, for a duration and in an amount to be proven at trial.

### x.   COVID-19 Triggers the Policies' Protection and Preservation of Property Coverages

140.   UW has incurred reasonable and necessary costs, and gross earnings or gross profit losses, for actions to temporarily protect and preserve its Properties due to impending physical loss or damage to such Properties due to the COVID-19 pandemic.

141.   The foregoing costs and losses trigger all of the Policies' Protection and Preservation of Property coverages, for a duration and amount to be proven at trial.

### xi.   COVID-19 Triggers the Policies' Research and Development Coverages

142.   UW has sustained actual loss of fixed charges and ordinary payroll directly attributable to the interruption of research and development projects directly resulting from physical loss or damage to its Properties due to the COVID-19 pandemic.

143.   The foregoing losses trigger all of the Policies' Research and Development coverages, for a duration and amount to be proven at trial

### xii.   COVID-19-Related Executive Orders Trigger the UWMC, NWH, and HMC Policies' Communicable Disease Endorsements

144.   UW's Properties were contaminated by COVID-19, a communicable disease, as the direct result of a covered cause of loss.

COMPLAINT – 42

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

145.    Notably, the UWMC, NWH, and HMC Policies treat communicable disease "contamination" differently from "contamination" defined elsewhere in the Policies. Specifically, the Policies' Communicable Disease Decontamination Cost Endorsements and Time Element Losses Due to Contamination by Communicable Disease Endorsements (collectively, these endorsements are referred to herein as the "Communicable Disease Endorsements") define "communicable disease" as "a viral or bacterial organism that is capable of inducing disease, illness, physical distress or death."  The Policies' property damage coverage and definitions sections, however, define "contaminant" as "[a]ny foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew."

146.    The UWMC, NWH, and HMC Policies' Communicable Disease Decontamination Cost Endorsements do not exclude communicable disease because they only preclude "costs associated with any other contamination loss," meaning loss from contaminants as that term is defined in the Policies' property damage coverage and definitions sections (*i.e.,* not communicable disease).

147.    Similarly, the Policies' property damage sections do not categorically exclude contamination as there are two exceptions (a) if it directly results from a covered loss and/or (b) coverage is provided elsewhere in the Policies.  Any contamination here was due to, or directly resulted from, a covered cause of loss and is covered by the Policies.  As such, the UWMC, NWH, and HMC Policies' Communicable Disease Decontamination Endorsements provide coverage for communicable disease contamination.

148.    At the time of the COVID-19 contamination to UW Properties, there were (and still are) Executive Orders in force that required (and still require) UW to decontaminate its Properties as a result of the contamination by the communicable disease COVID-19.

COMPLAINT – 43

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

149.     The costs incurred by UW to decontaminate the UWMC, NWH, and HMC Properties of COVID-19, and the time element losses caused thereby, trigger the UWMC, NWH, and HMC Policies' Communicable Disease Endorsements, for a duration and amount to be proven at trial.

**F.     None of the Policies' Exclusions Bar Coverage**

150.     No exclusions in the Policies bar coverage for the actual presence of COVID-19 at the Properties; direct physical loss or direct physical damage caused by COVID-19, or within applicable distance limitations set forth in the Policies; or for any other losses, costs, or expenses covered by the various coverage forms set forth above.

**FIRST CAUSE OF ACTION:**
**INSURER'S BREACH OF CONTRACT - UWMC POLICY**

151.     UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

152.     UW and Insurer entered into a legally binding written contract when Insurer issued the UWMC Policy.

153.     UW made a claim to Insurer under the UWMC Policy for substantial, multi-million-dollar losses arising out of the physical presence of COVID-19 at or near its Properties and the Executive Orders, both of which are covered losses.

154.     UW's property damage costs, time element losses, extra expenses, and other losses are covered under various coverages in the UWMC Policy as outlined herein and are not excluded.

155.     UW has complied in all material respects with the conditions and requirements of the UWMC Policy, or such conditions and requirements have been waived, or their satisfaction otherwise excused by operation of law or by Insurer's conduct.  Such conditions

COMPLAINT – 44

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

or requirements include without limitation paying the premium and providing timely notice of its claim.

156.   By failing and refusing to provide coverage to UW, Insurer has breached the UWMC Policy.

157.   As a direct and proximate result of such breach, UW has been deprived of the benefit of its insurance coverage and has incurred damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION:**
**DECLARATORY JUDGMENT PURSUANT TO RCW 7.24 - UWMC POLICY**

158.   UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

159.   UW is an Insured under the UWMC Policy, which is a valid and enforceable contract sold to UW by Insurer that provides up to $600,000,000 in coverage for property loss or damage, time element loss, and other coverages.

160.   UW gave Insurer timely notice of its claim for property loss or damage, time element loss, and other coverages, each of which involve a covered loss that is sufficient to trigger the UWMC Policy's Property Damage coverages, Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development), Communicable Disease Decontamination endorsements, as well as any other coverages or benefits potentially available under the UWMC Policy.

161.   Insurer has wrongfully denied coverage for the claim, erroneously contending that certain UWMC Policy exclusions purportedly preclude coverage for the claim.

162.   As such, an actual and justiciable controversy exists between Insurer and UW concerning the application of the UWMC Policy to the claim, including whether the presence

COMPLAINT – 45

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

of COVID-19 at an insured location constitutes a covered loss; whether Executive Orders that limit or prohibit access to the UWMC Properties constitute a covered loss; and whether exclusions raised by Insurer apply.

163.    UW seeks a declaration from the Court that: (a) the presence of COVID-19 at the UWMC Properties is a covered loss under the UWMC Policy; (b) the Executive Orders prohibiting or limiting access to the UWMC Properties constitute a covered loss; (c) UW is entitled to coverage under the UWMC Policy's Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development); (d) UW is entitled to coverage under the UWMC Policy's Communicable Disease endorsements; and (e) there is no applicable UWMC Policy exclusion or condition that precludes coverage for the claim.

### THIRD CAUSE OF ACTION:
### INSURER'S BREACH OF CONTRACT - NWH POLICY

164.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

165.    UW and Insurer entered into a legally binding written contract when Insurer issued the NWH Policy.

166.    UW made a claim to Insurer under the NWH Policy for substantial, multi-million-dollar losses arising out of the physical presence of COVID-19 at or near it Properties and the Executive Orders, both of which are covered losses.

167.    UW's property damage costs, time element losses, extra expenses, and other losses are covered under various coverages in the NWH Policy as outlined herein and are not excluded.

COMPLAINT – 46

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

168.     UW has complied in all material respects with the conditions and requirements of the NWH Policy, or such conditions and requirements have been waived, or their satisfaction otherwise excused by operation of law or by Insurer's conduct.  Such conditions or requirements include without limitation paying the premium and providing timely notice of its claim.

169.     By failing and refusing to provide coverage to UW, Insurer has breached the NWH Policy.

170.     As a direct and proximate result of such breach, UW has been deprived of the benefit of its insurance coverage and has incurred damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION:**
**DECLARATORY JUDGMENT PURSUANT TO RCW 7.24 - NWH POLICY**

171.     UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

172.     UW is an Insured under the NWH Policy, which is a valid and enforceable contract sold to UW by Insurer that provides up to $500,000,000 in coverage for property loss or damage, up to $161,914,009 in coverage for time element loss, and various sublimits for other coverages.

173.     UW gave Insurer timely notice of its claim for property loss or damage, time element loss, and other coverages, each of which involve a covered loss that is sufficient to trigger the NWH Policy's Property Damage coverages, Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Leasehold Interest, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development), Communicable Disease endorsements, as well as any other coverages or benefits potentially available under the NWH Policy.

COMPLAINT – 47

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

174.    Insurer has wrongfully denied coverage for the claim, erroneously contending that certain NWH Policy exclusions purportedly preclude coverage for the claim.

175.    As such, an actual and justiciable controversy exists between Insurer and UW concerning the application of the NWH Policy to the claim, including whether the presence of COVID-19 at an insured location constitutes a covered loss; whether Executive Orders that limit or prohibit access to the NWH Properties constitute a covered loss; and whether exclusions raised by Insurer apply.

176.    UW seeks a declaration from the Court that: (a) the presence of COVID-19 at the NWH Properties is a covered loss under the NWH Policy; (b) the Executive Orders prohibiting or limiting access to the NWH Properties constitute a covered loss; (c) UW is entitled to coverage under the NWH Policy's Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Leasehold Interest, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development); (d) UW is entitled to coverage under the NWH Policy's Communicable Disease endorsements; and (e) there is no applicable NWH Policy exclusion or condition that precludes coverage for the claim.

### FIFTH CAUSE OF ACTION:
### INSURER'S BREACH OF CONTRACT - HMC POLICY

177.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

178.    UW and Insurer entered into a legally binding written contract when Insurer issued the HMC Policy.

COMPLAINT – 48

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

179.    UW made a claim to Insurer under the HMC Policy for substantial, multi-million-dollar losses arising out of the physical presence of COVID-19 at or near its Properties and the Executive Orders, both of which are covered losses.

180.    UW's property damage costs, time element losses, extra expenses, and other losses are covered under various coverages in the HMC Policy as outlined herein and are not excluded.

181.    UW has complied in all material respects with the conditions and requirements of the HMC Policy, or such conditions and requirements have been waived, or their satisfaction otherwise excused by operation of law or by Insurer's conduct.  Such conditions or requirements include without limitation paying the premium and providing timely notice of its claim.

182.    By failing and refusing to provide coverage to UW, Insurer has breached the HMC Policy.

183.    As a direct and proximate result of such breach, UW has been deprived of the benefit of its insurance coverage and has incurred damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION:
## DECLARATORY JUDGMENT PURSUANT TO RCW 7.24 - HMC POLICY

184.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

185.    UW is an Insured under the HMC Policy, which is a valid and enforceable contract sold to UW by Insurer that provides up to $600,000,000 in coverage for property loss or damage, time element loss, and various other coverages.

186.    UW gave Insurer timely notice of its claim for property loss or damage, time element loss, and other coverages, each of which involve a covered loss that is sufficient to

COMPLAINT – 49

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

trigger the HMC Policy's Property Damage coverages, Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development), Communicable Disease Decontamination endorsement, as well as any other coverages or benefits potentially available under the HMC Policy.

187.    Insurer has wrongfully denied coverage for the claim, erroneously contending that certain HMC Policy exclusions purportedly preclude coverage for the claim.

188.    As such, an actual and justiciable controversy exists between Insurer and UW concerning the application of the HMC Policy to the claim, including whether the presence of COVID-19 at an insured location constitutes a covered loss; whether Executive Orders that limit or prohibit access to the HMC Properties constitute a covered loss; and whether exclusions raised by Insurer apply.

189.    UW seeks a declaration from the Court that: (a) the presence of COVID-19 at the HMC Properties is a covered loss under the HMC Policy; (b) the Executive Orders prohibiting or limiting access to the HMC Properties constitute a covered loss; (c) UW is entitled to coverage under the HMC Policy's Time Element Coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development); and (d) UW is entitled to coverage under the NWH Policy's Communicable Disease endorsements; and (e) there is no applicable HMC Policy exclusion or condition that precludes coverage for the claim.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax:  +1.206.359.9000

**SEVENTH CAUSE OF ACTION:**
**INSURER'S BREACH OF CONTRACT - STADIUM POLICY**

190.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

191.    UW and Insurer entered into a legally binding written contract when Insurer issued the Stadium Policy.

192.    UW made a claim to Insurer under the Stadium Policy for substantial, multi-million-dollar losses arising out of the physical presence of COVID-19 at or near its Properties and the Executive Orders, both of which are covered losses.

193.    UW's property damage costs, time element losses, extra expenses, and other losses are covered under various coverages in the Stadium Policy as outlined herein and are not excluded.

194.    UW has complied in all material respects with the conditions and requirements of the Stadium Policy, or such conditions and requirements have been waived, or their satisfaction otherwise excused by operation of law or by Insurer's conduct.  Such conditions or requirements include without limitation paying the premium and providing timely notice of its claim.

195.    By failing and refusing to provide coverage to UW, Insurer has breached the Stadium Policy.

196.    As a direct and proximate result of such breach, UW has been deprived of the benefit of its insurance coverage and has incurred damages in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION:**
**DECLARATORY JUDGMENT PURSUANT TO RCW 7.24 - STADIUM POLICY**

197.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

COMPLAINT – 51

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

198.    UW is an Insured under the Stadium Policy, which is a valid and enforceable contract sold to UW by Insurer that provides up to $331,055,581 in coverage for property loss or damage, up to $23,567,631 in coverage for time element loss, and various sublimits for other coverages.

199.    UW gave Insurer timely notice of its claim for property loss or damage, time element loss, and other coverages, each of which involve a covered loss that is sufficient to trigger the Stadium Policy's Property Damage coverages, Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Attraction Property, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development), as well as any other coverages or benefits potentially available under the Stadium Policy.

200.    Insurer has wrongfully denied coverage for the claim, erroneously contending that certain Stadium Policy exclusions purportedly preclude coverage for the claim.

201.    As such, an actual and justiciable controversy exists between Insurer and UW concerning the application of the Stadium Policy to the claim, including whether the presence of COVID-19 at an insured location constitutes a covered loss; whether Executive Orders that limit or prohibit access to the Stadium Properties constitute a covered loss; and whether exclusions raised by Insurer apply.

202.    UW seeks a declaration from the Court that: (a) the presence of COVID-19 at the Stadium Properties is a covered loss under the Stadium Policy; (b) the Executive Orders prohibiting or limiting access to the Stadium Properties constitute a covered loss; (c) UW is entitled to coverage under the Stadium Policy's Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Attraction Property, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property,

COMPLAINT – 52

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

and Research and Development); and (d) there is no applicable Stadium Policy exclusion or condition that precludes coverage for the claim.

### NINTH CAUSE OF ACTION:
### INSURER'S BREACH OF CONTRACT - ATHLETICS POLICY

203.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

204.    UW and Insurer entered into a legally binding written contract when Insurer issued the Athletics Policy.

205.    UW made a claim to Insurer under the Athletics Policy for substantial, multi-million-dollar losses arising out of the physical presence of COVID-19 at or near its Properties and the Executive Orders, both of which are covered losses.

206.    UW's property damage costs, time element losses, extra expenses, and other losses are covered under various coverages in the Athletics Policy as outlined herein and are not excluded.

207.    UW has complied in all material respects with the conditions and requirements of the Athletics Policy, or such conditions and requirements have been waived, or their satisfaction otherwise excused by operation of law or by Insurer's conduct.  Such conditions or requirements include without limitation paying the premium and providing timely notice of its claim.

208.    By failing and refusing to provide coverage to UW, Insurer has breached the Athletics Policy.

209.    As a direct and proximate result of such breach, UW has been deprived of the benefit of its insurance coverage and has incurred damages in an amount to be proven at trial.

COMPLAINT – 53

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

158764723.1

**TENTH CAUSE OF ACTION:**
**DECLARATORY JUDGMENT PURSUANT TO RCW 7.24 - ATHLETICS POLICY**

210.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

211.    UW is an Insured under the Athletics Policy, which is a valid and enforceable contract sold to UW by Insurer that provides up to $250,000,000 in coverage for property loss or damage, up to $4,345,657 in coverage for time element loss, and various sublimits other coverages.

212.    UW gave Insurer timely notice of its claim for property loss or damage, time element loss, and other coverages, each of which involve a covered loss that is sufficient to trigger the Athletics Policy's Property Damage coverages, Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Attraction Property, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development), as well as any other coverages or benefits potentially available under the Athletics Policy.

213.    Insurer has wrongfully denied coverage for the claim, erroneously contending that certain Athletics Policy exclusions purportedly preclude coverage for the claim.

214.    As such, an actual and justiciable controversy exists between Insurer and UW concerning the application of the Athletics Policy to the claim, including whether the presence of COVID-19 at an insured location constitutes a covered loss; whether Executive Orders that limit or prohibit access to the Athletics Properties constitute a covered loss; and whether exclusions raised by Insurer apply.

215.    UW seeks a declaration from the Court that: (a) the presence of COVID-19 at the Athletics Properties is a covered loss under the Athletics Policy; (b) the Executive Orders

COMPLAINT – 54

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

prohibiting or limiting access to the Athletic Properties constitute a covered loss; (c) UW is entitled to coverage under the Athletics Policy's Time Element coverages (including Gross Earnings, Extended Period of Liability, Extra Expense, Attraction Property, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, and Research and Development); and (d) there is no applicable Athletics Policy exclusion or condition that precludes coverage for the claim.

### ELEVENTH CAUSE OF ACTION:
### BAD FAITH

216.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

217.    The Insurer is obligated under Washington law to fulfill all duties under the policies in good faith and fair dealing with their insureds.

218.    The Insurer has failed to act in good faith to achieve a prompt, fair, and equitable settlement of UW's claims for damage and losses arising out of the COVID-19 pandemic.

219.    The Insurer issued policies to UW that specifically cover, among other things, property damage and time element losses arising from a "communicable disease" like COVID-19.

220.    Despite this, over a two-year period, Insurer: (1) conducted a bad faith paper investigation that sought irrelevant information from UW in its questionnaires that did not arise from the terms of the Policies; and (2) has never acknowledged that any portion of the Claims are covered under the Policies.  This conduct continued even after the Washington Supreme Court issued rulings explicitly supporting coverage under the Policies here.

COMPLAINT – 55

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone:  +1.206.359.8000
Fax:  +1.206.359.9000

221.    Each of these actions violates numerous applicable regulations with respect to proper claims handling, including, without limitation: WAC 284-30-330(1), (2), (3), (4), (6), (7), and (13); WAC 284-30-360; and WAC 284-30-370.

222.    Through its course of conduct, Insurer has violated its duty of good faith and placed its interests ahead of those of its insured, in what could only be an intentional effort to delay complying with their obligations under Policies issued to cover the exact type of losses incurred here.

223.    Insurer's bad faith conduct has directly and proximately caused damage to UW, including, without limitation, by losing the time value of its Claims proceeds and by forcing UW to hire counsel to pursue Insurer and now file this action due to Insurer's dilatory, unreasonable conduct.

224.    Insurer is thus legally obligated to pay all damages caused by their conduct performed in bad faith or in violation of applicable statutes and resolutions.

## TWELFTH CAUSE OF ACTION:
## VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

225.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

226.    By virtue of being issued in Washington to a Washington-based insured and insuring property based in Washington, the Policies are each subject to the WCPA, RCW 19.86, *et seq.*, and insurance claims handling regulations.

227.    For the reasons described above, Insurer has engaged in unfair and deceptive acts and practices in its investigation and resolution of UW's Claim, in violation of numerous insurance regulations for proper claims handling, including but not limited to WAC 284-30-330(1), (2), (3), (4), (6), (7), and (13); WAC 284-30-360; and WAC 284-30- 370.

COMPLAINT – 56

158764723.1

228.    Insurer's breach of the covenant of good faith and fair dealing and violations of the above-referenced claims handling regulations are unfair and deceptive business practices that violate the WCPA.

229.    UW has been damaged by Insurer's violations of the WCPA, including, without limitation, by losing the time value of its Claims proceeds and by having to hire counsel to pursue Insurer and now file this action due to Insurer's dilatory and unreasonable conduct.

230.    UW is thus entitled to recovery of all of its damages, exemplary or multiplier damages, and attorneys' fees from Insurer as a result of their respective violations of the WCPA.

**THIRTEENTH CAUSE OF ACTION:**
**VIOLATION OF WASHINGTON INSURANCE FAIR CONDUCT ACT**

231.    UW realleges and incorporates by reference, as if set forth herein, each of the allegations in the above paragraphs of this Complaint.

232.    Based on the above-described conduct, Insurer has violated the IFCA, RCW 48.30.010, by, among other things:

    a.    misrepresenting pertinent facts and/or insurance policy provisions, in violation of WAC 284-30-330(1) and WAC 284-30-350;

    b.    failing to acknowledge and act reasonably promptly upon communications with respect to the claims, in violation of WAC 284-30-330(2) and WAC 284-30-360;

    c.    failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, in violation of WAC 284-30-330(3) and WAC 284-30-360;

    d.    failing to complete its investigation of each claim within thirty days after notification of the claim while providing no justification for any potential belief that its investigation cannot reasonably be completed within that time, in violation of WAC 284-30- 370;

COMPLAINT – 57

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

e.  refusing to pay claims without conducting a reasonable investigation, in violation of WAC 284-30-330(4);

f.  failing to affirm or deny coverage within a reasonable period of time in violation of WAC 284-30-330(5);

g.  not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear, in violation of WAC 284-30-330(6);

h.  compelling a first party claimant to initiate litigation to recover amounts due under the Policies, in violation of WAC 284-30- 330(7); and

i.  failing to promptly provide a reasonable explanation of the basis in the Policies in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement, in violation of WAC 284-30-330(13).

233.  UW has been damaged by Insurer's violations of the IFCA, including without limitation by losing the time value of its insurance claim proceeds and by having to hire counsel to pursue Insurer and now file this action due to Insurer's unfair and deceptive investigation and wrongful, unreasonable denial of coverage.

234.  UW has complied with all obligations under the IFCA, including without limitation, providing Insurer and the Washington Office of the Insurance Commissioner with a 20-day written notice of the basis for this cause of action.

235.  Insurer has failed to resolve the basis for this action within the statutorily required time period. Insurer is liable to UW for actual damages, plus statutory exemplary or multiple and/or treble damages, caused by Insurer's violations of IFCA, together with all attorneys' fees and other expenses.

**PRAYER FOR RELIEF**

A.  Enter a judgment in favor of UW and against Insurer, as requested herein, on each of the Causes of Action in this Complaint;

COMPLAINT – 58

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158764723.1

B.      Award UW its actual and consequential damages sustained (and not otherwise reimbursed) as a result of Insurer's breaches of the Policies in an amount to be established through proof at trial;

C.      Enter a declaration of the rights of the parties under the Policies with respect to UW's Claims that include, but may not be limited to, declaring that: (1) each of the coverage provisions identified herein is triggered by UW's Claims; (2) UW's Claims are not subject to any exclusion or limitation in the Policies; and (3) Insurer is thus liable to cover the damages resulting from UW's Claims.

D.      Enter a judgment awarding UW all damages suffered or incurred arising from Insurer's bad faith conduct.

E.      Enter a judgment awarding UW all damages suffered or incurred arising from Insurer's violations of the WCPA, including actual damages, plus statutory exemplary or multiple and/or treble damages, together with all attorneys' fees and other expenses.

F.      Enter judgement awarding UW all damages suffered or incurred as a result of or arising from Insurer's violations of the IFCA, including actual damages, plus statutory treble damages, together with all attorneys' fees and other expenses.

G.      Enter a judgement awarding UW its attorneys' fees and other expenses pursuant to applicable law.  As a direct and proximate result of Insurer's breach of its duties under the Policies, UW has been forced to incur attorneys' fees and other expenses in order to obtain the benefit of its insurance contracts.  UW is thus entitled to all of its attorneys' fees and other expenses from Insurer.  *See, e.g., Olympic Steamship Co., Inc. v. Centennial Insurance Co.*, 811 P.2d 673, 680-81 (Wash. 1991); *McGreevy v. Oregon Mutual Insurance Co.*, 904 P.2d 731, 736-37 (Wash. 1995); *King County v. Vinci Constr. Grands ProJets*, 398 P.3d 1093, 1099-1100 (Wash. 2017).

COMPLAINT – 59

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

H.    Enter a judgment awarding UW pre-judgment interest and post-judgment interest under applicable law; and

I.    Enter a judgment awarding UW its costs of court and any other and further relief to which it may justly be entitled.

## JURY DEMAND

The University of Washington demands a trial by jury of twelve persons of all issues so triable that are raised herein or which may be raised in this action.

Dated: October 20, 2022

s/ James M. Davis

James M. Davis, WSBA No. 32696
JamesDavis@perkinscoie.com
Andrew Greene, WSBA No. 35548
AGreene@perkinscoie.com
J. Camille Fisher, WSBA No. 41809
CFisher@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone +1.206.359.8000
Facsimile +1.206.359.9000

Bradley H. Dlatt (*pro hac vice to be filed*)
BDlatt@perkinscoie.com
**Perkins Coie LLP**
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Phone: 312.324.8400

*Attorneys for Plaintiff The Board of Regents of The University of Washington*

COMPLAINT – 60

158764723.1

**CERTIFICATE OF SERVICE**

On October 20, 2022, I caused to be served upon the below named counsel of record at the address stated below, via the method of service indicated, a true and correct copy of the foregoing document.

| | |
|---|---|
| Daniel R. Bentson<br>Jared F. Kiess<br>BULLIVANT HOUSER BAILEY PC<br>925 Fourth Avenue, Ste. 3800<br>Seattle, WA 98104<br><br>Attorneys for Defendant Employers<br>Insurance Company of Wausau, a Liberty<br>Mutual Company | **X**  Via the Clerk's eFiling Application<br>____  Via hand delivery<br>____  Via U.S. Mail, 1st Class,<br>         Postage Prepaid<br>____  Via Overnight Delivery<br>____  Via Facsimile<br>____  Via Email |

**I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.**

EXECUTED at Seattle, Washington, on October 20, 2022.

*Jennifer Rosales, Legal Practice Assistant*

CERTIFICATE OF SERVICE – 1

# Exhibit 1

# PARKER, SMITH & FEEK
## Vacancy Clause

This policy contains a vacancy clause, coverage will be reduced or eliminated in the event the building is vacant in excess of 60 days.

Please call us if you anticipate this situation.

Thank you

**Toll Free: 800-457-0220**

**Bellevue: 425-709-3600**
**Anchorage: 907-562-2225**
**Portland: 503-416-6870**
**Fax: 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**

# PROTECTIVE SAFEGUARDS

Your Property Insurance Policy contains a PROTECTIVE SAFEGUARD PROVISION.  This provision stipulates that coverage will be automatically suspended at the involved location if you fail to notify us or the carrier immediately when you:

1.      Know of any suspension or impairment in the Protective Safeguards; or

2.      Fail to maintain a Protective Safeguard, over which you have control, in complete working order.

Protective Safeguards are described in your policy and/or endorsement. They may include such things as: sprinkler systems; alarm systems; security services; or any number of items.

It is extremely important that you contact, by telephone, Parker, Smith & Feek if any of the Protective Safeguards described in your policy/endorsement are impaired for **ANY** reason.  We will transmit this information to the insurance carrier to ensure that coverage is not suspended.

If an impairment occurs on a weekend or after regular business hours, please contact us immediately on the next business day.  If this involves a sprinkler impairment due to breakage, leakage, freezing conditions, or opening sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

It is vital that this information be conveyed to your property managers, building maintenance staff, and any other personnel that may be involved in functions that could impair these protective safeguards.  A basic set of procedures is enclosed.

Should you have any questions relating to this, please feel free to contact me directly.

# PARKER, SMITH & FEEK
# PROTECTIVE SAFEGUARDS IMPAIRMENT PROCEDURES

| NOTIFICATION | If you anticipate that <u>any</u> of your protective systems will be taken out of service or if you significantly alter your protection system maintenance program, <u>call</u> Parker, Smith & Feek. |
|---|---|
| CONTACT | Direct calls to your Account Executive or Account Administrator. |
| INFORMATION | Provide us with details regarding your impairment:<br>• What type of system?<br>• What does it protect?<br>• Why is it being taken out of service?<br>• How long will it be out of service? |
| PRECAUTIONS TO TAKE | 1. Have all materials for job on hand and ready.<br>2. Do not leave off longer than necessary.<br>3. Shut down hazardous processes in the area.<br>4. Notify your local fire department, etc.<br>5. Let your security people know of impairment.<br>6. When job is done restore protection.<br>7. Call Parker, Smith & Feek to notify us that protective system is back in service. |

**Toll Free: 800-457-0220**
**Direct**
**Bellevue: 425-709-3600**
**Anchorage: 907-562-2225**
**Portland: 503-416-6870**
**Fax: 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**



Liberty Mutual Group
818 West 7ᵗʰ Street, Suite 850
Los Angeles, CA 90017

Parker Smith & Feek, Inc.
2233 112th Ave NE
Bellevue, WA  98004
ATTN: John Larson

**Named Insured:**
University of WA Medical Center

**Policy Number:**
YAC-L9L-469720-039

**Effective:** 07/01/2019 07/01/2020

Attached please find copies of the Employers Insurance of Wausau policy for the above account.
Should you have any questions or if we can provide you with any assistance, please do not
hesitate to call Jennifer Hennessy @ 925.433.4502 or
jennifer.hennessy@libertymutual.com

Thank you and regards,

*Nora Chiara*

Nora Chiara
Associate Account Analyst
National Insurance Property
Liberty Mutual Insurance
Direct Dial: 213.443.0776
Mailing address: 818 W. 7th Street, Ste. 850, Los Angeles, CA  90017
Nora.Chiara@LibertyMutual.com

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**A.** Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, **we** are required to provide **you** with a notice disclosing the portion of **your** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of **your** premium attributable to such coverage is shown in D. PREMIUM in the Declarations.

**B.** Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals the percentage indicated below of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Federal share of terrorism losses: 84%, calendar year 2016
Federal share of terrorism losses: 83%, calendar year 2017
Federal share of terrorism losses: 82%, calendar year 2018
Federal share of terrorism losses: 81%, calendar year 2019
Federal share of terrorism losses: 80%, calendar year 2020

**C.** Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © 2016 Liberty Mutual Insurance

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# PREMIER PROPERTY PROTECTOR™

POLICY COVER PAGE

| POLICY NUMBER:<br>YAC-L9L-469720-039 | DATE OF ISSUE:<br>7/16/2019 |
|---|---|
| COMPANY PROVIDING INSURANCE:<br>Employers Insurance Company of Wausau<br>( hereafter referred to as **we**, **us** or **our** ) | |

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**We** insure:

| U of WA Medical Center |
|---|
| ( hereafter referred to as **you** or **your(s)** ) |

The term of this Policy is from 7/1/2019 to 7/1/2020 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

## PRODUCER NAME AND OFFICE

PARKER SMITH & FEEK INC
2233 112TH AVE NE,
BELLEVUE, WA 98004

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning. Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

IN WITNESS WHEREOF, the company has caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

President

Secretary

© 2016 Liberty Mutual Insurance

# TABLE OF CONTENTS

## POLICY COVER PAGE

**SECTION I - DECLARATIONS**......................................................................................................... **5**

**A.** FIRST NAMED INSURED AND MAILING ADDRESS.................................................................................5

**B.** POLICY PERIOD ..................................................................................................................................................5

**C.** INSURING AGREEMENT....................................................................................................................................5

**D.** PREMIUM .............................................................................................................................................................5

**E.** PREMIUM PAYABLE...........................................................................................................................................6

**F.** COVERED LOCATION(S) ...................................................................................................................................7

**G.** TERRITORY..........................................................................................................................................................7

**H.** JURISDICTION .....................................................................................................................................................8

**I.** CURRENCY...........................................................................................................................................................8

**J.** DEFINED WORDS................................................................................................................................................8

**K.** LIMITS OF LIABILITY ........................................................................................................................................8

**L.** CANCELLATION TIME SPECIFICATIONS................................................................................................... 12

**M.** DEDUCTIBLES .................................................................................................................................................. 12

**N.** QUALIFYING PERIOD(S).................................................................................................................................. 16

**SECTION II – PROPERTY DAMAGE**........................................................................................... **17**

**A.** COVERED PROPERTY..................................................................................................................................... 17

**B.** PROPERTY NOT COVERED........................................................................................................................... 17

**C.** EXCLUSIONS .................................................................................................................................................... 18

**D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS ........................................................................ 22

   **1.** ACCOUNTS RECEIVABLE........................................................................................................................ 22

   **2.** BRANDS AND LABELS .............................................................................................................................. 22

   **3.** CONTROL OF DAMAGED GOODS ......................................................................................................... 23

   **4.** COURSE OF CONSTRUCTION................................................................................................................ 23

   **5.** DATA, PROGRAMS OR SOFTWARE...................................................................................................... 23

   **6.** DEBRIS REMOVAL .................................................................................................................................... 24

   **7.** DECONTAMINATION COSTS................................................................................................................... 24

   **8.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS ...................................................................... 25

   **9.** DEFERRED PAYMENTS............................................................................................................................ 25

   **10.** DEMOLITION AND INCREASED COST OF CONSTRUCTION ........................................................... 25

   **11.** ERRORS AND OMISSIONS...................................................................................................................... 26

   **12.** EXPEDITING EXPENSE............................................................................................................................ 26

   **13.** FINE ARTS.................................................................................................................................................... 27

| | | |
|---|---|---|
| **14.** | FIRE DEPARTMENT SERVICE CHARGES | 27 |
| **15.** | LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL | 27 |
| **16.** | MISCELLANEOUS **PERSONAL PROPERTY** | 27 |
| **17.** | NEWLY ACQUIRED **LOCATIONS** | 28 |
| **18.** | OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE | 28 |
| **19.** | PROFESSIONAL FEES | 28 |
| **20.** | PROTECTION AND PRESERVATION OF PROPERTY | 29 |
| **21.** | RADIOACTIVE CONTAMINATION | 29 |
| **22.** | TAX LIABILITY | 29 |
| **23.** | TEMPORARY REMOVAL OF PROPERTY | 30 |
| **24.** | TRANSIT | 30 |
| **25.** | **VALUABLE PAPERS AND RECORDS** | 32 |

**SECTION III – TIME ELEMENT** ........ 33

| | | |
|---|---|---|
| **A.** | LOSS INSURED | 33 |
| **B.** | TIME ELEMENT COVERAGES | 33 |
| **1.** | *GROSS EARNINGS* | 33 |
| **2.** | EXTRA EXPENSE | 35 |
| **3.** | LEASEHOLD INTEREST | 35 |
| **4.** | RENTAL INSURANCE | 35 |
| **C.** | PERIOD OF LIABILITY | 36 |
| **D.** | TIME ELEMENT EXCLUSIONS | 37 |
| **E.** | TIME ELEMENT COVERAGES AND LIMITATIONS | 38 |
| **1.** | *ATTRACTION PROPERTY* | 38 |
| **2.** | CIVIL OR MILITARY AUTHORITY | 38 |
| **3.** | COMPUTER SYSTEMS NON PHYSICAL DAMAGE | 39 |
| **4.** | CONTINGENT TIME ELEMENT | 39 |
| **5.** | CRISIS MANAGEMENT | 40 |
| **6.** | DELAY IN STARTUP | 40 |
| **7.** | EXTENDED PERIOD OF LIABILITY | 40 |
| **8.** | INGRESS / EGRESS | 41 |
| **9.** | OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | 41 |
| **10.** | ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | 42 |
| **11.** | PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT | 42 |
| **12.** | RELATED **LOCATIONS** | 42 |
| **13.** | RESEARCH AND DEVELOPMENT | 42 |
| **14.** | SOFT COSTS | 42 |

**SECTION IV – DESCRIBED LOSSES** ......... 44

**A.** *EARTH MOVEMENT*...................................................................................................................................... 44

**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE....................................................................................................... 44

**C.** *EQUIPMENT BREAKDOWN*............................................................................................................................ 44

**D.** *FLOOD*........................................................................................................................................................ 47

**E.** *NAMED STORM* ........................................................................................................................................... 47

SECTION V - GENERAL POLICY CONDITIONS ................................................................. 48

**A.** ASSIGNMENT ............................................................................................................................................... 48

**B.** CANCELLATION............................................................................................................................................. 48

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD............................................................................................ 48

**D.** CONFORMITY TO STATUTES .......................................................................................................................... 49

**E.** INSPECTION ................................................................................................................................................. 49

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS .......................................................... 49

**G.** LIBERALIZATION............................................................................................................................................ 50

**H.** NO REDUCTION BY LOSS............................................................................................................................... 50

**I.** NONRENEWAL................................................................................................................................................ 50

**J.** OTHER INSURANCE ....................................................................................................................................... 50

**K.** PAIR, SET OR PARTS .................................................................................................................................... 51

**L.** POLICY MODIFICATION ................................................................................................................................... 51

**M.** TITLES......................................................................................................................................................... 51

**N.** TRANSFER OF RIGHTS AND DUTIES ............................................................................................................... 51

**O.** VACANCY..................................................................................................................................................... 51

**P.** VALUATION................................................................................................................................................... 52

SECTION VI – LOSS CONDITIONS ................................................................................... 55

**A.** ABANDONMENT OF PROPERTY ....................................................................................................................... 55

**B.** APPRAISAL .................................................................................................................................................. 55

**C.** COLLECTION FROM OTHERS .......................................................................................................................... 55

**D.** COMPANY OPTION ........................................................................................................................................ 55

**E.** DUTIES AFTER A LOSS .................................................................................................................................. 55

**F.** LOSS ADJUSTMENT / PAYABLE....................................................................................................................... 56

**G.** PAYMENT OF LOSS....................................................................................................................................... 57

**H.** SUBROGATION.............................................................................................................................................. 57

**I.** SUIT AGAINST THE COMPANY ........................................................................................................................ 57

SECTION VII – DEFINITIONS............................................................................................. 58

APPENDIX A - SCHEDULE OF COVERED LOCATIONS ...................................................... 61

APPENDIX B – NEW MADRID EARTH MOVEMENT ZONES ................................................ 62

APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE...................................... 63

APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS
AND TERRITORIES............................................................................................................. 64

APPENDIX E - *FLOOD* HAZARD **LOCATIONS** ...................................................................... 67

FORMS AND ENDORSEMENTS........................................................................................ 68

Disclosure Pursuant to Terrorism Risk Insurance Act........................................................................... 68

Exclusion of Certified Acts of Terrorism ............................................................................................... 68

Emergency Evacuation Expense........................................................................................................... 68

Communicable Disease Decontamination Cost Endorsement .............................................................. 68

Removal of Vacancy Condition ............................................................................................................. 68

Research Animals Endorsement............................................................................................................ 68

Schedule of Lenders or Mortgagees ..................................................................................................... 68

STATE AMENDATORY ENDORSEMENTS........................................................................ 69

Washington Changes ............................................................................................................................ 69

Washington Changes - Cancellation and Nonrenewal.......................................................................... 69

# SECTION I - DECLARATIONS

## A. FIRST NAMED INSURED AND MAILING ADDRESS

University of WA Medical Center and any subsidiary, and the interest of University of WA Medical Center in any partnership or joint venture in which U of WA Medical Center has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as **you** or **yours**, including legal representatives.

When any Insured described above is a party to a written contract or agreement on file that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to **covered property** which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any TIME ELEMENT Coverage to the legal entity, except as provided under LEASEHOLD INTEREST of this Policy or as specifically endorsed to the Policy.

Compliance and Risk Services
Box 354964; 4300 Roosevelt Way NE
Seattle, WA 98105-4964

## B. POLICY PERIOD

The term of this Policy is from July 1, 2019 to July 1, 2020 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

## C. INSURING AGREEMENT

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

## D. PREMIUM

This Policy is issued in consideration of the following initial premium inclusive of any premium shown on endorsements which are part of the Policy at the time of issue.

| | |
|---|---|
| Policy Premium (Excluding premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended): | $876,736 |
| Policy Premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended: | Rejected |
| • Policy Premium for Fire Following Acts of **Terrorism** (in States where required) | $36,663 |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges summary shown below) | $0 |
| Total Policy Premium/Other Charges for Above Policy Period: | $913,399 |
| Policy Premium will be billed Annual. | |

| The Deposit Premium/Other Charges is: | $913,399 |
|---|---|

## E. PREMIUM PAYABLE

The First Named Insured pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of the First Named Insured.

Premiums will be paid in the currency designated in paragraph **I.** CURRENCY.

© 2016 Liberty Mutual Insurance

**F.** COVERED LOCATION(S)

This Policy applies at a **location(s)**:

**1.** Listed on a SCHEDULE on file with **us**;

**2.** Listed on the SCHEDULE attached to this Policy;

**3.** Covered as a **Miscellaneous Unnamed Location**; or

**4.** Covered under the terms and conditions of the NEWLY ACQUIRED **LOCATIONS** Coverage or ERRORS AND OMISSIONS Coverage.

**G.** TERRITORY

Coverage under this Policy applies to **covered property** within the continental United States of America, Hawaii and Puerto Rico.

**H.** JURISDICTION

The validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York.

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**I.** CURRENCY

All amounts, including deductibles and LIMITS OF LIABILITY, indicated in this Policy are in U.S. Dollars unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

**J.** DEFINED WORDS

Words in bold face type have special meanings in this Policy and are defined in the DEFINITIONS section of this Policy. These definitions apply to this entire Policy and to any endorsements to it. Definitions that apply to individual sections or paragraphs are italicized and defined in the applicable sections or paragraphs.

**K.** LIMITS OF LIABILITY

When a POLICY LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, **our** maximum LIMIT OF LIABILITY in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the stated POLICY LIMIT OF LIABILITY.

1. When a PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, it will apply to all coverages provided throughout this Policy, unless a LIMIT OF LIABILITY or "NCP" (No Coverage Provided) is indicated.

   **a.** When a LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, such limit will be the maximum amount payable for such loss or damage and cannot be combined with any other LIMIT OF LIABILITY.

   **b.** If "NCP" is specified in the LIMITS OF LIABILITY, there is no coverage provided in this Policy.

2. LIMITS OF LIABILITY in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

   **a.** When a LIMIT OF LIABILITY that applies in the aggregate during any Policy year is shown, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY during any Policy year.

   **b.** When a LIMIT OF LIABILITY applies to a **location(s)**, specified property, DESCRIBED LOSSES or a specific coverage, the smallest applicable LIMIT OF LIABILITY will be the maximum amount payable.

   **c.** Should an **occurrence** result in liability payable under more than one Policy issued to **you** by **us**, or by **our** subsidiaries, partners, or associated insurance companies, the maximum amount payable in the aggregate under all such policies will be the applicable LIMIT(S) OF LIABILITY indicated in this Policy.

   **d.** When a LIMIT OF LIABILITY applies to TIME ELEMENT only, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY per **occurrence**.

3. LIMITS OF LIABILITY specified below or elsewhere in this Policy do not increase and are part of and not in addition to the POLICY LIMIT OF LIABILITY or the PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY.

4. LIMITS OF LIABILITY apply per **occurrence** unless otherwise specified, including time and distance limits.

 © 2016 Liberty Mutual Insurance

## LIMITS OF LIABILITY TABLE – PART ONE

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| POLICY LIMIT OF LIABILITY | $600,000,000 |
| ACCOUNTS RECEIVABLE | $10,000,000 |
| *ATTRACTION PROPERTY* | 1 statute miles from a covered **location** 30 consecutive days, not to exceed $500,000 |
| BRANDS AND LABELS | $1,000,000 |
| CIVIL OR MILITARY AUTHORITY | 1 statute miles from a covered **location** 90 consecutive days, not to exceed $10,000,000 |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | $2,500,000 |
| CONTINGENT TIME ELEMENT | |
| • *Direct Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** | $10,000,000 |
| • *Indirect Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** | $10,000,000 |
| CONTROL OF DAMAGED GOODS | $500,000 |
| COURSE OF CONSTRUCTION | $25,000,000 |
| CRISIS MANAGEMENT | 30 consecutive days, not to exceed $1,000,000 |
| DEBRIS REMOVAL | $25,000,000 |
| DECONTAMINATION COSTS | $2,500,000 |
| DEFERRED PAYMENTS | $2,500,000 |
| DELAY IN STARTUP | $1,000,000 |

| DEMOLITION AND INCREASED COST OF CONSTRUCTION | $50,000,000 |
| ERRORS AND OMISSIONS | $15,000,000 |
| EXPEDITING EXPENSE | $25,000,000 |
| EXTENDED PERIOD OF LIABILITY | 365 consecutive days |
| EXTRA EXPENSE | $10,000,000 |
| **FINE ARTS** | $2,500,000 |
| FIRE DEPARTMENT SERVICE CHARGES | $5,000,000 |
| IMPOUNDED WATER | 30 consecutive days, not to exceed $1,000,000 |
| INGRESS / EGRESS | 1 statute miles from a covered **location** 90 consecutive days, not to exceed $10,000,000 |
| LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL in the **annual aggregate** | $1,000,000 |
| LEASEHOLD INTEREST | $10,000,000 |
| MISCELLANEOUS **PERSONAL PROPERTY** | $10,000,000 |
| **Miscellaneous Unnamed Locations** | $10,000,000 |
| Mold, Mildew or Fungus directly resulting from a **Covered Loss** | $10,000,000 |
| NEWLY ACQUIRED **LOCATIONS** | 90 consecutive days, not to exceed $10,000,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE and OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | $15,000,000 |
| **Ordinary Payroll** | 180 consecutive days |
| PROFESSIONAL FEES | $500,000 |

| | |
|---|---|
| RADIOACTIVE **CONTAMINATION** | $5,000,000 |
| RENTAL INSURANCE | $1,000,000 |
| RESEARCH AND DEVELOPMENT | $5,000,000 |
| *SOFT COSTS* | $1,000,000 |
| TAX LIABILITY | $1,000,000 |
| TRANSIT | $2,500,000 |
| **VALUABLE PAPERS AND RECORDS** | $25,000,000 |

## LIMITS OF LIABILITY TABLE – PART TWO

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| *EARTH MOVEMENT* in the **annual aggregate** | $25,000,000 |
| except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *EARTH MOVEMENT* **annual aggregate** limit: | |
| • **Covered property** situated in: | |
| Pacific NW Earth Movement Zone | $25,000,000 |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $600,000,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE | $100,000,000 |
| TIME ELEMENT | $100,000,000 |
| except: | |
| The following limits are part of and not in addition to the EQUIPMENT BREAKDOWN limits specified above: | |
| • Ammonia **Contamination** | $1,000,000 |
| • CONTINGENT TIME ELEMENT | $1,000,000 |

© 2016 Liberty Mutual Insurance

| | |
|---|---|
| • Spoilage Damage | $5,000,000 |
| FLOOD in the annual aggregate<br><br>except the following limits apply per occurrence and in the annual aggregate, and are part of and not in addition to the FLOOD annual aggregate limit:<br><br>• Covered property at locations situated in:<br><br>Flood Hazard - High | $50,000,000<br><br><br><br><br><br><br><br>$2,500,000 |
| NAMED STORM | Included |

## ENDORSEMENT LIMITS OF LIABILITY

| Endorsement Number | Endorsement Name | LIMITS OF LIABILITY |
|---|---|---|
| CNP 90 06 01 17 | Disclosure Pursuant to Terrorism Risk Insurance Act | Rejected |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism | |
| PY 03 11 01 17 | Research Animals Endt | $5,000,000, no more than<br>$5,000 per animal |

## L. CANCELLATION TIME SPECIFICATIONS

| | |
|---|---|
| Cancellation for Nonpayment of Premium | Ten (10) days |
| Cancellation for All Reasons Other Than Nonpayment of Premium | 30 days |

## M. DEDUCTIBLES

Subject to the Deductible General Provisions stated below, we will not pay unless a covered loss, including any insured TIME ELEMENT loss, exceeds the deductible(s) specified below. We will then pay the amount of covered loss in excess of the deductible, up to the applicable LIMIT OF LIABILITY.

### Deductible General Provisions

We will be liable only if you sustain a covered loss, including any insured TIME ELEMENT loss, in a single occurrence greater than the applicable deductible specified. When this Policy insures more than one (1) location, the deductible(s) will apply against the total loss covered by this Policy in an occurrence unless otherwise stated.

1. Unless otherwise stated, if two or more deductibles apply to an occurrence, the total deductible will not exceed the largest applicable deductible, except as follows:

    **a.** When a separate PROPERTY DAMAGE and TIME ELEMENT deductible apply, each will be applied separately.

    **b.** If there are multiple **locations** involved in an **occurrence** where two or more deductibles apply to a **location** in an **occurrence**, the largest deductible applying to each **location** will be applied separately to each such **location**, regardless of the number of **locations** involved in the **occurrence**.

    **c.** Unless specified otherwise, if deductibles are specified for a **location**, the largest deductible applicable will be applied to that **location** regardless of the number of **locations** involved in the **occurrence**.

    **d.** Equipment Breakdown: With regard to Equipment Breakdown coverage, if one or more deductible amounts are shown below, each will be applied separately.

    **e.** The stated *EARTH MOVEMENT* deductible will be applied to *EARTH MOVEMENT* loss. The stated *FLOOD* deductible will be applied to *FLOOD* loss. The stated *NAMED STORM* deductible will be applied to *NAMED STORM* loss. Provisions **1.a.** and **1.b.** above will also be applied to each.

**2.** When a percent deductible is specified, whether separate or combined, the deductible amount will be determined as follows:

    **a.** PROPERTY DAMAGE: The percentage of the total reported values on file with **us** for the **covered property** at the corresponding **location(s)** (including sub-**locations**) where the direct physical loss or damage occurred; plus

    **b.** TIME ELEMENT: The percentage of the full TIME ELEMENT values that would have been earned in the 12-month period following the **occurrence**, had no loss occurred, by use of the facilities at the **location** where the direct physical loss or damage occurred, plus that proportion of the full TIME ELEMENT values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12-month period following the **occurrence**.

    **c.** Equipment Breakdown: The percentage of the gross amount of loss, damage or expense (prior any deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**3.** When a minimum deductible is shown, the minimum deductible is the sum of:

    **a.** The specific **location** deductible for each covered **location** where the amount of physical loss or damage exceeds the specific **location** deductible; and

    **b.** The amount of physical loss or damage for each covered **location** where the amount of physical loss or damage is less than the specific **location** deductible.

**4.** When an average daily value deductible is provided, this deductible will be determined as follows:

    **a.** The total amount of TIME ELEMENT loss applicable for the entire **location** where the direct physical loss or damage happens will be included.

    **b.** Divide the result in Paragraph **a.** by the number of days the business would have been open during the PERIOD OF LIABILITY. The result is the average daily value.

    **c.** Multiply the average daily value in Paragraph **b.** by the number of days specified in the DEDUCTIBLE TABLE below.

If more than one (1) **location** is included in the valuation of the loss, the average daily value will be the combined value of all affected **locations**.

5. When a per unit deductible is specified, the following shall be considered a separate unit of insurance:

   a. Each separate building, the contents of each separate building and **covered property** in each yard at that covered **location**.

   b. TIME ELEMENT loss as applicable, including all other **locations** where TIME ELEMENT loss ensues as provided by this Policy.

6. When a time deductible is shown, **we** will not be liable for any loss under that coverage that occurs during that specified time period immediately following the direct physical loss or damage. If a time deductible is shown in days, each day shall mean twenty four (24) consecutive hours.

7. When a deductible is shown in the Declarations for a *NAMED STORM*, the following applies:

   a. All direct physical loss or damage to **covered property** including TIME ELEMENT loss caused by or resulting from a *NAMED STORM* will be subject to the deductible obtained by calculating all of the following:

      (1) The sum of all applicable percentage deductibles calculated as described in Deductible General Provisions Item **2.** above, subject to any applicable minimums or maximums; and

      (2) Any other applicable deductible amounts.

## DEDUCTIBLE TABLE – PART ONE

| Coverage | Deductible Percentage / Amounts |
|---|---|
| Policy Deductible (except as otherwise indicated) | $500,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | $500,000 |
| TRANSIT | $500,000 |
| Fine Arts | $500,000 |

 © 2016 Liberty Mutual Insurance

## DEDUCTIBLE TABLE – PART TWO

| Coverage | Deductible Percentage / Amounts |
|---|---|
| *EARTH MOVEMENT* | 2% subject to $500,000 minimum |
| except:<br>• **Covered property** situated in: | |
| Pacific NW Earth Movement Zone | 2% subject to $500,000 minimum |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $500,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE | $500,000 |
| TIME ELEMENT | $500,000 |
| • Spoilage Damage | $500,000 |
| • Ammonia **Contamination** | $500,000 |
| *FLOOD* | $500,000 |
| except:<br>• **Covered property** at **locations** situated in: | |
| Flood Hazard - High | $500,000 Real Property<br>$500,000 Personal Property<br>$100,000 Other |
| *NAMED STORM* | $500,000 |

## **OCCURRENCE** TIME SPECIFICATIONS

| *EARTH MOVEMENT* | continuous 168 hours |
|---|---|
| *NAMED STORM* | continuous 72 hours |

 © 2016 Liberty Mutual Insurance

**N.** QUALIFYING PERIOD(S)

A *qualifying period* applies for the coverages shown in the Table below. *Qualifying period* is the period of time that must be exceeded for coverage to apply. Once the *qualifying period* has been exceeded, coverage applies from the initial event of loss.

*QUALIFYING PERIOD* TABLE

| Coverage | *QUALIFYING PERIOD* |
|---|---|
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | 24 hours |
| CRISIS MANAGEMENT | 24 hours |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | 24 hours |

# SECTION II – PROPERTY DAMAGE

## A. COVERED PROPERTY

1. **We** cover **your** insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered **location**, unless otherwise excluded:

   a. **Real Property**, including new buildings, structures and additions in the COURSE OF CONSTRUCTION.

   b. **Personal Property**, including *personal property of others*.

   *Personal property of others* are tangible things that **you** do not own, other than **real property**, that:

   (1) are sold by **you** and that **you** have agreed, prior to loss, to insure for the account of the purchaser during delivery;

   (2) **you** have agreed in writing prior to any loss or damage to provide coverage;

   (3) are in **your** care, custody or control;

   (4) **you** have an insurable interest in, or an obligation to provide coverage;

   (5) **you** are legally liable for;

   (6) are improvements and betterments consisting of fixtures, alterations, installation or additions comprising part of a building not owned by **you** and acquired or made at **your** expense which **you** cannot legally move, but only to the extent of **your** insurable interest therein; or

   (7) are **personal property** (other than vehicles) of **your** employees and officers.

2. **We** also cover the interest of contractors and subcontractors in **covered property** during construction at or within one-thousand (1,000) feet of a covered **location** to the extent of **your** legal liability for direct physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

## B. PROPERTY NOT COVERED

**We** do not cover the following types of property:

1. Aircraft, except when unfueled and manufactured by **you**;

2. Animals, standing timber including undisturbed natural wooded areas, or growing crops;

3. Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

4. Caves, caverns, mines of any type, or any property contained within them;

5. Contraband or property in the course of illegal transportation or trade;

6. Currency, money, negotiable and non-negotiable instruments, notes or securities;

7. Dams, dikes, levees, docks, wharfs, piers or bulkheads;

8. **Electronic data**, computer programs or software, except when they are stock in process, finished stock manufactured by **you**, raw materials, supplies, other merchandise not manufactured by **you** or as provided in this Policy;

9. Land and any substance in or on land except this exclusion does not apply to **land improvements**;

10. **Land improvements** at a golf course;

11. Overhead transmission and distribution systems located more than one-thousand (1,000) feet away from a covered **location**;

12. *Personal property of others* that is in the care, custody or control of **you** or **your** affiliates for which **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

13. Precious metals or precious stones, except when used in industrial or service operations;

14. Property in transit, except as otherwise provided by this Policy;

15. Property more specifically insured, except for any excess over any LIMITS OF LIABILITY of such more specific insurance;

16. Property sold by **you** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to **your** customers, except as provided by the DEFERRED PAYMENTS coverage of this Policy;

17. Spacecraft, satellites, associated launch vehicles and any property contained therein;

18. Vehicles otherwise insured for physical loss or damage;

19. Water except this exclusion does not apply to water that is contained within any enclosed tank, piping system or any other processing equipment; or

20. Watercraft, except watercraft **you** manufacture and are part of **your** inventory while being stored un-fueled and on dry land at a covered **location**.

C. EXCLUSIONS

The following exclusions apply unless otherwise stated in this Policy:

1. **We** do not cover:

   a. Indirect or remote loss or damage;

   b. Interruption of business, except to the extent provided by this Policy;

   c. Loss of market or loss of use;

   d. Loss or damage or deterioration arising from any delay;

   e. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss;

   f. Loss or damage from enforcement of any law or ordinance:

      (1) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

      (2) Requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this Policy;

**g.** Loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense; or

**h.** Loss or damage caused by or resulting from freezing, disease or drought to landscape gardening, including plants, trees and shrubs.

**2. We** do not cover physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing to the loss concurrently or in any other sequence:

**a. Terrorism,** including action in hindering or defending against an actual or expected incident of **terrorism,** but this exclusion applies only when one of the following are attributed to an incident of **terrorism:**

**(1)** The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive **contamination;** or

**(2)** Radioactive material is released, and it appears that one purpose of **terrorism** was to release such material; or

**(3)** The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(4)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

**(5)** Loss or damage to property located outside of the United States, unless there is a law in effect in the jurisdiction where the loss or damage occurs that expressly prohibits this exclusion; or

**(6)** The total of all damage to property, whether covered by this Policy or otherwise, exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, **we** will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption (TIME ELEMENT) losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any **terrorism** exclusions. Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one (1) incident, for the purpose of determining whether the threshold is exceeded.

With respect to this item **2.a.(6),** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of **terrorism,** there is no coverage in this Policy.

However, this exclusion does not apply:

**(1)** If **terrorism** results in fire, in which case **we** cover the direct physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage occurs that expressly prohibits the exclusion of fire losses resulting from **terrorism.** This exception is subject to all applicable Policy provisions including the LIMIT OF LIABILITY on the affected property. Such coverage for ensuing loss applies only to direct loss or damage by fire to **covered property.** This coverage does not apply to insurance provided under any TIME ELEMENT coverages, or to fire legal liability coverage; or

**(2)** While the United States **Terrorism** Risk Insurance Act (TRIA), as amended, is in effect:

    **(a)** To loss or damage caused by a "Certified Act of **Terrorism**" provided that **you** elected coverage for such, and only to the extent provided by the terms and conditions of the applicable CERTIFIED ACTS OF **TERRORISM** AND DISCLOSURE PURSUANT TO **TERRORISM** RISK INSURANCE ACT endorsement; or

    **(b)** To loss or damage caused by **terrorism** that would have been certified as an "act of **terrorism**", but was not certified solely because the total of all property and casualty insurance losses resulting from the act failed to exceed the $5,000,000 "certified act of **terrorism**" threshold specified under TRIA.

**b.** Nuclear reaction or nuclear radiation or radioactive **contamination**. However, this exclusion does not apply if:

    **(1)** The RADIOACTIVE **CONTAMINATION** PROPERTY DAMAGE COVERAGE AND LIMITATION applies but only to the extent provided; or

    **(2)** Fire directly results from the nuclear reaction, nuclear radiation, or radioactive **contamination**, in which case **we** cover the physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage happens that expressly prohibits the exclusion of fire losses resulting from nuclear reaction, radiation or **contamination**.

**c.** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

    **(1)** Government or sovereign power (de jure or de facto);

    **(2)** Military, naval or air force; or

    **(3)** Agent or authority of any party specified in **(1)** or **(2)** above.

**d.** Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**e.** The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, biological, viral, radioactive or similar agents or matter, whether in time of peace or war and regardless of who commits the act.

**f.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**g.** Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

**h.** Risks of contraband, or illegal transportation or trade.

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

    **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

    **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

 © 2016 Liberty Mutual Insurance

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

   **j.** Lack of the following services:

      **(1)** Incoming electricity, fuel, water, gas, steam or refrigerant;

      **(2)** Outgoing sewerage; or

      **(3)** Incoming or outgoing voice, data or video,

      all when caused by an event away from the covered **location** except as provided in the ON/OFF PREMISES INTERRUPTION OF SERVICES coverages of this Policy. But, if the lack of such a service causes physical loss or damage of the type insured by this Policy at a covered **location**, then only that resulting damage is covered.

**3. We** do not cover the following, but, if direct physical loss or damage not excluded by this Policy results, then **we** cover that resulting damage only:

   **a.** Faulty workmanship, material, construction or design.

   **b.** Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

   **c.** Deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

   **d.** Settling, cracking, shrinking, bulging, or expansion of:

      **(1)** Foundations (including any pedestal, pad, platform or other property supporting machinery)

      **(2)** Floors

      **(3)** Pavements

      **(4)** Walls, including retaining walls

      **(5)** Ceilings

      **(6)** Roofs

   **e.** Extremes or changes in temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

   **f.** Cumulative effects of smog, smoke, vapor, liquid and dust.

   **g.** Insect, animal or vermin damage.

   **h.** Loss or damage to the interior portion of buildings under construction caused by rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

**4. We** do not cover the following unless directly resulting from a **covered loss**:

   **a. Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy.

   **b.** Shrinkage.

 © 2016 Liberty Mutual Insurance

    **c.** Changes in color, flavor, texture or finish.

    **d.** Remediation, change, correction, repair or assessment of any date or time recognition in any **electronic data processing equipment** or media.

    **e.** Failure of **electronic data processing equipment** or media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times.

## D. PROPERTY DAMAGE COVERAGES AND LIMITATIONS

**We** provide the following PROPERTY DAMAGE COVERAGES AND LIMITATIONS for a **covered loss** as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

### 1. ACCOUNTS RECEIVABLE

    **a.** **We** cover the following resulting from a **covered loss** to accounts receivable records located while anywhere within the Policy territory, including while in transit:

        **(1)** Any shortage in the collection of accounts receivable.

        **(2)** The interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum. Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable.

        **(3)** The reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

        **(4)** Any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

    **b.** Accounts receivable records include records stored as **electronic data**. In the event of loss, **you** will:

        **(1)** Use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

        **(2)** Reduce the loss by use of any property or service owned or controlled by **you** or obtainable from other sources.

        **(3)** Reconstruct, if possible, accounts receivable records so that no shortage is sustained.

    **c.** The settlement of loss will be made within ninety (90) days from the date of the **covered loss**. All amounts recovered by **you** on outstanding accounts receivable on the date of loss will belong and be paid to **us** up to the amount of loss paid by **us**. All recoveries exceeding the amount paid will belong to **you**.

    **d.** **We** do not cover shortage resulting from:

        **(1)** Bookkeeping, accounting or billing errors or omissions; or
        **(2)** Alteration, falsification, manipulation; or

        **(3)** Concealment, destruction or disposal, of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

### 2. BRANDS AND LABELS

In the event of a **covered loss** to **your** branded or labeled merchandise, and **we** elect to take all or any part of that property, **you** may at **our** expense:

**a.** Stamp "salvage" on the property or its containers; or

**b.** Remove or obliterate the brands or labels,

if doing so will not damage the property.

**You** must re-label such property or its containers to be in compliance with any applicable law.

**3.** CONTROL OF DAMAGED GOODS

**We** grant control to **you** of physically damaged **covered property** consisting of finished goods manufactured by or for **you** as follows:

**a.** **You** will have full rights to the possession and control of damaged property in the event of physical damage to **your covered property** provided proper testing is done to show which property is physically damaged.

**b.** Using reasonable judgment, **you** will decide if the physically damaged **covered property** can be reprocessed or sold.

**c.** Property **you** determine to be unfit for reprocessing or selling will not be sold or disposed of except by **you**, or with **your** consent.

Any salvage proceeds received will reduce the recoverable loss.

**4.** COURSE OF CONSTRUCTION

**a.** **We** cover direct physical loss or damage at a covered **location** to buildings or structures that **you** begin to construct during the Policy period.

**b.** **We** also cover materials, supplies, machinery, equipment and fixtures:

**(1)** At a covered **location** and intended for installation in the new construction;

**(2)** After such property has been delivered to **you** or **your** contractor, and while such property is located offsite at a storage **location**; or

**(3)** After such property has been delivered to **you** or **your** contractor, and while such property is in transit from a storage **location** to another storage **location** or to a covered **location.**

**c.** This coverage only applies to the construction of **covered property you** intend to own or occupy once constructed.

**d.** This coverage does not apply to any property owned or rented by any contractor or subcontractor.

**5.** DATA, PROGRAMS OR SOFTWARE

**a.** **We** cover direct physical loss or damage to **your electronic data**, computer programs or software, including direct physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's territory, including:

**(1)** The cost of the following reasonable and necessary actions taken by **you** provided such actions are taken due to actual insured physical loss or damage to **electronic data**, computer programs or software:

    **(a)** Actions to temporarily protect and preserve insured **electronic data**, computer programs or software.

    **(b)** Actions taken for the temporary repair of insured physical loss or damage to **electronic data**, computer programs or software.

    **(c)** Actions taken to expedite the permanent repair or replacement of such damaged property.

  **(2) Your** reasonable and necessary cost to temporarily protect or preserve covered **electronic data**, computer programs or software against immediately impending direct physical loss or damage to **electronic data**, computer programs or software. In the event that there is no direct physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such direct physical loss or damage.

**b.** With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the *qualifying period* specified in the *Qualifying Period* Table in the Declarations is exceeded.

**c.** Any amounts recoverable under this PROPERTY DAMAGE COVERAGE AND LIMITATION are excluded from coverage elsewhere in this Policy.

**d.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes loss or damage to **electronic data**, computer programs or software when they are stock in process, finished stock manufactured by **you**, raw materials, supplies or other merchandise not manufactured by **you**.

**e.** With respect to this PROPERTY DAMAGE COVERAGE AND LIMITATION, the following additional exclusions apply:

  **(1)** Errors or omissions in processing or copying; and

  **(2)** Loss or damage to **electronic data**, computer programs or software from errors or omissions in programming or machine instructions.

6. DEBRIS REMOVAL

**a. We** cover **your** reasonable and necessary costs to remove debris from a covered **location** that remains as a direct result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION covers the costs of removal of contaminated **covered property** or the **contaminant** in or on **covered property** only if the **contamination**, due to the actual presence of **contaminant(s)**, results from a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover the costs of removal of:

  **(1)** Contaminated uninsured property; or

  **(2)** The **contaminant** in or on uninsured property,

  whether or not the **contamination** results from a **covered loss**.

7. DECONTAMINATION COSTS

**a. We** cover **your** decontamination costs directly resulting from a **covered loss** at a covered **location** subject to the following conditions:

  **(1)** These decontamination costs must be a direct result of enforcement of the law or ordinance that

is in force at the time of the loss regulating decontamination; and

(2) The amount **we** cover includes the increased cost to remove **your** contaminated **covered property** to comply with the law or ordinance.

b. **We** do not cover costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** resulted from a **covered loss**.

8. DEFENSE FOR PERSONAL PROPERTY OF OTHERS

a. **We** cover the cost to defend that part of any suit against **you** alleging direct physical loss or damage of the type insured by this Policy to personal property of others of the type insured by this Policy, in **your** custody, and while at a covered **location**. **We** may without prejudice undertake any investigation, negotiation or settlement of any such claim or suit as **we** deem appropriate.

b. **We** do not cover the cost to defend any suit against **you** when **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

9. DEFERRED PAYMENTS

a. **We** cover direct physical loss or damage to **personal property** of the type insured by this Policy sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property. In the event of loss to property sold under deferred payment plans, **you** will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

b. **We** do not cover loss:

(1) Pertaining to products recalled including **your** costs to recall, test or to advertise such recall.

(2) From theft or conversion by the buyer of the property after the buyer has taken possession of such property.

(3) To the extent the buyer continues payments.

(4) Not within this Policy's territory.

10. DEMOLITION AND INCREASED COST OF CONSTRUCTION

a. **We** cover **your** reasonable and necessary costs that are described in Item **b.** below, actually incurred to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of **covered property** consisting of buildings, structures, machinery and equipment at a covered **location**, provided:

(1) Such law or ordinance is in force on the date of the **covered loss**;

(2) Its enforcement is a direct result of a **covered loss**; and

(3) The buildings, structures, machinery and equipment were in compliance with such law or ordinance, regardless of any lack of enforcement, prior to the **covered loss**.

b. This PROPERTY DAMAGE COVERAGE AND LIMITATION, as respects the property insured in Item **a.** above, covers:

(1) The cost incurred to demolish, repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

**(2)** The cost incurred:

  **(a)** To demolish the physically undamaged portion of such property insured; and

  **(b)** To rebuild it with materials and in a manner to satisfy such law or ordinance,

  when the demolition of the physically undamaged portion of such property is required to satisfy such law or ordinance, as a result of a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes any costs incurred as a result of the enforcement of any law or ordinance regulating pollution.

**d.** The amount **we** cover for this PROPERTY DAMAGE COVERAGE AND LIMITATION at each covered **location** in any one (1) **occurrence** will not exceed the actual cost incurred in demolishing the physically damaged and undamaged portions of the property covered in item **a.** above plus:

  **(1)** If rebuilt on the same site, the actual cost incurred in rebuilding there; or

  **(2)** If rebuilt on another site, the lesser of:

    **(a)** The actual cost incurred in rebuilding on the other site, excluding the cost of land; or

    **(b)** The cost that would have been incurred to rebuild on the same site.

## 11. ERRORS AND OMISSIONS

**a.** If direct physical loss or damage is not covered under this Policy solely because of an error or unintentional omission made by **you**:

  **(1)** In the description of where **covered property** is physically located; or

  **(2)** To include any **location**:

    **(a)** Owned, rented or leased by **you** on the effective date of this Policy; or

    **(b)** Purchased, rented or leased by **you** during the term of the Policy; or

  **(3)** That results in termination of the coverage provided by this Policy, except for cancellation due to nonpayment of premium,

  **we** cover the amount **we** would have paid, including any TIME ELEMENT loss, had the error or omission not been made.

**b.** This coverage does not apply to the failure to report values, or the reporting of inaccurate values of **covered property**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply if coverage is provided elsewhere in this Policy.

**d.** **You** must report such errors or unintentional omissions to **us** in writing as soon as they are discovered.

## 12. EXPEDITING EXPENSE

**a.** **We** cover **your** reasonable and necessary costs:

  **(1)** For the temporary repair of **covered property** from a **covered loss**; and

    **(2)** To expedite the permanent repair or replacement of such damaged property.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

**13.** FINE ARTS

**a.** **We** cover direct physical loss or damage to **your fine arts** while anywhere within this Policy's territory, including while in transit.

**b.** The following additional exclusions apply:

**We** do not cover:

    **(1)** Loss or damage sustained from any repair, restoration, or retouching process;

    **(2)** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, *EARTH MOVEMENT*, *FLOOD*, explosion, vandalism, collision, derailment or overturn of conveyance.

**14.** FIRE DEPARTMENT SERVICE CHARGES

**We** cover the reasonable and necessary:

**a.** Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the **covered property**.

**b.** Costs incurred by **you** to restore and recharge fire protection systems following a **covered loss.**

**15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL

**a.** For uninsured property at a covered **location** consisting of land, water, or any other substance in or on land or water at a covered **location, we** cover **your** reasonable and necessary cost for the cleanup, removal and disposal of the actual presence of **contaminant(s)** from that property if the release, discharge or dispersal of such **contaminant(s)** is a result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

    **(1)** At any **location** insured for **personal property** only;

    **(2)** At any **location**, or to any property, covered under the NEWLY ACQUIRED **LOCATIONS** or ERRORS AND OMISSIONS coverages provided by this Policy or at a **Miscellaneous Unnamed Location**; or

    **(3)** If **you** fail to give **us** written notice within one hundred eighty (180) days after the loss.

**16.** MISCELLANEOUS **PERSONAL PROPERTY**

**a.** **We** cover direct physical loss or damage, that occurs away from a covered **location** but within the Policy's territory, to **personal property** of the type covered under this Policy, which is:

    **(1)** Owned by **you**; or

    **(2)** Owned by others and in **your** care, custody and control, but only to the extent **you** are obligated to insure it for direct physical loss or damage under the type of coverage provided under this Policy.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes coverage that is provided

 © 2016 Liberty Mutual Insurance

elsewhere in this Policy.

**17.** NEWLY ACQUIRED **LOCATIONS**

**a.** **We** cover physical loss or damage to property of the type insured from a loss of the type insured at any **location you** purchase, lease or rent after the inception date of this Policy.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION applies:

**(1)** From the date of purchase, lease or rental,

**(2)** Until the first of the following occurs:

**(a)** The **location** is bound by **us**;

**(b)** Agreement is reached that the **location** will not be insured under this Policy; or

**(c)** The time limit specified in the LIMITS OF LIABILITY Table in the Declarations has been reached. The time limit begins on the date of purchase, lease or rental.

**18.** OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE

**a.** **We** cover physical loss or damage to **covered property** at a covered **location** when such physical loss or damage results from:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

by reason of a loss of the type insured by this Policy at the facilities of the supplier of such service located within this Policy's territory, that immediately prevents in whole or in part the delivery of such usable service.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the interruption exceeds the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** For purposes of this PROPERTY DAMAGE COVERAGE AND LIMITATION, the *period of service interruption* is the period starting with the time when an interruption of specified services occurs; and ending when the service could be wholly restored.

**d.** Additional General Provisions:

**(1)** **You** will immediately notify the suppliers of services of any interruption of any such services.

**(2)** **We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

**e.** **We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**f.** Exclusion **C.3.e.** does not apply to this PROPERTY DAMAGE COVERAGE AND LIMITATION.

**19.** PROFESSIONAL FEES

 © 2016 Liberty Mutual Insurance

**a.** **We** cover **your** reasonable costs for **your** employees or auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

**b.** Professional fees covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION, however, do not include:

    **(1)** Any fees or expenses of attorneys;

    **(2)** Any fees or expenses of public adjusters, loss appraisers or any of their subsidiaries or associated entities;

    **(3)** Fees based on a contingency; or

    **(4)** Fees of loss consultants who provide consultation on coverage or negotiate claims.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible that applies to the loss.

**20.** PROTECTION AND PRESERVATION OF PROPERTY

**a.** **We** cover **your** reasonable and necessary costs to temporarily protect or preserve **covered property** provided such actions are necessary due to actual, or to prevent immediately impending threat of, physical loss or damage of the type covered by this Policy to such **covered property**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the physical loss or damage happened.

**21.** RADIOACTIVE CONTAMINATION

**a.** **We** cover radioactive **contamination** to property of the type insured by this Policy from a **covered loss**.

Radioactive **contamination** is:

    **(1)** Sudden and accidental radioactive **contamination**; or

    **(2)** Resultant radiation damage to **covered property**,

provided that such radioactive **contamination** arises out of radioactive material at a covered **location** and is used as part of **your** business activities.

**b.** **We** do not cover radioactive **contamination** if:

    **(1)** The covered **location** contains:

        **(a)** A nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or

        **(b)** Any new or used nuclear fuel intended for or used in such a nuclear reactor.

    **(2)** The **contamination** arises from radioactive material located away from a covered **location**.

**22.** TAX LIABILITY

**We** cover **your** increase in tax liability from a **covered loss** at a covered **location** if the tax treatment of:

**a.** The profit portion of a loss payment involving finished stock manufactured by **you**; and/or

**b.** The profit portion of a TIME ELEMENT loss payment;

is greater than the tax treatment of profits that would have been incurred had no loss happened.

23. TEMPORARY REMOVAL OF PROPERTY

a. When **covered property** is removed from a covered **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, **we** cover such property:

    (1) While at the premises to which such **covered property** has been moved; and

    (2) For direct physical loss or damage of the type insured by this Policy at the covered **location** from which such **covered property** was removed.

b. This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

    (1) To **covered property** removed for normal storage, processing or preparation for sale or delivery; or

    (2) If coverage is provided elsewhere in this Policy or by any other insurance policy.

24. TRANSIT

a. **We** cover **personal property** not excluded elsewhere in this Policy while it is in transit within the Policy's territory:

    (1) Owned by **you**.

    (2) Shipped to customers under Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. **Your** contingent interest is admitted.

    (3) Of others in **your** actual or constructive custody to the extent of **your** interest or legal liability.

    (4) Of others sold by **you** and **you** agreed prior to the loss to insure the **personal property** during course of delivery including:

        (a) When shipped by **your** contract service provider or by **your** contract manufacturer to **you** or to **your** customer; or

        (b) When shipped by **your** customer to **you** or to **your** contract service provider or to **your** contract manufacturer.

b. This PROPERTY DAMAGE COVERAGE AND LIMITATION starts from the time the property leaves the original point of shipment for transit, and continues while in the due course of transit until delivered, subject to the following conditions:

    (1) Coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

    (2) If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

c. **We** also cover:

    (1) General average and salvage charges on shipments covered while waterborne; and

    (2) Direct physical loss or damage caused by or resulting from:

    **(a)** Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

    **(b)** Improper parties having gained possession of property through fraud or deceit.

**d.** Additional General Provisions:

  **(1)** This PROPERTY DAMAGE COVERAGE AND LIMITATION will not inure directly or indirectly to the benefit of any carrier or bailee.

  **(2) You** have permission, without prejudicing this insurance, to accept:

    **(a)** Ordinary bills of lading used by carriers;

    **(b)** Released bills of lading;

    **(c)** Undervalued bills of lading; and

    **(d)** Shipping or messenger receipts.

  **(3) You** may waive subrogation against railroads under side track agreements.

  **(4)** Except as otherwise stated, **you** will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

**e.** As respects this PROPERTY DAMAGE COVERAGE AND LIMITATION:

  **(1)** The following additional exclusions apply:

    This Policy excludes:

    **(a)** Samples in the custody of salespeople or selling agents.

    **(b)** Property insured under import or export ocean marine insurance.

    **(c)** Waterborne shipments, unless:

      **(i)** By inland water; or

      **(ii)** By roll-on/roll-off ferries; or

      **(iii)** By coastal shipments.

    **(d)** Airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

    **(e)** Property of others, including **your** legal liability for it, hauled on vehicles owned, leased or operated by **you** when acting as a common or contract carrier.

    **(f)** Any transporting vehicle

    **(g)** Property shipped between continents except by land or air within the Policy territory.

**f.** **We** will value property covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION as follows:

 © 2016 Liberty Mutual Insurance

(1) Property shipped to or for **your** account will be valued at actual invoice to **you**. Included in the value are accrued costs and charges legally due. Charges may include **your** commission as selling agent.

(2) Property sold by **you** and shipped to or for the purchaser's account will be valued at **your** selling invoice amount. Prepaid or advanced freight costs are included.

(3) Property not under invoice will be valued:

    (a) For **your** property, according to the valuation provisions of this Policy applying at the place from which the property is being transported; or

    (b) For other property, at the **actual cash value** at the destination point on the date of loss, less any charges saved which would have become due and payable upon arrival at destination.

## 25. VALUABLE PAPERS AND RECORDS

a. **We** cover physical loss or damage to **your valuable papers and records** from a **covered loss** at a covered **location**. **We** cover the value blank, plus the cost of copying from backup or from originals of a previous generation, and **your** reasonable and necessary costs to research, replace or restore the information lost or damaged thereon, except for **electronic data** and software. For **electronic data** and software, **we** cover the value of the blank media, and the cost of reproducing the **electronic data** and software from duplicates or originals of the previous generation of the data.

b. This coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

 © 2016 Liberty Mutual Insurance

# SECTION III – TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS:

**A.** Is subject to and part of the applicable LIMIT OF LIABILITY that applies to **your** direct physical loss or damage but in no event for more than any LIMIT OF LIABILITY that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGES AND LIMITATIONS; and

**B.** Will not increase the POLICY LIMIT OF LIABILITY and is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

## A. LOSS INSURED

1. **We** cover **your** actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy:

    **a.** To property described elsewhere in this Policy and not otherwise excluded by this Policy,

    **b.** Used by **you**, or by others with whom **you** have a contract,

    **c.** At a covered **location** or while in transit as provided by this Policy,

    **d.** During the applicable PERIOD OF LIABILITY described in this section.

2. **We** cover TIME ELEMENT loss only to the extent it cannot be reduced through:

    **a.** The use of any property or service owned or controlled by **you**;

    **b.** The use of any property or service obtainable from other sources;

    **c.** Working extra time or overtime; or

    **d.** The use of inventory,

    all whether at a covered **location** or at any other **location**. When measuring the actual loss sustained, the combined operating results of all of **your** associated, affiliated or subsidiary companies will be considered in determining the TIME ELEMENT loss.

3. **We** cover **your** reasonable and necessary expenses to reduce the loss otherwise payable under this section of this Policy. The amount of those recoverable expenses will not exceed the amount by which the insured loss has been reduced.

4. In determining the insured TIME ELEMENT loss, **we** will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. **We** will consider any increase or decrease in demand for **your** goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused the **covered loss**.

## B. TIME ELEMENT COVERAGES

1. *GROSS EARNINGS*

    **a.** *GROSS EARNINGS* loss is the actual loss sustained by **you** due to the necessary interruption of **your** business during the PERIOD OF LIABILITY of the following:

Gross Earnings less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services, plus all other earnings derived from the operation of the business.

**Ordinary payroll,** including taxes and charges dependent on the payment of wages, for a period of time not to exceed the number of consecutive days as specified in the LIMITS OF LIABILITY in the Declarations table immediately following the interruption of production or suspension of business operations or services, and only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

However, if **you** reduce the daily loss payable under **ordinary payroll,** either by:

      **(1)** providing gainful employment for, or

      **(2)** paying less than the normal salary rate to,

all or part of its employees, then the number of consecutive days of **ordinary payroll** may be extended. However, this provision will not increase **our** total liability beyond the amount **we** would have been liable for **ordinary payroll** costs without this provision.

**Ordinary payroll** does not cover any portion of salaries or wages included in Gross Earnings.

**b.** *GROSS EARNINGS* will be calculated as follows:

      **(1)** For manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

      **(2)** For mercantile or non-manufacturing operations: the total net sales less the cost of merchandise sold, materials and supplies consumed in the operations or services rendered by **you.**

      Any amount payable at selling price will be considered to have been sold to **your** regular customers and will be credited against net sales.

**c.** In determining the amount **we** cover as the actual loss sustained, **we** will consider the continuation of only those charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

**d.** If **you** would have operated at a deficit had no interruption of production or suspension of business operations or services occurred, the following applies:

      **(1)** For Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.

      **(2)** For **ordinary payroll,** the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

**e.** We cover TIME ELEMENT loss only to the extent that **you** are:

      **(1)** Wholly or partially prevented from producing goods or continuing business operations or services;

      **(2)** Unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

      **(3)** Unable to continue **your** operations or services during the PERIOD OF LIABILITY; and

 © 2016 Liberty Mutual Insurance

**(4)** Able to demonstrate a loss of sales for the operations, services or production prevented.

## 2. EXTRA EXPENSE

**a. We** cover **your** reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable:

**(1)** To temporarily continue as nearly normal as practicable the conduct of **your** business; and

**(2)** The temporary use of property or facilities of **yours** or others.

**b. We** will reduce any recoverable loss under this coverage for any value remaining of any property used to temporarily continue **your** business.

**c.** EXTRA EXPENSE does not include:

**(1)** Any loss of income.

**(2)** Costs that would have been incurred in conducting the business during the same period had no physical loss or damage happened.

**(3)** Costs of permanent repair or replacement of property that has been damaged or destroyed.

**(4)** Any expense recoverable elsewhere in this Policy.

## 3. LEASEHOLD INTEREST

**a. We** cover the following:

**(1)** If the lease agreement requires continuation of rent as a result of a **covered loss**, and if the **covered property** is wholly or partially untenantable or unusable, the actual rent payable while the **covered property** is untenantable or until the lease is terminated, but not exceeding the unexpired term of the lease.

**(2)** If the **covered property** is partially untenantable, **we** cover the proportion of the lease payment for that portion of the untenantable **covered property**.

**b.** If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law, **we** cover the additional cost to rent similar space for the unexpired term of the lease for the damaged property. That loss will be computed at present value, compounded annually at the prime rate plus 2%, as published in the Wall Street Journal on the date the lease terminated. The additional cost will consider the excess rent paid for the same or similar replacement property over actual rent of the original lease, plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the lease.

**c.** As respects LEASEHOLD INTEREST, the following applies:

**(1) We** do not cover loss directly resulting from physical loss or damage to **personal property**.

**(2)** TIME ELEMENT EXCLUSIONS **D.1.**, **D.2.** and **D.3.** do not apply and the following applies instead:

**We** do not cover any increase in loss resulting from the suspension, lapse or cancellation of any license, or from **you** exercising an option to cancel the lease; or from any act or omission by **you** that constitutes a default under the lease.

## 4. RENTAL INSURANCE

    **a. We** cover **your** actual loss sustained of rental income during the PERIOD OF LIABILITY for:

       **(1)** The fair rental value of any portion of rental property occupied by **you**;

       **(2)** The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

       **(3)** The rental income from the rented portions of such property according to written leases, contracts or agreements in force at the time of loss,

    all not to include non-continuing charges and expenses.

    **b.** RENTAL INSURANCE Exclusions: As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS **D.1.** does not apply and the following applies instead:

    **We** do not cover any loss of rental income during any period in which the covered **location** would not have been tenantable for any reason other than a **covered loss**.

## C. PERIOD OF LIABILITY

**1.** The PERIOD OF LIABILITY applying to CONTINGENT TIME ELEMENT, *GROSS EARNINGS*, EXTRA EXPENSE and RENTAL INSURANCE is as follows:

    **a.** For building and equipment, the period:

       **(1)** Starting from the time of physical loss or damage of the type insured; and

       **(2)** Ending when with due diligence and dispatch the building and equipment could be:

          **(a)** Repaired or replaced; and

          **(b)** Made ready for operations,

       under the same or equivalent physical and operating conditions that existed prior to the damage.

       **(3)** Not to be limited by the expiration of this Policy.

    **b.** For building(s) and equipment covered under COURSE OF CONSTRUCTION:

       **(1)** The equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

       **(2)** Due consideration will be given to the actual experience of the business after completion of the construction and startup.

**2.** The PERIOD OF LIABILITY for *GROSS EARNINGS* and EXTRA EXPENSE also includes the following:

    **a.** For stock-in-process and mercantile stock, including finished goods not manufactured by **you,** the time required with the exercise of due diligence and dispatch:

       **(1)** To restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

       **(2)** To replace physically damaged mercantile stock.

    **b.** For raw materials and supplies, the period of time:

(1) Of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

(2) Limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

c. Impounded Water:

(1) Used for any manufacturing purpose, including as a raw material or for power;

(2) Stored behind dams or in reservoirs; and

(3) On any covered **location**,

that is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, **our** liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond the number of consecutive days, not to exceed the LIMIT OF LIABILITY specified in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced.

d. For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

e. For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

3. The PERIOD OF LIABILITY applying to *GROSS PROFIT* is as follows:

a. The period starting from the time of physical loss or damage of the type insured and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

b. For property under construction, the period starting on the date that production, business operation or service would have commenced if physical damage of the type insured had not happened and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations, during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

The *Rate of Gross Profit* and *Standard Sales* will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

4. The PERIOD OF LIABILITY does not include any additional time due to **your** inability to resume operations for any reason, including:

a. Making changes to equipment;

b. Making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION clause in the PROPERTY DAMAGE section; and

c. Re-staffing or retraining employees.

If two or more PERIODS OF LIABILITY apply, such periods will not be cumulative.

**D.** TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

1. Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

   a. Physical loss or damage not insured by this Policy on or off of the covered **location**.

   b. Planned or rescheduled shutdown.

   c. Strikes or other work stoppage.

   d. Any reason other than physical loss or damage insured under this Policy.

2. Any increase in loss due to:

   a. Suspension, cancellation or lapse of any lease, contract, license or orders.

   b. Damages for breach of contract or for late or noncompletion of orders.

   c. Fines or penalties.

   d. Any other consequential or remote loss.

3. Any loss resulting from physical loss or damage to finished goods manufactured by **you**, or the time required for their reproduction.

**E.** TIME ELEMENT COVERAGES AND LIMITATIONS

TIME ELEMENT COVERAGES are extended to include the following, subject to all Policy terms, conditions and exclusions, and the time, distance and/or dollar amounts specified in the LIMITS OF LIABILITY Table in the Declarations:

1. *ATTRACTION PROPERTY*

   a. **We** cover **your** actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by this Policy to property of the type insured at an *attraction property* within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of time that:

      (1) Starts at the time such physical loss or damage happens;

      (2) Ends when the *attraction property* is:

         (a) Repaired or replaced; and

         (b) Made ready for operations.

   b. As used in this TIME ELEMENT COVERAGE AND LIMITATION, the term *attraction property* is a property that:

      (1) Is operated by others; and

      (2) **You** depend on to attract customers to **your** covered **location.**

2. CIVIL OR MILITARY AUTHORITY

   a. **We** cover **your** actual loss sustained and EXTRA EXPENSE during the *period of interruption* if an order of civil or military authority prohibits access to a covered **location** provided such order is caused by

physical loss or damage of the type insured by this Policy at a covered **location** or within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION does not apply to LEASEHOLD INTEREST.

**c.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time:

**(1)** Starting at the time of such direct physical loss or damage; and

**(2)** Continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

This period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

**3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from the failure of **your electronic data processing equipment** or media to operate, provided that such failure is the direct result of a malicious act directed at **you**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the *period of interruption* is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** As used above, the *period of interruption:*

**(1)** Is the period starting when **your electronic data processing equipment** or media fails to operate and ending when with due diligence and dispatch, **your electronic data processing equipment** or media could be restored to the same or equivalent operating condition that existed prior to the failure.

**(2)** Does not include the additional time to make changes to **your electronic data processing equipment** or media.

**4.** CONTINGENT TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at *Direct Dependent Time Element* **Location(s)** and *Indirect Dependent Time Element* **Location(s)** located within the territory of this Policy.

**b.** **You** agree to take every reasonable and necessary action to mitigate the loss payable hereunder.

 © 2016 Liberty Mutual Insurance

**c.** As used in this Policy, *Direct Dependent Time Element* **Location(s)** are:

    **(1)** Any **location(s)** of a direct: customer, supplier, contract manufacturer or contract service provider to **you**; or

    **(2)** Any **location(s)** of any company under a royalty, licensing fee or commission agreement with **you.**

    *Direct Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from **you**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**d.** As used in this Policy, *Indirect Dependent Time Element* **Location(s)** are:

    **(1)** Any **location(s)** of any company that is a direct: customer, supplier, contract manufacturer or contract service provider to **your** *Direct Dependent Time Element* **Location(s)**.

    *Indirect Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from, the *Direct Dependent Time Element* **Location(s)** or the *Indirect Dependent Time Element* **Location(s)**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**e.** As respects CONTINGENT TIME ELEMENT:

    **(1)** Exclusion **D.3** in the TIME ELEMENT EXCLUSIONS does not apply.

**5.** CRISIS MANAGEMENT

    **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY if an order of civil or military authority prohibits access to a covered **location**, but only if such order is a direct result of a violent crime, suicide, attempted suicide or armed robbery at such covered **location**.

    **b.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, coverage applies:

        **(1)** Only when the PERIOD OF LIABILITY is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations; and

        **(2)** For up to the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations, not to exceed the specified LIMIT OF LIABILITY.

    The PERIOD OF LIABILITY is the period of time when the time the civil or military authority prohibits access and continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

**6.** DELAY IN STARTUP

    **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations resulting directly from physical loss or damage to **covered property** as provided under COURSE OF CONSTRUCTION.

**7.** EXTENDED PERIOD OF LIABILITY

    **a.** We cover the *GROSS EARNINGS* loss sustained due to the reduction in sales resulting from:

        **(1)** The interruption of business;

        **(2)** Commencing with the date on which our liability for loss resulting from interruption of business would terminate if this TIME ELEMENT COVERAGE AND LIMITATION had not been included in this Policy; and

**(3)** Continuing for such additional length of time as would be required with the exercise of due diligence and dispatch to restore **your** business to the condition that would have existed had no loss occurred, but no longer than the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** Coverage under this TIME ELEMENT COVERAGE AND LIMITATION for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the EXTENDED PERIOD OF LIABILITY described in Item **7.a.** above.

**c.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, Item **D.2.** in the TIME ELEMENT EXCLUSIONS in this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or non-completion of orders, or fines or penalties.

**8.** INGRESS / EGRESS

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE due to the necessary interruption of **your** business if ingress to or egress from a covered **location** is prevented, whether or not **your** premises or property is damaged, provided that such prevention is a direct result of physical loss or damage of the type insured to property of the type insured.

**b.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time starting at the time of such direct physical loss or damage, and continuing until ingress or egress is no longer prevented, or for the time limit specified in the LIMITS OF LIABILITY Table in the Declarations, whichever is less.

**9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the period of service interruption at a covered **location** when the loss is caused by:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

from physical loss or damage of the type insured, at the facilities of the supplier of such service located within this Policy's territory that immediately prevents in whole or in part the delivery of such usable services.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the period of service interruption as described below is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** The period of service interruption is:

**(1)** The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could have resumed normal operations following the restoration of service under the same or equivalent physical and operating conditions that existed prior to the interruption of such services;

**(2)** Is limited to only those hours during which **you** could have used service(s) if it had been available;

**(3)** Does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

**d.** Additional General Provisions:

    **(1) You** will immediately notify the suppliers of services of any interruption of any such services.

    **(2) We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

  **e. We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**10.** ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

  **a. We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from direct physical loss or damage of the type insured to the following property located at or within one-thousand (1,000) feet of a covered **location**:

    **(1)** Electrical equipment and equipment used for the transmission of voice, data or video.

    **(2)** Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission systems.

**11.** PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT

  **a. We** cover **your** actual loss sustained for a period of time not to exceed forty eight (48) hours prior to and forty eight (48) hours after **you** first took reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage of the type insured to such **covered property**.

  **b.** This TIME ELEMENT COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the direct physical loss or damage occurred.

**12.** RELATED **LOCATIONS**

  If **you** report values at related **locations** used by **you** (e.g. branch stores, retail outlets and other facilities), but such related **locations** are not listed on the latest Schedule of Covered **Locations** submitted to, accepted by and on file with **us,** and if a TIME ELEMENT loss results at such related **locations** due to **covered loss, we** cover such resulting TIME ELEMENT loss in accordance with the terms and conditions of this Policy.

**13.** RESEARCH AND DEVELOPMENT

  **a. We** cover **your** actual loss sustained of fixed charges and **ordinary payroll** directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a **covered loss**.

  **b. We** cover these fixed charges only to the extent they continue after the **covered loss** and only during the PERIOD OF LIABILITY.

  **c.** To the extent **you** are able to resume operations, **we** cover only that portion of the fixed charges related to that part of the research and development operation that has not yet been restored.

**14.** SOFT COSTS

  **a. We** cover **your** actual loss sustained of *Soft Costs* during the *period of delay* directly resulting from a delay of completion of **covered property** under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS.

**b.** *Soft Costs* are costs over and above those that are normal at a covered **location** undergoing renovation or in the course of construction, limited to the following:

   **(1)** Construction loan fees – **your** additional cost to rearrange loans necessary for the completion of construction, repairs or reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

   **(2)** Commitment fees, leasing and marketing expenses – the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

   **(3)** Additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction repairs or reconstruction.

   **(4)** Property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**c.** *Period of delay* is the period of time between:

   **(1)** The date on which the construction, alteration, extension or renovation would have been complete in the absence of a **covered loss** to property under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS; and

   **(2)** The date on which construction, alteration, extension or renovation is actually complete.

 © 2016 Liberty Mutual Insurance

# SECTION IV – DESCRIBED LOSSES

**We** only cover the following DESCRIBED LOSSES as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

## A. EARTH MOVEMENT

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from EARTH MOVEMENT.

2. **You** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

3. EARTH MOVEMENT is:

   Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption; regardless of any other cause or event contributing concurrently or in any other sequence of loss.

   However, physical loss or damage from fire, explosion, sprinkler leakage or FLOOD caused by EARTH MOVEMENT will not be considered to be loss by EARTH MOVEMENT within the terms and conditions of this Policy.

## B. EARTH MOVEMENT SPRINKLER LEAKAGE

1. **We** cover physical loss or damage to **covered property,** including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, resulting from sprinkler leakage caused by EARTH MOVEMENT.

## C. EQUIPMENT BREAKDOWN

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS, as provided by this Policy if such loss or damage is caused by an accident to covered equipment.

   The coverage provided in this DESCRIBED LOSS is limited to loss or damage caused by an accident to covered equipment. **We** will not pay for physical loss or damage from any other cause under this DESCRIBED LOSS.

   The following coverages apply solely to Equipment Breakdown:

   a. Spoilage Damage

      **We** cover physical loss or damage caused by change in temperature or humidity or by the interruption of power, heat, air-conditioning, or refrigeration as the result of an accident to covered equipment.

   b. Ammonia **Contamination**

      **We** cover physical loss or damage to **covered property** contaminated by ammonia, including any salvage expense as a direct result of an accident to covered equipment. No coverage for Ammonia **Contamination** is available under DECONTAMINATION COSTS with respects to an accident to covered equipment.

2. Conditions

a. Suspension

If coverage for Equipment Breakdown is provided by this Policy, and **we** discover a dangerous condition relating to an object, **we** may immediately suspend the insurance provided by this coverage for that *covered equipment* by written notice mailed or delivered to **you** either at **your** address or at the **location** of any object. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this Policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

3. Valuation

If *covered equipment* requires replacement due to an *accident*, **we** cover **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

a. However, **we** do not cover more than 150% of what the cost would have been to repair or replace *covered equipment* with like kind and quality.

b. This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable LIMIT OF LIABILITY.

c. The PERIOD OF LIABILITY will not be increased by any of the above.

4. Definitions

a. *Accident*: Physical loss or damage to *covered equipment* that necessitates its repair or replacement due to:

(1) Failure of pressure or vacuum equipment;

(2) Mechanical breakdown including rupture or bursting caused by centrifugal force;

(3) Artificially generated electrical current, including electrical arcing that damages electrical devices, appliances or wires; or

(4) Explosion of:

(a) Steam boiler

(b) Electric steam generator

(c) Steam piping

(d) Steam turbine

(e) Moving or rotating machinery when such explosion is caused by centrifugal force,

unless such loss or damage is otherwise excluded within this Policy.

*Accident* does not include:

(5) Fire, including water or other means used to extinguish the fire;

(6) Malfunction, misalignment, miscalibration, tripping off line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning or by the performance of maintenance;

© 2016 Liberty Mutual Insurance

**(7)** Combustion explosion;

**(8)** Discharge of molten material from equipment including the heat from such discharged materials;

**(9)** Lightning;

**(10)** Depletion, deterioration, rust, corrosion, erosion, settling, or wear or tear or any other gradually developing condition;

**(11)** Defects, erasures, error limitations or viruses in computer equipment and programs including the inability to recognize and process any date or time or provide instructions to *covered equipment*;

**(12)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(13)** Damage to any structure or foundation supporting the *covered equipment* or any of its parts;

**(14)** Any loss or damage caused by or resulting from any type of electrical insulation breakdown test;

**(15)** Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test;

**(16)** The functioning of any safety or protective device; or

**(17)** The cracking of any part on an internal combustion turbine exposed to the products of combustion.

**b.** *Covered equipment*:

**(1)** Equipment that generates, transmits, controls or utilizes energy; including electronic communications and data processing equipment; and

**(2)** Equipment which, during normal usage, operates under vacuum or pressure, other than weight of contents.

*Covered equipment* does not mean or include:

**(3) Electronic data**;

**(4)** Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

**(5)** Insulating or refractory material;

**(6)** Nonmetallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or other appropriate and approved code;

**(7)** Catalyst;

**(8)** Buried vessels or piping; waste, drainage or sewer piping; piping, valves or fittings forming part of a sprinkler or fire suppression system; water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

**(9)** Structure, foundation, cabinet or compartment supporting or containing the *covered equipment* or part of the *covered equipment* including penstock, draft tube or well casing;

**(10)** Vehicle or any *covered equipment* that is mounted on or used solely with a vehicle;

**(11)** Dragline, excavation or construction equipment including any *covered equipment* that is mounted on or used solely with any one or more dragline(s), excavation or construction equipment;

**(12)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, nonelectrical cable, chain, belt, rope, clutch plate, brake pad, nonmetal part or tool subject to periodic replacement;

**(13)** Cyclotron used for other than medical purposes, satellite or spacecraft including any *covered equipment* mounted on or used solely with any satellite or spacecraft;

**(14)** Equipment manufactured by **you** for sale.

**c.** *Production machinery* is any machine or apparatus that processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in process or finished products including any *covered equipment* that is mounted on or used solely with any one or more production machines or apparatus.

## D. *FLOOD*

**1.** **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *FLOOD*.

**2.** *FLOOD* is:

**a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

**b.** Sewer back-up resulting from any of the foregoing; or

**c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.

**Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

## E. *NAMED STORM*

**1.** **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from a *NAMED STORM*. However, physical loss or damage caused by fire, explosion, sprinkler leakage or *FLOOD* will not be considered loss by *NAMED STORM* within the terms and conditions of this Policy.

**2 . Y o u** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

*NAMED STORM* is any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any authorized meteorological authority in the country where the storm or weather disturbance happened.

© 2016 Liberty Mutual Insurance

# SECTION V - GENERAL POLICY CONDITIONS

## A. ASSIGNMENT

**Your** assignment of this Policy will not be valid except with **our** written consent.

## B. CANCELLATION

1. **You** may cancel this Policy by mailing or delivering to **us** advance written notice of cancellation.

2. **We** may cancel this Policy by mailing or delivering to **you** written notice of cancellation at least:

   a. ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   b. thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason.

3. **We** will mail or deliver **our** written notice of cancellation to **your** last mailing address known to **us**.

4. **Our** written notice of cancellation will state the effective date of cancellation and the Policy period will end on that date.

5. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void, if with the actual intent to deceive

1. **You**;

2. **Your** representatives; or

3. Any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning:

   a. This Policy;

   b. The **covered property**;

   c. **Your** interest in the **covered property**; or

   d. A claim under this Policy.

## D. CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by **us** shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for covered **locations** within such jurisdictions.

## E. INSPECTION

1. During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards.

2. This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

## F. LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

1. When specified in the Policy or in Certificates of Insurance on file with **us**, **we** cover loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear.

2. The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

   a. Any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

   b. Foreclosure, notice of sale, or similar proceedings with respect to the property, but only to the extent of a deficiency as provided by state law.

   c. Change in the title or ownership of the property.

   d. Change to a more hazardous occupancy.

   The Lender or Mortgagee will notify **us** of any known change in ownership, occupancy, or hazard and, within ten (10) days of **our** written request, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

3. If this Policy is cancelled at **your** request or by the request of **your** agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after **we** send to the Lender or Mortgagee written notice of cancellation, unless:

   a. Sooner terminated by authorization, consent, approval, acceptance, or ratification of **your** action by the Lender or Mortgagee, or its agent.

   b. This Policy is replaced by **you**, with a Policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement Policy, notwithstanding any other provision of this Policy.

 © 2016 Liberty Mutual Insurance

4. **We** may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, **we** may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

5. If **we** pay the Lender or Mortgagee for any loss, and deny payment to the debtor, mortgagor or owner, **we** will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At **our** option, **we** may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to **us**, and the remaining debt or mortgage will be paid to **us**.

6. If **you** fail to render proof of loss, the Lender or Mortgagee, upon notice of **your** failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, COMPANY OPTION, and SUIT AGAINST THE COMPANY.

7. In the event of a claim, upon request by **us**, the Lender or Mortgagee will cooperate in any claim investigation.

8. In no event will the amount payable to a Lender or Mortgagee exceed the amount which would otherwise have been payable to **you.**

## G. LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute in any State or jurisdiction within the United States of America so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to **your** benefit within such jurisdiction, effective the date of the change specified in such statute.

## H. NO REDUCTION BY LOSS

Except for those coverages written with an **annual aggregate** LIMIT OF LIABILITY, **we** cover a **covered loss** without reducing any other applicable LIMIT OF LIABILITY. The reinstatement of any exhausted **annual aggregate** is not permitted unless authorized by **us** in writing.

## I. NONRENEWAL

1. If **we** decide not to renew this Policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this Policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

2. Proof of mailing will be sufficient evidence of notice.

## J. OTHER INSURANCE

1. **We** will not be liable if, at the time of loss or damage, there is any other insurance that would apply in the absence of this Policy; except that this Policy will apply only as excess or DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS and in no event as contributing insurance, and then only after all other insurance has been exhausted, notwithstanding paragraph **5.** below.

2. **We** will not be liable if, at the time of loss or damage, there is any insurance with the National Flood Insurance Program (NFIP), except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

 © 2016 Liberty Mutual Insurance

3. **We** will not be liable if, at the time of loss or damage, there is any insurance for the construction of new buildings and additions under a specific policy for the construction of such new buildings and additions, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

4. **We** will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

5. If this Policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable LIMIT OF LIABILITY. **Our** share will be the proportion that the applicable LIMIT OF LIABILITY of this Policy bears to the total applicable LIMITS OF LIABILITY available from all insurance.

6. **You** are permitted to have other insurance over any LIMITS OF LIABILITY specified in this Policy.

7. The existence of such insurance will not reduce any LIMIT OF LIABILITY in this Policy.

8. To the extent this Policy replaces another Policy, coverage under this Policy shall not become effective until such other Policy has terminated.

9. **You** are permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only as excess and only after such other insurance has been exhausted.

**K.** PAIR, SET OR PARTS

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1. The cost to repair or replace any part to restore the pair or set to its value before the loss; or

2. The difference between the value of the pair or set before and after the loss.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

**L.** POLICY MODIFICATION

This Policy contains all of the agreements between **you** and **us** concerning this insurance. **You** and **we** may request changes to this Policy. Only endorsements issued by **us** and made a part of this Policy can change this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent **us** from asserting any rights under the Policy.

**M.** TITLES

The titles of the paragraphs of this Policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

**N.** TRANSFER OF RIGHTS AND DUTIES

**Your** rights and duties under this Policy may not be transferred without us giving written consent.

**O.** VACANCY

1. If any of **your real property** is vacant at the inception of this Policy, or becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the Policy period, **you** must:

   a. Notify **us** in writing of the vacancy prior to loss or damage; and

   b. Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include:

      (1) Automatic sprinkler systems;
      (2) Fire alarm systems;
      (3) Guard or watchman services;
      (4) Burglary systems; and
      (5) Monitoring systems.

2. If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this Policy, **we** will:

   a. Not pay for any loss or damage caused by or resulting from any of the following:

      (1) Breakage of building glass;
      (2) Mold, mildew or fungus;
      (3) Sprinkler leakage, unless the system has been protected against freezing;
      (4) Theft or attempted theft;
      (5) Vandalism;
      (6) Malicious mischief; or
      (7) Water damage.

   b. Not pay under DEMOLITION AND INCREASED COST OF CONSTRUCTION;

   c. Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the lesser of:

      (1) The **actual cash value**;
      (2) The actual cost to repair; or
      (3) The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

3. **Real property** is considered vacant when it does not contain sufficient property and personnel to conduct **your** customary business operations.

4. **Real property** is not considered vacant during its ongoing construction or renovation.

## P. VALUATION

1. Adjustment of the physical loss or damage amount under this Policy will be computed as of the date of loss or damage at the place of the loss or damage. Unless stated otherwise in a PROPERTY DAMAGE COVERAGE AND LIMITATION, adjustment of physical loss or damage to **covered property** will be subject to the following:

   a. On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

   b. On finished goods manufactured by **you**, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no physical loss or damage happened.

   c. On raw materials, supplies or merchandise not manufactured by **you**:

**(1)** If repaired or replaced, **your** actual expenditure in repairing or replacing the damaged or destroyed property; or

**(2)** If not repaired or replaced, the **actual cash value**.

**d.** On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

**e.** On property that is:

**(1)** Damaged by fire that directly results from **terrorism** or nuclear reaction; and

**(2)** Is located in a jurisdiction that has a statute that expressly prohibits the exclusion of fire losses resulting from **terrorism** or nuclear reaction,

the **actual cash value** of the fire damage. Any remaining fire damage not attributable to **terrorism** or nuclear reaction shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy.

**f.** On computer equipment of others which **you** are required to insure for direct physical loss or damage while being installed, maintained or repaired, the cost to replace with new if so specified in the contract between **you** and **your** customer.

**g.** On Data, Programs and Software, the actual cost incurred to repair, replace or restore data, programs or software including the costs to recreate and research.

**h.** On **Fine Arts**, the loss amount will not exceed the lesser of the following:

**(1)** The cost to repair or restore such property to the physical condition that existed on the date of loss;

**(2)** The cost to replace; or

**(3)** The stated value on file with **us**.

**i.** On all other property, the lesser of the following:

**(1)** The cost to repair.

**(2)** The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

**(3)** The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

**(4)** The selling price of **real property** or machinery and equipment, other than stock, offered for sale on the date of loss.

**(5)** The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

**(6)** The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

© 2016 Liberty Mutual Insurance

    **(7)** The unamortized value of improvements and betterments, if such property is not repaired or replaced at **your** expense.

    **(8)** The **actual cash value** if such property is:

        **(a)** Useless to **you**; or

        **(b)** Not repaired, replaced or rebuilt on the same or another site within two (2) years from the date of loss, unless such time is extended by **us**.

**2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

**3.** **We** will not pay more than **your** financial interest in the **covered property**.

# SECTION VI – LOSS CONDITIONS

## A. ABANDONMENT OF PROPERTY

**You** may not abandon property to **us**.

## B. APPRAISAL

1. If **you** and **we** fail to agree on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** occurred, to select an umpire.

3. The appraisers will then determine the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will determine the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

## C. COLLECTION FROM OTHERS

**We** will reduce any payment to **you** for a **covered loss** to the extent **you** have collected for that loss from others.

## D. COMPANY OPTION

1. In the event of **covered loss**, **we** may, at **our** option, either:

   a. Pay the value of **covered property** lost, damaged or destroyed as set forth in VALUATION above;

   b. Pay the cost of repairing or replacing the **covered property** lost, damaged or destroyed;

   c. Take all or any part of the **covered property** at any agreed valuation; or

   d. Repair, rebuild or replace the **covered property** with other property of like kind and quality.

2. **We** will give notice of **our** intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

## E. DUTIES AFTER A LOSS

In case of loss **you** will:

1. Give **us** immediate written notice of the loss;

2. Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

3. As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

4. Take all reasonable steps to protect the **covered property** from further damage;

5. Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

6. Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the Policy;

7. Keep an accurate record of all repair costs;

8. Keep all bills, receipts and related documents that establish the amount of loss;

9. As often as may reasonably be required:

   a. Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

   b. Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

   c. Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

    The time and cause of the loss;

    a. **Your** interest and the interest of all others in the property involved;

    b. Any other policies of insurance that may provide coverage for the loss;

    c. Any changes in title or occupancy of the property during the Policy period; and

    d. The amount of **your** claimed loss.

    **You** shall also submit with the Proof of Loss:

    (1) A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

    (2) An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

    (3) Specifications for any damaged building; and

    (4) Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

## F. LOSS ADJUSTMENT / PAYABLE

Loss will be adjusted with the First Named Insured. **We** may, at **our** option, adjust the loss to property of others directly with the owner of the property. Such loss will be payable to the First Named Insured or as may be directed by the First Named Insured.

 © 2016 Liberty Mutual Insurance

Additional insured interests will also be included in loss payment as their interests may appear  when named as additional named insured, lender, mortgagee and/or loss payee either on a  Certificate of Insurance or other evidence of insurance on file with **us**. When named on a Certificate of Insurance or other evidence of insurance, such additional interests  are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance. The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of  this Policy.

## G. PAYMENT OF LOSS

**We** will pay the insured loss within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

1. **You** have complied with all the terms of this Policy;

2. **We** have reached agreement with **you** on the amount of the loss, or

3. Within thirty (30) days of when an appraisal award is made as provided for in LOSS CONDITIONS **B.** APPRAISAL.

## H. SUBROGATION

1. If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

2. **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

## I. SUIT AGAINST THE COMPANY

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years next after the inception of the loss.

 © 2016 Liberty Mutual Insurance

# SECTION VII – DEFINITIONS

1. **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, with proper deduction for physical depreciation and obsolescence, but in no event more than the fair market value.

2. **Annual aggregate**: The maximum amount of loss or damage payable in any one (1) Policy year regardless of the number of **occurrences** within the same Policy year.

3. **Contaminant**: Any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

4. **Contamination**: Any condition of property that results from a **contaminant**.

5. **Covered loss**: A loss to **covered property** caused by direct physical loss or damage insured by this Policy.

6. **Covered property**: Property insured by this Policy.

7. **Electronic Data**: Information (including computer programs) stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, drives, **electronic data processing equipment** or any storage medium.

8. **Electronic data processing equipment**: Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether **your** property or not.

9. **Fine Arts**: Property of rarity, historical value, antiquity or artistic merit, including paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains

10. **Land improvements**: Landscape gardening, car parks, parking lots, pavement, roadways, sidewalks, walkways, railways or transformer enclosures; but does not include fill beneath such property, including buildings, structures or additions.

11. **Location(s)**:

    a. As specified in Appendix A – Schedule of Covered **Location(s)**;

    b. Listed on a SCHEDULE on file with **us**; or

    c. If not so specified in Appendix A – Schedule of Covered **Location(s)** or listed on a SCHEDULE on file with **us**, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

12. **Miscellaneous Unnamed Location**: A **location** owned, leased or rented by **you**, but not listed in a Schedule of **locations** on file with **us** or attached to this Policy.

    **Miscellaneous Unnamed Location** does not include:

    a. Newly Acquired **Locations**; or

    b. A **location** for which coverage is found elsewhere in this Policy including ERRORS AND OMISSIONS.

13. **Occurrence**: All loss or damage attributable directly or indirectly to one (1) cause or series of similar

 © 2016 Liberty Mutual Insurance

causes. All such loss or damage will be added together and the total loss or damage will be treated as one (1) **occurrence.**

Unless otherwise amended by an endorsement attached to this Policy:

    **a.** All loss or damage resulting from a continuous *FLOOD* event, irrespective of the amount of time or area over which such loss or damage occurs, will be considered a single **occurrence**.

    **b.** All loss or damage from *EARTH MOVEMENT* or *NAMED STORM* within the time specified in the **OCCURRENCE** TIME SPECIFICATIONS will be considered a single **occurrence**.

**14. Ordinary payroll**: Payroll expenses for all of **your** employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums **you** pay.

**15. Personal Property**: **Your** tangible things, other than **real property** owned by **you** and used in **your** business, including:

    **a.** Furniture, fixtures, machinery, **electronic data processing equipment** and stock;

    **b.** Materials, supplies, machinery, equipment and fixtures, including those that are *personal property of others*, which are intended by **you** for use in construction of new additions and buildings at an existing covered **location**, that **you** begin to construct during the Policy period and intend to own or occupy once constructed, while located on the construction site awaiting use in construction.

    **c.** Property, other than **real property**, **you** lease for use in **your** business that **you** have a responsibility to insure;

    **d.** **Your** interest in improvements and betterments **you** have made in buildings **you** do not own;

    **e.** **Your valuable papers and records**.

**16. Real Property**: Building(s) and any other structure, including:

    **a.** New buildings and additions under construction, in which **you** have an insurable interest;

    **b.** Completed additions, extensions or permanent fixtures;

    **c.** Machinery and equipment used to service the buildings;

    **d.** Yard Fixtures.

**17. Terrorism**: Activities against persons, organizations or property of any nature:

    **a.** That involve the following or preparation for the following:

        **(1)** Use or threat of force or violence; or

        **(2)** Commission or threat of a dangerous act; or

        **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**18. Valuable papers and records**: Written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

**19. We, us** and **our(s)**: The company issuing this Policy, as shown on the Declarations.

**20. You** and **your(s)**: The First Named Insured shown on the Declarations.

 © 2016 Liberty Mutual Insurance

## APPENDIX A - SCHEDULE OF COVERED LOCATIONS

Per schedule on file with us

 © 2016 Liberty Mutual Insurance

## APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES

| STATE | ZONE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|---|
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Green, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St. Francis, White, Woodruff |
| ARKANSAS | 2 | Arkansas, Fulton, Izard, Lonoke, Prairie, Sharp, |
| ILLINOIS | 1 | Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, Washington, Williamson |
| ILLINOIS | 2 | Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Jasper, Lawrence, Madison, Marion, Monroe, Richland, Saint Clair, Wabash, Wayne, White |
| INDIANA | 2 | Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick |
| KENTUCKY | 1 | Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, McCracken, |
| KENTUCKY | 2 | Caldwell, Christian, Daviess, Henderson, Hopkins, McLean, Muhlenberg, Todd, Trigg, Union, Webster |
| MISSISSIPPI | 1 | DeSoto, Marshall, Tate, Tunica |
| MISSISSIPPI | 2 | Alcorn, Benton, Coahoma, Lafayette, Panola, Quitman, Tippah |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Madison, Mississippi, New Madrid, Pemiscott, Perry, Ripley, Scott, Stoddard, Wayne |
| MISSOURI | 2 | Independent City of St. Louis, Iron, Jefferson, Oregon, Reynolds, Shannon, St. Francois, St. Louis, Ste. Genevieve, Washington |
| TENNESSEE | 1 | Benton, Carroll, Chester, Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Henderson, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, Weakley |
| TENNESSEE | 2 | Decatur, Hardin, Houston, Humphreys, McNairy, Montgomery, Perry, Stewart, |

 © 2016 Liberty Mutual Insurance

## APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE

| REGION / STATE | COUNTIES / COORDINATES |
|---|---|
| CANADA: BRITISH COLUMBIA and VANCOUVER ISLAND | South of 50° N latitude and west of 120° W longitude |
| OREGON | Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill |
| WASHINGTON | Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom |

## APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

SOUTHERN TIER ONE: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|-------------------------------------------|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantly, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Pierce, Wayne |
| Louisiana | Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Tyrrell, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |

© 2016 Liberty Mutual Insurance

## APPENDIX D (continued)

## NAMED STORM TIERS FOR USA INCLUDING
## ITS COMMONWEALTHS AND TERRITORIES

### NORTHERN TIER ONE: VIRGINIA TO MAINE

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------------------------------------------|
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Sussex |
| Maine | Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington, York |
| Maryland | Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Rockingham |
| New Jersey | Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk |
| Rhode Island | Bristol, Newport, Washington |
| Virginia | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York |
| | Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg |

### SOUTHERN TIER TWO: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------------------------------------------|
| Alabama | Clarke, Coffee, Conecuh, Covington, Dale, Escambia, Geneva, Houston, Monroe, Washington |
| Louisiana | Allen, Avoyelles, Beauregard, Evangeline, St. Helena, St. Landry, West Feliciana |
| Mississippi | Forrest, Greene, Jones, Lamar, Marion, Perry, Pike, Walthall, Wayne |
| North Carolina | Cumberland, Edgecombe, Greene, Johnston, Robeson, Sampson, Wilson |
| South Carolina | Bamberg, Calhoun, Clarendon, Dillon, Florence, Hampton, Marion, Orangeburg |
| Texas | Austin, Brazos, Colorado, De Witt, Duval, Fayette, Gonzales, Grimes, Jim Hogg, Karnes, Lavaca, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Walker, Waller, Washington |

 © 2016 Liberty Mutual Insurance

## APPENDIX D (continued)

### NAMED STORM TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

| Other States, Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | **TIER** | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| HAWAII | 1 | Entire State |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

## APPENDIX E - *FLOOD* HAZARD **LOCATIONS**

<u>High Hazard **Location(s)**</u>
NCP

<u>Moderate Hazard **Location(s)**</u>
NCP

## FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this Policy at time of issue:

| Form or Endorsement Number | Form or Endorsement Name |
|---|---|
| CNP 90 06 01 17 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism |
| PY 03 24 04 17 | Emergency Evacuation Expense |
| PZ 00 01 08 16 | Communicable Disease Decontamination Cost Endorsement |
| PY 04 10 01 17 | Removal of Vacancy Condition |
| PY 03 11 01 17 | Research Animals Endorsement |
| PY 04 07 01 17 | Schedule of Lenders or Mortgagees |

## STATE AMENDATORY ENDORSEMENTS

| Endorsement Number | Endorsement Name |
|---|---|
| PY 01 37 01 17 | Washington Changes |
| PY 02 49 01 17 | Washington Changes - Cancellation and Nonrenewal |

Policy Number  YAC-L9L-469720-039
Issued by      Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

**We** will not pay for loss or damage directly or indirectly caused by or resulting from a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence.

**C.** Exception Covering Certain Fire Losses

The following exception to the exclusion in Paragraph **B.** applies only in the following states: California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, U.S. Virgin Islands, Washington, West Virginia, and Wisconsin.

If a "certified act of terrorism" results in fire, **we** will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to **covered property**. Therefore, for example, the coverage does not apply to insurance provided under TIME ELEMENT.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.** Application Of Exclusions

The terms and limitations of SECTION **II.C.** EXCLUSIONS, **2.a.** do not serve to create coverage for any loss which would otherwise be excluded under this endorsement or the Policy, such as losses excluded under SECTION **II.C.** EXCLUSIONS, **2. b., c., d.,** or **e.**

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  YAC-L9L-469720-039
Issued by       Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EMERGENCY EVACUATION EXPENSE

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The following is added to SECTION III – TIME ELEMENT, **E.** TIME ELEMENT COVERAGES AND LIMITATIONS:

EMERGENCY EVACUATION EXPENSE

**We** cover the reasonable and necessary costs **you** incur for the emergency evacuation of patients, tenants or lawful occupants from, and subsequent return to a covered **location**, when a civil authority orders the emergency evacuation as a direct result of immediately impending physical loss or damage of the type insured by this Policy.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

Policy Number YAC-L9L-469720-039
Issued by Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMUNICABLE DISEASE DECONTAMINATION COST ENDORSEMENT**

The following PROPERTY DAMAGE COVERAGE AND LIMITATION is added to SECTION II, **D.** of this Policy:

*COMMUNICABLE DISEASE* DECONTAMINATION COSTS

**a.** If **your covered property** at a covered **location** shown on the Schedule of this endorsement is contaminated by a *communicable disease* as the direct result of a **covered loss,** and there is in force at the time of that **covered loss** a law or ordinance that requires **you** to decontaminate that **covered property** as a result of this contamination by a *communicable disease,* **we** will pay up to the limit as specified in the LIMITS OF LIABILITY Table in the Declarations in any one (1) **occurrence** for those decontamination costs incurred by **you,** but only to satisfy the minimum requirements of that applicable law or ordinance.

**b.** **We** will not pay under this endorsement, however, for:

(1) Any cost of removing contaminated property, or the cost to clean up the **contamination** for property not owned by **you** whether or not the **contamination** results from a **covered loss;** or

(2) Any costs associated with any other **contamination** loss.

**c.** For purposes of this extension the italicized term *communicable disease* means a viral or bacterial organism that is capable of inducing disease, illness, physical distress or death.

**Schedule**

Covered **Location**

**Per Schedule on File**

© 2016 Liberty Mutual Insurance

Policy Number  YAC-L9L-469720-039
Issued by      Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### REMOVAL OF VACANCY CONDITION

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The VACANCY condition of SECTION V – GENERAL POLICY CONDITIONS does not apply to the **location(s)** shown in the Schedule of this endorsement.

Schedule

| Location(s) |
| --- |
| Per Schedule on File |

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-469720-039
Issued by        Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### RESEARCH ANIMALS ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A. We** provide the following PROPERTY DAMAGE COVERAGE AND LIMITATION for a **covered loss** as specified in the LIMIT OF LIABILITY and DEDUCTIBLE Table in the Schedule of this endorsement, subject to the terms, conditions and exclusions of this Policy:

RESEARCH ANIMALS

**1. We** cover the cost to replace **your** laboratory animals used in medical research either destroyed or deemed unsuitable for use while at a covered **location** from a **covered loss**.

**2. We** do not cover loss to laboratory animals resulting from the following unless directly resulting from direct physical loss or damage:

    **a.** Death or destruction from natural causes, unknown causes, medical procedures including surgery, inoculation, parturition or abortion.

    **b.** Errors or omission in processing and/or failure on **your** part to provide nourishment, medicine or sanitary conditions.

    **c.** **Contamination** of animals, food or medicine.

    **d.** The intentional destruction of animals.

    **e.** Escape.

    **f.** Sickness, disease, infection, infestation or illness.

**3. We** do not cover the cost to restore the research project to its condition prior to the loss.

All other terms and conditions remain unchanged.

Schedule

| COVERAGE | LIMIT OF LIABILITY | DEDUCTIBLE AMOUNT |
|----------|--------------------|-------------------|
| RESEARCH ANIMALS | $5,000,000, no more than $5,000 per animal | $500,000 |

   © 2016 Liberty Mutual Insurance

Policy Number   YAC-L9L-469720-039
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SCHEDULE OF LENDERS OR MORTGAGEES**

| Location | Description of Property | Name and Address of Lender or Mortgagee | Interests ("L" for Lender) ("M" for Mortgagee) |
|---|---|---|---|
| Per schedule or certificates of insurance on file with us | RP, PP | Per Schedule on File with us | L/M |

Policy Number   YAC-L9L-469720-039
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WASHINGTON CHANGES**

This endorsement applies only to **covered property** located in Washington and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™
EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

**H.** JURISDICTION

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** The first paragraph of item **2.** of SECTION II – PROPERTY DAMAGE, **C.** EXCLUSIONS is replaced with the following:

**We** do not cover any of the excluded events listed below. Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**C.** Paragraph **i.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is replaced by the following:

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

**(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

**(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

This exclusion will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Paragraph **3.** of  SECTION IV – DESCRIBED LOSSES, **A.** EARTH MOVEMENT is replaced by the following:

    **3.** *EARTH MOVEMENT* is:

    Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

    However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**E.** Paragraph **2.** of  SECTION IV – DESCRIBED LOSSES, **D.** FLOOD is replaced by the following:

    **2.** *FLOOD* is:

    **a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

    **b.** Sewer back-up resulting from any of the foregoing; or

    **c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

    that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

    **Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy.  However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

**F.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

    **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

    This entire Policy is void if **you** intentionally conceal or misrepresent any material fact or circumstance relating to it.

    However, this will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**G.** Paragraph **E.** INSPECTION of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

   **E.** INSPECTION

   **1.** During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards. **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

   **2.** This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**H.** Paragraph **F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS of SECTION V - GENERAL POLICY CONDITIONS is deleted and replaced by endorsement PY 03 21 Washington Lender's Loss Payable Endorsement as required by the Washington Insurance Commissioner.

**I.** Paragraph **5.** of SECTION V - GENERAL POLICY CONDITIONS, OTHER INSURANCE is replaced by the following:

   **5. You** may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If **you** do, **we** will pay **our** share of the **covered loss** or damage. **Our** share is the proportion that the applicable LIMIT OF LIABILITY under this Policy bears to the limits of liability of all insurance covering on the same basis.

**J.** Paragraph **2.** of SECTION V - GENERAL POLICY CONDITIONS, VALUATION is replaced by the following:

   **2. You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or *replacement cost* basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

   *Replacement cost* means the cost to replace **covered property**:

   **a.** With new materials of like kind and quality and used for the same purpose; and

   **b.** At the location where the loss happened.

   But *replacement cost* excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**K.** Paragraph **2.** of SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is replaced by the following:

   **2. We** will be entitled to a recovery only after **you** have been fully compensated for damages.

**L.** Paragraph **1.** of SECTION VII – DEFINITIONS is replaced by the following:

   **1. Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, but in no event more than the fair market value.

**M.** Paragraph **B.** of endorsement PY 04 04 EXCLUSION OF CERTIFIED ACTS OF TERRORISM is replaced by the following:

    **B.** The following exclusion is added:

    CERTIFIED ACT OF TERRORISM EXCLUSION

    **We** will not pay for loss or damage caused by or resulting from a "certified act of terrorism". Loss or damage will be considered to have been caused by or resulting from a "certified act of terrorism" if the **occurrence** of that "certified act of terrorism" directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

All other terms and conditions remain unchanged.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  YAC-L9L-469720-039
Issued by  Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WASHINGTON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **B.** CANCELLATION of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

   **B.** CANCELLATION

   **1. You** may cancel this Policy by notifying **us** or **your** insurance agent or broker in one of the following ways:

      **a.** Written notice by mail, fax or e-mail;

      **b.** Surrender of the Policy or binder; or

      **c.** Verbal notice.

   Upon receipt of such notice, **we** will cancel this Policy or any binder issued as evidence of coverage, effective on the later of the following:

      **a.** The date on which notice is received or the Policy or binder is surrendered; or

      **b.** The date of cancellation requested by **you**.

   **2. We** may cancel this Policy by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to **us**, at least:

      **a.** Ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

      **b.** Forty-five (45) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason;

   except as provided in Paragraph **3.** below.

   **3. We** may cancel the Policy, by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation at least five (5) days before the effective date of cancellation for any **real property** where two or more of the following conditions exist:

      **a.** Without reasonable explanation, the **real property** is unoccupied for more than sixty (60) consecutive days, or at least 65% of the rental units are unoccupied for more than one hundred twenty (120) consecutive days, unless the **real property** is maintained for seasonal occupancy or is under construction or repair;

      **b.** Without reasonable explanation, progress toward completion of permanent repairs to the **real property** has not occurred within sixty (60) days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

**PY 02 49 01 17**               © 2016 Liberty Mutual Insurance               Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. Because of its physical condition, the **real property** is in danger of collapse;

d. Because of its physical condition, a vacation or demolition order has been issued for the **real property**, or it has been declared unsafe in accordance with applicable law;

e. Fixed and salvageable items have been removed from the **real property**, indicating an intent to vacate the **real property**;

f. Without reasonable explanation, heat, water, sewer and electricity are not furnished for the **real property** for sixty (60) consecutive days; or

g. The **real property** is not maintained in substantial compliance with fire, safety and building codes.

4. **We** will also mail or deliver to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to **you**. If cancellation is for a reason contained in Paragraph **A.3.** above, **we** will mail or deliver this notice at least twenty (20) days prior to the effective date of cancellation.

5. Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

6. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if **we** have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. The NONRENEWAL provision of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

NONRENEWAL

**We** may decide not to renew this Policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to **you** and **your** insurance agent or broker at their last mailing addresses known to **us**. If notice is mailed, proof of mailing will be sufficient evidence of notice. **We** will also mail to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of nonrenewal. **We** will mail or deliver these notices at least sixty (60) days before the:

1. Expiration of the Policy; or

2. Anniversary date of this Policy if this Policy has been written for a term of more than one (1) year.

If notice of nonrenewal is not received by **you** as outlined above, **you** and **your** insurance agent or broker will receive written notice of **our** intent to renew this Policy. This notice will be sent at least twenty (20) days prior to the Policy expiration or anniversary date. Included in this notice will be changes, if any, in rates, terms, or conditions made to the expiring Policy. **We** will mail or deliver the notice to **you** and **your** insurance agent or broker, at their last mailing address known to **us**.

This notice will not be sent if **we** have received written notice, prior to the expiration date of this Policy, of **your** intent to obtain replacement coverage elsewhere or that **you** have already done so.

Endorsement number 1 for policy number YAC-L9L-469720-039

Named Insured Board of Regents of the University of Washington, The University of Washington Medical Center and your affiliated or subsidiary entities owned, controlled or coming under your active management and your interest in partnerships or joint ventures as now exist or may hereafter be constituted or acquired during the policy term.

This endorsement is effective 07/01/2019 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

DESCRIPTION OF CHANGE                                                              PREMIUM

POLICY COVER PAGE, Form PY 00 00 01 17 is amended as follows:

The named insured on the Policy Cover Page is changed to:
Board of Regents of the University of Washington, The University of Washington
Medical Center and your affiliated or subsidiary entities owned, controlled or coming
under your active management and your interest in partnerships or joint ventures as now
exist or may hereafter be constituted or acquired during the policy term.

Formerly: University of WA Medical Center

SECTION I - DECLARATIONS, Form PY 00 01 02 17 is amended as follows:

The First Named Insured on the Declarations is changed to:
Board of Regents of the University of Washington, The University of Washington
Medical Center and your affiliated or subsidiary entities owned, controlled or coming
under your active management and your interest in partnerships or joint ventures as now
exist or may hereafter be constituted or acquired during the policy term.

Formerly: University of WA Medical Center

SECTION I - DECLARATIONS, LIMITS OF LIABILITY TABLE – PART ONE,
Form PY 00 01 02 17 is amended as follows:

Endorsement Number PZ 00 41 04 18, TIME ELEMENT LOSSES DUE TO
CONTAMINATION BY COMMUNICABLE DISEASE is added.

Limit of Liability: 30 Days, Not to Exceed $1,000,000 limit

## Change Endorsement (continued)

The consecutive days for NEWLY ACQUIRED LOCATIONS is amended to 30 days.

Formerly: 90 days

The Limit of Liability for COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined is decreased by $ 1,500,000 to a new amount of $1,000,000.

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

IC9999
10-11

Policy Number   YAC-L9L-469720-039
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR

1. The following TIME ELEMENT COVERAGE AND LIMITATION is added to **E.** TIME ELEMENT
   COVERAGES AND LIMITATIONS in SECTION III- TIME ELEMENT of this policy:

   TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE

   **a.** If **your covered property** at a covered **location** is contaminated by a *communicable disease* as the
   direct result of a **covered loss**, and there is in force at the time of that **covered loss** a law or ordinance
   that requires you to suspend your operations on account of that contamination, **we** will pay the actual
   loss of GROSS PROFIT or GROSS EARNINGS you sustain due to the necessary suspension of your
   normal operations at that covered **location** because it is either partially or totally closed by order of
   authority described in **b.** below.

   **b.** The sole determinant of disease contamination of a magnitude great enough to either partially or totally
   close **your** normal operations will be either the:

   **(1)** National Center for Disease Control; or

   **(2)** The governmental authority having jurisdiction over **your** operations that relate to health and
   hygiene standards necessary to protect the general public.

   **c.** The most **we** will pay for this TIME ELEMENT COVERAGE AND LIMITATION in any one (1)
   **occurrence** is the LIMIT OF LIABILITY specified in the LIMITS OF LIABILITY TABLE.

   **d.** For the purposes of this endorsement the italicized term *communicable disease* means a viral or
   bacterial organism that is capable of inducing disease, illness, physical distress or death.

Endorsement number 2 for policy number YAC-L9L-469720-039

Named Insured Board of Regents of the University of Washington

This endorsement is effective 02/29/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Change Endorsement

| DESCRIPTION OF CHANGE | PREMIUM |
|---|---|
| Premium is adjusted as a result of changes on the schedule of locations on file with us. | $3,253 CR |

APPENDIX A – SCHEDULE OF COVERED LOCATIONS is amended as follows:

Location(s) 2.1, 2901 27th Ave S, Seattle, WA 98144 is DELETED from the Statement of Values on file with us and REMOVED from this policy in its entirety, including all references and groupings that may have included this/these location(s) in Form PY 00 01, SECTION I - DECLARATIONS, or any other endorsements attached to this policy, such that there is NO COVERAGE for this/these location(s) effective with this endorsement.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):       $3,253 CR
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:       $3,253 CR

Exhibit 2

# PARKER, SMITH & FEEK
## Vacancy Clause

This policy contains a vacancy clause, coverage will be reduced or eliminated in the event the building is vacant in excess of 60 days.

Please call us if you anticipate this situation.

Thank you

**Toll Free: 800-457-0220**

**Bellevue: 425-709-3600**
**Anchorage: 907-562-2225**
**Portland: 503-416-6870**
**Fax: 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**

# PROTECTIVE SAFEGUARDS

Your Property Insurance Policy contains a PROTECTIVE SAFEGUARD PROVISION.  This provision stipulates that coverage will be automatically suspended at the involved location if you fail to notify us or the carrier immediately when you:

1.      Know of any suspension or impairment in the Protective Safeguards; or

2.      Fail to maintain a Protective Safeguard, over which you have control, in complete working order.

Protective Safeguards are described in your policy and/or endorsement. They may include such things as: sprinkler systems; alarm systems; security services; or any number of items.

It is extremely important that you contact, by telephone, Parker, Smith & Feek if any of the Protective Safeguards described in your policy/endorsement are impaired for **ANY** reason.  We will transmit this information to the insurance carrier to ensure that coverage is not suspended.

If an impairment occurs on a weekend or after regular business hours, please contact us immediately on the next business day.  If this involves a sprinkler impairment due to breakage, leakage, freezing conditions, or opening sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

It is vital that this information be conveyed to your property managers, building maintenance staff, and any other personnel that may be involved in functions that could impair these protective safeguards.  A basic set of procedures is enclosed.

Should you have any questions relating to this, please feel free to contact me directly.

# PARKER, SMITH & FEEK
# PROTECTIVE SAFEGUARDS IMPAIRMENT PROCEDURES

| | |
|---|---|
| **NOTIFICATION** | If you anticipate that <u>any</u> of your protective systems will be taken out of service or if you significantly alter your protection system maintenance program, <u>call</u> Parker, Smith & Feek. |
| **CONTACT** | Direct calls to your Account Executive or Account Administrator. |
| **INFORMATION** | Provide us with details regarding your impairment:<br>• What type of system?<br>• What does it protect?<br>• Why is it being taken out of service?<br>• How long will it be out of service? |
| **PRECAUTIONS TO TAKE** | 1. Have all materials for job on hand and ready.<br>2. Do not leave off longer than necessary.<br>3. Shut down hazardous processes in the area.<br>4. Notify your local fire department, etc.<br>5. Let your security people know of impairment.<br>6. When job is done restore protection.<br>7. Call Parker, Smith & Feek to notify us that protective system is back in service. |

**Toll Free: 800-457-0220**
**Direct**
**Bellevue: 425-709-3600**
**Anchorage: 907-562-2225**
**Portland: 503-416-6870**
**Fax: 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**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**A.** Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, **we** are required to provide **you** with a notice disclosing the portion of **your** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of **your** premium attributable to such coverage is shown in D. PREMIUM in the Declarations.

**B.** Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals the percentage indicated below of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Federal share of terrorism losses: 84%, calendar year 2016
Federal share of terrorism losses: 83%, calendar year 2017
Federal share of terrorism losses: 82%, calendar year 2018
Federal share of terrorism losses: 81%, calendar year 2019
Federal share of terrorism losses: 80%, calendar year 2020

**C.** Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © 2016 Liberty Mutual Insurance

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# PREMIER PROPERTY PROTECTOR™

POLICY COVER PAGE

| POLICY NUMBER: | DATE OF ISSUE: |
|---|---|
| YAC-L9L-469720-029 | 7/16/2019 |
| COMPANY PROVIDING INSURANCE: | |
| Employers Insurance Company of Wausau | |
| ( hereafter referred to as **we**, **us** or **our** ) | |

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**We** insure:

| Northwest Hospital |
|---|
| ( hereafter referred to as **you** or **your(s)** ) |

The term of this Policy is from 7/1/2019 to 7/1/2020 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

## PRODUCER NAME AND OFFICE

PARKER SMITH & FEEK INC
2233 112TH AVE NE,
BELLEVUE, WA  98004

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning. Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

IN WITNESS WHEREOF, the company has caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

President



Secretary

# TABLE OF CONTENTS

## POLICY COVER PAGE

SECTION I - DECLARATIONS................................................................................................... 5

**A.** FIRST NAMED INSURED AND MAILING ADDRESS...................................................................5

**B.** POLICY PERIOD .........................................................................................................................5

**C.** INSURING AGREEMENT..............................................................................................................5

**D.** PREMIUM ....................................................................................................................................5

**E.** PREMIUM PAYABLE....................................................................................................................6

**F.** COVERED LOCATION(S) .............................................................................................................7

**G.** TERRITORY..................................................................................................................................7

**H.** JURISDICTION .............................................................................................................................8

**I.** CURRENCY..................................................................................................................................8

**J.** DEFINED WORDS.........................................................................................................................8

**K.** LIMITS OF LIABILITY ..................................................................................................................8

**L.** CANCELLATION TIME SPECIFICATIONS................................................................................. 12

**M.** DEDUCTIBLES ........................................................................................................................... 12

**N.** QUALIFYING PERIOD(S)............................................................................................................ 16

SECTION II – PROPERTY DAMAGE.................................................................................... 17

**A.** COVERED PROPERTY............................................................................................................... 17

**B.** PROPERTY NOT COVERED ...................................................................................................... 17

**C.** EXCLUSIONS ............................................................................................................................. 18

**D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS ......................................................... 22

    **1.** ACCOUNTS RECEIVABLE................................................................................................ 22

    **2.** BRANDS AND LABELS ..................................................................................................... 22

    **3.** CONTROL OF DAMAGED GOODS ................................................................................... 23

    **4.** COURSE OF CONSTRUCTION ......................................................................................... 23

    **5.** DATA, PROGRAMS OR SOFTWARE................................................................................. 23

    **6.** DEBRIS REMOVAL ........................................................................................................... 24

    **7.** DECONTAMINATION COSTS............................................................................................ 24

    **8.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS ...................................................... 25

    **9.** DEFERRED PAYMENTS.................................................................................................... 25

    **10.** DEMOLITION AND INCREASED COST OF CONSTRUCTION............................................ 25

    **11.** ERRORS AND OMISSIONS............................................................................................... 26

    **12.** EXPEDITING EXPENSE.................................................................................................... 26

    **13.** FINE ARTS........................................................................................................................ 27

| | | |
|---|---|---|
| **14.** | FIRE DEPARTMENT SERVICE CHARGES............................................................................................ | 27 |
| **15.** | LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL.................................................................. | 27 |
| **16.** | MISCELLANEOUS **PERSONAL PROPERTY**........................................................................................ | 27 |
| **17.** | NEWLY ACQUIRED **LOCATIONS** ...................................................................................................... | 28 |
| **18.** | OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE ........................................ | 28 |
| **19.** | PROFESSIONAL FEES....................................................................................................................... | 28 |
| **20.** | PROTECTION AND PRESERVATION OF PROPERTY......................................................................... | 29 |
| **21.** | RADIOACTIVE CONTAMINATION...................................................................................................... | 29 |
| **22.** | TAX LIABILITY ................................................................................................................................... | 29 |
| **23.** | TEMPORARY REMOVAL OF PROPERTY .......................................................................................... | 30 |
| **24.** | TRANSIT ............................................................................................................................................ | 30 |
| **25.** | **VALUABLE PAPERS AND RECORDS** ............................................................................................ | 32 |

**SECTION III – TIME ELEMENT** ................................................................................... **33**

| | | |
|---|---|---|
| **A.** | LOSS INSURED.................................................................................................................................. | 33 |
| **B.** | TIME ELEMENT COVERAGES ........................................................................................................... | 33 |
| **1.** | *GROSS EARNINGS*........................................................................................................................... | 33 |
| **2.** | EXTRA EXPENSE .............................................................................................................................. | 35 |
| **3.** | LEASEHOLD INTEREST .................................................................................................................... | 35 |
| **4.** | RENTAL INSURANCE......................................................................................................................... | 35 |
| **C.** | PERIOD OF LIABILITY ....................................................................................................................... | 36 |
| **D.** | TIME ELEMENT EXCLUSIONS .......................................................................................................... | 37 |
| **E.** | TIME ELEMENT COVERAGES AND LIMITATIONS ............................................................................ | 38 |
| **1.** | *ATTRACTION PROPERTY*.................................................................................................................. | 38 |
| **2.** | CIVIL OR MILITARY AUTHORITY ...................................................................................................... | 38 |
| **3.** | COMPUTER SYSTEMS NON PHYSICAL DAMAGE............................................................................ | 39 |
| **4.** | CONTINGENT TIME ELEMENT .......................................................................................................... | 39 |
| **5.** | CRISIS MANAGEMENT....................................................................................................................... | 40 |
| **6.** | DELAY IN STARTUP .......................................................................................................................... | 40 |
| **7.** | EXTENDED PERIOD OF LIABILITY ................................................................................................... | 40 |
| **8.** | INGRESS / EGRESS .......................................................................................................................... | 41 |
| **9.** | OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT ................................................. | 41 |
| **10.** | ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT .................................................. | 42 |
| **11.** | PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT ............................................ | 42 |
| **12.** | RELATED **LOCATIONS**.................................................................................................................... | 42 |
| **13.** | RESEARCH AND DEVELOPMENT .................................................................................................... | 42 |
| **14.** | SOFT COSTS..................................................................................................................................... | 42 |

**SECTION IV – DESCRIBED LOSSES** ........................................................................... **44**

**A.** *EARTH MOVEMENT* ......................................................................................................................... 44

**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE ......................................................................................... 44

**C.** *EQUIPMENT BREAKDOWN* ................................................................................................................ 44

**D.** *FLOOD* ........................................................................................................................................... 47

**E.** *NAMED STORM* ............................................................................................................................... 47

**SECTION V - GENERAL POLICY CONDITIONS** ............................................................... 48

**A.** ASSIGNMENT .................................................................................................................................. 48

**B.** CANCELLATION ............................................................................................................................... 48

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD ............................................................................. 48

**D.** CONFORMITY TO STATUTES ............................................................................................................. 49

**E.** INSPECTION .................................................................................................................................... 49

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS ......................................... 49

**G.** LIBERALIZATION .............................................................................................................................. 50

**H.** NO REDUCTION BY LOSS ................................................................................................................. 50

**I.** NONRENEWAL ................................................................................................................................. 50

**J.** OTHER INSURANCE .......................................................................................................................... 50

**K.** PAIR, SET OR PARTS ....................................................................................................................... 51

**L.** POLICY MODIFICATION ..................................................................................................................... 51

**M.** TITLES ............................................................................................................................................ 51

**N.** TRANSFER OF RIGHTS AND DUTIES ................................................................................................. 51

**O.** VACANCY ....................................................................................................................................... 51

**P.** VALUATION ..................................................................................................................................... 52

**SECTION VI – LOSS CONDITIONS** ................................................................................ 55

**A.** ABANDONMENT OF PROPERTY ........................................................................................................ 55

**B.** APPRAISAL ..................................................................................................................................... 55

**C.** COLLECTION FROM OTHERS ............................................................................................................ 55

**D.** COMPANY OPTION .......................................................................................................................... 55

**E.** DUTIES AFTER A LOSS .................................................................................................................... 55

**F.** LOSS ADJUSTMENT / PAYABLE ........................................................................................................ 56

**G.** PAYMENT OF LOSS ......................................................................................................................... 57

**H.** SUBROGATION ................................................................................................................................ 57

**I.** SUIT AGAINST THE COMPANY .......................................................................................................... 57

**SECTION VII – DEFINITIONS** ......................................................................................... 58

**APPENDIX A - SCHEDULE OF COVERED LOCATIONS** ..................................................... 61

**APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES** ................................................ 62

**APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE** ..................................... 63

APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS
AND TERRITORIES................................................................................................................ 64

APPENDIX E - *FLOOD* HAZARD **LOCATIONS**....................................................................... 67

FORMS AND ENDORSEMENTS............................................................................................ 68

Disclosure Pursuant to Terrorism Risk Insurance Act........................................................................... 68

Exclusion of Certified Acts of Terrorism ............................................................................................... 68

Emergency Evacuation Expense........................................................................................................... 68

Communicable Disease Decontamination Cost Endorsement .............................................................. 68

Removal of Vacancy Condition ............................................................................................................. 68

Research Animals Endorsement........................................................................................................... 68

Schedule of Lenders or Mortgagees .................................................................................................... 68

STATE AMENDATORY ENDORSEMENTS............................................................................ 69

Washington Changes ........................................................................................................................... 69

Washington Changes - Cancellation and Nonrenewal.......................................................................... 69

# SECTION I - DECLARATIONS

### A. FIRST NAMED INSURED AND MAILING ADDRESS

Northwest Hospital and any subsidiary, and the interest of Northwest Hospital in any partnership or joint venture in which Northwest Hospital has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as **you** or **yours**, including legal representatives.

When any Insured described above is a party to a written contract or agreement on file that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to **covered property** which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any TIME ELEMENT Coverage to the legal entity, except as provided under LEASEHOLD INTEREST of this Policy or as specifically endorsed to the Policy.

Compliance and Risk Services
Box 354964; 4300 Roosevelt Way NE
Seattle, WA 98105-4964

### B. POLICY PERIOD

The term of this Policy is from July 1, 2019 to July 1, 2020 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

### C. INSURING AGREEMENT

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

### D. PREMIUM

This Policy is issued in consideration of the following initial premium inclusive of any premium shown on endorsements which are part of the Policy at the time of issue.

| Policy Premium (Excluding premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended): | $354,360 |
|---|---|
| | |
| Policy Premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended: | Rejected |
| • Policy Premium for Fire Following Acts of **Terrorism** (in States where required) | $19,640 |
| | |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges summary shown below) | $0 |
| | |
| Total Policy Premium/Other Charges for Above Policy Period: | $374,000 |
| | |
| Policy Premium will be billed annual. | |

 © 2016 Liberty Mutual Insurance

| The Deposit Premium/Other Charges is: | $374,000 |
|---|---|

**E.** PREMIUM PAYABLE

The First Named Insured pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of the First Named Insured.

Premiums will be paid in the currency designated in paragraph I. CURRENCY.

 © 2016 Liberty Mutual Insurance

**F.** COVERED LOCATION(S)

This Policy applies at a **location(s)**:

1. Listed on a SCHEDULE on file with **us**;

2. Listed on the SCHEDULE attached to this Policy;

3. Covered as a **Miscellaneous Unnamed Location**; or

4. Covered under the terms and conditions of the NEWLY ACQUIRED **LOCATIONS** Coverage or ERRORS AND OMISSIONS Coverage.

**G.** TERRITORY

Coverage under this Policy applies to **covered property** within the continental United States of America, Hawaii and Puerto Rico.

© 2016 Liberty Mutual Insurance

**H.** JURISDICTION

The validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York.

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**I.** CURRENCY

All amounts, including deductibles and LIMITS OF LIABILITY, indicated in this Policy are in U.S. Dollars unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

**J.** DEFINED WORDS

Words in bold face type have special meanings in this Policy and are defined in the DEFINITIONS section of this Policy. These definitions apply to this entire Policy and to any endorsements to it. Definitions that apply to individual sections or paragraphs are italicized and defined in the applicable sections or paragraphs.

**K.** LIMITS OF LIABILITY

When a POLICY LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, **our** maximum LIMIT OF LIABILITY in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the stated POLICY LIMIT OF LIABILITY.

1. When a PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, it will apply to all coverages provided throughout this Policy, unless a LIMIT OF LIABILITY or "NCP" (No Coverage Provided) is indicated.

    a. When a LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, such limit will be the maximum amount payable for such loss or damage and cannot be combined with any other LIMIT OF LIABILITY.

    b. If "NCP" is specified in the LIMITS OF LIABILITY, there is no coverage provided in this Policy.

2. LIMITS OF LIABILITY in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

    a. When a LIMIT OF LIABILITY that applies in the aggregate during any Policy year is shown, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY during any Policy year.

    b. When a LIMIT OF LIABILITY applies to a **location(s)**, specified property, DESCRIBED LOSSES or a specific coverage, the smallest applicable LIMIT OF LIABILITY will be the maximum amount payable.

    c. Should an **occurrence** result in liability payable under more than one Policy issued to **you** by **us**, or by **our** subsidiaries, partners, or associated insurance companies, the maximum amount payable in the aggregate under all such policies will be the applicable LIMIT(S) OF LIABILITY indicated in this Policy.

    d. When a LIMIT OF LIABILITY applies to TIME ELEMENT only, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY per **occurrence**.

3. LIMITS OF LIABILITY specified below or elsewhere in this Policy do not increase and are part of and not in addition to the POLICY LIMIT OF LIABILITY or the PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY.

4. LIMITS OF LIABILITY apply per **occurrence** unless otherwise specified, including time and distance limits.

 © 2016 Liberty Mutual Insurance

LIMITS OF LIABILITY TABLE -- PART ONE

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| POLICY LIMIT OF LIABILITY | $500,000,000 |
| TIME ELEMENT | $161,914,009 |
| ACCOUNTS RECEIVABLE | $10,000,000 |
| *ATTRACTION PROPERTY* | 1 statute miles from a covered **location** 30 consecutive days, not to exceed $500,000 |
| BRANDS AND LABELS | $1,000,000 |
| CIVIL OR MILITARY AUTHORITY | 1 statute miles from a covered **location** 90 consecutive days, not to exceed $10,000,000 |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | $1,000,000 |
| CONTINGENT TIME ELEMENT | |
| • *Direct Dependent Contingent Time Element Location(s)*: Not Scheduled or on file with **us** | $10,000,000 |
| • *Indirect Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** | $10,000,000 |
| CONTROL OF DAMAGED GOODS | $500,000 |
| COURSE OF CONSTRUCTION | $25,000,000 |
| CRISIS MANAGEMENT | 30 consecutive days, not to exceed $1,000,000 |
| DEBRIS REMOVAL | $25,000,000 |
| DECONTAMINATION COSTS | $2,500,000 |
| DEFERRED PAYMENTS | $2,500,000 |

© 2016 Liberty Mutual Insurance

| | |
|---|---|
| DELAY IN STARTUP | $1,000,000 |
| DEMOLITION AND INCREASED COST OF CONSTRUCTION | $50,000,000 |
| ERRORS AND OMISSIONS | $15,000,000 |
| EXPEDITING EXPENSE | $25,000,000 |
| EXTENDED PERIOD OF LIABILITY | 365 consecutive days |
| EXTRA EXPENSE | $10,000,000 |
| **FINE ARTS** | $2,500,000 |
| FIRE DEPARTMENT SERVICE CHARGES | $5,000,000 |
| IMPOUNDED WATER | 30 consecutive days, not to exceed $1,000,000 |
| INGRESS / EGRESS | 1 statute miles from a covered **location** 90 consecutive days, not to exceed $10,000,000 |
| LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL in the **annual aggregate** | $1,000,000 |
| LEASEHOLD INTEREST | $10,000,000 |
| MISCELLANEOUS **PERSONAL PROPERTY** | $10,000,000 |
| **Miscellaneous Unnamed Locations** | $10,000,000 |
| Mold, Mildew or Fungus directly resulting from a **Covered Loss** | $10,000,000 |
| NEWLY ACQUIRED **LOCATIONS** | 90 consecutive days, not to exceed $10,000,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE and OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | $15,000,000 |
| **Ordinary Payroll** | 180 consecutive days |

| PROFESSIONAL FEES | $500,000 |
| RADIOACTIVE **CONTAMINATION** | $5,000,000 |
| RENTAL INSURANCE | $1,000,000 |
| RESEARCH AND DEVELOPMENT | $5,000,000 |
| *SOFT COSTS* | $1,000,000 |
| TAX LIABILITY | $25,000 |
| TRANSIT | $2,500,000 |
| **VALUABLE PAPERS AND RECORDS** | $25,000,000 |

## LIMITS OF LIABILITY TABLE – PART TWO

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| *EARTH MOVEMENT* in the **annual aggregate** | $10,000,000 |
| except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *EARTH MOVEMENT* **annual aggregate** limit: | |
| • **Covered property** situated in: | |
| Pacific NW Earth Movement Zone | $10,000,000 |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | Included |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE | $100,000,000 |
| TIME ELEMENT | $100,000,000 |
| except: | |
| The following limits are part of and not in addition to the EQUIPMENT BREAKDOWN limits specified above: | |
| • Ammonia **Contamination** | $1,000,000 |

 © 2016 Liberty Mutual Insurance

| | |
|---|---|
| • **CONTINGENT TIME ELEMENT** | $1,000,000 |
| • Spoilage Damage | $5,000,000 |
| *FLOOD* in the **annual aggregate**<br><br>except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *FLOOD* **annual aggregate** limit:<br><br>• **Covered property** at **locations** situated in:<br><br>    Flood Hazard - High | $100,000,000<br><br><br><br><br><br><br><br>$2,500,000 |
| *NAMED STORM* | Included |

### ENDORSEMENT LIMITS OF LIABILITY

| Endorsement Number | Endorsement Name | LIMITS OF LIABILITY |
|---|---|---|
| CNP 90 06 01 17 | Disclosure Pursuant to Terrorism Risk Insurance Act | Rejected |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism | |
| PY 03 11 01 17 | Research Animals Endt | $5,000,000, no more than<br>$5,000 per animal |

### L. CANCELLATION TIME SPECIFICATIONS

| | |
|---|---|
| Cancellation for Nonpayment of Premium | Ten (10) days |
| Cancellation for All Reasons Other Than Nonpayment of Premium | 30 days |

### M. DEDUCTIBLES

Subject to the Deductible General Provisions stated below, **we** will not pay unless a **covered loss**, including any insured TIME ELEMENT loss, exceeds the deductible(s) specified below. **We** will then pay the amount of **covered loss** in excess of the deductible, up to the applicable LIMIT OF LIABILITY.

#### Deductible General Provisions

**We** will be liable only if **you** sustain a **covered loss**, including any insured TIME ELEMENT loss, in a single **occurrence** greater than the applicable deductible specified. When this Policy insures more than one (1) **location**, the deductible(s) will apply against the total loss covered by this Policy in an **occurrence** unless otherwise stated.

© 2016 Liberty Mutual Insurance

1. Unless otherwise stated, if two or more deductibles apply to an **occurrence**, the total deductible will not exceed the largest applicable deductible, except as follows:

   a. When a separate PROPERTY DAMAGE and TIME ELEMENT deductible apply, each will be applied separately.

   b. If there are multiple **locations** involved in an **occurrence** where two or more deductibles apply to a **location** in an **occurrence**, the largest deductible applying to each **location** will be applied separately to each such **location**, regardless of the number of **locations** involved in the **occurrence**.

   c. Unless specified otherwise, if deductibles are specified for a **location**, the largest deductible applicable will be applied to that **location** regardless of the number of **locations** involved in the **occurrence**.

   d. Equipment Breakdown: With regard to Equipment Breakdown coverage, if one or more deductible amounts are shown below, each will be applied separately.

   e. The stated *EARTH MOVEMENT* deductible will be applied to *EARTH MOVEMENT* loss. The stated *FLOOD* deductible will be applied to *FLOOD* loss. The stated *NAMED STORM* deductible will be applied to *NAMED STORM* loss. Provisions **1.a.** and **1.b.** above will also be applied to each.

2. When a percent deductible is specified, whether separate or combined, the deductible amount will be determined as follows:

   a. PROPERTY DAMAGE: The percentage of the total reported values on file with **us** for the **covered property** at the corresponding **location(s)** (including sub-**locations**) where the direct physical loss or damage occurred; plus

   b. TIME ELEMENT: The percentage of the full TIME ELEMENT values that would have been earned in the 12-month period following the **occurrence**, had no loss occurred, by use of the facilities at the **location** where the direct physical loss or damage occurred, plus that proportion of the full TIME ELEMENT values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12-month period following the **occurrence**.

   c. Equipment Breakdown: The percentage of the gross amount of loss, damage or expense (prior any deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

3. When a minimum deductible is shown, the minimum deductible is the sum of:

   a. The specific **location** deductible for each covered **location** where the amount of physical loss or damage exceeds the specific **location** deductible; and

   b. The amount of physical loss or damage for each covered **location** where the amount of physical loss or damage is less than the specific **location** deductible.

4. When an average daily value deductible is provided, this deductible will be determined as follows:

   a. The total amount of TIME ELEMENT loss applicable for the entire **location** where the direct physical loss or damage happens will be included.

   b. Divide the result in Paragraph **a.** by the number of days the business would have been open during the PERIOD OF LIABILITY. The result is the average daily value.

c.   Multiply the average daily value in Paragraph **b.** by the number of days specified in the DEDUCTIBLE TABLE below.

If more than one (1) **location** is included in the valuation of the loss, the average daily value will be the combined value of all affected **locations**.

5.   When a per unit deductible is specified, the following shall be considered a separate unit of insurance:

a.   Each separate building, the contents of each separate building and **covered property** in each yard at that covered **location**.

b.   TIME ELEMENT loss as applicable, including all other **locations** where TIME ELEMENT loss ensues as provided by this Policy.

6.   When a time deductible is shown, **we** will not be liable for any loss under that coverage that occurs during that specified time period immediately following the direct physical loss or damage. If a time deductible is shown in days, each day shall mean twenty four (24) consecutive hours.

7.   When a deductible is shown in the Declarations for a *NAMED STORM*, the following applies:

a.   All direct physical loss or damage to **covered property** including TIME ELEMENT loss caused by or resulting from a *NAMED STORM* will be subject to the deductible obtained by calculating all of the following:

(1)   The sum of all applicable percentage deductibles calculated as described in Deductible General Provisions Item **2.** above, subject to any applicable minimums or maximums; and

(2)   Any other applicable deductible amounts.

### DEDUCTIBLE TABLE – PART ONE

| Coverage | Deductible Percentage / Amounts |
|---|---|
| Policy Deductible (except as otherwise indicated) | $100,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | $100,000 |
| TRANSIT | $100,000 |
| Fine Arts | $100,000 |

© 2016 Liberty Mutual Insurance

## DEDUCTIBLE TABLE – PART TWO

| Coverage | Deductible Percentage / Amounts |
|---|---|
| *EARTH MOVEMENT* | 2% subject to $500,000 minimum |
| except:<br>• **Covered property** situated in: | |
| Pacific NW Earth Movement Zone | 2% subject to $500,000 minimum |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $100,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE | $100,000 |
| TIME ELEMENT | $100,000 |
| • Spoilage Damage | $100,000 |
| • Ammonia **Contamination** | $100,000 |
| *FLOOD* | $100,000 |
| except:<br>• **Covered property** at **locations** situated in: | |
| Flood Hazard - High | $500,000 Real Property<br>$500,000 Personal Property<br>$100,000 Other |
| *NAMED STORM* | $100,000 |

## **OCCURRENCE** TIME SPECIFICATIONS

| *EARTH MOVEMENT* | continuous 168 hours |
|---|---|
| *NAMED STORM* | continuous 72 hours |

**N.** QUALIFYING PERIOD(S)

A *qualifying period* applies for the coverages shown in the Table below. *Qualifying period* is the period of time that must be exceeded for coverage to apply. Once the *qualifying period* has been exceeded, coverage applies from the initial event of loss.

## QUALIFYING PERIOD TABLE

| Coverage | QUALIFYING PERIOD |
|---|---|
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | 24 hours |
| CRISIS MANAGEMENT | 24 hours |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | 24 hours |

# SECTION II – PROPERTY DAMAGE

## A. COVERED PROPERTY

**1. We** cover **your** insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered **location**, unless otherwise excluded:

    **a. Real Property**, including new buildings, structures and additions in the COURSE OF CONSTRUCTION.

    **b. Personal Property**, including *personal property of others*.

    *Personal property of others* are tangible things that **you** do not own, other than **real property**, that:

        **(1)** are sold by **you** and that **you** have agreed, prior to loss, to insure for the account of the purchaser during delivery;

        **(2) you** have agreed in writing prior to any loss or damage to provide coverage;

        **(3)** are in **your** care, custody or control;

        **(4) you** have an insurable interest in, or an obligation to provide coverage;

        **(5) you** are legally liable for;

        **(6)** are improvements and betterments consisting of fixtures, alterations, installation or additions comprising part of a building not owned by **you** and acquired or made at **your** expense which **you** cannot legally move, but only to the extent of **your** insurable interest therein; or

        **(7)** are **personal property** (other than vehicles) of **your** employees and officers.

**2. We** also cover the interest of contractors and subcontractors in **covered property** during construction at or within one-thousand (1,000) feet of a covered **location** to the extent of **your** legal liability for direct physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

## B. PROPERTY NOT COVERED

**We** do not cover the following types of property:

**1.** Aircraft, except when unfueled and manufactured by **you**;

**2.** Animals, standing timber including undisturbed natural wooded areas, or growing crops;

**3.** Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

**4.** Caves, caverns, mines of any type, or any property contained within them;

**5.** Contraband or property in the course of illegal transportation or trade;

**6.** Currency, money, negotiable and non-negotiable instruments, notes or securities;

**7.** Dams, dikes, levees, docks, wharfs, piers or bulkheads;

© 2016 Liberty Mutual Insurance

8. **Electronic data**, computer programs or software, except when they are stock in process, finished stock manufactured by **you**, raw materials, supplies, other merchandise not manufactured by **you** or as provided in this Policy;

9. Land and any substance in or on land except this exclusion does not apply to **land improvements**;

10. **Land improvements** at a golf course;

11. Overhead transmission and distribution systems located more than one-thousand (1,000) feet away from a covered **location**;

12. *Personal property of others* that is in the care, custody or control of **you** or **your** affiliates for which **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

13. Precious metals or precious stones, except when used in industrial or service operations;

14. Property in transit, except as otherwise provided by this Policy;

15. Property more specifically insured, except for any excess over any LIMITS OF LIABILITY of such more specific insurance;

16. Property sold by **you** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to **your** customers, except as provided by the DEFERRED PAYMENTS coverage of this Policy;

17. Spacecraft, satellites, associated launch vehicles and any property contained therein;

18. Vehicles otherwise insured for physical loss or damage;

19. Water except this exclusion does not apply to water that is contained within any enclosed tank, piping system or any other processing equipment; or

20. Watercraft, except watercraft **you** manufacture and are part of **your** inventory while being stored un-fueled and on dry land at a covered **location**.

C. EXCLUSIONS

The following exclusions apply unless otherwise stated in this Policy:

1. **We** do not cover:

   a. Indirect or remote loss or damage;

   b. Interruption of business, except to the extent provided by this Policy;

   c. Loss of market or loss of use;

   d. Loss or damage or deterioration arising from any delay;

   e. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss;

   f. Loss or damage from enforcement of any law or ordinance:

      (1) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or
      (2) Requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this Policy;

**g.** Loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense; or

**h.** Loss or damage caused by or resulting from freezing, disease or drought to landscape gardening, including plants, trees and shrubs.

**2. We** do not cover physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing to the loss concurrently or in any other sequence:

    **a. Terrorism,** including action in hindering or defending against an actual or expected incident of **terrorism,** but this exclusion applies only when one of the following are attributed to an incident of **terrorism:**

        **(1)** The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive **contamination;** or

        **(2)** Radioactive material is released, and it appears that one purpose of **terrorism** was to release such material; or

        **(3)** The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

        **(4)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

        **(5)** Loss or damage to property located outside of the United States, unless there is a law in effect in the jurisdiction where the loss or damage occurs that expressly prohibits this exclusion; or

        **(6)** The total of all damage to property, whether covered by this Policy or otherwise, exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, **we** will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption (TIME ELEMENT) losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any **terrorism** exclusions. Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one (1) incident, for the purpose of determining whether the threshold is exceeded.

        With respect to this item **2.a.(6),** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of **terrorism,** there is no coverage in this Policy.

    However, this exclusion does not apply:

        **(1)** If **terrorism** results in fire, in which case **we** cover the direct physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage occurs that expressly prohibits the exclusion of fire losses resulting from **terrorism.** This exception is subject to all applicable Policy provisions including the LIMIT OF LIABILITY on the affected property. Such coverage for ensuing loss applies only to direct loss or damage by fire to **covered property.** This coverage does not apply to insurance provided under any TIME ELEMENT coverages, or to fire legal liability coverage; or

**(2)** While the United States **Terrorism** Risk Insurance Act (TRIA), as amended, is in effect:

    **(a)** To loss or damage caused by a "Certified Act of **Terrorism**" provided that **you** elected coverage for such, and only to the extent provided by the terms and conditions of the applicable CERTIFIED ACTS OF **TERRORISM** AND DISCLOSURE PURSUANT TO **TERRORISM** RISK INSURANCE ACT endorsement; or

    **(b)** To loss or damage caused by **terrorism** that would have been certified as an "act of **terrorism**", but was not certified solely because the total of all property and casualty insurance losses resulting from the act failed to exceed the \$5,000,000 "certified act of **terrorism**" threshold specified under TRIA.

**b.** Nuclear reaction or nuclear radiation or radioactive **contamination**. However, this exclusion does not apply if:

    **(1)** The RADIOACTIVE **CONTAMINATION** PROPERTY DAMAGE COVERAGE AND LIMITATION applies but only to the extent provided; or

    **(2)** Fire directly results from the nuclear reaction, nuclear radiation, or radioactive **contamination**, in which case **we** cover the physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage happens that expressly prohibits the exclusion of fire losses resulting from nuclear reaction, radiation or **contamination**.

**c.** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

    **(1)** Government or sovereign power (de jure or de facto);

    **(2)** Military, naval or air force; or

    **(3)** Agent or authority of any party specified in **(1)** or **(2)** above.

**d.** Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**e.** The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, biological, viral, radioactive or similar agents or matter, whether in time of peace or war and regardless of who commits the act.

**f.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**g.** Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

**h.** Risks of contraband, or illegal transportation or trade.

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

    **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

    **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

 © 2016 Liberty Mutual Insurance

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

   j.  Lack of the following services:

   (1) Incoming electricity, fuel, water, gas, steam or refrigerant;

   (2) Outgoing sewerage; or

   (3) Incoming or outgoing voice, data or video,

   all when caused by an event away from the covered **location** except as provided in the ON/OFF PREMISES INTERRUPTION OF SERVICES coverages of this Policy. But, if the lack of such a service causes physical loss or damage of the type insured by this Policy at a covered **location**, then only that resulting damage is covered.

3. **We** do not cover the following, but, if direct physical loss or damage not excluded by this Policy results, then **we** cover that resulting damage only:

   a.  Faulty workmanship, material, construction or design.

   b.  Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

   c.  Deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

   d.  Settling, cracking, shrinking, bulging, or expansion of:

   (1) Foundations (including any pedestal, pad, platform or other property supporting machinery)

   (2) Floors

   (3) Pavements

   (4) Walls, including retaining walls

   (5) Ceilings

   (6) Roofs

   e.  Extremes or changes in temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

   f.  Cumulative effects of smog, smoke, vapor, liquid and dust.

   g.  Insect, animal or vermin damage.

   h.  Loss or damage to the interior portion of buildings under construction caused by rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

4. **We** do not cover the following unless directly resulting from a **covered loss**:

   a.  **Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy.

   b.  Shrinkage.

c. Changes in color, flavor, texture or finish.

d. Remediation, change, correction, repair or assessment of any date or time recognition in any **electronic data processing equipment** or media.

e. Failure of **electronic data processing equipment** or media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times.

## D. PROPERTY DAMAGE COVERAGES AND LIMITATIONS

**We** provide the following PROPERTY DAMAGE COVERAGES AND LIMITATIONS for a **covered loss** as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

1. ACCOUNTS RECEIVABLE

   a. **We** cover the following resulting from a **covered loss** to accounts receivable records located while anywhere within the Policy territory, including while in transit:

      (1) Any shortage in the collection of accounts receivable.

      (2) The interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum. Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable.

      (3) The reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

      (4) Any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

   b. Accounts receivable records include records stored as **electronic data**. In the event of loss, **you** will:

      (1) Use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

      (2) Reduce the loss by use of any property or service owned or controlled by **you** or obtainable from other sources.

      (3) Reconstruct, if possible, accounts receivable records so that no shortage is sustained.

   c. The settlement of loss will be made within ninety (90) days from the date of the **covered loss**. All amounts recovered by **you** on outstanding accounts receivable on the date of loss will belong and be paid to **us** up to the amount of loss paid by **us.** All recoveries exceeding the amount paid will belong to **you**.

   d. **We** do not cover shortage resulting from:

      (1) Bookkeeping, accounting or billing errors or omissions; or
      (2) Alteration, falsification, manipulation; or

      (3) Concealment, destruction or disposal, of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

2. BRANDS AND LABELS

In the event of a **covered loss** to **your** branded or labeled merchandise, and **we** elect to take all or any part of that property, **you** may at **our** expense:

**a.** Stamp "salvage" on the property or its containers; or

**b.** Remove or obliterate the brands or labels,

if doing so will not damage the property.

**You** must re-label such property or its containers to be in compliance with any applicable law.

3. CONTROL OF DAMAGED GOODS

**We** grant control to **you** of physically damaged **covered property** consisting of finished goods manufactured by or for **you** as follows:

**a.** **You** will have full rights to the possession and control of damaged property in the event of physical damage to **your covered property** provided proper testing is done to show which property is physically damaged.

**b.** Using reasonable judgment, **you** will decide if the physically damaged **covered property** can be reprocessed or sold.

**c.** Property **you** determine to be unfit for reprocessing or selling will not be sold or disposed of except by **you**, or with **your** consent.

Any salvage proceeds received will reduce the recoverable loss.

4. COURSE OF CONSTRUCTION

**a.** **We** cover direct physical loss or damage at a covered **location** to buildings or structures that **you** begin to construct during the Policy period.

**b.** **We** also cover materials, supplies, machinery, equipment and fixtures:

   **(1)** At a covered **location** and intended for installation in the new construction;

   **(2)** After such property has been delivered to **you** or **your** contractor, and while such property is located offsite at a storage **location**; or

   **(3)** After such property has been delivered to **you** or **your** contractor, and while such property is in transit from a storage **location** to another storage **location** or to a covered **location.**

**c.** This coverage only applies to the construction of **covered property you** intend to own or occupy once constructed.

**d.** This coverage does not apply to any property owned or rented by any contractor or subcontractor.

5. DATA, PROGRAMS OR SOFTWARE

**a.** **We** cover direct physical loss or damage to **your electronic data**, computer programs or software, including direct physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's territory, including:

   **(1)** The cost of the following reasonable and necessary actions taken by **you** provided such actions are taken due to actual insured physical loss or damage to **electronic data**, computer programs or software:

(a) Actions to temporarily protect and preserve insured **electronic data**, computer programs or software.

(b) Actions taken for the temporary repair of insured physical loss or damage to **electronic data**, computer programs or software.

(c) Actions taken to expedite the permanent repair or replacement of such damaged property.

**(2) Your** reasonable and necessary cost to temporarily protect or preserve covered **electronic data**, computer programs or software against immediately impending direct physical loss or damage to **electronic data**, computer programs or software. In the event that there is no direct physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such direct physical loss or damage.

**b.** With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the *qualifying period* specified in the *Qualifying Period* Table in the Declarations is exceeded.

**c.** Any amounts recoverable under this PROPERTY DAMAGE COVERAGE AND LIMITATION are excluded from coverage elsewhere in this Policy.

**d.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes loss or damage to **electronic data**, computer programs or software when they are stock in process, finished stock manufactured by **you**, raw materials, supplies or other merchandise not manufactured by **you**.

**e.** With respect to this PROPERTY DAMAGE COVERAGE AND LIMITATION, the following additional exclusions apply:

**(1)** Errors or omissions in processing or copying; and

**(2)** Loss or damage to **electronic data**, computer programs or software from errors or omissions in programming or machine instructions.

**6.** DEBRIS REMOVAL

**a. We** cover **your** reasonable and necessary costs to remove debris from a covered **location** that remains as a direct result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION covers the costs of removal of contaminated **covered property** or the **contaminant** in or on **covered property** only if the **contamination**, due to the actual presence of **contaminant(s),** results from a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover the costs of removal of:

**(1)** Contaminated uninsured property; or

**(2)** The **contaminant** in or on uninsured property,

whether or not the **contamination** results from a **covered loss**.

**7.** DECONTAMINATION COSTS

**a. We** cover **your** decontamination costs directly resulting from a **covered loss** at a covered **location** subject to the following conditions:

**(1)** These decontamination costs must be a direct result of enforcement of the law or ordinance that

is in force at the time of the loss regulating decontamination; and

   **(2)** The amount **we** cover includes the increased cost to remove **your** contaminated **covered property** to comply with the law or ordinance.

**b.** **We** do not cover costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** resulted from a **covered loss**.

**8.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS

   **a.** **We** cover the cost to defend that part of any suit against **you** alleging direct physical loss or damage of the type insured by this Policy to personal property of others of the type insured by this Policy, in **your** custody, and while at a covered **location**. **We** may without prejudice undertake any investigation, negotiation or settlement of any such claim or suit as **we** deem appropriate.

   **b.** **We** do not cover the cost to defend any suit against **you** when **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

**9.** DEFERRED PAYMENTS

   **a.** **We** cover direct physical loss or damage to **personal property** of the type insured by this Policy sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property. In the event of loss to property sold under deferred payment plans, **you** will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

   **b.** **We** do not cover loss:

   **(1)** Pertaining to products recalled including **your** costs to recall, test or to advertise such recall.

   **(2)** From theft or conversion by the buyer of the property after the buyer has taken possession of such property.

   **(3)** To the extent the buyer continues payments.

   **(4)** Not within this Policy's territory.

**10.** DEMOLITION AND INCREASED COST OF CONSTRUCTION

   **a.** **We** cover **your** reasonable and necessary costs that are described in Item **b.** below, actually incurred to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of **covered property** consisting of buildings, structures, machinery and equipment at a covered **location**, provided:

   **(1)** Such law or ordinance is in force on the date of the **covered loss**;

   **(2)** Its enforcement is a direct result of a **covered loss**; and

   **(3)** The buildings, structures, machinery and equipment were in compliance with such law or ordinance, regardless of any lack of enforcement, prior to the **covered loss**.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION, as respects the property insured in Item **a.** above, covers:

   **(1)** The cost incurred to demolish, repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

**(2)** The cost incurred:

  **(a)** To demolish the physically undamaged portion of such property insured; and

  **(b)** To rebuild it with materials and in a manner to satisfy such law or ordinance,

  when the demolition of the physically undamaged portion of such property is required to satisfy such law or ordinance, as a result of a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes any costs incurred as a result of the enforcement of any law or ordinance regulating pollution.

**d.** The amount **we** cover for this PROPERTY DAMAGE COVERAGE AND LIMITATION at each covered **location** in any one (1) **occurrence** will not exceed the actual cost incurred in demolishing the physically damaged and undamaged portions of the property covered in item **a**. above plus:

  **(1)** If rebuilt on the same site, the actual cost incurred in rebuilding there; or

  **(2)** If rebuilt on another site, the lesser of:

    **(a)** The actual cost incurred in rebuilding on the other site, excluding the cost of land; or

    **(b)** The cost that would have been incurred to rebuild on the same site.

## 11. ERRORS AND OMISSIONS

**a.** If direct physical loss or damage is not covered under this Policy solely because of an error or unintentional omission made by **you**:

  **(1)** In the description of where **covered property** is physically located; or

  **(2)** To include any **location**:

    **(a)** Owned, rented or leased by **you** on the effective date of this Policy; or

    **(b)** Purchased, rented or leased by **you** during the term of the Policy; or

  **(3)** That results in termination of the coverage provided by this Policy, except for cancellation due to nonpayment of premium,

  **we** cover the amount **we** would have paid, including any TIME ELEMENT loss, had the error or omission not been made.

**b.** This coverage does not apply to the failure to report values, or the reporting of inaccurate values of **covered property**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply if coverage is provided elsewhere in this Policy.

**d.** **You** must report such errors or unintentional omissions to **us** in writing as soon as they are discovered.

## 12. EXPEDITING EXPENSE

**a.** **We** cover **your** reasonable and necessary costs:

  **(1)** For the temporary repair of **covered property** from a **covered loss**; and

**(2)** To expedite the permanent repair or replacement of such damaged property.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

**13.** FINE ARTS

**a. We** cover direct physical loss or damage to **your fine arts** while anywhere within this Policy's territory, including while in transit.

**b.** The following additional exclusions apply:

**We** do not cover:

**(1)** Loss or damage sustained from any repair, restoration, or retouching process;

**(2)** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, *EARTH MOVEMENT*, *FLOOD*, explosion, vandalism, collision, derailment or overturn of conveyance.

**14.** FIRE DEPARTMENT SERVICE CHARGES

**We** cover the reasonable and necessary:

**a.** Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the **covered property**.

**b.** Costs incurred by **you** to restore and recharge fire protection systems following a **covered loss.**

**15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL

**a.** For uninsured property at a covered **location** consisting of land, water, or any other substance in or on land or water at a covered **location**, **we** cover **your** reasonable and necessary cost for the cleanup, removal and disposal of the actual presence of **contaminant(s)** from that property if the release, discharge or dispersal of such **contaminant(s)** is a result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

**(1)** At any **location** insured for **personal property** only;

**(2)** At any **location**, or to any property, covered under the NEWLY ACQUIRED **LOCATIONS** or ERRORS AND OMISSIONS coverages provided by this Policy or at a **Miscellaneous Unnamed Location**; or

**(3)** If **you** fail to give **us** written notice within one hundred eighty (180) days after the loss.

**16.** MISCELLANEOUS **PERSONAL PROPERTY**

**a. We** cover direct physical loss or damage, that occurs away from a covered **location** but within the Policy's territory, to **personal property** of the type covered under this Policy, which is:

**(1)** Owned by **you**; or

**(2)** Owned by others and in **your** care, custody and control, but only to the extent **you** are obligated to insure it for direct physical loss or damage under the type of coverage provided under this Policy.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes coverage that is provided

elsewhere in this Policy.

## 17. NEWLY ACQUIRED **LOCATIONS**

    **a.** **We** cover physical loss or damage to property of the type insured from a loss of the type insured at any **location you** purchase, lease or rent after the inception date of this Policy.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION applies:

        **(1)** From the date of purchase, lease or rental,

        **(2)** Until the first of the following occurs:

            **(a)** The **location** is bound by **us**;

            **(b)** Agreement is reached that the **location** will not be insured under this Policy; or

            **(c)** The time limit specified in the LIMITS OF LIABILITY Table in the Declarations has been reached. The time limit begins on the date of purchase, lease or rental.

## 18. OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE

    **a.** **We** cover physical loss or damage to **covered property** at a covered **location** when such physical loss or damage results from:

        **(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

        **(2)** The interruption of outgoing sewerage service,

    by reason of a loss of the type insured by this Policy at the facilities of the supplier of such service located within this Policy's territory, that immediately prevents in whole or in part the delivery of such usable service.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the interruption exceeds the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

    **c.** For purposes of this PROPERTY DAMAGE COVERAGE AND LIMITATION, the *period of service interruption* is the period starting with the time when an interruption of specified services occurs; and ending when the service could be wholly restored.

    **d.** Additional General Provisions:

        **(1)** **You** will immediately notify the suppliers of services of any interruption of any such services.

        **(2)** **We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

    **e.** **We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

    **f.** Exclusion **C.3.e.** does not apply to this PROPERTY DAMAGE COVERAGE AND LIMITATION.

## 19. PROFESSIONAL FEES

a. **We** cover **your** reasonable costs for **your** employees or auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

b. Professional fees covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION, however, do not include:

    **(1)** Any fees or expenses of attorneys;

    **(2)** Any fees or expenses of public adjusters, loss appraisers or any of their subsidiaries or associated entities;

    **(3)** Fees based on a contingency; or

    **(4)** Fees of loss consultants who provide consultation on coverage or negotiate claims.

c. This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible that applies to the loss.

**20.** PROTECTION AND PRESERVATION OF PROPERTY

a. **We** cover **your** reasonable and necessary costs to temporarily protect or preserve **covered property** provided such actions are necessary due to actual, or to prevent immediately impending threat of, physical loss or damage of the type covered by this Policy to such **covered property**.

b. This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the physical loss or damage happened.

**21.** RADIOACTIVE CONTAMINATION

a. **We** cover radioactive **contamination** to property of the type insured by this Policy from a **covered loss**.

Radioactive **contamination** is:

    **(1)** Sudden and accidental radioactive **contamination**; or

    **(2)** Resultant radiation damage to **covered property**,

provided that such radioactive **contamination** arises out of radioactive material at a covered **location** and is used as part of **your** business activities.

b. **We** do not cover radioactive **contamination** if:

    **(1)** The covered **location** contains:

        **(a)** A nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or

        **(b)** Any new or used nuclear fuel intended for or used in such a nuclear reactor.

    **(2)** The **contamination** arises from radioactive material located away from a covered **location**.

**22.** TAX LIABILITY

**We** cover **your** increase in tax liability from a **covered loss** at a covered **location** if the tax treatment of:

a. The profit portion of a loss payment involving finished stock manufactured by **you**; and/or

b. The profit portion of a TIME ELEMENT loss payment;

is greater than the tax treatment of profits that would have been incurred had no loss happened.

**23.** TEMPORARY REMOVAL OF PROPERTY

    **a.** When **covered property** is removed from a covered **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, **we** cover such property:

        **(1)** While at the premises to which such **covered property** has been moved; and

        **(2)** For direct physical loss or damage of the type insured by this Policy at the covered **location** from which such **covered property** was removed.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

        **(1)** To **covered property** removed for normal storage, processing or preparation for sale or delivery; or

        **(2)** If coverage is provided elsewhere in this Policy or by any other insurance policy.

**24.** TRANSIT

    **a.** **We** cover **personal property** not excluded elsewhere in this Policy while it is in transit within the Policy's territory:

        **(1)** Owned by **you**.

        **(2)** Shipped to customers under Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. **Your** contingent interest is admitted.

        **(3)** Of others in **your** actual or constructive custody to the extent of **your** interest or legal liability.

        **(4)** Of others sold by **you** and **you** agreed prior to the loss to insure the **personal property** during course of delivery including:

            **(a)** When shipped by **your** contract service provider or by **your** contract manufacturer to **you** or to **your** customer; or

            **(b)** When shipped by **your** customer to **you** or to **your** contract service provider or to **your** contract manufacturer.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION starts from the time the property leaves the original point of shipment for transit, and continues while in the due course of transit until delivered, subject to the following conditions:

        **(1)** Coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

        **(2)** If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

    **c.** **We** also cover:

        **(1)** General average and salvage charges on shipments covered while waterborne; and

        **(2)** Direct physical loss or damage caused by or resulting from:

  **(a)** Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

  **(b)** Improper parties having gained possession of property through fraud or deceit.

**d.** Additional General Provisions:

 **(1)** This PROPERTY DAMAGE COVERAGE AND LIMITATION will not inure directly or indirectly to the benefit of any carrier or bailee.

 **(2) You** have permission, without prejudicing this insurance, to accept:

  **(a)** Ordinary bills of lading used by carriers;

  **(b)** Released bills of lading;

  **(c)** Undervalued bills of lading; and

  **(d)** Shipping or messenger receipts.

 **(3) You** may waive subrogation against railroads under side track agreements.

 **(4)** Except as otherwise stated, **you** will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

**e.** As respects this PROPERTY DAMAGE COVERAGE AND LIMITATION:

 **(1)** The following additional exclusions apply:

  This Policy excludes:

  **(a)** Samples in the custody of salespeople or selling agents.

  **(b)** Property insured under import or export ocean marine insurance.

  **(c)** Waterborne shipments, unless:

   **(i)** By inland water; or

   **(ii)** By roll-on/roll-off ferries; or

   **(iii)** By coastal shipments.

  **(d)** Airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

  **(e)** Property of others, including **your** legal liability for it, hauled on vehicles owned, leased or operated by **you** when acting as a common or contract carrier.

  **(f)** Any transporting vehicle

  **(g)** Property shipped between continents except by land or air within the Policy territory.

**f.** **We** will value property covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION as follows:

 © 2016 Liberty Mutual Insurance

(1) Property shipped to or for **your** account will be valued at actual invoice to **you**. Included in the value are accrued costs and charges legally due. Charges may include **your** commission as selling agent.

(2) Property sold by **you** and shipped to or for the purchaser's account will be valued at **your** selling invoice amount. Prepaid or advanced freight costs are included.

(3) Property not under invoice will be valued:

    (a) For **your** property, according to the valuation provisions of this Policy applying at the place from which the property is being transported; or

    (b) For other property, at the **actual cash value** at the destination point on the date of loss, less any charges saved which would have become due and payable upon arrival at destination.

## 25. VALUABLE PAPERS AND RECORDS

a. **We** cover physical loss or damage to **your valuable papers and records** from a **covered loss** at a covered **location**. **We** cover the value blank, plus the cost of copying from backup or from originals of a previous generation, and **your** reasonable and necessary costs to research, replace or restore the information lost or damaged thereon, except for **electronic data** and software. For **electronic data** and software, **we** cover the value of the blank media, and the cost of reproducing the **electronic data** and software from duplicates or originals of the previous generation of the data.

b. This coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

 © 2016 Liberty Mutual Insurance

# SECTION III – TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS:

**A.** Is subject to and part of the applicable LIMIT OF LIABILITY that applies to **your** direct physical loss or damage but in no event for more than any LIMIT OF LIABILITY that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGES AND LIMITATIONS; and

**B.** Will not increase the POLICY LIMIT OF LIABILITY and is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

**A. LOSS INSURED**

1. **We** cover **your** actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy:

   a. To property described elsewhere in this Policy and not otherwise excluded by this Policy,

   b. Used by **you**, or by others with whom **you** have a contract,

   c. At a covered **location** or while in transit as provided by this Policy,

   d. During the applicable PERIOD OF LIABILITY described in this section.

2. **We** cover TIME ELEMENT loss only to the extent it cannot be reduced through:

   a. The use of any property or service owned or controlled by **you**;

   b. The use of any property or service obtainable from other sources;

   c. Working extra time or overtime; or

   d. The use of inventory,

   all whether at a covered **location** or at any other **location**. When measuring the actual loss sustained, the combined operating results of all of **your** associated, affiliated or subsidiary companies will be considered in determining the TIME ELEMENT loss.

3. **We** cover **your** reasonable and necessary expenses to reduce the loss otherwise payable under this section of this Policy. The amount of those recoverable expenses will not exceed the amount by which the insured loss has been reduced.

4. In determining the insured TIME ELEMENT loss, **we** will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. **We** will consider any increase or decrease in demand for **your** goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused the **covered loss**.

**B. TIME ELEMENT COVERAGES**

1. *GROSS EARNINGS*

   a. *GROSS EARNINGS* loss is the actual loss sustained by **you** due to the necessary interruption of **your** business during the PERIOD OF LIABILITY of the following:

Gross Earnings less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services, plus all other earnings derived from the operation of the business.

**Ordinary payroll,** including taxes and charges dependent on the payment of wages, for a period of time not to exceed the number of consecutive days as specified in the LIMITS OF LIABILITY in the Declarations table immediately following the interruption of production or suspension of business operations or services, and only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

However, if **you** reduce the daily loss payable under **ordinary payroll**, either by:

> **(1)** providing gainful employment for, or
>
> **(2)** paying less than the normal salary rate to,

all or part of its employees, then the number of consecutive days of **ordinary payroll** may be extended. However, this provision will not increase **our** total liability beyond the amount **we** would have been liable for **ordinary payroll** costs without this provision.

**Ordinary payroll** does not cover any portion of salaries or wages included in Gross Earnings.

**b.** *GROSS EARNINGS* will be calculated as follows:

> **(1)** For manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or
>
> **(2)** For mercantile or non-manufacturing operations: the total net sales less the cost of merchandise sold, materials and supplies consumed in the operations or services rendered by **you**.

Any amount payable at selling price will be considered to have been sold to **your** regular customers and will be credited against net sales.

**c.** In determining the amount **we** cover as the actual loss sustained, **we** will consider the continuation of only those charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

**d.** If **you** would have operated at a deficit had no interruption of production or suspension of business operations or services occurred, the following applies:

> **(1)** For Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.
>
> **(2)** For **ordinary payroll**, the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

**e.** We cover TIME ELEMENT loss only to the extent that **you** are:

> **(1)** Wholly or partially prevented from producing goods or continuing business operations or services;
>
> **(2)** Unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;
>
> **(3)** Unable to continue **your** operations or services during the PERIOD OF LIABILITY; and

(4) Able to demonstrate a loss of sales for the operations, services or production prevented.

2. EXTRA EXPENSE

   a. **We** cover **your** reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable:

      (1) To temporarily continue as nearly normal as practicable the conduct of **your** business; and

      (2) The temporary use of property or facilities of **yours** or others.

   b. **We** will reduce any recoverable loss under this coverage for any value remaining of any property used to temporarily continue **your** business.

   c. EXTRA EXPENSE does not include:

      (1) Any loss of income.

      (2) Costs that would have been incurred in conducting the business during the same period had no physical loss or damage happened.

      (3) Costs of permanent repair or replacement of property that has been damaged or destroyed.

      (4) Any expense recoverable elsewhere in this Policy.

3. LEASEHOLD INTEREST

   a. **We** cover the following:

      (1) If the lease agreement requires continuation of rent as a result of a **covered loss**, and if the **covered property** is wholly or partially untenantable or unusable, the actual rent payable while the **covered property** is untenantable or until the lease is terminated, but not exceeding the unexpired term of the lease.

      (2) If the **covered property** is partially untenantable, **we** cover the proportion of the lease payment for that portion of the untenantable **covered property**.

   b. If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law, **we** cover the additional cost to rent similar space for the unexpired term of the lease for the damaged property. That loss will be computed at present value, compounded annually at the prime rate plus 2%, as published in the Wall Street Journal on the date the lease terminated. The additional cost will consider the excess rent paid for the same or similar replacement property over actual rent of the original lease, plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the lease.

   c. As respects LEASEHOLD INTEREST, the following applies:

      (1) **We** do not cover loss directly resulting from physical loss or damage to **personal property**.

      (2) TIME ELEMENT EXCLUSIONS **D.1.**, **D.2.** and **D.3.** do not apply and the following applies instead:

      **We** do not cover any increase in loss resulting from the suspension, lapse or cancellation of any license, or from **you** exercising an option to cancel the lease; or from any act or omission by **you** that constitutes a default under the lease.

4. RENTAL INSURANCE

a. **We** cover **your** actual loss sustained of rental income during the PERIOD OF LIABILITY for:

   (1) The fair rental value of any portion of rental property occupied by **you**;

   (2) The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

   (3) The rental income from the rented portions of such property according to written leases, contracts or agreements in force at the time of loss,

   all not to include non-continuing charges and expenses.

b. RENTAL INSURANCE Exclusions: As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS **D.1.** does not apply and the following applies instead:

   **We** do not cover any loss of rental income during any period in which the covered **location** would not have been tenantable for any reason other than a **covered loss**.

**C. PERIOD OF LIABILITY**

1. The PERIOD OF LIABILITY applying to CONTINGENT TIME ELEMENT, *GROSS EARNINGS*, EXTRA EXPENSE and RENTAL INSURANCE is as follows:

   a. For building and equipment, the period:

      (1) Starting from the time of physical loss or damage of the type insured; and

      (2) Ending when with due diligence and dispatch the building and equipment could be:

         (a) Repaired or replaced; and

         (b) Made ready for operations,

         under the same or equivalent physical and operating conditions that existed prior to the damage.

      (3) Not to be limited by the expiration of this Policy.

   b. For building(s) and equipment covered under COURSE OF CONSTRUCTION:

      (1) The equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

      (2) Due consideration will be given to the actual experience of the business after completion of the construction and startup.

2. The PERIOD OF LIABILITY for *GROSS EARNINGS* and EXTRA EXPENSE also includes the following:

   a. For stock-in-process and mercantile stock, including finished goods not manufactured by **you**, the time required with the exercise of due diligence and dispatch:

      (1) To restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

      (2) To replace physically damaged mercantile stock.

   b. For raw materials and supplies, the period of time:

     **(1)** Of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

     **(2)** Limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

**c.** Impounded Water:

     **(1)** Used for any manufacturing purpose, including as a raw material or for power;

     **(2)** Stored behind dams or in reservoirs; and

     **(3)** On any covered **location**,

     that is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, **our** liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond the number of consecutive days, not to exceed the LIMIT OF LIABILITY specified in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced.

**d.** For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

**e.** For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

**3.** The PERIOD OF LIABILITY applying to *GROSS PROFIT* is as follows:

**a.** The period starting from the time of physical loss or damage of the type insured and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

**b.** For property under construction, the period starting on the date that production, business operation or service would have commenced if physical damage of the type insured had not happened and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations, during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

The *Rate of Gross Profit* and *Standard Sales* will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

**4.** The PERIOD OF LIABILITY does not include any additional time due to **your** inability to resume operations for any reason, including:

**a.** Making changes to equipment;

**b.** Making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION clause in the PROPERTY DAMAGE section; and

**c.** Re-staffing or retraining employees.

If two or more PERIODS OF LIABILITY apply, such periods will not be cumulative.

**D.** TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

1. Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

   a. Physical loss or damage not insured by this Policy on or off of the covered **location**.

   b. Planned or rescheduled shutdown.

   c. Strikes or other work stoppage.

   d. Any reason other than physical loss or damage insured under this Policy.

2. Any increase in loss due to:

   a. Suspension, cancellation or lapse of any lease, contract, license or orders.

   b. Damages for breach of contract or for late or noncompletion of orders.

   c. Fines or penalties.

   d. Any other consequential or remote loss.

3. Any loss resulting from physical loss or damage to finished goods manufactured by **you**, or the time required for their reproduction.

E. TIME ELEMENT COVERAGES AND LIMITATIONS

TIME ELEMENT COVERAGES are extended to include the following, subject to all Policy terms, conditions and exclusions, and the time, distance and/or dollar amounts specified in the LIMITS OF LIABILITY Table in the Declarations:

1. *ATTRACTION PROPERTY*

   a. **We** cover **your** actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by this Policy to property of the type insured at an *attraction property* within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of time that:

      (1) Starts at the time such physical loss or damage happens;

      (2) Ends when the *attraction property* is:

         (a) Repaired or replaced; and

         (b) Made ready for operations.

   b. As used in this TIME ELEMENT COVERAGE AND LIMITATION, the term *attraction property* is a property that:

      (1) Is operated by others; and

      (2) **You** depend on to attract customers to **your** covered **location.**

2. CIVIL OR MILITARY AUTHORITY

   a. **We** cover **your** actual loss sustained and EXTRA EXPENSE during the *period of interruption* if an order of civil or military authority prohibits access to a covered **location** provided such order is caused by

physical loss or damage of the type insured by this Policy at a covered **location** or within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION does not apply to LEASEHOLD INTEREST.

**c.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time:

   **(1)** Starting at the time of such direct physical loss or damage; and

   **(2)** Continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

   This period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

**3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from the failure of **your electronic data processing equipment** or media to operate, provided that such failure is the direct result of a malicious act directed at **you**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the *period of interruption* is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** As used above, the *period of interruption:*

   **(1)** Is the period starting when **your electronic data processing equipment** or media fails to operate and ending when with due diligence and dispatch, **your electronic data processing equipment** or media could be restored to the same or equivalent operating condition that existed prior to the failure.

   **(2)** Does not include the additional time to make changes to **your electronic data processing equipment** or media.

**4.** CONTINGENT TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at *Direct Dependent Time Element* **Location(s)** and *Indirect Dependent Time Element* **Location(s)** located within the territory of this Policy.

**b.** **You** agree to take every reasonable and necessary action to mitigate the loss payable hereunder.

 © 2016 Liberty Mutual Insurance

**c.** As used in this Policy, *Direct Dependent Time Element* **Location(s)** are:

    **(1)** Any **location(s)** of a direct: customer, supplier, contract manufacturer or contract service provider to **you**; or

    **(2)** Any **location(s)** of any company under a royalty, licensing fee or commission agreement with **you.**

    *Direct Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from **you**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**d.** As used in this Policy, *Indirect Dependent Time Element* **Location(s)** are:

    **(1)** Any **location(s)** of any company that is a direct: customer, supplier, contract manufacturer or contract service provider to **your** *Direct Dependent Time Element* **Location(s)**.

    *Indirect Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from, the *Direct Dependent Time Element* **Location(s)** or the *Indirect Dependent Time Element* **Location(s)**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**e.** As respects CONTINGENT TIME ELEMENT:

    **(1)** Exclusion **D.3** in the TIME ELEMENT EXCLUSIONS does not apply.

**5.** CRISIS MANAGEMENT

  **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY if an order of civil or military authority prohibits access to a covered **location**, but only if such order is a direct result of a violent crime, suicide, attempted suicide or armed robbery at such covered **location**.

  **b.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, coverage applies:

    **(1)** Only when the PERIOD OF LIABILITY is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations; and

    **(2)** For up to the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations, not to exceed the specified LIMIT OF LIABILITY.

    The PERIOD OF LIABILITY is the period of time when the time the civil or military authority prohibits access and continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

**6.** DELAY IN STARTUP

  **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations resulting directly from physical loss or damage to **covered property** as provided under COURSE OF CONSTRUCTION.

**7.** EXTENDED PERIOD OF LIABILITY

  **a.** We cover the *GROSS EARNINGS* loss sustained due to the reduction in sales resulting from:

    **(1)** The interruption of business;

    **(2)** Commencing with the date on which our liability for loss resulting from interruption of business would terminate if this TIME ELEMENT COVERAGE AND LIMITATION had not been included in this Policy; and

**(3)** Continuing for such additional length of time as would be required with the exercise of due diligence and dispatch to restore **your** business to the condition that would have existed had no loss occurred, but no longer than the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** Coverage under this TIME ELEMENT COVERAGE AND LIMITATION for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the EXTENDED PERIOD OF LIABILITY described in Item **7.a.** above.

**c.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, Item **D.2.** in the TIME ELEMENT EXCLUSIONS in this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or non-completion of orders, or fines or penalties.

**8.** INGRESS / EGRESS

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE due to the necessary interruption of **your** business if ingress to or egress from a covered **location** is prevented, whether or not **your** premises or property is damaged, provided that such prevention is a direct result of physical loss or damage of the type insured to property of the type insured.

**b.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time starting at the time of such direct physical loss or damage, and continuing until ingress or egress is no longer prevented, or for the time limit specified in the LIMITS OF LIABILITY Table in the Declarations, whichever is less.

**9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the period of service interruption at a covered **location** when the loss is caused by:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

from physical loss or damage of the type insured, at the facilities of the supplier of such service located within this Policy's territory that immediately prevents in whole or in part the delivery of such usable services.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the period of service interruption as described below is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** The period of service interruption is:

**(1)** The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could have resumed normal operations following the restoration of service under the same or equivalent physical and operating conditions that existed prior to the interruption of such services;

**(2)** Is limited to only those hours during which **you** could have used service(s) if it had been available;

**(3)** Does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

**d.** Additional General Provisions:

 © 2016 Liberty Mutual Insurance

**(1) You** will immediately notify the suppliers of services of any interruption of any such services.

**(2) We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

**e. We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

## 10. ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a. We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from direct physical loss or damage of the type insured to the following property located at or within one-thousand (1,000) feet of a covered **location**:

**(1)** Electrical equipment and equipment used for the transmission of voice, data or video.

**(2)** Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission systems.

## 11. PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT

**a. We** cover **your** actual loss sustained for a period of time not to exceed forty eight (48) hours prior to and forty eight (48) hours after **you** first took reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage of the type insured to such **covered property**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the direct physical loss or damage occurred.

## 12. RELATED **LOCATIONS**

If **you** report values at related **locations** used by **you** (e.g. branch stores, retail outlets and other facilities), but such related **locations** are not listed on the latest Schedule of Covered **Locations** submitted to, accepted by and on file with **us**, and if a TIME ELEMENT loss results at such related **locations** due to **covered loss**, **we** cover such resulting TIME ELEMENT loss in accordance with the terms and conditions of this Policy.

## 13. RESEARCH AND DEVELOPMENT

**a. We** cover **your** actual loss sustained of fixed charges and **ordinary payroll** directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a **covered loss**.

**b. We** cover these fixed charges only to the extent they continue after the **covered loss** and only during the PERIOD OF LIABILITY.

**c.** To the extent **you** are able to resume operations, **we** cover only that portion of the fixed charges related to that part of the research and development operation that has not yet been restored.

## 14. SOFT COSTS

**a. We** cover **your** actual loss sustained of *Soft Costs* during the *period of delay* directly resulting from a delay of completion of **covered property** under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS.

b. *Soft Costs* are costs over and above those that are normal at a covered **location** undergoing renovation or in the course of construction, limited to the following:

(1) Construction loan fees – **your** additional cost to rearrange loans necessary for the completion of construction, repairs or reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

(2) Commitment fees, leasing and marketing expenses – the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

(3) Additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction repairs or reconstruction.

(4) Property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

c. *Period of delay* is the period of time between:

(1) The date on which the construction, alteration, extension or renovation would have been complete in the absence of a **covered loss** to property under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS; and

(2) The date on which construction, alteration, extension or renovation is actually complete.

# SECTION IV – DESCRIBED LOSSES

**We** only cover the following DESCRIBED LOSSES as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

## A. *EARTH MOVEMENT*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *EARTH MOVEMENT*.

2. **You** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

3. *EARTH MOVEMENT* is:

   Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption; regardless of any other cause or event contributing concurrently or in any other sequence of loss.

   However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

## B. *EARTH MOVEMENT* SPRINKLER LEAKAGE

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, resulting from sprinkler leakage caused by *EARTH MOVEMENT*.

## C. *EQUIPMENT BREAKDOWN*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS, as provided by this Policy if such loss or damage is caused by an *accident* to *covered equipment*.

   The coverage provided in this DESCRIBED LOSS is limited to loss or damage caused by an *accident* to *covered equipment*. **We** will not pay for physical loss or damage from any other cause under this DESCRIBED LOSS.

   The following coverages apply solely to Equipment Breakdown:

   a. Spoilage Damage

      **We** cover physical loss or damage caused by change in temperature or humidity or by the interruption of power, heat, air-conditioning, or refrigeration as the result of an *accident* to *covered equipment*.

   b. Ammonia **Contamination**

      **We** cover physical loss or damage to **covered property** contaminated by ammonia, including any salvage expense as a direct result of an *accident* to *covered equipment*. No coverage for Ammonia **Contamination** is available under DECONTAMINATION COSTS with respects to an *accident* to *covered equipment*.

2. Conditions

   a. Suspension

   If coverage for Equipment Breakdown is provided by this Policy, and **we** discover a dangerous condition relating to an object, **we** may immediately suspend the insurance provided by this coverage for that *covered equipment* by written notice mailed or delivered to **you** either at **your** address or at the **location** of any object. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this Policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

3. Valuation

   If *covered equipment* requires replacement due to an *accident*, **we** cover **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

   a. However, **we** do not cover more than 150% of what the cost would have been to repair or replace *covered equipment* with like kind and quality.

   b. This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable LIMIT OF LIABILITY.

   c. The PERIOD OF LIABILITY will not be increased by any of the above.

4. Definitions

   a. *Accident*: Physical loss or damage to *covered equipment* that necessitates its repair or replacement due to:

      (1) Failure of pressure or vacuum equipment;

      (2) Mechanical breakdown including rupture or bursting caused by centrifugal force;

      (3) Artificially generated electrical current, including electrical arcing that damages electrical devices, appliances or wires; or

      (4) Explosion of:

         (a) Steam boiler

         (b) Electric steam generator

         (c) Steam piping

         (d) Steam turbine

         (e) Moving or rotating machinery when such explosion is caused by centrifugal force,

      unless such loss or damage is otherwise excluded within this Policy.

      *Accident* does not include:

      (5) Fire, including water or other means used to extinguish the fire;

      (6) Malfunction, misalignment, miscalibration, tripping off line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning or by the performance of maintenance;

**(7)** Combustion explosion;

**(8)** Discharge of molten material from equipment including the heat from such discharged materials;

**(9)** Lightning;

**(10)** Depletion, deterioration, rust, corrosion, erosion, settling, or wear or tear or any other gradually developing condition;

**(11)** Defects, erasures, error limitations or viruses in computer equipment and programs including the inability to recognize and process any date or time or provide instructions to *covered equipment*;

**(12)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(13)** Damage to any structure or foundation supporting the *covered equipment* or any of its parts;

**(14)** Any loss or damage caused by or resulting from any type of electrical insulation breakdown test;

**(15)** Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test;

**(16)** The functioning of any safety or protective device; or

**(17)** The cracking of any part on an internal combustion turbine exposed to the products of combustion.

**b.** *Covered equipment*:

**(1)** Equipment that generates, transmits, controls or utilizes energy; including electronic communications and data processing equipment; and

**(2)** Equipment which, during normal usage, operates under vacuum or pressure, other than weight of contents.

*Covered equipment* does not mean or include:

**(3) Electronic data**;

**(4)** Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

**(5)** Insulating or refractory material;

**(6)** Nonmetallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or other appropriate and approved code;

**(7)** Catalyst;

**(8)** Buried vessels or piping; waste, drainage or sewer piping; piping, valves or fittings forming part of a sprinkler or fire suppression system; water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

**(9)** Structure, foundation, cabinet or compartment supporting or containing the *covered equipment* or part of the *covered equipment* including penstock, draft tube or well casing;

**(10)** Vehicle or any *covered equipment* that is mounted on or used solely with a vehicle;

© 2016 Liberty Mutual Insurance

**(11)** Dragline, excavation or construction equipment including any *covered equipment* that is mounted on or used solely with any one or more dragline(s), excavation or construction equipment;

**(12)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, nonelectrical cable, chain, belt, rope, clutch plate, brake pad, nonmetal part or tool subject to periodic replacement;

**(13)** Cyclotron used for other than medical purposes, satellite or spacecraft including any *covered equipment* mounted on or used solely with any satellite or spacecraft;

**(14)** Equipment manufactured by **you** for sale.

**c.** *Production machinery* is any machine or apparatus that processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in process or finished products including any *covered equipment* that is mounted on or used solely with any one or more production machines or apparatus.

### D. *FLOOD*

**1. We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *FLOOD*.

**2.** *FLOOD* is:

**a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

**b.** Sewer back-up resulting from any of the foregoing; or

**c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.

**Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

### E. *NAMED STORM*

**1. We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from a *NAMED STORM*. However, physical loss or damage caused by fire, explosion, sprinkler leakage or *FLOOD* will not be considered loss by *NAMED STORM* within the terms and conditions of this Policy.

**2. You** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

*NAMED STORM* is any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any authorized meteorological authority in the country where the storm or weather disturbance happened.

# SECTION V - GENERAL POLICY CONDITIONS

## A. ASSIGNMENT

**Your** assignment of this Policy will not be valid except with **our** written consent.

## B. CANCELLATION

1. **You** may cancel this Policy by mailing or delivering to **us** advance written notice of cancellation.

2. **We** may cancel this Policy by mailing or delivering to **you** written notice of cancellation at least:

   a. ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   b. thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason.

3. **We** will mail or deliver **our** written notice of cancellation to **your** last mailing address known to **us**.

4. **Our** written notice of cancellation will state the effective date of cancellation and the Policy period will end on that date.

5. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void, if with the actual intent to deceive

1. **You**;

2. **Your** representatives; or

3. Any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning:

   a. This Policy;

   b. The **covered property**;

   c. **Your** interest in the **covered property**; or

   d. A claim under this Policy.

## D. CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by **us** shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for covered **locations** within such jurisdictions.

## E. INSPECTION

1. During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards.

2. This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

## F. LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

1. When specified in the Policy or in Certificates of Insurance on file with **us**, **we** cover loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear.

2. The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

   a. Any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

   b. Foreclosure, notice of sale, or similar proceedings with respect to the property, but only to the extent of a deficiency as provided by state law.

   c. Change in the title or ownership of the property.

   d. Change to a more hazardous occupancy.

   The Lender or Mortgagee will notify **us** of any known change in ownership, occupancy, or hazard and, within ten (10) days of **our** written request, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

3. If this Policy is cancelled at **your** request or by the request of **your** agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after **we** send to the Lender or Mortgagee written notice of cancellation, unless:

   a. Sooner terminated by authorization, consent, approval, acceptance, or ratification of **your** action by the Lender or Mortgagee, or its agent.

   b. This Policy is replaced by **you**, with a Policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement Policy, notwithstanding any other provision of this Policy.

 © 2016 Liberty Mutual Insurance

4. **We** may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, **we** may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

5. If **we** pay the Lender or Mortgagee for any loss, and deny payment to the debtor, mortgagor or owner, **we** will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At **our** option, **we** may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to **us**, and the remaining debt or mortgage will be paid to **us**.

6. If **you** fail to render proof of loss, the Lender or Mortgagee, upon notice of **your** failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, COMPANY OPTION, and SUIT AGAINST THE COMPANY.

7. In the event of a claim, upon request by **us**, the Lender or Mortgagee will cooperate in any claim investigation.

8. In no event will the amount payable to a Lender or Mortgagee exceed the amount which would otherwise have been payable to **you.**

## G. LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute in any State or jurisdiction within the United States of America so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to **your** benefit within such jurisdiction, effective the date of the change specified in such statute.

## H. NO REDUCTION BY LOSS

Except for those coverages written with an **annual aggregate** LIMIT OF LIABILITY, **we** cover a **covered loss** without reducing any other applicable LIMIT OF LIABILITY. The reinstatement of any exhausted **annual aggregate** is not permitted unless authorized by **us** in writing.

## I. NONRENEWAL

1. If **we** decide not to renew this Policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this Policy. Notice will be sent to **your** last mailing address known to **us. We** will state the reason for nonrenewal.

2. Proof of mailing will be sufficient evidence of notice.

## J. OTHER INSURANCE

1. **We** will not be liable if, at the time of loss or damage, there is any other insurance that would apply in the absence of this Policy; except that this Policy will apply only as excess or DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS and in no event as contributing insurance, and then only after all other insurance has been exhausted, notwithstanding paragraph **5.** below.

2. **We** will not be liable if, at the time of loss or damage, there is any insurance with the National Flood Insurance Program (NFIP), except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

3. **We** will not be liable if, at the time of loss or damage, there is any insurance for the construction of new buildings and additions under a specific policy for the construction of such new buildings and additions, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

4. **We** will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

5. If this Policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable LIMIT OF LIABILITY. **Our** share will be the proportion that the applicable LIMIT OF LIABILITY of this Policy bears to the total applicable LIMITS OF LIABILITY available from all insurance.

6. **You** are permitted to have other insurance over any LIMITS OF LIABILITY specified in this Policy.

7. The existence of such insurance will not reduce any LIMIT OF LIABILITY in this Policy.

8. To the extent this Policy replaces another Policy, coverage under this Policy shall not become effective until such other Policy has terminated.

9. **You** are permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only as excess and only after such other insurance has been exhausted.

### K. PAIR, SET OR PARTS

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1. The cost to repair or replace any part to restore the pair or set to its value before the loss; or

2. The difference between the value of the pair or set before and after the loss.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

### L. POLICY MODIFICATION

This Policy contains all of the agreements between **you** and **us** concerning this insurance. **You** and **we** may request changes to this Policy. Only endorsements issued by **us** and made a part of this Policy can change this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent **us** from asserting any rights under the Policy.

### M. TITLES

The titles of the paragraphs of this Policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

### N. TRANSFER OF RIGHTS AND DUTIES

**Your** rights and duties under this Policy may not be transferred without us giving written consent.

### O. VACANCY

1. If any of **your real property** is vacant at the inception of this Policy, or becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the Policy period, **you** must:

   a. Notify **us** in writing of the vacancy prior to loss or damage; and

   b. Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include:

      (1) Automatic sprinkler systems;
      (2) Fire alarm systems;
      (3) Guard or watchman services;
      (4) Burglary systems; and
      (5) Monitoring systems.

2. If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this Policy, **we** will:

   a. Not pay for any loss or damage caused by or resulting from any of the following:

      (1) Breakage of building glass;
      (2) Mold, mildew or fungus;
      (3) Sprinkler leakage, unless the system has been protected against freezing;
      (4) Theft or attempted theft;
      (5) Vandalism;
      (6) Malicious mischief; or
      (7) Water damage.

   b. Not pay under DEMOLITION AND INCREASED COST OF CONSTRUCTION;

   c. Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the lesser of:

      (1) The **actual cash value**;
      (2) The actual cost to repair; or
      (3) The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

3. **Real property** is considered vacant when it does not contain sufficient property and personnel to conduct **your** customary business operations.

4. **Real property** is not considered vacant during its ongoing construction or renovation.

## P. VALUATION

1. Adjustment of the physical loss or damage amount under this Policy will be computed as of the date of loss or damage at the place of the loss or damage. Unless stated otherwise in a PROPERTY DAMAGE COVERAGE AND LIMITATION, adjustment of physical loss or damage to **covered property** will be subject to the following:

   a. On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

   b. On finished goods manufactured by **you**, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no physical loss or damage happened.

   c. On raw materials, supplies or merchandise not manufactured by **you**:

(1) If repaired or replaced, **your** actual expenditure in repairing or replacing the damaged or destroyed property; or

(2) If not repaired or replaced, the **actual cash value**.

d.  On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

e.  On property that is:

(1) Damaged by fire that directly results from **terrorism** or nuclear reaction; and

(2) Is located in a jurisdiction that has a statute that expressly prohibits the exclusion of fire losses resulting from **terrorism** or nuclear reaction,

the **actual cash value** of the fire damage. Any remaining fire damage not attributable to **terrorism** or nuclear reaction shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy.

f.  On computer equipment of others which **you** are required to insure for direct physical loss or damage while being installed, maintained or repaired, the cost to replace with new if so specified in the contract between **you** and **your** customer.

g.  On Data, Programs and Software, the actual cost incurred to repair, replace or restore data, programs or software including the costs to recreate and research.

h.  On **Fine Arts**, the loss amount will not exceed the lesser of the following:

(1) The cost to repair or restore such property to the physical condition that existed on the date of loss;

(2) The cost to replace; or

(3) The stated value on file with **us**.

i.  On all other property, the lesser of the following:

(1) The cost to repair.

(2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

(3) The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

(4) The selling price of **real property** or machinery and equipment, other than stock, offered for sale on the date of loss.

(5) The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

(6) The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

**(7)** The unamortized value of improvements and betterments, if such property is not repaired or replaced at **your** expense.

**(8)** The **actual cash value** if such property is:

    **(a)** Useless to **you**; or

    **(b)** Not repaired, replaced or rebuilt on the same or another site within two (2) years from the date of loss, unless such time is extended by **us**.

**2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

**3.** **We** will not pay more than **your** financial interest in the **covered property**.

# SECTION VI – LOSS CONDITIONS

## A. ABANDONMENT OF PROPERTY

**You** may not abandon property to **us**.

## B. APPRAISAL

1.  If **you** and **we** fail to agree on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2.  The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** occurred, to select an umpire.

3.  The appraisers will then determine the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will determine the amount of loss or damage.

4.  Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

## C. COLLECTION FROM OTHERS

**We** will reduce any payment to **you** for a **covered loss** to the extent **you** have collected for that loss from others.

## D. COMPANY OPTION

1.  In the event of **covered loss**, **we** may, at **our** option, either:

    a.  Pay the value of **covered property** lost, damaged or destroyed as set forth in VALUATION above;

    b.  Pay the cost of repairing or replacing the **covered property** lost, damaged or destroyed;

    c.  Take all or any part of the **covered property** at any agreed valuation; or

    d.  Repair, rebuild or replace the **covered property** with other property of like kind and quality.

2.  **We** will give notice of **our** intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

## E. DUTIES AFTER A LOSS

In case of loss **you** will:

1.  Give **us** immediate written notice of the loss;

2.  Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

3.  As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

4.  Take all reasonable steps to protect the **covered property** from further damage;

5. Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

6. Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the Policy;

7. Keep an accurate record of all repair costs;

8. Keep all bills, receipts and related documents that establish the amount of loss;

9. As often as may reasonably be required:

   a. Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

   b. Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

   c. Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

   The time and cause of the loss;

   a. **Your** interest and the interest of all others in the property involved;

   b. Any other policies of insurance that may provide coverage for the loss;

   c. Any changes in title or occupancy of the property during the Policy period; and

   d. The amount of **your** claimed loss.

   **You** shall also submit with the Proof of Loss:

      (1) A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

      (2) An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

      (3) Specifications for any damaged building; and

      (4) Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

### F. LOSS ADJUSTMENT / PAYABLE

Loss will be adjusted with the First Named Insured. **We** may, at **our** option, adjust the loss to property of others directly with the owner of the property. Such loss will be payable to the First Named Insured or as may be directed by the First Named Insured.

Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee either on a Certificate of Insurance or other evidence of insurance on file with **us**. When named on a Certificate of Insurance or other evidence of insurance, such additional interests are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance. The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

**G.** PAYMENT OF LOSS

**We** will pay the insured loss within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

**1.** **You** have complied with all the terms of this Policy;

**2.** **We** have reached agreement with **you** on the amount of the loss, or

**3.** Within thirty (30) days of when an appraisal award is made as provided for in LOSS CONDITIONS **B.** APPRAISAL.

**H.** SUBROGATION

**1.** If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

**2.** **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

**I.** SUIT AGAINST THE COMPANY

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years next after the inception of the loss.

   © 2016 Liberty Mutual Insurance

# SECTION VII – DEFINITIONS

1. **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, with proper deduction for physical depreciation and obsolescence, but in no event more than the fair market value.

2. **Annual aggregate**: The maximum amount of loss or damage payable in any one (1) Policy year regardless of the number of **occurrences** within the same Policy year.

3. **Contaminant**: Any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

4. **Contamination**: Any condition of property that results from a **contaminant**.

5. **Covered loss**: A loss to **covered property** caused by direct physical loss or damage insured by this Policy.

6. **Covered property**: Property insured by this Policy.

7. **Electronic Data**: Information (including computer programs) stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, drives, **electronic data processing equipment** or any storage medium.

8. **Electronic data processing equipment**: Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether **your** property or not.

9. **Fine Arts**: Property of rarity, historical value, antiquity or artistic merit, including paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains

10. **Land improvements**: Landscape gardening, car parks, parking lots, pavement, roadways, sidewalks, walkways, railways or transformer enclosures; but does not include fill beneath such property, including buildings, structures or additions.

11. **Location(s)**:

   a. As specified in Appendix A – Schedule of Covered **Location(s)**;

   b. Listed on a SCHEDULE on file with **us**; or

   c. If not so specified in Appendix A – Schedule of Covered **Location(s)** or listed on a SCHEDULE on file with **us**, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

12. **Miscellaneous Unnamed Location**: A **location** owned, leased or rented by **you**, but not listed in a Schedule of **locations** on file with **us** or attached to this Policy.

   **Miscellaneous Unnamed Location** does not include:

   a. Newly Acquired **Locations**; or

   b. A **location** for which coverage is found elsewhere in this Policy including ERRORS AND OMISSIONS.

13. **Occurrence**: All loss or damage attributable directly or indirectly to one (1) cause or series of similar

causes. All such loss or damage will be added together and the total loss or damage will be treated as one (1) **occurrence.**

Unless otherwise amended by an endorsement attached to this Policy:

**a.** All loss or damage resulting from a continuous *FLOOD* event, irrespective of the amount of time or area over which such loss or damage occurs, will be considered a single **occurrence**.

**b.** All loss or damage from *EARTH MOVEMENT* or *NAMED STORM* within the time specified in the **OCCURRENCE** TIME SPECIFICATIONS will be considered a single **occurrence**.

**14. Ordinary payroll**: Payroll expenses for all of **your** employees except officers, executives, department managers, employees under contract, and other important professional employees.  Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums **you** pay.

**15. Personal Property**: **Your** tangible things, other than **real property** owned by **you** and used in **your** business, including:

   **a.** Furniture, fixtures, machinery, **electronic data processing equipment** and stock;

   **b.** Materials, supplies, machinery, equipment and fixtures, including those that are *personal property of others*, which are intended by **you** for use in construction of new additions and buildings at an existing covered **location**, that **you** begin to construct during the Policy period and intend to own or occupy once constructed, while located on the construction site awaiting use in construction.

   **c.** Property, other than **real property**, **you** lease for use in **your** business that **you** have a responsibility to insure;

   **d.** **Your** interest in improvements and betterments **you** have made in buildings **you** do not own;

   **e.** **Your valuable papers and records**.

**16. Real Property**: Building(s) and any other structure, including:

   **a.** New buildings and additions under construction, in which **you** have an insurable interest;

   **b.** Completed additions, extensions or permanent fixtures;

   **c.** Machinery and equipment used to service the buildings;

   **d.** Yard Fixtures.

**17. Terrorism**: Activities against persons, organizations or property of any nature:

   **a.** That involve the following or preparation for the following:

      **(1)** Use or threat of force or violence; or

      **(2)** Commission or threat of a dangerous act; or

      **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   **b.** When one or both of the following applies:

    **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**18. Valuable papers and records**: Written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

**19. We, us** and **our(s)**: The company issuing this Policy, as shown on the Declarations.

**20. You** and **your(s)**: The First Named Insured shown on the Declarations.

## <u>APPENDIX A</u> - SCHEDULE OF COVERED LOCATIONS

Per schedule on file with us

## APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES

| STATE | ZONE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------|------------------------------------------|
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Green, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St. Francis, White, Woodruff |
| ARKANSAS | 2 | Arkansas, Fulton, Izard, Lonoke, Prairie, Sharp, |
| ILLINOIS | 1 | Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, Washington, Williamson |
| ILLINOIS | 2 | Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Jasper, Lawrence, Madison, Marion, Monroe, Richland, Saint Clair, Wabash, Wayne, White |
| INDIANA | 2 | Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick |
| KENTUCKY | 1 | Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, McCracken, |
| KENTUCKY | 2 | Caldwell, Christian, Daviess, Henderson, Hopkins, McLean, Muhlenberg, Todd, Trigg, Union, Webster |
| MISSISSIPPI | 1 | DeSoto, Marshall, Tate, Tunica |
| MISSISSIPPI | 2 | Alcorn, Benton, Coahoma, Lafayette, Panola, Quitman, Tippah |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Madison, Mississippi, New Madrid, Pemiscott, Perry, Ripley, Scott, Stoddard, Wayne |
| MISSOURI | 2 | Independent City of St. Louis, Iron, Jefferson, Oregon, Reynolds, Shannon, St. Francois, St. Louis, Ste. Genevieve, Washington |
| TENNESSEE | 1 | Benton, Carroll, Chester, Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Henderson, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, Weakley |
| TENNESSEE | 2 | Decatur, Hardin, Houston, Humphreys, McNairy, Montgomery, Perry, Stewart, |

 © 2016 Liberty Mutual Insurance

## APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE

| REGION / STATE | COUNTIES / COORDINATES |
| --- | --- |
| CANADA: BRITISH COLUMBIA and VANCOUVER ISLAND | South of 50° N latitude and west of 120° W longitude |
| OREGON | Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill |
| WASHINGTON | Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom |

## APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

### SOUTHERN TIER ONE: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantly, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Pierce, Wayne |
| Louisiana | Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Tyrrell, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |

## APPENDIX D (continued)

## NAMED STORM TIERS FOR USA INCLUDING
## ITS COMMONWEALTHS AND TERRITORIES

### NORTHERN TIER ONE: VIRGINIA TO MAINE

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|-------------------------------------------|
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Sussex |
| Maine | Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington, York |
| Maryland | Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Rockingham |
| New Jersey | Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk |
| Rhode Island | Bristol, Newport, Washington |
| Virginia | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York |
| | Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg |

### SOUTHERN TIER TWO: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|-------------------------------------------|
| Alabama | Clarke, Coffee, Conecuh, Covington, Dale, Escambia, Geneva, Houston, Monroe, Washington |
| Louisiana | Allen, Avoyelles, Beauregard, Evangeline, St. Helena, St. Landry, West Feliciana |
| Mississippi | Forrest, Greene, Jones, Lamar, Marion, Perry, Pike, Walthall, Wayne |
| North Carolina | Cumberland, Edgecombe, Greene, Johnston, Robeson, Sampson, Wilson |
| South Carolina | Bamberg, Calhoun, Clarendon, Dillon, Florence, Hampton, Marion, Orangeburg |
| Texas | Austin, Brazos, Colorado, De Witt, Duval, Fayette, Gonzales, Grimes, Jim Hogg, Karnes, Lavaca, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Walker, Waller, Washington |

 © 2016 Liberty Mutual Insurance

## APPENDIX D (continued)

### *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

| Other States, Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | **TIER** | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| HAWAII | 1 | Entire State |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

## APPENDIX E - *FLOOD* HAZARD **LOCATIONS**

High Hazard **Location(s)**
NCP

Moderate Hazard **Location(s)**
NCP

## FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this Policy at time of issue:

| Form or Endorsement Number | Form or Endorsement Name |
|---|---|
| CNP 90 06 01 17 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism |
| PY 03 24 04 17 | Emergency Evacuation Expense |
| PZ 00 01 08 16 | Communicable Disease Decontamination Cost Endorsement |
| PY 04 10 01 17 | Removal of Vacancy Condition |
| PY 03 11 01 17 | Research Animals Endorsement |
| PY 04 07 01 17 | Schedule of Lenders or Mortgagees |

 © 2016 Liberty Mutual Insurance

## STATE AMENDATORY ENDORSEMENTS

| Endorsement Number | Endorsement Name |
|---|---|
| PY 01 37 01 17 | Washington Changes |
| PY 02 49 01 17 | Washington Changes - Cancellation and Nonrenewal |

Policy Number YAC-L9L-469720-029
Issued by     Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

**We** will not pay for loss or damage directly or indirectly caused by or resulting from a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence.

**C.** Exception Covering Certain Fire Losses

The following exception to the exclusion in Paragraph **B.** applies only in the following states: California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, U.S. Virgin Islands, Washington, West Virginia, and Wisconsin.

If a "certified act of terrorism" results in fire, **we** will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to **covered property**. Therefore, for example, the coverage does not apply to insurance provided under TIME ELEMENT.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.** Application Of Exclusions

The terms and limitations of SECTION **II.C.** EXCLUSIONS, **2.a**. do not serve to create coverage for any loss which would otherwise be excluded under this endorsement or the Policy, such as losses excluded under SECTION **II.C.** EXCLUSIONS, **2. b., c., d**., or **e.**

**PY 04 04 01 17**                    © 2016 Liberty Mutual Insurance                    Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number   YAC-L9L-469720-029
Issued by        Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EMERGENCY EVACUATION EXPENSE

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The following is added to SECTION III – TIME ELEMENT, **E.** TIME ELEMENT COVERAGES AND LIMITATIONS:

EMERGENCY EVACUATION EXPENSE

**We** cover the reasonable and necessary costs **you** incur for the emergency evacuation of patients, tenants or lawful occupants from, and subsequent return to a covered **location**, when a civil authority orders the emergency evacuation as a direct result of immediately impending physical loss or damage of the type insured by this Policy.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

Policy Number  YAC-L9L-469720-029
Issued by  Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### COMMUNICABLE DISEASE DECONTAMINATION COST ENDORSEMENT

The following PROPERTY DAMAGE COVERAGE AND LIMITATION is added to SECTION II, **D.** of this Policy:

*COMMUNICABLE DISEASE* DECONTAMINATION COSTS

a.  If **your covered property** at a covered **location** shown on the Schedule of this endorsement is contaminated by a *communicable disease* as the direct result of a **covered loss**, and there is in force at the time of that **covered loss** a law or ordinance that requires **you** to decontaminate that **covered property** as a result of this contamination by a *communicable disease*, **we** will pay up to the limit as specified in the LIMITS OF LIABILITY Table in the Declarations in any one (1) **occurrence** for those decontamination costs incurred by **you**, but only to satisfy the minimum requirements of that applicable law or ordinance.

b.  **We** will not pay under this endorsement, however, for:

(1)  Any cost of removing contaminated property, or the cost to clean up the **contamination** for property not owned by **you** whether or not the **contamination** results from a **covered loss**; or

(2)  Any costs associated with any other **contamination** loss.

c.  For purposes of this extension the italicized term *communicable disease* means a viral or bacterial organism that is capable of inducing disease, illness, physical distress or death.

**Schedule**

Covered **Location**

**Per Schedule on File**

  © 2016 Liberty Mutual Insurance

Policy Number   YAC-L9L-469720-029
Issued by        Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### REMOVAL OF VACANCY CONDITION

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The VACANCY condition of SECTION V – GENERAL POLICY CONDITIONS does not apply to the **location(s)** shown in the Schedule of this endorsement.

Schedule

| Location(s) |
|---|
| Per Schedule on File |

All other terms and conditions remain unchanged.

          © 2016 Liberty Mutual Insurance

Policy Number YAC-L9L-469720-029
Issued by     Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### RESEARCH ANIMALS ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A. We** provide the following PROPERTY DAMAGE COVERAGE AND LIMITATION for a **covered loss** as specified in the LIMIT OF LIABILITY and DEDUCTIBLE Table in the Schedule of this endorsement, subject to the terms, conditions and exclusions of this Policy:

RESEARCH ANIMALS

**1. We** cover the cost to replace **your** laboratory animals used in medical research either destroyed or deemed unsuitable for use while at a covered **location** from a **covered loss**.

**2. We** do not cover loss to laboratory animals resulting from the following unless directly resulting from direct physical loss or damage:

   **a.** Death or destruction from natural causes, unknown causes, medical procedures including surgery, inoculation, parturition or abortion.

   **b.** Errors or omission in processing and/or failure on **your** part to provide nourishment, medicine or sanitary conditions.

   **c.** **Contamination** of animals, food or medicine.

   **d.** The intentional destruction of animals.

   **e.** Escape.

   **f.** Sickness, disease, infection, infestation or illness.

**3. We** do not cover the cost to restore the research project to its condition prior to the loss.

All other terms and conditions remain unchanged.

Schedule

| COVERAGE | LIMIT OF LIABILITY | DEDUCTIBLE AMOUNT |
|----------|--------------------|-----------------|
| RESEARCH ANIMALS | $5,000,000, no more than $5,000 per animal | $100,000 |

         © 2016 Liberty Mutual Insurance

Policy Number   YAC-L9L-469720-029
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SCHEDULE OF LENDERS OR MORTGAGEES**

| Location | Description of Property | Name and Address of Lender or Mortgagee | Interests ("L" for Lender) ("M" for Mortgagee) |
|---|---|---|---|
| Per schedule or certificates of insurance on file with us | RP, PP | Per Schedule on file with us | L/M |

© 2016 Liberty Mutual Insurance

Policy Number   YAC-L9L-469720-029
Issued by       Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WASHINGTON CHANGES

This endorsement applies only to **covered property** located in Washington and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™
EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

**H.** JURISDICTION

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** The first paragraph of item **2.** of SECTION II – PROPERTY DAMAGE, **C.** EXCLUSIONS is replaced with the following:

**We** do not cover any of the excluded events listed below.  Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**C.** Paragraph **i.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is replaced by the following:

  **i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

   **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

   **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

   However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

   This exclusion will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

            © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Paragraph **3.** of  SECTION IV – DESCRIBED LOSSES, **A.** EARTH MOVEMENT is replaced by the following:

    **3.** *EARTH MOVEMENT* is:

        Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

        However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**E.** Paragraph **2.** of  SECTION IV – DESCRIBED LOSSES, **D.** FLOOD is replaced by the following:

    **2.** *FLOOD* is:

        **a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

        **b.** Sewer back-up resulting from any of the foregoing; or

        **c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

        that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

    **Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy.  However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

**F.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

    **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

    This entire Policy is void if **you** intentionally conceal or misrepresent any material fact or circumstance relating to it.

    However, this will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

**G.** Paragraph **E.** INSPECTION of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

    **E.** INSPECTION

        **1.** During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards. **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

        **2.** This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**H.** Paragraph **F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS of SECTION V - GENERAL POLICY CONDITIONS is deleted and replaced by endorsement PY 03 21 Washington Lender's Loss Payable Endorsement as required by the Washington Insurance Commissioner.

**I.** Paragraph **5.** of SECTION V - GENERAL POLICY CONDITIONS, OTHER INSURANCE is replaced by the following:

    **5.** **You** may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If **you** do, **we** will pay **our** share of the **covered loss** or damage. **Our** share is the proportion that the applicable LIMIT OF LIABILITY under this Policy bears to the limits of liability of all insurance covering on the same basis.

**J.** Paragraph **2.** of SECTION V - GENERAL POLICY CONDITIONS, VALUATION is replaced by the following:

    **2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or *replacement cost* basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

    *Replacement cost* means the cost to replace **covered property**:

        **a.** With new materials of like kind and quality and used for the same purpose; and

        **b.** At the location where the loss happened.

    But *replacement cost* excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**K.** Paragraph **2.** of SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is replaced by the following:

    **2.** **We** will be entitled to a recovery only after **you** have been fully compensated for damages.

**L.** Paragraph **1.** of SECTION VII – DEFINITIONS is replaced by the following:

    **1.** **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, but in no event more than the fair market value.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**M.** Paragraph **B.** of endorsement PY 04 04 EXCLUSION OF CERTIFIED ACTS OF TERRORISM is replaced by the following:

    **B.** The following exclusion is added:

    CERTIFIED ACT OF TERRORISM EXCLUSION

    **We** will not pay for loss or damage caused by or resulting from a "certified act of terrorism". Loss or damage will be considered to have been caused by or resulting from a "certified act of terrorism" if the **occurrence** of that "certified act of terrorism" directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number YAC-L9L-469720-029
Issued by    Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WASHINGTON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **B.** CANCELLATION of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

**B.** CANCELLATION

1. **You** may cancel this Policy by notifying **us** or **your** insurance agent or broker in one of the following ways:

   a. Written notice by mail, fax or e-mail;

   b. Surrender of the Policy or binder; or

   c. Verbal notice.

   Upon receipt of such notice, **we** will cancel this Policy or any binder issued as evidence of coverage, effective on the later of the following:

   a. The date on which notice is received or the Policy or binder is surrendered; or

   b. The date of cancellation requested by **you**.

2. **We** may cancel this Policy by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to **us**, at least:

   a. Ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   b. Forty-five (45) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason;

   except as provided in Paragraph **3.** below.

3. **We** may cancel the Policy, by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation at least five (5) days before the effective date of cancellation for any **real property** where two or more of the following conditions exist:

   a. Without reasonable explanation, the **real property** is unoccupied for more than sixty (60) consecutive days, or at least 65% of the rental units are unoccupied for more than one hundred twenty (120) consecutive days, unless the **real property** is maintained for seasonal occupancy or is under construction or repair;

   b. Without reasonable explanation, progress toward completion of permanent repairs to the **real property** has not occurred within sixty (60) days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. Because of its physical condition, the **real property** is in danger of collapse;

d. Because of its physical condition, a vacation or demolition order has been issued for the **real property**, or it has been declared unsafe in accordance with applicable law;

e. Fixed and salvageable items have been removed from the **real property**, indicating an intent to vacate the **real property**;

f. Without reasonable explanation, heat, water, sewer and electricity are not furnished for the **real property** for sixty (60) consecutive days; or

g. The **real property** is not maintained in substantial compliance with fire, safety and building codes.

4. **We** will also mail or deliver to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to **you**. If cancellation is for a reason contained in Paragraph **A.3.** above, **we** will mail or deliver this notice at least twenty (20) days prior to the effective date of cancellation.

5. Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

6. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if **we** have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The NONRENEWAL provision of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

NONRENEWAL

**We** may decide not to renew this Policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to **you** and **your** insurance agent or broker at their last mailing addresses known to **us**. If notice is mailed, proof of mailing will be sufficient evidence of notice. **We** will also mail to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of nonrenewal. **We** will mail or deliver these notices at least sixty (60) days before the:

1. Expiration of the Policy; or

2. Anniversary date of this Policy if this Policy has been written for a term of more than one (1) year.

If notice of nonrenewal is not received by **you** as outlined above, **you** and **your** insurance agent or broker will receive written notice of **our** intent to renew this Policy. This notice will be sent at least twenty (20) days prior to the Policy expiration or anniversary date. Included in this notice will be changes, if any, in rates, terms, or conditions made to the expiring Policy. **We** will mail or deliver the notice to **you** and **your** insurance agent or broker, at their last mailing address known to **us**.

This notice will not be sent if **we** have received written notice, prior to the expiration date of this Policy, of **your** intent to obtain replacement coverage elsewhere or that **you** have already done so.

Endorsement number 1 for policy number YAC-L9L-469720-029

Named Insured Northwest Hospital

This endorsement is effective 07/01/2019 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Change Endorsement

DESCRIPTION OF CHANGE

PREMIUM

Premium is adjusted as a result of changes on the schedule of locations on file with us.

$19,586 CR

SECTION I - DECLARATIONS, LIMITS OF LIABILITY TABLE – PART ONE, Form PY 00 01 02 17 is amended as follows:

The Personal Property on the Statement of Values/ Schedule of Locations on file with us at the following Location 6.1, 9709 3rd Ave NE, Seattle, WA 98115, has been decreased by $31,589,108 to a new amount of $14,000,000.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):                      $19,586 CR
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:                                                  $19,586 CR

IC9999
10-11

Endorsement number 2 for policy number YAC-L9L-469720-029

Named Insured University of Washington - UW Medical Center/Northwest and any subsidiary, and UW Medicine/Northwest's interest in any partnership or joint venture in which UW Medicine/Northwest has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as the "Insured", including legal representatives

This endorsement is effective 01/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Change Endorsement

DESCRIPTION OF CHANGE                                                                PREMIUM

POLICY COVER PAGE, Form PY 00 00 01 17 is amended as follows:

The named insured on the Policy Cover Page is changed to: University of Washington –
UW Medical Center/Northwest and any subsidiary, and UW Medicine/Northwest's interest
in any partnership or joint venture in which UW Medicine/Northwest has management
control or ownership as now constituted or hereafter is acquired, as the respective interest of
each may appear; all hereafter referred to as the "Insured", including legal representatives

Formerly: Northwest Hospital

SECTION I - DECLARATIONS, Form PY 00 01 02 17 is amended as follows:

The First Named Insured on the Declarations is changed to: University of Washington –
UW Medical Center/Northwest and any subsidiary, and UW Medicine/Northwest's interest
in any partnership or joint venture in which UW Medicine/Northwest has management
control or ownership as now constituted or hereafter is acquired, as the respective interest of
each may appear; all hereafter referred to as the "Insured", including legal representatives

Formerly: Northwest Hospital

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Endorsement number 3 for policy number YAC-L9L-469720-029

Named Insured University of Washington - UW Medical Center/Northwest and any subsidiary, and UW Medicine/Northwest's interest in any partnership or joint venture in which UW Medicine/Northwest has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as the "Insured", including legal representatives

This endorsement is effective 07/01/2019 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Change Endorsement

DESCRIPTION OF CHANGE                                                                PREMIUM

SECTION I - DECLARATIONS, LIMITS OF LIABILITY TABLE – PART ONE, Form PY 00 01 02 17 is amended as follows:

Contingent Time Element is amended to:

• $20,000,000 Direct Dependent Contingent Time Element Location(s) Not Scheduled or on file with us.

• $5,000,000 Indirect Dependent Contingent Time Element Location(s) Not Scheduled or on file with us.

Endorsement Number PZ 00 41 04 18, TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE is added.

Limit of Liability: 30 Days, Not to Exceed $1,000,000 limit.

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Policy Number YAC-L9L-469720-029
Issued by       Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR

1. The following TIME ELEMENT COVERAGE AND LIMITATION is added to **E.** TIME ELEMENT COVERAGES AND LIMITATIONS in SECTION III- TIME ELEMENT of this policy:

TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE

   **a.** If **your covered property** at a covered **location** is contaminated by a *communicable disease* as the direct result of a **covered loss**, and there is in force at the time of that **covered loss** a law or ordinance that requires you to suspend your operations on account of that contamination, **we** will pay the actual loss of GROSS PROFIT or GROSS EARNINGS you sustain due to the necessary suspension of your normal operations at that covered **location** because it is either partially or totally closed by order of authority described in **b.** below.

   **b.** The sole determinant of disease contamination of a magnitude great enough to either partially or totally close **your** normal operations will be either the:

   **(1)** National Center for Disease Control; or

   **(2)** The governmental authority having jurisdiction over **your** operations that relate to health and hygiene standards necessary to protect the general public.

   **c.** The most **we** will pay for this TIME ELEMENT COVERAGE AND LIMITATION in any one (1) **occurrence** is the LIMIT OF LIABILITY specified in the LIMITS OF LIABILITY TABLE.

   **d.** For the purposes of this endorsement the italicized term *communicable disease* means a viral or bacterial organism that is capable of inducing disease, illness, physical distress or death.

# Exhibit 3



Liberty Mutual Group
818 West 7th Street, Suite 850
Los Angeles, CA 90017

Parker Smith & Feek, Inc.
2233 112th Ave NE
Bellevue, WA 98004
ATTN: John Larson

**Named Insured:**
Harborview Medical Center

**Policy Number:**
YAC-L9L-469720-049

**Effective:** 07/01/2019 07/01/2020

Attached please find copies of the Employers Insurance of Wausau policy for the above account.
Should you have any questions or if we can provide you with any assistance, please do not
hesitate to call Jennifer Hennessy @ 925.433.4502 or jennifer.hennessy@libertymutual.com

Thank you and regards,

*Nora Chiara*

Nora Chiara
Associate Account Analyst
National Insurance Property
Liberty Mutual Insurance
Direct Dial: 213.443.0776
Mailing address: 818 W. 7th Street, Ste. 850, Los Angeles, CA 90017
Nora.Chiara@LibertyMutual.com

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**A.** Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, **we** are required to provide **you** with a notice disclosing the portion of **your** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of **your** premium attributable to such coverage is shown in D. PREMIUM in the Declarations.

**B.** Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals the percentage indicated below of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Federal share of terrorism losses: 84%, calendar year 2016
Federal share of terrorism losses: 83%, calendar year 2017
Federal share of terrorism losses: 82%, calendar year 2018
Federal share of terrorism losses: 81%, calendar year 2019
Federal share of terrorism losses: 80%, calendar year 2020

**C.** Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

 © 2016 Liberty Mutual Insurance

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# **PREMIER PROPERTY PROTECTOR™**

POLICY COVER PAGE

| POLICY NUMBER: | DATE OF ISSUE: |
|---|---|
| YAC-L9L-469720-049 | 7/16/2019 |

| COMPANY PROVIDING INSURANCE: |
|---|
| Employers Insurance Company of Wausau |
| ( hereafter referred to as **we, us** or **our** ) |

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**We** insure:

| Harborview Medical Center |
|---|
| ( hereafter referred to as **you** or **your(s)** ) |

The term of this Policy is from 7/1/2019 to 7/1/2020 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

## PRODUCER NAME AND OFFICE

PARKER SMITH & FEEK INC
2233 112TH AVE NE,
BELLEVUE, WA 98004

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning. Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

IN WITNESS WHEREOF, the company has caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

President

Secretary

PY 00 00 01 17 © 2016 Liberty Mutual Insurance Page 1 of 1

# TABLE OF CONTENTS

## POLICY COVER PAGE

SECTION I - DECLARATIONS.................................................................................................... 5

**A.** FIRST NAMED INSURED AND MAILING ADDRESS.................................................................................5

**B.** POLICY PERIOD .........................................................................................................................................5

**C.** INSURING AGREEMENT............................................................................................................................5

**D.** PREMIUM ...................................................................................................................................................5

**E.** PREMIUM PAYABLE...................................................................................................................................6

**F.** COVERED LOCATION(S) ...........................................................................................................................7

**G.** TERRITORY.................................................................................................................................................7

**H.** JURISDICTION ...........................................................................................................................................8

**I.** CURRENCY .................................................................................................................................................8

**J.** DEFINED WORDS.......................................................................................................................................8

**K.** LIMITS OF LIABILITY .................................................................................................................................8

**L.** CANCELLATION TIME SPECIFICATIONS............................................................................................... 12

**M.** DEDUCTIBLES ......................................................................................................................................... 12

**N.** QUALIFYING PERIOD(S)........................................................................................................................ 16

SECTION II – PROPERTY DAMAGE........................................................................................ 17

**A.** COVERED PROPERTY............................................................................................................................. 17

**B.** PROPERTY NOT COVERED.................................................................................................................... 17

**C.** EXCLUSIONS ........................................................................................................................................... 18

**D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS ...................................................................... 22

   **1.** ACCOUNTS RECEIVABLE.................................................................................................................. 22

   **2.** BRANDS AND LABELS ....................................................................................................................... 22

   **3.** CONTROL OF DAMAGED GOODS..................................................................................................... 23

   **4.** COURSE OF CONSTRUCTION.......................................................................................................... 23

   **5.** DATA, PROGRAMS OR SOFTWARE.................................................................................................. 23

   **6.** DEBRIS REMOVAL ............................................................................................................................. 24

   **7.** DECONTAMINATION COSTS............................................................................................................. 24

   **8.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS ..................................................................... 25

   **9.** DEFERRED PAYMENTS...................................................................................................................... 25

  **10.** DEMOLITION AND INCREASED COST OF CONSTRUCTION ........................................................... 25

  **11.** ERRORS AND OMISSIONS................................................................................................................. 26

  **12.** EXPEDITING EXPENSE....................................................................................................................... 26

  **13.** FINE ARTS........................................................................................................................................... 27

| 14. | FIRE DEPARTMENT SERVICE CHARGES | 27 |
| 15. | LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL | 27 |
| 16. | MISCELLANEOUS **PERSONAL PROPERTY** | 27 |
| 17. | NEWLY ACQUIRED **LOCATIONS** | 28 |
| 18. | OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE | 28 |
| 19. | PROFESSIONAL FEES | 28 |
| 20. | PROTECTION AND PRESERVATION OF PROPERTY | 29 |
| 21. | RADIOACTIVE CONTAMINATION | 29 |
| 22. | TAX LIABILITY | 29 |
| 23. | TEMPORARY REMOVAL OF PROPERTY | 30 |
| 24. | TRANSIT | 30 |
| 25. | **VALUABLE PAPERS AND RECORDS** | 32 |

**SECTION III – TIME ELEMENT** .............................................................................. 33

| A. | LOSS INSURED | 33 |
| B. | TIME ELEMENT COVERAGES | 33 |
| 1. | *GROSS EARNINGS* | 33 |
| 2. | EXTRA EXPENSE | 35 |
| 3. | LEASEHOLD INTEREST | 35 |
| 4. | RENTAL INSURANCE | 35 |
| C. | PERIOD OF LIABILITY | 36 |
| D. | TIME ELEMENT EXCLUSIONS | 37 |
| E. | TIME ELEMENT COVERAGES AND LIMITATIONS | 38 |
| 1. | *ATTRACTION PROPERTY* | 38 |
| 2. | CIVIL OR MILITARY AUTHORITY | 38 |
| 3. | COMPUTER SYSTEMS NON PHYSICAL DAMAGE | 39 |
| 4. | CONTINGENT TIME ELEMENT | 39 |
| 5. | CRISIS MANAGEMENT | 40 |
| 6. | DELAY IN STARTUP | 40 |
| 7. | EXTENDED PERIOD OF LIABILITY | 40 |
| 8. | INGRESS / EGRESS | 41 |
| 9. | OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | 41 |
| 10. | ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | 42 |
| 11. | PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT | 42 |
| 12. | RELATED **LOCATIONS** | 42 |
| 13. | RESEARCH AND DEVELOPMENT | 42 |
| 14. | SOFT COSTS | 42 |

**SECTION IV – DESCRIBED LOSSES** ......................................................................... 44

**A.** *EARTH MOVEMENT* ...................................................................................................................................... 44

**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE. ................................................................................................ 44

**C.** *EQUIPMENT BREAKDOWN* ........................................................................................................................... 44

**D.** *FLOOD* ............................................................................................................................................................ 47

**E.** *NAMED STORM* .............................................................................................................................................. 47

**SECTION V - GENERAL POLICY CONDITIONS** .................................................................. 48

**A.** ASSIGNMENT ................................................................................................................................................... 48

**B.** CANCELLATION. .............................................................................................................................................. 48

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD ................................................................................. 48

**D.** CONFORMITY TO STATUTES ......................................................................................................................... 49

**E.** INSPECTION ..................................................................................................................................................... 49

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS ......................................... 49

**G.** LIBERALIZATION ............................................................................................................................................. 50

**H.** NO REDUCTION BY LOSS .............................................................................................................................. 50

**I.** NONRENEWAL ................................................................................................................................................... 50

**J.** OTHER INSURANCE ......................................................................................................................................... 50

**K.** PAIR, SET OR PARTS ...................................................................................................................................... 51

**L.** POLICY MODIFICATION ................................................................................................................................... 51

**M.** TITLES ............................................................................................................................................................... 51

**N.** TRANSFER OF RIGHTS AND DUTIES ........................................................................................................... 51

**O.** VACANCY .......................................................................................................................................................... 51

**P.** VALUATION ....................................................................................................................................................... 52

**SECTION VI – LOSS CONDITIONS** ....................................................................................... 55

**A.** ABANDONMENT OF PROPERTY .................................................................................................................... 55

**B.** APPRAISAL ....................................................................................................................................................... 55

**C.** COLLECTION FROM OTHERS ........................................................................................................................ 55

**D.** COMPANY OPTION .......................................................................................................................................... 55

**E.** DUTIES AFTER A LOSS ................................................................................................................................... 55

**F.** LOSS ADJUSTMENT / PAYABLE .................................................................................................................... 56

**G.** PAYMENT OF LOSS ......................................................................................................................................... 57

**H.** SUBROGATION ................................................................................................................................................. 57

**I.** SUIT AGAINST THE COMPANY ....................................................................................................................... 57

**SECTION VII – DEFINITIONS** ................................................................................................. 58

**APPENDIX A - SCHEDULE OF COVERED LOCATIONS** ....................................................... 61

**APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES** ................................................. 62

**APPENDIX C - PACIFIC NORTHWEST** *EARTH MOVEMENT* **ZONE** ................................... 63

APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS
AND TERRITORIES................................................................................................................. 64

APPENDIX E - *FLOOD* HAZARD **LOCATIONS**...................................................................... 67

FORMS AND ENDORSEMENTS........................................................................................... 68

Disclosure Pursuant to Terrorism Risk Insurance Act.................................................................................. 68

Exclusion of Certified Acts of Terrorism ...................................................................................................... 68

Emergency Evacuation Expense.................................................................................................................. 68

Communicable Disease Decontamination Cost Endorsement ..................................................................... 68

Removal of Vacancy Condition .................................................................................................................... 68

Research Animals Endorsement .................................................................................................................. 68

Schedule of Lenders or Mortgagees ........................................................................................................... 68

STATE AMENDATORY ENDORSEMENTS.......................................................................... 69

Washington Changes ................................................................................................................................... 69

Washington Changes - Cancellation and Nonrenewal................................................................................. 69

# SECTION I - DECLARATIONS

## A. FIRST NAMED INSURED AND MAILING ADDRESS

Harborview Medical Center and any subsidiary, and the interest of Harborview Medical Center in any partnership or joint venture in which Harborview Medical Center has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as **you** or **yours**, including legal representatives.

When any insured described above is a party to a written contract or agreement on file that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to **covered property** which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any TIME ELEMENT Coverage to the legal entity, except as provided under LEASEHOLD INTEREST of this Policy or as specifically endorsed to the Policy.

Compliance and Risk Services
Box 354964; 4300 Roosevelt Way NE
Seattle, WA 98105-4964

## B. POLICY PERIOD

The term of this Policy is from July 1, 2019 to July 1, 2020 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

## C. INSURING AGREEMENT

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

## D. PREMIUM

This Policy is issued in consideration of the following initial premium inclusive of any premium shown on endorsements which are part of the Policy at the time of issue.

| | |
|---|---|
| Policy Premium (Excluding premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended): | $795,895 |
| | |
| Policy Premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended: | Rejected |
| • Policy Premium for Fire Following Acts of **Terrorism** (in States where required) | $33,993 |
| | |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges summary shown below) | $0 |
| | |
| Total Policy Premium/Other Charges for Above Policy Period: | $829,888 |
| | |
| Policy Premium will be billed annual. | |

| The Deposit Premium/Other Charges is: | $829,888 |
|---|---|

## E. PREMIUM PAYABLE

The First Named Insured pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of the First Named Insured.

Premiums will be paid in the currency designated in paragraph I. CURRENCY.

© 2016 Liberty Mutual Insurance

**F.** COVERED LOCATION(S)

This Policy applies at a **location(s)**:

1. Listed on a SCHEDULE on file with **us**;

2. Listed on the SCHEDULE attached to this Policy;

3. Covered as a **Miscellaneous Unnamed Location**; or

4. Covered under the terms and conditions of the NEWLY ACQUIRED **LOCATIONS** Coverage or ERRORS AND OMISSIONS Coverage.

**G.** TERRITORY

Coverage under this Policy applies to **covered property** within the continental United States of America, Hawaii and Puerto Rico.

**H.** JURISDICTION

The validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York.

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**I.** CURRENCY

All amounts, including deductibles and LIMITS OF LIABILITY, indicated in this Policy are in U.S. Dollars unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

**J.** DEFINED WORDS

Words in bold face type have special meanings in this Policy and are defined in the DEFINITIONS section of this Policy. These definitions apply to this entire Policy and to any endorsements to it. Definitions that apply to individual sections or paragraphs are italicized and defined in the applicable sections or paragraphs.

**K.** LIMITS OF LIABILITY

When a POLICY LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, **our** maximum LIMIT OF LIABILITY in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the stated POLICY LIMIT OF LIABILITY.

1. When a PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, it will apply to all coverages provided throughout this Policy, unless a LIMIT OF LIABILITY or "NCP" (No Coverage Provided) is indicated.

   a. When a LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, such limit will be the maximum amount payable for such loss or damage and cannot be combined with any other LIMIT OF LIABILITY.

   b. If "NCP" is specified in the LIMITS OF LIABILITY, there is no coverage provided in this Policy.

2. LIMITS OF LIABILITY in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

   a. When a LIMIT OF LIABILITY that applies in the aggregate during any Policy year is shown, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY during any Policy year.

   b. When a LIMIT OF LIABILITY applies to a **location(s)**, specified property, DESCRIBED LOSSES or a specific coverage, the smallest applicable LIMIT OF LIABILITY will be the maximum amount payable.

   c. Should an **occurrence** result in liability payable under more than one Policy issued to **you** by **us**, or by **our** subsidiaries, partners, or associated insurance companies, the maximum amount payable in the aggregate under all such policies will be the applicable LIMIT(S) OF LIABILITY indicated in this Policy.

   d. When a LIMIT OF LIABILITY applies to TIME ELEMENT only, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY per **occurrence**.

3. LIMITS OF LIABILITY specified below or elsewhere in this Policy do not increase and are part of and not in addition to the POLICY LIMIT OF LIABILITY or the PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY.

4. LIMITS OF LIABILITY apply per **occurrence** unless otherwise specified, including time and distance limits.

LIMITS OF LIABILITY TABLE – PART ONE

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| POLICY LIMIT OF LIABILITY | $600,000,000 |
| ACCOUNTS RECEIVABLE | $10,000,000 |
| *ATTRACTION PROPERTY* | 1 statute miles from a covered **location** 30 consecutive days, not to exceed $500,000 |
| BRANDS AND LABELS | $1,000,000 |
| CIVIL OR MILITARY AUTHORITY | 1 statute miles from a covered **location** 90 consecutive days, not to exceed $10,000,000 |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | $1,000,000 |
| CONTINGENT TIME ELEMENT <br><br> • *Direct Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** <br><br> • *Indirect Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** | $10,000,000 <br><br><br> $10,000,000 |
| CONTROL OF DAMAGED GOODS | $500,000 |
| COURSE OF CONSTRUCTION | $25,000,000 |
| CRISIS MANAGEMENT | 30 consecutive days, not to exceed $1,000,000 |
| DEBRIS REMOVAL | $25,000,000 |
| DECONTAMINATION COSTS | $2,500,000 |
| DEFERRED PAYMENTS | $2,500,000 |
| DELAY IN STARTUP | $1,000,000 |

 © 2016 Liberty Mutual Insurance

| DEMOLITION AND INCREASED COST OF CONSTRUCTION | $50,000,000 |
| --- | --- |
| ERRORS AND OMISSIONS | $15,000,000 |
| EXPEDITING EXPENSE | $25,000,000 |
| EXTENDED PERIOD OF LIABILITY | 365 consecutive days |
| EXTRA EXPENSE | $10,000,000 |
| **FINE ARTS** | $2,500,000 |
| FIRE DEPARTMENT SERVICE CHARGES | $5,000,000 |
| IMPOUNDED WATER | 30 consecutive days, not to exceed $1,000,000 |
| INGRESS / EGRESS | 1 statute miles from a covered **location** 90 consecutive days, not to exceed $10,000,000 |
| LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL in the **annual aggregate** | $1,000,000 |
| LEASEHOLD INTEREST | $10,000,000 |
| MISCELLANEOUS **PERSONAL PROPERTY** | $10,000,000 |
| **Miscellaneous Unnamed Locations** | $10,000,000 |
| Mold, Mildew or Fungus directly resulting from a **Covered Loss** | $10,000,000 |
| NEWLY ACQUIRED **LOCATIONS** | 90 consecutive days, not to exceed $10,000,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE and OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | $15,000,000 |
| **Ordinary Payroll** | 180 consecutive days |
| PROFESSIONAL FEES | $500,000 |

 © 2016 Liberty Mutual Insurance

| | |
|---|---|
| RADIOACTIVE **CONTAMINATION** | $5,000,000 |
| **RENTAL INSURANCE** | $1,000,000 |
| **RESEARCH AND DEVELOPMENT** | $5,000,000 |
| *SOFT COSTS* | $1,000,000 |
| **TAX LIABILITY** | $1,000,000 |
| **TRANSIT** | $2,500,000 |
| **VALUABLE PAPERS AND RECORDS** | $25,000,000 |

## LIMITS OF LIABILITY TABLE – PART TWO

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| *EARTH MOVEMENT* in the **annual aggregate** | $25,000,000 |
| except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *EARTH MOVEMENT* **annual aggregate** limit: | |
| • **Covered property** situated in: | |
| Pacific NW Earth Movement Zone | $25,000,000 |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $600,000,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE | $100,000,000 |
| TIME ELEMENT | $100,000,000 |
| except: | |
| The following limits are part of and not in addition to the EQUIPMENT BREAKDOWN limits specified above: | |
| • Ammonia **Contamination** | $1,000,000 |
| • CONTINGENT TIME ELEMENT | $1,000,000 |

| | |
|---|---|
| • Spoilage Damage | $5,000,000 |
| *FLOOD* in the **annual aggregate**<br><br>except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *FLOOD* **annual aggregate** limit:<br><br>• **Covered property** at **locations** situated in:<br><br>  Flood Hazard - High | $50,000,000<br><br><br><br><br><br><br><br>$2,500,000 |
| *NAMED STORM* | Included |

## ENDORSEMENT LIMITS OF LIABILITY

| Endorsement Number | Endorsement Name | LIMITS OF LIABILITY |
|---|---|---|
| CNP 90 06 01 17 | Disclosure Pursuant to Terrorism Risk Insurance Act | Rejected |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism | |
| PY 03 11 01 17 | Research Animals Endt | $5,000,000, no more than $5,000 per animal |

## L. CANCELLATION TIME SPECIFICATIONS

| | |
|---|---|
| Cancellation for Nonpayment of Premium | Ten (10) days |
| Cancellation for All Reasons Other Than Nonpayment of Premium | 30 days |

## M. DEDUCTIBLES

Subject to the Deductible General Provisions stated below, **we** will not pay unless a **covered loss**, including any insured TIME ELEMENT loss, exceeds the deductible(s) specified below. **We** will then pay the amount of **covered loss** in excess of the deductible, up to the applicable LIMIT OF LIABILITY.

Deductible General Provisions

**We** will be liable only if **you** sustain a **covered loss**, including any insured TIME ELEMENT loss, in a single **occurrence** greater than the applicable deductible specified. When this Policy insures more than one (1) **location**, the deductible(s) will apply against the total loss covered by this Policy in an **occurrence** unless otherwise stated.

1. Unless otherwise stated, if two or more deductibles apply to an **occurrence**, the total deductible will not exceed the largest applicable deductible, except as follows:

    **a.** When a separate PROPERTY DAMAGE and TIME ELEMENT deductible apply, each will be applied separately.

    **b.** If there are multiple **locations** involved in an **occurrence** where two or more deductibles apply to a **location** in an **occurrence,** the largest deductible applying to each **location** will be applied separately to each such **location**, regardless of the number of **locations** involved in the **occurrence**.

    **c.** Unless specified otherwise, if deductibles are specified for a **location**, the largest deductible applicable will be applied to that **location** regardless of the number of **locations** involved in the **occurrence.**

    **d.** Equipment Breakdown: With regard to Equipment Breakdown coverage, if one or more deductible amounts are shown below, each will be applied separately.

    **e.** The stated *EARTH MOVEMENT* deductible will be applied to *EARTH MOVEMENT* loss. The stated *FLOOD* deductible will be applied to *FLOOD* loss. The stated *NAMED STORM* deductible will be applied to *NAMED STORM* loss. Provisions **1.a.** and **1.b.** above will also be applied to each.

**2.** When a percent deductible is specified, whether separate or combined, the deductible amount will be determined as follows:

    **a.** PROPERTY DAMAGE: The percentage of the total reported values on file with **us** for the **covered property** at the corresponding **location(s)** (including sub-**locations**) where the direct physical loss or damage occurred; plus

    **b.** TIME ELEMENT: The percentage of the full TIME ELEMENT values that would have been earned in the 12-month period following the **occurrence**, had no loss occurred, by use of the facilities at the **location** where the direct physical loss or damage occurred, plus that proportion of the full TIME ELEMENT values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12-month period following the **occurrence**.

    **c.** Equipment Breakdown: The percentage of the gross amount of loss, damage or expense (prior any deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**3.** When a minimum deductible is shown, the minimum deductible is the sum of:

    **a.** The specific **location** deductible for each covered **location** where the amount of physical loss or damage exceeds the specific **location** deductible; and

    **b.** The amount of physical loss or damage for each covered **location** where the amount of physical loss or damage is less than the specific **location** deductible.

**4.** When an average daily value deductible is provided, this deductible will be determined as follows:

    **a.** The total amount of TIME ELEMENT loss applicable for the entire **location** where the direct physical loss or damage happens will be included.

    **b.** Divide the result in Paragraph **a.** by the number of days the business would have been open during the PERIOD OF LIABILITY. The result is the average daily value.

    **c.** Multiply the average daily value in Paragraph **b.** by the number of days specified in the DEDUCTIBLE TABLE below.

 © 2016 Liberty Mutual Insurance

If more than one (1) **location** is included in the valuation of the loss, the average daily value will be the combined value of all affected **locations**.

5. When a per unit deductible is specified, the following shall be considered a separate unit of insurance:

   a. Each separate building, the contents of each separate building and **covered property** in each yard at that covered **location**.

   b. TIME ELEMENT loss as applicable, including all other **locations** where TIME ELEMENT loss ensues as provided by this Policy.

6. When a time deductible is shown, **we** will not be liable for any loss under that coverage that occurs during that specified time period immediately following the direct physical loss or damage. If a time deductible is shown in days, each day shall mean twenty four (24) consecutive hours.

7. When a deductible is shown in the Declarations for a *NAMED STORM*, the following applies:

   a. All direct physical loss or damage to **covered property** including TIME ELEMENT loss caused by or resulting from a *NAMED STORM* will be subject to the deductible obtained by calculating all of the following:

      (1) The sum of all applicable percentage deductibles calculated as described in Deductible General Provisions Item **2.** above, subject to any applicable minimums or maximums; and

      (2) Any other applicable deductible amounts.

## DEDUCTIBLE TABLE – PART ONE

| Coverage | Deductible Percentage / Amounts |
|---|---|
| Policy Deductible (except as otherwise indicated) | $500,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | $500,000 |
| TRANSIT | $500,000 |
| Fine Arts | $500,000 |

 © 2016 Liberty Mutual Insurance

## DEDUCTIBLE TABLE – PART TWO

| Coverage | Deductible Percentage / Amounts |
|---|---|
| *EARTH MOVEMENT* | 2% subject to $500,000 minimum |
| except: • **Covered property** situated in: | |
| Pacific NW Earth Movement Zone | 2% subject to $500,000 minimum |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $500,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE | $500,000 |
| TIME ELEMENT | $500,000 |
| • Spoilage Damage | $500,000 |
| • Ammonia **Contamination** | $500,000 |
| *FLOOD* | $500,000 applying per location |
| except: • **Covered property** at **locations** situated in: | |
| Flood Hazard – High | $500,000 Real Property $500,000 Personal Property $100,000 Other |
| *NAMED STORM* | $500,000 |

### **OCCURRENCE** TIME SPECIFICATIONS

| *EARTH MOVEMENT* | continuous 168 hours |
|---|---|
| *NAMED STORM* | continuous 72 hours |

 © 2016 Liberty Mutual Insurance

**N.** QUALIFYING PERIOD(S)

A *qualifying period* applies for the coverages shown in the Table below. *Qualifying period* is the period of time that must be exceeded for coverage to apply. Once the *qualifying period* has been exceeded, coverage applies from the initial event of loss.

*QUALIFYING PERIOD* TABLE

| Coverage | *QUALIFYING PERIOD* |
|---|---|
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | 24 hours |
| CRISIS MANAGEMENT | 24 hours |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | 24 hours |

© 2016 Liberty Mutual Insurance

# SECTION II – PROPERTY DAMAGE

## A. COVERED PROPERTY

**1. We** cover **your** insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered **location**, unless otherwise excluded:

   **a. Real Property**, including new buildings, structures and additions in the COURSE OF CONSTRUCTION.

   **b. Personal Property**, including *personal property of others.*

   *Personal property of others* are tangible things that **you** do not own, other than **real property**, that:

   **(1)** are sold by **you** and that **you** have agreed, prior to loss, to insure for the account of the purchaser during delivery;

   **(2) you** have agreed in writing prior to any loss or damage to provide coverage;

   **(3)** are in **your** care, custody or control;

   **(4) you** have an insurable interest in, or an obligation to provide coverage;

   **(5) you** are legally liable for;

   **(6)** are improvements and betterments consisting of fixtures, alterations, installation or additions comprising part of a building not owned by **you** and acquired or made at **your** expense which **you** cannot legally move, but only to the extent of **your** insurable interest therein; or

   **(7)** are **personal property** (other than vehicles) of **your** employees and officers.

**2. We** also cover the interest of contractors and subcontractors in **covered property** during construction at or within one-thousand (1,000) feet of a covered **location** to the extent of **your** legal liability for direct physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

## B. PROPERTY NOT COVERED

**We** do not cover the following types of property:

**1.** Aircraft, except when unfueled and manufactured by **you**;

**2.** Animals, standing timber including undisturbed natural wooded areas, or growing crops;

**3.** Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

**4.** Caves, caverns, mines of any type, or any property contained within them;

**5.** Contraband or property in the course of illegal transportation or trade;

**6.** Currency, money, negotiable and non-negotiable instruments, notes or securities;

**7.** Dams, dikes, levees, docks, wharfs, piers or bulkheads;

8. **Electronic data**, computer programs or software, except when they are stock in process, finished stock manufactured by **you**, raw materials, supplies, other merchandise not manufactured by **you** or as provided in this Policy;

9. Land and any substance in or on land except this exclusion does not apply to **land improvements**;

10. **Land improvements** at a golf course;

11. Overhead transmission and distribution systems located more than one-thousand (1,000) feet away from a covered **location**;

12. *Personal property of others* that is in the care, custody or control of **you** or **your** affiliates for which **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

13. Precious metals or precious stones, except when used in industrial or service operations;

14. Property in transit, except as otherwise provided by this Policy;

15. Property more specifically insured, except for any excess over any LIMITS OF LIABILITY of such more specific insurance;

16. Property sold by **you** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to **your** customers, except as provided by the DEFERRED PAYMENTS coverage of this Policy;

17. Spacecraft, satellites, associated launch vehicles and any property contained therein;

18. Vehicles otherwise insured for physical loss or damage;

19. Water except this exclusion does not apply to water that is contained within any enclosed tank, piping system or any other processing equipment; or

20. Watercraft, except watercraft **you** manufacture and are part of **your** inventory while being stored un-fueled and on dry land at a covered **location**.

C. EXCLUSIONS

The following exclusions apply unless otherwise stated in this Policy:

1. **We** do not cover:

   a. Indirect or remote loss or damage;

   b. Interruption of business, except to the extent provided by this Policy;

   c. Loss of market or loss of use;

   d. Loss or damage or deterioration arising from any delay;

   e. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss;

   f. Loss or damage from enforcement of any law or ordinance:

      (1) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

      (2) Requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this Policy;

**g.** Loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense; or

**h.** Loss or damage caused by or resulting from freezing, disease or drought to landscape gardening, including plants, trees and shrubs.

**2. We** do not cover physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing to the loss concurrently or in any other sequence:

**a. Terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**, but this exclusion applies only when one of the following are attributed to an incident of **terrorism:**

(1) The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive **contamination;** or

(2) Radioactive material is released, and it appears that one purpose of **terrorism** was to release such material; or

(3) The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(4) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

(5) Loss or damage to property located outside of the United States, unless there is a law in effect in the jurisdiction where the loss or damage occurs that expressly prohibits this exclusion; or

(6) The total of all damage to property, whether covered by this Policy or otherwise, exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, **we** will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption (TIME ELEMENT) losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any **terrorism** exclusions. Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one (1) incident, for the purpose of determining whether the threshold is exceeded.

With respect to this item **2.a.(6)**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of **terrorism**, there is no coverage in this Policy.

However, this exclusion does not apply:

(1) If **terrorism** results in fire, in which case **we** cover the direct physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage occurs that expressly prohibits the exclusion of fire losses resulting from **terrorism.** This exception is subject to all applicable Policy provisions including the LIMIT OF LIABILITY on the affected property. Such coverage for ensuing loss applies only to direct loss or damage by fire to **covered property.** This coverage does not apply to insurance provided under any TIME ELEMENT coverages, or to fire legal liability coverage; or

© 2016 Liberty Mutual Insurance

**(2)** While the United States **Terrorism** Risk Insurance Act (TRIA), as amended, is in effect:

    **(a)** To loss or damage caused by a "Certified Act of **Terrorism**" provided that **you** elected coverage for such, and only to the extent provided by the terms and conditions of the applicable CERTIFIED ACTS OF **TERRORISM** AND DISCLOSURE PURSUANT TO **TERRORISM** RISK INSURANCE ACT endorsement; or

    **(b)** To loss or damage caused by **terrorism** that would have been certified as an "act of **terrorism**", but was not certified solely because the total of all property and casualty insurance losses resulting from the act failed to exceed the $5,000,000 "certified act of **terrorism**" threshold specified under TRIA.

**b.** Nuclear reaction or nuclear radiation or radioactive **contamination**. However, this exclusion does not apply if:

    **(1)** The RADIOACTIVE **CONTAMINATION** PROPERTY DAMAGE COVERAGE AND LIMITATION applies but only to the extent provided; or

    **(2)** Fire directly results from the nuclear reaction, nuclear radiation, or radioactive **contamination**, in which case **we** cover the physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage happens that expressly prohibits the exclusion of fire losses resulting from nuclear reaction, radiation or **contamination**.

**c.** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

    **(1)** Government or sovereign power (de jure or de facto);

    **(2)** Military, naval or air force; or

    **(3)** Agent or authority of any party specified in **(1)** or **(2)** above.

**d.** Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**e.** The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, biological, viral, radioactive or similar agents or matter, whether in time of peace or war and regardless of who commits the act.

**f.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**g.** Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

**h.** Risks of contraband, or illegal transportation or trade.

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

    **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

    **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

**j.** Lack of the following services:

   **(1)** Incoming electricity, fuel, water, gas, steam or refrigerant;

   **(2)** Outgoing sewerage; or

   **(3)** Incoming or outgoing voice, data or video,

   all when caused by an event away from the covered **location** except as provided in the ON/OFF PREMISES INTERRUPTION OF SERVICES coverages of this Policy. But, if the lack of such a service causes physical loss or damage of the type insured by this Policy at a covered **location**, then only that resulting damage is covered.

**3.** **We** do not cover the following, but, if direct physical loss or damage not excluded by this Policy results, then **we** cover that resulting damage only:

   **a.** Faulty workmanship, material, construction or design.

   **b.** Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

   **c.** Deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

   **d.** Settling, cracking, shrinking, bulging, or expansion of:

   **(1)** Foundations (including any pedestal, pad, platform or other property supporting machinery)

   **(2)** Floors

   **(3)** Pavements

   **(4)** Walls, including retaining walls

   **(5)** Ceilings

   **(6)** Roofs

   **e.** Extremes or changes in temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

   **f.** Cumulative effects of smog, smoke, vapor, liquid and dust.

   **g.** Insect, animal or vermin damage.

   **h.** Loss or damage to the interior portion of buildings under construction caused by rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

**4.** **We** do not cover the following unless directly resulting from a **covered loss**:

   **a.** **Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy.

   **b.** Shrinkage.

 © 2016 Liberty Mutual Insurance

    **c.** Changes in color, flavor, texture or finish.

    **d.** Remediation, change, correction, repair or assessment of any date or time recognition in any **electronic data processing equipment** or media.

    **e.** Failure of **electronic data processing equipment** or media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times.

## D. PROPERTY DAMAGE COVERAGES AND LIMITATIONS

**We** provide the following PROPERTY DAMAGE COVERAGES AND LIMITATIONS for a **covered loss** as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

1. ACCOUNTS RECEIVABLE

    **a. We** cover the following resulting from a **covered loss** to accounts receivable records located while anywhere within the Policy territory, including while in transit:

        **(1)** Any shortage in the collection of accounts receivable.

        **(2)** The interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum. Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable.

        **(3)** The reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

        **(4)** Any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

    **b.** Accounts receivable records include records stored as **electronic data**. In the event of loss, **you** will:

        **(1)** Use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

        **(2)** Reduce the loss by use of any property or service owned or controlled by **you** or obtainable from other sources.

        **(3)** Reconstruct, if possible, accounts receivable records so that no shortage is sustained.

    **c.** The settlement of loss will be made within ninety (90) days from the date of the **covered loss**. All amounts recovered by **you** on outstanding accounts receivable on the date of loss will belong and be paid to **us** up to the amount of loss paid by **us**. All recoveries exceeding the amount paid will belong to **you**.

    **d. We** do not cover shortage resulting from:

        **(1)** Bookkeeping, accounting or billing errors or omissions; or
        **(2)** Alteration, falsification, manipulation; or

        **(3)** Concealment, destruction or disposal, of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

2. BRANDS AND LABELS

In the event of a **covered loss** to **your** branded or labeled merchandise, and **we** elect to take all or any part of that property, **you** may at **our** expense:

**a.** Stamp "salvage" on the property or its containers; or

**b.** Remove or obliterate the brands or labels,

if doing so will not damage the property.

**You** must re-label such property or its containers to be in compliance with any applicable law.

**3.** CONTROL OF DAMAGED GOODS

**We** grant control to **you** of physically damaged **covered property** consisting of finished goods manufactured by or for **you** as follows:

**a. You** will have full rights to the possession and control of damaged property in the event of physical damage to **your covered property** provided proper testing is done to show which property is physically damaged.

**b.** Using reasonable judgment, **you** will decide if the physically damaged **covered property** can be reprocessed or sold.

**c.** Property **you** determine to be unfit for reprocessing or selling will not be sold or disposed of except by **you**, or with **your** consent.

Any salvage proceeds received will reduce the recoverable loss.

**4.** COURSE OF CONSTRUCTION

**a. We** cover direct physical loss or damage at a covered **location** to buildings or structures that **you** begin to construct during the Policy period.

**b. We** also cover materials, supplies, machinery, equipment and fixtures:

**(1)** At a covered **location** and intended for installation in the new construction;

**(2)** After such property has been delivered to **you** or **your** contractor, and while such property is located offsite at a storage **location**; or

**(3)** After such property has been delivered to **you** or **your** contractor, and while such property is in transit from a storage **location** to another storage **location** or to a covered **location.**

**c.** This coverage only applies to the construction of **covered property you** intend to own or occupy once constructed.

**d.** This coverage does not apply to any property owned or rented by any contractor or subcontractor.

**5.** DATA, PROGRAMS OR SOFTWARE

**a. We** cover direct physical loss or damage to **your electronic data**, computer programs or software, including direct physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's territory, including:

**(1)** The cost of the following reasonable and necessary actions taken by **you** provided such actions are taken due to actual insured physical loss or damage to **electronic data**, computer programs or software:

    **(a)** Actions to temporarily protect and preserve insured **electronic data**, computer programs or software.

    **(b)** Actions taken for the temporary repair of insured physical loss or damage to **electronic data**, computer programs or software.

    **(c)** Actions taken to expedite the permanent repair or replacement of such damaged property.

  **(2) Your** reasonable and necessary cost to temporarily protect or preserve covered **electronic data**, computer programs or software against immediately impending direct physical loss or damage to **electronic data**, computer programs or software.  In the event that there is no direct physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such direct physical loss or damage.

**b.** With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the *qualifying period* specified in the *Qualifying Period* Table in the Declarations is exceeded.

**c.** Any amounts recoverable under this PROPERTY DAMAGE COVERAGE AND LIMITATION are excluded from coverage elsewhere in this Policy.

**d.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes loss or damage to **electronic data**, computer programs or software when they are stock in process, finished stock manufactured by **you**, raw materials, supplies or other merchandise not manufactured by **you**.

**e.** With respect to this PROPERTY DAMAGE COVERAGE AND LIMITATION, the following additional exclusions apply:

  **(1)** Errors or omissions in processing or copying; and

  **(2)** Loss or damage to **electronic data**, computer programs or software from errors or omissions in programming or machine instructions.

**6.** DEBRIS REMOVAL

**a. We** cover **your** reasonable and necessary costs to remove debris from a covered **location** that remains as a direct result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION covers the costs of removal of contaminated **covered property** or the **contaminant** in or on **covered property** only if the **contamination**, due to the actual presence of **contaminant(s),** results from a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover the costs of removal of:

  **(1)** Contaminated uninsured property; or

  **(2)** The **contaminant** in or on uninsured property,

  whether or not the **contamination** results from a **covered loss**.

**7.** DECONTAMINATION COSTS

**a. We** cover **your** decontamination costs directly resulting from a **covered loss** at a covered **location** subject to the following conditions:

  **(1)** These decontamination costs must be a direct result of enforcement of the law or ordinance that

is in force at the time of the loss regulating decontamination; and

**(2)** The amount **we** cover includes the increased cost to remove **your** contaminated **covered property** to comply with the law or ordinance.

**b. We** do not cover costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** resulted from a **covered loss.**

## 8. DEFENSE FOR PERSONAL PROPERTY OF OTHERS

**a. We** cover the cost to defend that part of any suit against **you** alleging direct physical loss or damage of the type insured by this Policy to personal property of others of the type insured by this Policy, in **your** custody, and while at a covered **location. We** may without prejudice undertake any investigation, negotiation or settlement of any such claim or suit as **we** deem appropriate.

**b. We** do not cover the cost to defend any suit against **you** when **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

## 9. DEFERRED PAYMENTS

**a. We** cover direct physical loss or damage to **personal property** of the type insured by this Policy sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property. In the event of loss to property sold under deferred payment plans, **you** will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

**b. We** do not cover loss:

**(1)** Pertaining to products recalled including **your** costs to recall, test or to advertise such recall.

**(2)** From theft or conversion by the buyer of the property after the buyer has taken possession of such property.

**(3)** To the extent the buyer continues payments.

**(4)** Not within this Policy's territory.

## 10. DEMOLITION AND INCREASED COST OF CONSTRUCTION

**a. We** cover **your** reasonable and necessary costs that are described in Item **b.** below, actually incurred to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of **covered property** consisting of buildings, structures, machinery and equipment at a covered **location**, provided:

**(1)** Such law or ordinance is in force on the date of the **covered loss;**

**(2)** Its enforcement is a direct result of a **covered loss;** and

**(3)** The buildings, structures, machinery and equipment were in compliance with such law or ordinance, regardless of any lack of enforcement, prior to the **covered loss.**

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION, as respects the property insured in Item **a.** above, covers:

**(1)** The cost incurred to demolish, repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

**(2)** The cost incurred:

    **(a)** To demolish the physically undamaged portion of such property insured; and

    **(b)** To rebuild it with materials and in a manner to satisfy such law or ordinance,

    when the demolition of the physically undamaged portion of such property is required to satisfy such law or ordinance, as a result of a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes any costs incurred as a result of the enforcement of any law or ordinance regulating pollution.

**d.** The amount **we** cover for this PROPERTY DAMAGE COVERAGE AND LIMITATION at each covered **location** in any one (1) **occurrence** will not exceed the actual cost incurred in demolishing the physically damaged and undamaged portions of the property covered in item **a.** above plus:

    **(1)** If rebuilt on the same site, the actual cost incurred in rebuilding there; or

    **(2)** If rebuilt on another site, the lesser of:

        **(a)** The actual cost incurred in rebuilding on the other site, excluding the cost of land; or

        **(b)** The cost that would have been incurred to rebuild on the same site.

## 11. ERRORS AND OMISSIONS

**a.** If direct physical loss or damage is not covered under this Policy solely because of an error or unintentional omission made by **you**:

    **(1)** In the description of where **covered property** is physically located; or

    **(2)** To include any **location**:

        **(a)** Owned, rented or leased by **you** on the effective date of this Policy; or

        **(b)** Purchased, rented or leased by **you** during the term of the Policy; or

    **(3)** That results in termination of the coverage provided by this Policy, except for cancellation due to nonpayment of premium,

**we** cover the amount **we** would have paid, including any TIME ELEMENT loss, had the error or omission not been made.

**b.** This coverage does not apply to the failure to report values, or the reporting of inaccurate values of **covered property**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply if coverage is provided elsewhere in this Policy.

**d.** **You** must report such errors or unintentional omissions to **us** in writing as soon as they are discovered.

## 12. EXPEDITING EXPENSE

**a.** **We** cover **your** reasonable and necessary costs:

    **(1)** For the temporary repair of **covered property** from a **covered loss**; and

**(2)** To expedite the permanent repair or replacement of such damaged property.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

**13.** FINE ARTS

   **a. We** cover direct physical loss or damage to **your fine arts** while anywhere within this Policy's territory, including while in transit.

   **b.** The following additional exclusions apply:

   **We** do not cover:

   **(1)** Loss or damage sustained from any repair, restoration, or retouching process;

   **(2)** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, *EARTH MOVEMENT*, *FLOOD*, explosion, vandalism, collision, derailment or overturn of conveyance.

**14.** FIRE DEPARTMENT SERVICE CHARGES

   **We** cover the reasonable and necessary:

   **a.** Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the **covered property**.

   **b.** Costs incurred by **you** to restore and recharge fire protection systems following a **covered loss.**

**15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL

   **a.** For uninsured property at a covered **location** consisting of land, water, or any other substance in or on land or water at a covered **location**, **we** cover **your** reasonable and necessary cost for the cleanup, removal and disposal of the actual presence of **contaminant(s)** from that property if the release, discharge or dispersal of such **contaminant(s)** is a result of a **covered loss**.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

   **(1)** At any **location** insured for **personal property** only;

   **(2)** At any **location**, or to any property, covered under the NEWLY ACQUIRED **LOCATIONS** or ERRORS AND OMISSIONS coverages provided by this Policy or at a **Miscellaneous Unnamed Location**; or

   **(3)** If **you** fail to give **us** written notice within one hundred eighty (180) days after the loss.

**16.** MISCELLANEOUS **PERSONAL PROPERTY**

   **a. We** cover direct physical loss or damage, that occurs away from a covered **location** but within the Policy's territory, to **personal property** of the type covered under this Policy, which is:

   **(1)** Owned by **you**; or

   **(2)** Owned by others and in **your** care, custody and control, but only to the extent **you** are obligated to insure it for direct physical loss or damage under the type of coverage provided under this Policy.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes coverage that is provided

elsewhere in this Policy.

## 17. NEWLY ACQUIRED **LOCATIONS**

   **a.** **We** cover physical loss or damage to property of the type insured from a loss of the type insured at any **location you** purchase, lease or rent after the inception date of this Policy.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION applies:

   **(1)** From the date of purchase, lease or rental,

   **(2)** Until the first of the following occurs:

   **(a)** The **location** is bound by **us**;

   **(b)** Agreement is reached that the **location** will not be insured under this Policy; or

   **(c)** The time limit specified in the LIMITS OF LIABILITY Table in the Declarations has been reached. The time limit begins on the date of purchase, lease or rental.

## 18. OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE

   **a.** **We** cover physical loss or damage to **covered property** at a covered **location** when such physical loss or damage results from:

   **(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

   **(2)** The interruption of outgoing sewerage service,

   by reason of a loss of the type insured by this Policy at the facilities of the supplier of such service located within this Policy's territory, that immediately prevents in whole or in part the delivery of such usable service.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the interruption exceeds the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

   **c.** For purposes of this PROPERTY DAMAGE COVERAGE AND LIMITATION, the *period of service interruption* is the period starting with the time when an interruption of specified services occurs; and ending when the service could be wholly restored.

   **d.** Additional General Provisions:

   **(1)** **You** will immediately notify the suppliers of services of any interruption of any such services.

   **(2)** **We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

   **e.** **We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

   **f.** Exclusion **C.3.e.** does not apply to this PROPERTY DAMAGE COVERAGE AND LIMITATION.

## 19. PROFESSIONAL FEES

**a.** **We** cover **your** reasonable costs for **your** employees or auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

**b.** Professional fees covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION, however, do not include:

    **(1)** Any fees or expenses of attorneys;

    **(2)** Any fees or expenses of public adjusters, loss appraisers or any of their subsidiaries or associated entities;

    **(3)** Fees based on a contingency; or

    **(4)** Fees of loss consultants who provide consultation on coverage or negotiate claims.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible that applies to the loss.

**20.** PROTECTION AND PRESERVATION OF PROPERTY

**a.** **We** cover **your** reasonable and necessary costs to temporarily protect or preserve **covered property** provided such actions are necessary due to actual, or to prevent immediately impending threat of, physical loss or damage of the type covered by this Policy to such **covered property**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the physical loss or damage happened.

**21.** RADIOACTIVE CONTAMINATION

**a.** **We** cover radioactive **contamination** to property of the type insured by this Policy from a **covered loss**.

    Radioactive **contamination** is:

    **(1)** Sudden and accidental radioactive **contamination**; or

    **(2)** Resultant radiation damage to **covered property**,

    provided that such radioactive **contamination** arises out of radioactive material at a covered **location** and is used as part of **your** business activities.

**b.** **We** do not cover radioactive **contamination** if:

    **(1)** The covered **location** contains:

        **(a)** A nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or

        **(b)** Any new or used nuclear fuel intended for or used in such a nuclear reactor.

    **(2)** The **contamination** arises from radioactive material located away from a covered **location**.

**22.** TAX LIABILITY

**We** cover **your** increase in tax liability from a **covered loss** at a covered **location** if the tax treatment of:

**a.** The profit portion of a loss payment involving finished stock manufactured by **you**; and/or

**b.** The profit portion of a TIME ELEMENT loss payment;

is greater than the tax treatment of profits that would have been incurred had no loss happened.

**23.** TEMPORARY REMOVAL OF PROPERTY

    **a.** When **covered property** is removed from a covered **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, **we** cover such property:

        **(1)** While at the premises to which such **covered property** has been moved; and

        **(2)** For direct physical loss or damage of the type insured by this Policy at the covered **location** from which such **covered property** was removed.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

        **(1)** To **covered property** removed for normal storage, processing or preparation for sale or delivery; or

        **(2)** If coverage is provided elsewhere in this Policy or by any other insurance policy.

**24.** TRANSIT

    **a.** **We** cover **personal property** not excluded elsewhere in this Policy while it is in transit within the Policy's territory:

        **(1)** Owned by **you**.

        **(2)** Shipped to customers under Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. **Your** contingent interest is admitted.

        **(3)** Of others in **your** actual or constructive custody to the extent of **your** interest or legal liability.

        **(4)** Of others sold by **you** and **you** agreed prior to the loss to insure the **personal property** during course of delivery including:

            **(a)** When shipped by **your** contract service provider or by **your** contract manufacturer **to you** or to **your** customer; or

            **(b)** When shipped by **your** customer to **you** or to **your** contract service provider or to **your** contract manufacturer.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION starts from the time the property leaves the original point of shipment for transit, and continues while in the due course of transit until delivered, subject to the following conditions:

        **(1)** Coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

        **(2)** If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

    **c.** **We** also cover:

        **(1)** General average and salvage charges on shipments covered while waterborne; and

        **(2)** Direct physical loss or damage caused by or resulting from:

© 2016 Liberty Mutual Insurance

   (a) Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

   (b) Improper parties having gained possession of property through fraud or deceit.

d. Additional General Provisions:

   (1) This PROPERTY DAMAGE COVERAGE AND LIMITATION will not inure directly or indirectly to the benefit of any carrier or bailee.

   (2) **You** have permission, without prejudicing this insurance, to accept:

       (a) Ordinary bills of lading used by carriers;

       (b) Released bills of lading;

       (c) Undervalued bills of lading; and

       (d) Shipping or messenger receipts.

   (3) **You** may waive subrogation against railroads under side track agreements.

   (4) Except as otherwise stated, **you** will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

e. As respects this PROPERTY DAMAGE COVERAGE AND LIMITATION:

   (1) The following additional exclusions apply:

      This Policy excludes:

      (a) Samples in the custody of salespeople or selling agents.

      (b) Property insured under import or export ocean marine insurance.

      (c) Waterborne shipments, unless:

          (i) By inland water; or

          (ii) By roll-on/roll-off ferries; or

          (iii) By coastal shipments.

      (d) Airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

      (e) Property of others, including **your** legal liability for it, hauled on vehicles owned, leased or operated by **you** when acting as a common or contract carrier.

      (f) Any transporting vehicle

      (g) Property shipped between continents except by land or air within the Policy territory.

f. **We** will value property covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION as follows:

(1) Property shipped to or for **your** account will be valued at actual invoice to **you**. Included in the value are accrued costs and charges legally due. Charges may include **your** commission as selling agent.

(2) Property sold by **you** and shipped to or for the purchaser's account will be valued at **your** selling invoice amount. Prepaid or advanced freight costs are included.

(3) Property not under invoice will be valued:

    (a) For **your** property, according to the valuation provisions of this Policy applying at the place from which the property is being transported; or

    (b) For other property, at the **actual cash value** at the destination point on the date of loss, less any charges saved which would have become due and payable upon arrival at destination.

## 25. VALUABLE PAPERS AND RECORDS

a. **We** cover physical loss or damage to **your valuable papers and records** from a **covered loss** at a covered **location**. **We** cover the value blank, plus the cost of copying from backup or from originals of a previous generation, and **your** reasonable and necessary costs to research, replace or restore the information lost or damaged thereon, except for **electronic data** and software. For **electronic data** and software, **we** cover the value of the blank media, and the cost of reproducing the **electronic data** and software from duplicates or originals of the previous generation of the data.

b. This coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

 © 2016 Liberty Mutual Insurance

# SECTION III – TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS:

**A.** Is subject to and part of the applicable LIMIT OF LIABILITY that applies to **your** direct physical loss or damage but in no event for more than any LIMIT OF LIABILITY that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGES AND LIMITATIONS; and

**B.** Will not increase the POLICY LIMIT OF LIABILITY and is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

**A. LOSS INSURED**

1. **We** cover **your** actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy:

    a. To property described elsewhere in this Policy and not otherwise excluded by this Policy,

    b. Used by **you**, or by others with whom **you** have a contract,

    c. At a covered **location** or while in transit as provided by this Policy,

    d. During the applicable PERIOD OF LIABILITY described in this section.

2. **We** cover TIME ELEMENT loss only to the extent it cannot be reduced through:

    a. The use of any property or service owned or controlled by **you**;

    b. The use of any property or service obtainable from other sources;

    c. Working extra time or overtime; or

    d. The use of inventory,

    all whether at a covered **location** or at any other **location**. When measuring the actual loss sustained, the combined operating results of all of **your** associated, affiliated or subsidiary companies will be considered in determining the TIME ELEMENT loss.

3. **We** cover **your** reasonable and necessary expenses to reduce the loss otherwise payable under this section of this Policy. The amount of those recoverable expenses will not exceed the amount by which the insured loss has been reduced.

4. In determining the insured TIME ELEMENT loss, **we** will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. **We** will consider any increase or decrease in demand for **your** goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused the **covered loss**.

**B. TIME ELEMENT COVERAGES**

1. *GROSS EARNINGS*

    a. *GROSS EARNINGS* loss is the actual loss sustained by **you** due to the necessary interruption of **your** business during the PERIOD OF LIABILITY of the following:

Gross Earnings less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services, plus all other earnings derived from the operation of the business.

**Ordinary payroll,** including taxes and charges dependent on the payment of wages, for a period of time not to exceed the number of consecutive days as specified in the LIMITS OF LIABILITY in the Declarations table immediately following the interruption of production or suspension of business operations or services, and only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

However, if **you** reduce the daily loss payable under **ordinary payroll,** either by:

> (1) providing gainful employment for, or
>
> (2) paying less than the normal salary rate to,

all or part of its employees, then the number of consecutive days of **ordinary payroll** may be extended. However, this provision will not increase **our** total liability beyond the amount **we** would have been liable for **ordinary payroll** costs without this provision.

**Ordinary payroll** does not cover any portion of salaries or wages included in Gross Earnings.

**b.** GROSS EARNINGS will be calculated as follows:

> (1) For manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or
>
> (2) For mercantile or non-manufacturing operations: the total net sales less the cost of merchandise sold, materials and supplies consumed in the operations or services rendered by **you**.

Any amount payable at selling price will be considered to have been sold to **your** regular customers and will be credited against net sales.

**c.** In determining the amount **we** cover as the actual loss sustained, **we** will consider the continuation of only those charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

**d.** If **you** would have operated at a deficit had no interruption of production or suspension of business operations or services occurred, the following applies:

> (1) For Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.
>
> (2) For **ordinary payroll**, the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

**e.** We cover TIME ELEMENT loss only to the extent that **you** are:

> (1) Wholly or partially prevented from producing goods or continuing business operations or services;
>
> (2) Unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;
>
> (3) Unable to continue **your** operations or services during the PERIOD OF LIABILITY; and

(4) Able to demonstrate a loss of sales for the operations, services or production prevented.

2. EXTRA EXPENSE

a. **We** cover **your** reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable:

(1) To temporarily continue as nearly normal as practicable the conduct of **your** business; and

(2) The temporary use of property or facilities of **yours** or others.

b. **We** will reduce any recoverable loss under this coverage for any value remaining of any property used to temporarily continue **your** business.

c. EXTRA EXPENSE does not include:

(1) Any loss of income.

(2) Costs that would have been incurred in conducting the business during the same period had no physical loss or damage happened.

(3) Costs of permanent repair or replacement of property that has been damaged or destroyed.

(4) Any expense recoverable elsewhere in this Policy.

3. LEASEHOLD INTEREST

a. **We** cover the following:

(1) If the lease agreement requires continuation of rent as a result of a **covered loss**, and if the **covered property** is wholly or partially untenantable or unusable, the actual rent payable while the **covered property** is untenantable or until the lease is terminated, but not exceeding the unexpired term of the lease.

(2) If the **covered property** is partially untenantable, **we** cover the proportion of the lease payment for that portion of the untenantable **covered property**.

b. If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law, **we** cover the additional cost to rent similar space for the unexpired term of the lease for the damaged property. That loss will be computed at present value, compounded annually at the prime rate plus 2%, as published in the Wall Street Journal on the date the lease terminated. The additional cost will consider the excess rent paid for the same or similar replacement property over actual rent of the original lease, plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the lease.

c. As respects LEASEHOLD INTEREST, the following applies:

(1) **We** do not cover loss directly resulting from physical loss or damage to **personal property**.

(2) TIME ELEMENT EXCLUSIONS **D.1.**, **D.2.** and **D.3.** do not apply and the following applies instead:

**We** do not cover any increase in loss resulting from the suspension, lapse or cancellation of any license, or from **you** exercising an option to cancel the lease; or from any act or omission by **you** that constitutes a default under the lease.

4. RENTAL INSURANCE

© 2016 Liberty Mutual Insurance

a. **We** cover **your** actual loss sustained of rental income during the PERIOD OF LIABILITY for:

   (1) The fair rental value of any portion of rental property occupied by **you**;

   (2) The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

   (3) The rental income from the rented portions of such property according to written leases, contracts or agreements in force at the time of loss,

   all not to include non-continuing charges and expenses.

b. RENTAL INSURANCE Exclusions: As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS **D.1.** does not apply and the following applies instead:

   **We** do not cover any loss of rental income during any period in which the covered **location** would not have been tenantable for any reason other than a **covered loss**.

**C.** PERIOD OF LIABILITY

1. The PERIOD OF LIABILITY applying to CONTINGENT TIME ELEMENT, *GROSS EARNINGS*, EXTRA EXPENSE and RENTAL INSURANCE is as follows:

   a. For building and equipment, the period:

      (1) Starting from the time of physical loss or damage of the type insured; and

      (2) Ending when with due diligence and dispatch the building and equipment could be:

         (a) Repaired or replaced; and

         (b) Made ready for operations,

         under the same or equivalent physical and operating conditions that existed prior to the damage.

      (3) Not to be limited by the expiration of this Policy.

   b. For building(s) and equipment covered under COURSE OF CONSTRUCTION:

      (1) The equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

      (2) Due consideration will be given to the actual experience of the business after completion of the construction and startup.

2. The PERIOD OF LIABILITY for *GROSS EARNINGS* and EXTRA EXPENSE also includes the following:

   a. For stock-in-process and mercantile stock, including finished goods not manufactured by **you**, the time required with the exercise of due diligence and dispatch:

      (1) To restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

      (2) To replace physically damaged mercantile stock.

   b. For raw materials and supplies, the period of time:

(1) Of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

(2) Limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

c. Impounded Water:

(1) Used for any manufacturing purpose, including as a raw material or for power;

(2) Stored behind dams or in reservoirs; and

(3) On any covered **location**,

that is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, **our** liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond the number of consecutive days, not to exceed the LIMIT OF LIABILITY specified in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced.

d. For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

e. For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

3. The PERIOD OF LIABILITY applying to *GROSS PROFIT* is as follows:

a. The period starting from the time of physical loss or damage of the type insured and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

b. For property under construction, the period starting on the date that production, business operation or service would have commenced if physical damage of the type insured had not happened and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations, during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

The *Rate of Gross Profit* and *Standard Sales* will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

4. The PERIOD OF LIABILITY does not include any additional time due to **your** inability to resume operations for any reason, including:

a. Making changes to equipment;

b. Making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION clause in the PROPERTY DAMAGE section; and

c. Re-staffing or retraining employees.

If two or more PERIODS OF LIABILITY apply, such periods will not be cumulative.

D. TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

1. Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

   a. Physical loss or damage not insured by this Policy on or off of the covered **location**.

   b. Planned or rescheduled shutdown.

   c. Strikes or other work stoppage.

   d. Any reason other than physical loss or damage insured under this Policy.

2. Any increase in loss due to:

   a. Suspension, cancellation or lapse of any lease, contract, license or orders.

   b. Damages for breach of contract or for late or noncompletion of orders.

   c. Fines or penalties.

   d. Any other consequential or remote loss.

3. Any loss resulting from physical loss or damage to finished goods manufactured by **you**, or the time required for their reproduction.

E. TIME ELEMENT COVERAGES AND LIMITATIONS

TIME ELEMENT COVERAGES are extended to include the following, subject to all Policy terms, conditions and exclusions, and the time, distance and/or dollar amounts specified in the LIMITS OF LIABILITY Table in the Declarations:

1. *ATTRACTION PROPERTY*

   a. **We** cover **your** actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by this Policy to property of the type insured at an *attraction property* within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of time that:

      (1) Starts at the time such physical loss or damage happens;

      (2) Ends when the *attraction property* is:

         (a) Repaired or replaced; and

         (b) Made ready for operations.

   b. As used in this TIME ELEMENT COVERAGE AND LIMITATION, the term *attraction property* is a property that:

      (1) Is operated by others; and

      (2) **You** depend on to attract customers to **your** covered **location**.

2. CIVIL OR MILITARY AUTHORITY

   a. **We** cover **your** actual loss sustained and EXTRA EXPENSE during the *period of interruption* if an order of civil or military authority prohibits access to a covered **location** provided such order is caused by

physical loss or damage of the type insured by this Policy at a covered **location** or within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION does not apply to LEASEHOLD INTEREST.

**c.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time:

   **(1)** Starting at the time of such direct physical loss or damage; and

   **(2)** Continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

   This period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

**3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from the failure of **your electronic data processing equipment** or media to operate, provided that such failure is the direct result of a malicious act directed at **you**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the *period of interruption* is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** As used above, the *period of interruption:*

   **(1)** Is the period starting when **your electronic data processing equipment** or media fails to operate and ending when with due diligence and dispatch, **your electronic data processing equipment** or media could be restored to the same or equivalent operating condition that existed prior to the failure.

   **(2)** Does not include the additional time to make changes to **your electronic data processing equipment** or media.

**4.** CONTINGENT TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at *Direct Dependent Time Element* **Location(s)** and *Indirect Dependent Time Element* **Location(s)** located within the territory of this Policy.

**b.** **You** agree to take every reasonable and necessary action to mitigate the loss payable hereunder.

**c.** As used in this Policy, *Direct Dependent Time Element* **Location(s)** are:

   **(1)** Any **location(s)** of a direct: customer, supplier, contract manufacturer or contract service provider to **you**; or

   **(2)** Any **location(s)** of any company under a royalty, licensing fee or commission agreement with **you.**

   *Direct Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from **you**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**d.** As used in this Policy, *Indirect Dependent Time Element* **Location(s)** are:

   **(1)** Any **location(s)** of any company that is a direct: customer, supplier, contract manufacturer or contract service provider to **your** *Direct Dependent Time Element* **Location(s)**.

   *Indirect Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from, the *Direct Dependent Time Element* **Location(s)** or the *Indirect Dependent Time Element* **Location(s)**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**e.** As respects CONTINGENT TIME ELEMENT:

   **(1)** Exclusion **D.3** in the TIME ELEMENT EXCLUSIONS does not apply.

**5.** CRISIS MANAGEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY if an order of civil or military authority prohibits access to a covered **location**, but only if such order is a direct result of a violent crime, suicide, attempted suicide or armed robbery at such covered **location**.

**b.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, coverage applies:

   **(1)** Only when the PERIOD OF LIABILITY is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations; and

   **(2)** For up to the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations, not to exceed the specified LIMIT OF LIABILITY.

   The PERIOD OF LIABILITY is the period of time when the time the civil or military authority prohibits access and continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

**6.** DELAY IN STARTUP

**We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations resulting directly from physical loss or damage to **covered property** as provided under COURSE OF CONSTRUCTION.

**7.** EXTENDED PERIOD OF LIABILITY

**a.** We cover the *GROSS EARNINGS* loss sustained due to the reduction in sales resulting from:

   **(1)** The interruption of business;

   **(2)** Commencing with the date on which our liability for loss resulting from interruption of business would terminate if this TIME ELEMENT COVERAGE AND LIMITATION had not been included in this Policy; and

**(3)** Continuing for such additional length of time as would be required with the exercise of due diligence and dispatch to restore **your** business to the condition that would have existed had no loss occurred, but no longer than the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** Coverage under this TIME ELEMENT COVERAGE AND LIMITATION for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the EXTENDED PERIOD OF LIABILITY described in Item **7.a.** above.

**c.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, Item **D.2.** in the TIME ELEMENT EXCLUSIONS in this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or non-completion of orders, or fines or penalties.

**8.** INGRESS / EGRESS

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE due to the necessary interruption of **your** business if ingress to or egress from a covered **location** is prevented, whether or not **your** premises or property is damaged, provided that such prevention is a direct result of physical loss or damage of the type insured to property of the type insured.

**b.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time starting at the time of such direct physical loss or damage, and continuing until ingress or egress is no longer prevented, or for the time limit specified in the LIMITS OF LIABILITY Table in the Declarations, whichever is less.

**9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the period of service interruption at a covered **location** when the loss is caused by:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

from physical loss or damage of the type insured, at the facilities of the supplier of such service located within this Policy's territory that immediately prevents in whole or in part the delivery of such usable services.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the period of service interruption as described below is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** The period of service interruption is:

**(1)** The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could have resumed normal operations following the restoration of service under the same or equivalent physical and operating conditions that existed prior to the interruption of such services;

**(2)** Is limited to only those hours during which **you** could have used service(s) if it had been available;

**(3)** Does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

**d.** Additional General Provisions:

**(1) You** will immediately notify the suppliers of services of any interruption of any such services.

**(2) We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

**e. We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**10.** ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a. We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from direct physical loss or damage of the type insured to the following property located at or within one-thousand (1,000) feet of a covered **location**:

**(1)** Electrical equipment and equipment used for the transmission of voice, data or video.

**(2)** Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission systems.

**11.** PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT

**a. We** cover **your** actual loss sustained for a period of time not to exceed forty eight (48) hours prior to and forty eight (48) hours after **you** first took reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage of the type insured to such **covered property**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the direct physical loss or damage occurred.

**12.** RELATED **LOCATIONS**

If **you** report values at related **locations** used by **you** (e.g. branch stores, retail outlets and other facilities), but such related **locations** are not listed on the latest Schedule of Covered **Locations** submitted to, accepted by and on file with **us**, and if a TIME ELEMENT loss results at such related **locations** due to **covered loss**, **we** cover such resulting TIME ELEMENT loss in accordance with the terms and conditions of this Policy.

**13.** RESEARCH AND DEVELOPMENT

**a. We** cover **your** actual loss sustained of fixed charges and **ordinary payroll** directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a **covered loss**.

**b. We** cover these fixed charges only to the extent they continue after the **covered loss** and only during the PERIOD OF LIABILITY.

**c.** To the extent **you** are able to resume operations, **we** cover only that portion of the fixed charges related to that part of the research and development operation that has not yet been restored.

**14.** SOFT COSTS

**a. We** cover **your** actual loss sustained of *Soft Costs* during the *period of delay* directly resulting from a delay of completion of **covered property** under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS.

b. *Soft Costs* are costs over and above those that are normal at a covered **location** undergoing renovation or in the course of construction, limited to the following:

    **(1)** Construction loan fees – **your** additional cost to rearrange loans necessary for the completion of construction, repairs or reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

    **(2)** Commitment fees, leasing and marketing expenses – the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

    **(3)** Additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction repairs or reconstruction.

    **(4)** Property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

c. *Period of delay* is the period of time between:

    **(1)** The date on which the construction, alteration, extension or renovation would have been complete in the absence of a **covered loss** to property under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS; and

    **(2)** The date on which construction, alteration, extension or renovation is actually complete.

# SECTION IV – DESCRIBED LOSSES

**We** only cover the following DESCRIBED LOSSES as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

## A. *EARTH MOVEMENT*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *EARTH MOVEMENT*.

2. **Y o u** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

3. *EARTH MOVEMENT* is:

Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption; regardless of any other cause or event contributing concurrently or in any other sequence of loss.

However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

## B. *EARTH MOVEMENT* SPRINKLER LEAKAGE

1. **We** cover physical loss or damage to **covered property,** including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, resulting from sprinkler leakage caused by *EARTH MOVEMENT*.

## C. *EQUIPMENT BREAKDOWN*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS, as provided by this Policy if such loss or damage is caused by an *accident* to *covered equipment*.

The coverage provided in this DESCRIBED LOSS is limited to loss or damage caused by an *accident* to *covered equipment*. **We** will not pay for physical loss or damage from any other cause under this DESCRIBED LOSS.

The following coverages apply solely to Equipment Breakdown:

a. Spoilage Damage

**We** cover physical loss or damage caused by change in temperature or humidity or by the interruption of power, heat, air-conditioning, or refrigeration as the result of an *accident* to *covered equipment*.

b. Ammonia **Contamination**

**We** cover physical loss or damage to **covered property** contaminated by ammonia, including any salvage expense as a direct result of an *accident* to *covered equipment*. No coverage for Ammonia **Contamination** is available under DECONTAMINATION COSTS with respects to an *accident* to *covered equipment*.

© 2016 Liberty Mutual Insurance

**2.** Conditions

    **a.** Suspension

        If coverage for Equipment Breakdown is provided by this Policy, and **we** discover a dangerous condition relating to an object, **we** may immediately suspend the insurance provided by this coverage for that *covered equipment* by written notice mailed or delivered to **you** either at **your** address or at the **location** of any object. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this Policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

**3.** Valuation

    If *covered equipment* requires replacement due to an *accident*, **we** cover **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

    **a.** However, **we** do not cover more than 150% of what the cost would have been to repair or replace *covered equipment* with like kind and quality.

    **b.** This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable LIMIT OF LIABILITY.

    **c.** The PERIOD OF LIABILITY will not be increased by any of the above.

**4.** Definitions

    **a.** *Accident*: Physical loss or damage to *covered equipment* that necessitates its repair or replacement due to:

        **(1)** Failure of pressure or vacuum equipment;

        **(2)** Mechanical breakdown including rupture or bursting caused by centrifugal force;

        **(3)** Artificially generated electrical current, including electrical arcing that damages electrical devices, appliances or wires; or

        **(4)** Explosion of:

            **(a)** Steam boiler

            **(b)** Electric steam generator

            **(c)** Steam piping

            **(d)** Steam turbine

            **(e)** Moving or rotating machinery when such explosion is caused by centrifugal force,

    unless such loss or damage is otherwise excluded within this Policy.

    *Accident* does not include:

    **(5)** Fire, including water or other means used to extinguish the fire;

    **(6)** Malfunction, misalignment, miscalibration, tripping off line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning or by the performance of maintenance;

**(7)** Combustion explosion;

**(8)** Discharge of molten material from equipment including the heat from such discharged materials;

**(9)** Lightning;

**(10)** Depletion, deterioration, rust, corrosion, erosion, settling, or wear or tear or any other gradually developing condition;

**(11)** Defects, erasures, error limitations or viruses in computer equipment and programs including the inability to recognize and process any date or time or provide instructions to *covered equipment*;

**(12)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(13)** Damage to any structure or foundation supporting the *covered equipment* or any of its parts;

**(14)** Any loss or damage caused by or resulting from any type of electrical insulation breakdown test;

**(15)** Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test;

**(16)** The functioning of any safety or protective device; or

**(17)** The cracking of any part on an internal combustion turbine exposed to the products of combustion.

**b.** *Covered equipment*:

   **(1)** Equipment that generates, transmits, controls or utilizes energy; including electronic communications and data processing equipment; and

   **(2)** Equipment which, during normal usage, operates under vacuum or pressure, other than weight of contents.

*Covered equipment* does not mean or include:

   **(3) Electronic data**;

   **(4)** Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

   **(5)** Insulating or refractory material;

   **(6)** Nonmetallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or other appropriate and approved code;

   **(7)** Catalyst;

   **(8)** Buried vessels or piping; waste, drainage or sewer piping; piping, valves or fittings forming part of a sprinkler or fire suppression system; water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

   **(9)** Structure, foundation, cabinet or compartment supporting or containing the *covered equipment* or part of the *covered equipment* including penstock, draft tube or well casing;

   **(10)** Vehicle or any *covered equipment* that is mounted on or used solely with a vehicle;

 © 2016 Liberty Mutual Insurance

(11) Dragline, excavation or construction equipment including any *covered equipment* that is mounted on or used solely with any one or more dragline(s), excavation or construction equipment;

(12) Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, nonelectrical cable, chain, belt, rope, clutch plate, brake pad, nonmetal part or tool subject to periodic replacement;

(13) Cyclotron used for other than medical purposes, satellite or spacecraft including any *covered equipment* mounted on or used solely with any satellite or spacecraft;

(14) Equipment manufactured by **you** for sale.

c. *Production machinery* is any machine or apparatus that processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in process or finished products including any *covered equipment* that is mounted on or used solely with any one or more production machines or apparatus.

### D. *FLOOD*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *FLOOD*.

2. *FLOOD* is:

   a. Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

   b. Sewer back-up resulting from any of the foregoing; or

   c. Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

   regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.

   **Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

### E. *NAMED STORM*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from a *NAMED STORM*. However, physical loss or damage caused by fire, explosion, sprinkler leakage or *FLOOD* will not be considered loss by *NAMED STORM* within the terms and conditions of this Policy.

2. **You** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

*NAMED STORM* is any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any authorized meteorological authority in the country where the storm or weather disturbance happened.

# SECTION V - GENERAL POLICY CONDITIONS

## A. ASSIGNMENT

**Your** assignment of this Policy will not be valid except with **our** written consent.

## B. CANCELLATION

1. **You** may cancel this Policy by mailing or delivering to **us** advance written notice of cancellation.

2. **We** may cancel this Policy by mailing or delivering to **you** written notice of cancellation at least:

   a. ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   b. thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason.

3. **We** will mail or deliver **our** written notice of cancellation to **your** last mailing address known to **us**.

4. **Our** written notice of cancellation will state the effective date of cancellation and the Policy period will end on that date.

5. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void, if with the actual intent to deceive

1. **You**;

2. **Your** representatives; or

3. Any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning:

   a. This Policy;

   b. The **covered property**;

   c. **Your** interest in the **covered property**; or

   d. A claim under this Policy.

**D.** CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by **us** shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for covered **locations** within such jurisdictions.

**E.** INSPECTION

1. During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards.

2. This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

1. When specified in the Policy or in Certificates of Insurance on file with **us**, **we** cover loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear.

2. The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

   a. Any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

   b. Foreclosure, notice of sale, or similar proceedings with respect to the property, but only to the extent of a deficiency as provided by state law.

   c. Change in the title or ownership of the property.

   d. Change to a more hazardous occupancy.

   The Lender or Mortgagee will notify **us** of any known change in ownership, occupancy, or hazard and, within ten (10) days of **our** written request, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

3. If this Policy is cancelled at **your** request or by the request of **your** agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after **we** send to the Lender or Mortgagee written notice of cancellation, unless:

   a. Sooner terminated by authorization, consent, approval, acceptance, or ratification of **your** action by the Lender or Mortgagee, or its agent.

   b. This Policy is replaced by **you**, with a Policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement Policy, notwithstanding any other provision of this Policy.

 © 2016 Liberty Mutual Insurance

4. **We** may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, **we** may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

5. If **we** pay the Lender or Mortgagee for any loss, and deny payment to the debtor, mortgagor or owner, **we** will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At **our** option, **we** may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to **us**, and the remaining debt or mortgage will be paid to **us**.

6. If **you** fail to render proof of loss, the Lender or Mortgagee, upon notice of **your** failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, COMPANY OPTION, and SUIT AGAINST THE COMPANY.

7. In the event of a claim, upon request by **us**, the Lender or Mortgagee will cooperate in any claim investigation.

8. In no event will the amount payable to a Lender or Mortgagee exceed the amount which would otherwise have been payable to **you.**

### G. LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute in any State or jurisdiction within the United States of America so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to **your** benefit within such jurisdiction, effective the date of the change specified in such statute.

### H. NO REDUCTION BY LOSS

Except for those coverages written with an **annual aggregate** LIMIT OF LIABILITY, **we** cover a **covered loss** without reducing any other applicable LIMIT OF LIABILITY. The reinstatement of any exhausted **annual aggregate** is not permitted unless authorized by **us** in writing.

### I. NONRENEWAL

1. If **we** decide not to renew this Policy, **we** will mail or deliver a written notice of nonrenewal **to you** at least sixty (60) days before the expiration date of this Policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

2. Proof of mailing will be sufficient evidence of notice.

### J. OTHER INSURANCE

1. **We** will not be liable if, at the time of loss or damage, there is any other insurance that would apply in the absence of this Policy; except that this Policy will apply only as excess or DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS and in no event as contributing insurance, and then only after all other insurance has been exhausted, notwithstanding paragraph **5.** below.

2. **We** will not be liable if, at the time of loss or damage, there is any insurance with the National Flood Insurance Program (NFIP), except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

3. **We** will not be liable if, at the time of loss or damage, there is any insurance for the construction of new buildings and additions under a specific policy for the construction of such new buildings and additions, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

4. **We** will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

5. If this Policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable LIMIT OF LIABILITY. **Our** share will be the proportion that the applicable LIMIT OF LIABILITY of this Policy bears to the total applicable LIMITS OF LIABILITY available from all insurance.

6. **You** are permitted to have other insurance over any LIMITS OF LIABILITY specified in this Policy.

7. The existence of such insurance will not reduce any LIMIT OF LIABILITY in this Policy.

8. To the extent this Policy replaces another Policy, coverage under this Policy shall not become effective until such other Policy has terminated.

9. **You** are permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only as excess and only after such other insurance has been exhausted.

### K. PAIR, SET OR PARTS

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1. The cost to repair or replace any part to restore the pair or set to its value before the loss; or

2. The difference between the value of the pair or set before and after the loss.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

### L. POLICY MODIFICATION

This Policy contains all of the agreements between **you** and **us** concerning this insurance. **You** and **we** may request changes to this Policy. Only endorsements issued by **us** and made a part of this Policy can change this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent **us** from asserting any rights under the Policy.

### M. TITLES

The titles of the paragraphs of this Policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

### N. TRANSFER OF RIGHTS AND DUTIES

**Your** rights and duties under this Policy may not be transferred without us giving written consent.

### O. VACANCY

1. If any of **your real property** is vacant at the inception of this Policy, or becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the Policy period, **you** must:

   a. Notify **us** in writing of the vacancy prior to loss or damage; and

   b. Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include:

      (1) Automatic sprinkler systems;
      (2) Fire alarm systems;
      (3) Guard or watchman services;
      (4) Burglary systems; and
      (5) Monitoring systems.

2. If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this Policy, **we** will:

   a. Not pay for any loss or damage caused by or resulting from any of the following:

      (1) Breakage of building glass;
      (2) Mold, mildew or fungus;
      (3) Sprinkler leakage, unless the system has been protected against freezing;
      (4) Theft or attempted theft;
      (5) Vandalism;
      (6) Malicious mischief; or
      (7) Water damage.

   b. Not pay under DEMOLITION AND INCREASED COST OF CONSTRUCTION;

   c. Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the lesser of:

      (1) The **actual cash value**;
      (2) The actual cost to repair; or
      (3) The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

3. **Real property** is considered vacant when it does not contain sufficient property and personnel to conduct **your** customary business operations.

4. **Real property** is not considered vacant during its ongoing construction or renovation.

## P. VALUATION

1. Adjustment of the physical loss or damage amount under this Policy will be computed as of the date of loss or damage at the place of the loss or damage. Unless stated otherwise in a PROPERTY DAMAGE COVERAGE AND LIMITATION, adjustment of physical loss or damage to **covered property** will be subject to the following:

   a. On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

   b. On finished goods manufactured by **you**, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no physical loss or damage happened.

   c. On raw materials, supplies or merchandise not manufactured by **you**:

**(1)** If repaired or replaced, **your** actual expenditure in repairing or replacing the damaged or destroyed property; or

**(2)** If not repaired or replaced, the **actual cash value**.

**d.** On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

**e.** On property that is:

**(1)** Damaged by fire that directly results from **terrorism** or nuclear reaction; and

**(2)** Is located in a jurisdiction that has a statute that expressly prohibits the exclusion of fire losses resulting from **terrorism** or nuclear reaction,

the **actual cash value** of the fire damage. Any remaining fire damage not attributable to **terrorism** or nuclear reaction shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy.

**f.** On computer equipment of others which **you** are required to insure for direct physical loss or damage while being installed, maintained or repaired, the cost to replace with new if so specified in the contract between **you** and **your** customer.

**g.** On Data, Programs and Software, the actual cost incurred to repair, replace or restore data, programs or software including the costs to recreate and research.

**h.** On **Fine Arts**, the loss amount will not exceed the lesser of the following:

**(1)** The cost to repair or restore such property to the physical condition that existed on the date of loss;

**(2)** The cost to replace; or

**(3)** The stated value on file with **us**.

**i.** On all other property, the lesser of the following:

**(1)** The cost to repair.

**(2)** The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

**(3)** The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

**(4)** The selling price of **real property** or machinery and equipment, other than stock, offered for sale on the date of loss.

**(5)** The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

**(6)** The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

 © 2016 Liberty Mutual Insurance

    **(7)** The unamortized value of improvements and betterments, if such property is not repaired or replaced at **your** expense.

    **(8)** The **actual cash value** if such property is:

        **(a)** Useless to **you**; or

        **(b)** Not repaired, replaced or rebuilt on the same or another site within two (2) years from the date of loss, unless such time is extended by **us**.

**2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

**3.** **We** will not pay more than **your** financial interest in the **covered property**.

# SECTION VI – LOSS CONDITIONS

## A. ABANDONMENT OF PROPERTY

**You** may not abandon property to **us**.

## B. APPRAISAL

1. If **you** and **we** fail to agree on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** occurred, to select an umpire.

3. The appraisers will then determine the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will determine the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

## C. COLLECTION FROM OTHERS

**We** will reduce any payment to **you** for a **covered loss** to the extent **you** have collected for that loss from others.

## D. COMPANY OPTION

1. In the event of **covered loss**, **we** may, at **our** option, either:

    a. Pay the value of **covered property** lost, damaged or destroyed as set forth in VALUATION above;

    b. Pay the cost of repairing or replacing the **covered property** lost, damaged or destroyed;

    c. Take all or any part of the **covered property** at any agreed valuation; or

    d. Repair, rebuild or replace the **covered property** with other property of like kind and quality.

2. **We** will give notice of **our** intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

## E. DUTIES AFTER A LOSS

In case of loss **you** will:

1. Give **us** immediate written notice of the loss;

2. Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

3. As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

4. Take all reasonable steps to protect the **covered property** from further damage;

5. Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

6. Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the Policy;

7. Keep an accurate record of all repair costs;

8. Keep all bills, receipts and related documents that establish the amount of loss;

9. As often as may reasonably be required:

   a. Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

   b. Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

   c. Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

    The time and cause of the loss;

    a. **Your** interest and the interest of all others in the property involved;

    b. Any other policies of insurance that may provide coverage for the loss;

    c. Any changes in title or occupancy of the property during the Policy period; and

    d. The amount of **your** claimed loss.

    **You** shall also submit with the Proof of Loss:

    (1) A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

    (2) An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

    (3) Specifications for any damaged building; and

    (4) Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

## F. LOSS ADJUSTMENT / PAYABLE

Loss will be adjusted with the First Named Insured. **We** may, at **our** option, adjust the loss to property of others directly with the owner of the property. Such loss will be payable to the First Named Insured or as may be directed by the First Named Insured.

Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee either on a Certificate of Insurance or other evidence of insurance on file with **us**. When named on a Certificate of Insurance or other evidence of insurance, such additional interests are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance. The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

## G. PAYMENT OF LOSS

**We** will pay the insured loss within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

1. **You** have complied with all the terms of this Policy;

2. **We** have reached agreement with **you** on the amount of the loss, or

3. Within thirty (30) days of when an appraisal award is made as provided for in LOSS CONDITIONS **B.** APPRAISAL.

## H. SUBROGATION

1. If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

2. **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

## I. SUIT AGAINST THE COMPANY

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years next after the inception of the loss.

# SECTION VII – DEFINITIONS

1. **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, with proper deduction for physical depreciation and obsolescence, but in no event more than the fair market value.

2. **Annual aggregate**: The maximum amount of loss or damage payable in any one (1) Policy year regardless of the number of **occurrences** within the same Policy year.

3. **Contaminant**: Any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

4. **Contamination**: Any condition of property that results from a **contaminant**.

5. **Covered loss**: A loss to **covered property** caused by direct physical loss or damage insured by this Policy.

6. **Covered property**: Property insured by this Policy.

7. **Electronic Data**: Information (including computer programs) stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, drives, **electronic data processing equipment** or any storage medium.

8. **Electronic data processing equipment:** Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether **your** property or not.

9. **Fine Arts**: Property of rarity, historical value, antiquity or artistic merit, including paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains

10. **Land improvements**: Landscape gardening, car parks, parking lots, pavement, roadways, sidewalks, walkways, railways or transformer enclosures; but does not include fill beneath such property, including buildings, structures or additions.

11. **Location(s)**:

    a. As specified in Appendix A – Schedule of Covered **Location(s)**;

    b. Listed on a SCHEDULE on file with **us**; or

    c. If not so specified in Appendix A – Schedule of Covered **Location(s)** or listed on a SCHEDULE on file with **us**, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

12. **Miscellaneous Unnamed Location**: A **location** owned, leased or rented by **you**, but not listed in a Schedule of **locations** on file with **us** or attached to this Policy.

    **Miscellaneous Unnamed Location** does not include:

    a. Newly Acquired **Locations**; or

    b. A **location** for which coverage is found elsewhere in this Policy including ERRORS AND OMISSIONS.

13. **Occurrence**: All loss or damage attributable directly or indirectly to one (1) cause or series of similar

causes. All such loss or damage will be added together and the total loss or damage will be treated as one (1) **occurrence.**

Unless otherwise amended by an endorsement attached to this Policy:

**a.** All loss or damage resulting from a continuous *FLOOD* event, irrespective of the amount of time or area over which such loss or damage occurs, will be considered a single **occurrence**.

**b.** All loss or damage from *EARTH MOVEMENT* or *NAMED STORM* within the time specified in the **OCCURRENCE** TIME SPECIFICATIONS will be considered a single **occurrence**.

**14. Ordinary payroll**: Payroll expenses for all of **your** employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums **you** pay.

**15. Personal Property**: **Your** tangible things, other than **real property** owned by **you** and used in **your** business, including:

**a.** Furniture, fixtures, machinery, **electronic data processing equipment** and stock;

**b.** Materials, supplies, machinery, equipment and fixtures, including those that are *personal property of others*, which are intended by **you** for use in construction of new additions and buildings at an existing covered **location**, that **you** begin to construct during the Policy period and intend to own or occupy once constructed, while located on the construction site awaiting use in construction.

**c.** Property, other than **real property**, **you** lease for use in **your** business that **you** have a responsibility to insure;

**d.** **Your** interest in improvements and betterments **you** have made in buildings **you** do not own;

**e.** **Your valuable papers and records**.

**16. Real Property**: Building(s) and any other structure, including:

**a.** New buildings and additions under construction, in which **you** have an insurable interest;

**b.** Completed additions, extensions or permanent fixtures;

**c.** Machinery and equipment used to service the buildings;

**d.** Yard Fixtures.

**17. Terrorism**: Activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**18. Valuable papers and records**: Written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

**19. We, us** and **our(s)**: The company issuing this Policy, as shown on the Declarations.

**20. You** and **your(s)**: The First Named Insured shown on the Declarations.

## <u>APPENDIX A</u> - SCHEDULE OF COVERED LOCATIONS

Per schedule on file with us

 © 2016 Liberty Mutual Insurance

## APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES

| STATE | ZONE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------|------------------------------------------|
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Green, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St. Francis, White, Woodruff |
| ARKANSAS | 2 | Arkansas, Fulton, Izard, Lonoke, Prairie, Sharp, |
| ILLINOIS | 1 | Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, Washington, Williamson |
| ILLINOIS | 2 | Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Jasper, Lawrence, Madison, Marion, Monroe, Richland, Saint Clair, Wabash, Wayne, White |
| INDIANA | 2 | Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick |
| KENTUCKY | 1 | Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, McCracken, |
| KENTUCKY | 2 | Caldwell, Christian, Daviess, Henderson, Hopkins, McLean, Muhlenberg, Todd, Trigg, Union, Webster |
| MISSISSIPPI | 1 | DeSoto, Marshall, Tate, Tunica |
| MISSISSIPPI | 2 | Alcorn, Benton, Coahoma, Lafayette, Panola, Quitman, Tippah |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Madison, Mississippi, New Madrid, Pemiscott, Perry, Ripley, Scott, Stoddard, Wayne |
| MISSOURI | 2 | Independent City of St. Louis, Iron, Jefferson, Oregon, Reynolds, Shannon, St. Francois, St. Louis, Ste. Genevieve, Washington |
| TENNESSEE | 1 | Benton, Carroll, Chester, Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Henderson, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, Weakley |
| TENNESSEE | 2 | Decatur, Hardin, Houston, Humphreys, McNairy, Montgomery, Perry, Stewart, |

## APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE

| REGION / STATE | COUNTIES / COORDINATES |
|---|---|
| CANADA: BRITISH COLUMBIA and VANCOUVER ISLAND | South of 50° N latitude and west of 120° W longitude |
| OREGON | Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill |
| WASHINGTON | Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom |

 © 2016 Liberty Mutual Insurance

## APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

SOUTHERN TIER ONE: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantly, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Pierce, Wayne |
| Louisiana | Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Tyrrell, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |

 © 2016 Liberty Mutual Insurance

## APPENDIX D (continued)

### NAMED STORM TIERS FOR USA INCLUDING
### ITS COMMONWEALTHS AND TERRITORIES

#### NORTHERN TIER ONE: VIRGINIA TO MAINE

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Sussex |
| Maine | Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington, York |
| Maryland | Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Rockingham |
| New Jersey | Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk |
| Rhode Island | Bristol, Newport, Washington |
| Virginia | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York |
| | Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg |

#### SOUTHERN TIER TWO: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Alabama | Clarke, Coffee, Conecuh, Covington, Dale, Escambia, Geneva, Houston, Monroe, Washington |
| Louisiana | Allen, Avoyelles, Beauregard, Evangeline, St. Helena, St. Landry, West Feliciana |
| Mississippi | Forrest, Greene, Jones, Lamar, Marion, Perry, Pike, Walthall, Wayne |
| North Carolina | Cumberland, Edgecombe, Greene, Johnston, Robeson, Sampson, Wilson |
| South Carolina | Bamberg, Calhoun, Clarendon, Dillon, Florence, Hampton, Marion, Orangeburg |
| Texas | Austin, Brazos, Colorado, De Witt, Duval, Fayette, Gonzales, Grimes, Jim Hogg, Karnes, Lavaca, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Walker, Waller, Washington |

## APPENDIX D (continued)

### *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

| Other States, Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | **TIER** | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| HAWAII | 1 | Entire State |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

## APPENDIX E - *FLOOD* HAZARD **LOCATIONS**

High Hazard **Location(s)**
2.1 Parking Garage Seattle, Washington 98104
2.2 Parking Garage Seattle, Washington 98104

Moderate Hazard **Location(s)**
NCP

© 2016 Liberty Mutual Insurance

## FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this Policy at time of issue:

| Form or Endorsement Number | Form or Endorsement Name |
|---|---|
| CNP 90 06 01 17 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism |
| PY 03 24 04 17 | Emergency Evacuation Expense |
| PZ 00 01 08 16 | Communicable Disease Decontamination Cost Endorsement |
| PY 04 10 01 17 | Removal of Vacancy Condition |
| PY 03 11 01 17 | Research Animals Endorsement |
| PY 04 07 01 17 | Schedule of Lenders or Mortgagees |

## STATE AMENDATORY ENDORSEMENTS

| Endorsement Number | Endorsement Name |
|---|---|
| PY 01 37 01 17 | Washington Changes |
| PY 02 49 01 17 | Washington Changes - Cancellation and Nonrenewal |

Policy Number  YAC-L9L-469720-049
Issued by        Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

A.  The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

**We** will not pay for loss or damage directly or indirectly caused by or resulting from a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence.

C.  Exception Covering Certain Fire Losses

The following exception to the exclusion in Paragraph **B.** applies only in the following states: California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, U.S. Virgin Islands, Washington, West Virginia, and Wisconsin.

If a "certified act of terrorism" results in fire, **we** will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to **covered property**. Therefore, for example, the coverage does not apply to insurance provided under TIME ELEMENT.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D.  Application Of Exclusions

The terms and limitations of SECTION **II.C.** EXCLUSIONS, **2.a.** do not serve to create coverage for any loss which would otherwise be excluded under this endorsement or the Policy, such as losses excluded under SECTION **II.C.** EXCLUSIONS, **2. b., c., d.,** or **e.**

PY 04 04 01 17                    © 2016 Liberty Mutual Insurance                              Page 1 of 1
              Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number YAC-L9L-469720-049
Issued by     Employers Insurance Company of Wausau

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EMERGENCY EVACUATION EXPENSE

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The following is added to SECTION III – TIME ELEMENT, **E.** TIME ELEMENT COVERAGES AND LIMITATIONS:

EMERGENCY EVACUATION EXPENSE

**We** cover the reasonable and necessary costs **you** incur for the emergency evacuation of patients, tenants or lawful occupants from, and subsequent return to a covered **location**, when a civil authority orders the emergency evacuation as a direct result of immediately impending physical loss or damage of the type insured by this Policy.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

 © 2017 Liberty Mutual Insurance

Policy Number   YAC-L9L-469720-049
Issued by   Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### COMMUNICABLE DISEASE DECONTAMINATION COST ENDORSEMENT

The following PROPERTY DAMAGE COVERAGE AND LIMITATION is added to SECTION II, **D.** of this Policy:

*COMMUNICABLE DISEASE* DECONTAMINATION COSTS

**a.** If **your covered property** at a covered **location** shown on the Schedule of this endorsement is contaminated by a *communicable disease* as the direct result of a **covered loss**, and there is in force at the time of that **covered loss** a law or ordinance that requires **you** to decontaminate that **covered property** as a result of this contamination by a *communicable disease*, **we** will pay up to the limit as specified in the LIMITS OF LIABILITY Table in the Declarations in any one (1) **occurrence** for those decontamination costs incurred by **you**, but only to satisfy the minimum requirements of that applicable law or ordinance.

**b.** **We** will not pay under this endorsement, however, for:

   **(1)** Any cost of removing contaminated property, or the cost to clean up the **contamination** for property not owned by **you** whether or not the **contamination** results from a **covered loss**; or

   **(2)** Any costs associated with any other **contamination** loss.

**c.** For purposes of this extension the italicized term *communicable disease* means a viral or bacterial organism that is capable of inducing disease, illness, physical distress or death.

**Schedule**

Covered **Location**

**Per Schedule on File**

Policy Number   YAC-L9L-469720-049
Issued by       Employers Insurance Company of Wausau

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### REMOVAL OF VACANCY CONDITION

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The VACANCY condition of SECTION V – GENERAL POLICY CONDITIONS does not apply to the **location(s)** shown in the Schedule of this endorsement.

Schedule

| Location(s) |
|---|
| Per Schedule on File |

All other terms and conditions remain unchanged.

Policy Number  YAC-L9L-469720-049
Issued by        Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### RESEARCH ANIMALS ENDORSEMENT

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A. We** provide the following PROPERTY DAMAGE COVERAGE AND LIMITATION for a **covered loss** as specified in the LIMIT OF LIABILITY and DEDUCTIBLE Table in the Schedule of this endorsement, subject to the terms, conditions and exclusions of this Policy:

RESEARCH ANIMALS

**1. We** cover the cost to replace **your** laboratory animals used in medical research either destroyed or deemed unsuitable for use while at a covered **location** from a **covered loss**.

**2. We** do not cover loss to laboratory animals resulting from the following unless directly resulting from direct physical loss or damage:

   **a.** Death or destruction from natural causes, unknown causes, medical procedures including surgery, inoculation, parturition or abortion.

   **b.** Errors or omission in processing and/or failure **on your** part to provide nourishment, medicine or sanitary conditions.

   **c. Contamination** of animals, food or medicine.

   **d.** The intentional destruction of animals.

   **e.** Escape.

   **f.** Sickness, disease, infection, infestation or illness.

**3. We** do not cover the cost to restore the research project to its condition prior to the loss.

All other terms and conditions remain unchanged.

Schedule

| COVERAGE | LIMIT OF LIABILITY | DEDUCTIBLE AMOUNT |
|---|---|---|
| RESEARCH ANIMALS | $5,000,000, no more than $5,000 per animal | $500,000 |

PY 03 11 01 17                          © 2016 Liberty Mutual Insurance                          Page 1 of 1

Policy Number   YAC-L9L-469720-049
Issued by          Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SCHEDULE OF LENDERS OR MORTGAGEES**

| Location | Description of Property | Name and Address of Lender or Mortgagee | Interests ("L" for Lender) ("M" for Mortgagee) |
|---|---|---|---|
| Per schedule or certificates of insurance on file with us | RP, PP | Per schedule on file with us | L/M |

 © 2016 Liberty Mutual Insurance

Policy Number  YAC-L9L-469720-049
Issued by  Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WASHINGTON CHANGES

This endorsement applies only to **covered property** located in Washington and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™
EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

**H.** JURISDICTION

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** The first paragraph of item **2.** of SECTION II – PROPERTY DAMAGE, **C.** EXCLUSIONS is replaced with the following:

**We** do not cover any of the excluded events listed below. Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**C.** Paragraph **i.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is replaced by the following:

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

**(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

**(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

This exclusion will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

**D.** Paragraph **3.** of SECTION IV – DESCRIBED LOSSES, **A.** EARTH MOVEMENT is replaced by the following:

**3.** *EARTH MOVEMENT* is:

Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**E.** Paragraph **2.** of SECTION IV – DESCRIBED LOSSES, **D.** FLOOD is replaced by the following:

**2.** *FLOOD* is:

**a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

**b.** Sewer back-up resulting from any of the foregoing; or

**c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

**F.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void if **you** intentionally conceal or misrepresent any material fact or circumstance relating to it.

However, this will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**G.** Paragraph **E.** INSPECTION of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

**E.** INSPECTION

**1.** During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards. **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

**2.** This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**H.** Paragraph **F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS of SECTION V - GENERAL POLICY CONDITIONS is deleted and replaced by endorsement PY 03 21 Washington Lender's Loss Payable Endorsement as required by the Washington Insurance Commissioner.

**I.** Paragraph **5.** of SECTION V - GENERAL POLICY CONDITIONS, OTHER INSURANCE is replaced by the following:

**5. You** may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If **you** do, **we** will pay **our** share of the **covered loss** or damage. **Our** share is the proportion that the applicable LIMIT OF LIABILITY under this Policy bears to the limits of liability of all insurance covering on the same basis.

**J.** Paragraph **2.** of SECTION V - GENERAL POLICY CONDITIONS, VALUATION is replaced by the following:

**2. You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or *replacement cost* basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

*Replacement cost* means the cost to replace **covered property**:

**a.** With new materials of like kind and quality and used for the same purpose; and

**b.** At the location where the loss happened.

But *replacement cost* excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**K.** Paragraph **2.** of SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is replaced by the following:

**2. We** will be entitled to a recovery only after **you** have been fully compensated for damages.

**L.** Paragraph **1.** of SECTION VII – DEFINITIONS is replaced by the following:

**1. Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, but in no event more than the fair market value.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**M.** Paragraph **B.** of endorsement PY 04 04 EXCLUSION OF CERTIFIED ACTS OF TERRORISM is replaced by the following:

**B.** The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

**We** will not pay for loss or damage caused by or resulting from a "certified act of terrorism". Loss or damage will be considered to have been caused by or resulting from a "certified act of terrorism" if the **occurrence** of that "certified act of terrorism" directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  YAC-L9L-469720-049
Issued by      Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WASHINGTON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **B.** CANCELLATION of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

**B.** CANCELLATION

  **1. You** may cancel this Policy by notifying **us** or **your** insurance agent or broker in one of the following ways:

   **a.** Written notice by mail, fax or e-mail;

   **b.** Surrender of the Policy or binder; or

   **c.** Verbal notice.

   Upon receipt of such notice, **we** will cancel this Policy or any binder issued as evidence of coverage, effective on the later of the following:

   **a.** The date on which notice is received or the Policy or binder is surrendered; or

   **b.** The date of cancellation requested by **you**.

  **2. We** may cancel this Policy by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to **us**, at least:

   **a.** Ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   **b.** Forty-five (45) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason;

   except as provided in Paragraph **3.** below.

  **3. We** may cancel the Policy, by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation at least five (5) days before the effective date of cancellation for any **real property** where two or more of the following conditions exist:

   **a.** Without reasonable explanation, the **real property** is unoccupied for more than sixty (60) consecutive days, or at least 65% of the rental units are unoccupied for more than one hundred twenty (120) consecutive days, unless the **real property** is maintained for seasonal occupancy or is under construction or repair;

   **b.** Without reasonable explanation, progress toward completion of permanent repairs to the **real property** has not occurred within sixty (60) days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **c.** Because of its physical condition, the **real property** is in danger of collapse;

    **d.** Because of its physical condition, a vacation or demolition order has been issued for the **real property**, or it has been declared unsafe in accordance with applicable law;

    **e.** Fixed and salvageable items have been removed from the **real property**, indicating an intent to vacate the **real property**;

    **f.** Without reasonable explanation, heat, water, sewer and electricity are not furnished for the **real property** for sixty (60) consecutive days; or

    **g.** The **real property** is not maintained in substantial compliance with fire, safety and building codes.

**4.** **We** will also mail or deliver to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to **you**. If cancellation is for a reason contained in Paragraph **A.3.** above, **we** will mail or deliver this notice at least twenty (20) days prior to the effective date of cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

**6.** If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if **we** have not made or offered a refund.

**7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The NONRENEWAL provision of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

NONRENEWAL

**We** may decide not to renew this Policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to **you** and **your** insurance agent or broker at their last mailing addresses known to **us**. If notice is mailed, proof of mailing will be sufficient evidence of notice. **We** will also mail to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of nonrenewal. **We** will mail or deliver these notices at least sixty (60) days before the:

**1.** Expiration of the Policy; or

**2.** Anniversary date of this Policy if this Policy has been written for a term of more than one (1) year.

If notice of nonrenewal is not received by **you** as outlined above, **you** and **your** insurance agent or broker will receive written notice of **our** intent to renew this Policy. This notice will be sent at least twenty (20) days prior to the Policy expiration or anniversary date. Included in this notice will be changes, if any, in rates, terms, or conditions made to the expiring Policy. **We** will mail or deliver the notice to **you** and **your** insurance agent or broker, at their last mailing address known to **us**.

This notice will not be sent if **we** have received written notice, prior to the expiration date of this Policy, of **your** intent to obtain replacement coverage elsewhere or that **you** have already done so.

Endorsement number 1 for policy number YAC-L9L-469720-049

Named Insured Board of Regents of the University of Washington, Harborview Board of Trustees, King County and your affiliated or subsidiary entities owned, controlled or coming under your active management and your interest in partnerships or joint ventures as now exist or may hereafter be constituted or acquired during the policy term.

This endorsement is effective 07/01/2019 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Change Endorsement

DESCRIPTION OF CHANGE                                                                                      PREMIUM

POLICY COVER PAGE, Form PY 00 00 01 17 is amended as follows:

The named insured on the Policy Cover Page is changed to: Board of Regents of the University of Washington, Harborview Board of Trustees, King County and your affiliated or subsidiary entities owned, controlled or coming under your active management and your interest in partnerships or joint ventures as now exist or may hereafter be constituted or acquired during the policy term.

Formerly: Harborview Medical Center

SECTION I - DECLARATIONS, Form PY 00 01 02 17 is amended as follows:

The First Named Insured on the Declarations is changed to: Board of Regents of the University of Washington, Harborview Board of Trustees, King County and your affiliated or subsidiary entities owned, controlled or coming under your active management and your interest in partnerships or joint ventures as now exist or may hereafter be constituted or acquired during the policy term.

Formerly: Harborview Medical Center

SECTION I - DECLARATIONS, LIMITS OF LIABILITY TABLE – PART ONE, Form PY 00 01 02 17 is amended as follows:

Contingent Time Element is amended to:

• $5,000,000 Indirect Dependent Contingent Time Element Location(s): Not Scheduled or on file with us.

**Change Endorsement (continued)**

The Limit of Liability for NEWLY ACQUIRED LOCATIONS is increased by $15,000,000 to a new amount of $25,000,000.

Endorsement Number PZ 00 41 04 18, TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE is added.

Limit of Liability: 30 Days, Not to Exceed $1,000,000 limit.


SECTION I - DECLARATIONS, LIMITS OF LIABILITY TABLE – PART TWO, Form PY 00 01 02 17 is amended as follows:

The Limit of Liability for Earth Movement Sprinkler Leakage for Covered Property situated in per the schedule on file with us is amended to *included* in lieu of $600,000,000.


No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

IC9999
10-11

Policy Number YAC-L9L-469720-049
Issued by     Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR

1. The following TIME ELEMENT COVERAGE AND LIMITATION is added to **E.** TIME ELEMENT COVERAGES AND LIMITATIONS in SECTION III- TIME ELEMENT of this policy:

   TIME ELEMENT LOSSES DUE TO CONTAMINATION BY COMMUNICABLE DISEASE

   **a.** If **your covered property** at a covered **location** is contaminated by a *communicable disease* as the direct result of a **covered loss**, and there is in force at the time of that **covered loss** a law or ordinance that requires you to suspend your operations on account of that contamination, **we** will pay the actual loss of GROSS PROFIT or GROSS EARNINGS you sustain due to the necessary suspension of your normal operations at that covered **location** because it is either partially or totally closed by order of authority described in **b.** below.

   **b.** The sole determinant of disease contamination of a magnitude great enough to either partially or totally close **your** normal operations will be either the:

      **(1)** National Center for Disease Control; or

      **(2)** The governmental authority having jurisdiction over **your** operations that relate to health and hygiene standards necessary to protect the general public.

   **c.** The most **we** will pay for this TIME ELEMENT COVERAGE AND LIMITATION in any one (1) **occurrence** is the LIMIT OF LIABILITY specified in the LIMITS OF LIABILITY TABLE.

   **d.** For the purposes of this endorsement the italicized term *communicable disease* means a viral or bacterial organism that is capable of inducing disease, illness, physical distress or death.

# Exhibit 4

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**A.** Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, **we** are required to provide **you** with a notice disclosing the portion of **your** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of **your** premium attributable to such coverage is shown in D. PREMIUM in the Declarations.

**B.** Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. Beginning in calendar year 2020, the federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.** Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

  © 2020 Liberty Mutual Insurance

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**IMPORTANT NOTICE REGARDING THE EXPIRATION OF THE TERRORISM RISK INSURANCE ACT AND THE REDUCTION IN COVERAGE FOR TERRORISM LOSSES**

**PLEASE READ THIS NOTICE CAREFULLY**

This is to notify **you** of a change in coverage for terrorism losses under **your** Premier Property Protector insurance policy when the Terrorism Risk Insurance Act ("TRIA") expires, which is scheduled to occur on December 31, 2020.

TRIA, as amended, is a temporary program that spreads losses from government "certified" acts of terrorism between insurers and the federal government. In summary, TRIA requires insurers to make coverage for "certified acts of terrorism" available, and to pay losses from "certified acts of terrorism" up to a deductible amount. If an individual insurer's losses exceed this amount, the government will reimburse the insurer a certain percentage (81% in 2019 and 80% in 2020) of losses paid in excess of the deductible.

Policyholders have the option to accept or reject this coverage.

TRIA will expire on December 31, 2020, unless Congress and the President act to extend it. Otherwise, after 2020, the federal government will no longer "certify" acts of terrorism or reimburse losses caused by "certified acts of terrorism."

**If you purchase coverage** for "certified acts of terrorism," and TRIA expires on or after December 31, 2020, **your insurance coverage will be reduced**. After the date TRIA expires, where permitted by state law\*, **your** policy will exclude coverage for losses from acts of terrorism.

**If you elect not to purchase** coverage for "certified acts of terrorism," and TRIA expires on or after December 31, 2020, losses caused by terrorist acts will continue to be excluded from **your** policy, where and as permitted by state law\*.

The terrorism exclusion in **your** policy is not a complete exclusion. While the exclusion applies to terrorism events directly or indirectly involving nuclear or radioactive agents or materials, or pathogenic or poisonous biological or chemical agents or materials, it does not apply to so-called "conventional" acts of terrorism until the total event wide insured property damage (including business income) is in excess of $25,000,000. Please refer to Section II – PROPERTY DAMAGE, **C.** EXCLUSIONS, **2.a.**to review the exclusion and subsection **(6)** to understand the coverage available.

\* Exclusion **2.a.** does not apply to locations in New York.

CNI 90 11 07 18

## REPORTING A COMMERCIAL CLAIM 24 HOURS A DAY

**Liberty Mutual Insurance claims professionals across the United States are ready to resolve your claim quickly and fairly, so you and your team can focus on your business. Our claims teams are specialized, experienced and dedicated to a high standard of service.**

### We're Just a Call Away — One Phone Number to Report All Commercial Insurance Claims

Reporting a new claim has never been easier. A Liberty Mutual customer service representative is available to you 24/7 at **800-362-0000** for reporting new property, auto, liability and workers' compensation claims. With contact centers strategically located throughout the country for continuity and accessibility, we're there when we're needed!

### Additional Resource for Workers' Compensation Customers

In many states, employers are required by law to use state-specific workers compensation claims forms and posting notices. This type of information can be found in the Policyholders Toolkit section of our website along with other helpful resources such as:

- Direct links to state workers compensation websites where you can find state-specific claim forms
- Assistance finding local medical providers
- First Fill pharmacy forms — part of our managed care pharmacy program committed to helping injured workers recover and return to work

Our Policyholder Toolkit can be accessed at **www.libertymutualgroup.com/toolkit.**

For all claims inquiries please call us at **800-362-0000.**

**LIBERTY MUTUAL GROUP CALIFORNIA PRIVACY NOTICE**
Commercial Lines (excluding Workers' Compensation)
(Effective January 1, 2020)

Liberty Mutual Group and its affiliates, subsidiaries, and partners (collectively "Liberty Mutual" or "we", "us" and "our") provide insurance to companies and other insurers. This Privacy Notice explains how we gather, use, and share your data. This Privacy Notice applies to you if you are a **Liberty Mutual commercial line insured or are a commercial line claimant residing in California**. It does not apply to covered employees or claimants under Workers' Compensation policies. If this notice does not apply to you, go to libertymutual.com/privacy to review the applicable Liberty Mutual privacy notice.

## What Data Does Liberty Mutual Gather?

We may collect the following categories of data:

- **Identifiers**, including a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security Number, driver's license number, or other similar identifiers;
- **Personal information described in California Civil Code § 1798.80(e)**, such as your name, signature, Social Security Number, physical characteristics or description, address, telephone number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, financial information, medical information, or health insurance information;
- **Protected classification characteristics**, including age, race, color, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, or veteran or military status;
- **Commercial information**, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories and tendencies;
- **Internet or other similar network activity**, including browsing history, search history, information on a consumer's interaction with a website, application, or advertisement;
- **Professional or employment related information**, including current or past job history or performance evaluations;
- **Inferences drawn from other personal information**, such as a profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes;
- **Risk data**, including data about your driving and/or accident history; this may include data from consumer reporting agencies, such as your motor vehicle records and loss history information, health data, or criminal convictions; and
- **Claims data**, including data about your previous and current claims, which may include data regarding your health, criminal convictions, third party reports, or other personal data.

For information about the types of personal data we have collected about California consumers in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

## How We Get the Personal Data:

| We gather your personal data **directly from you**. For example, you provide us with data when you: | We also gather your personal data **from other people**. For example: |
|---|---|
| ▪ ask about, buy insurance or file a claim | ▪ your insurance agent or broker |
| ▪ pay your policy | ▪ your employer, association or business  (if you are insured through them) |
| ▪ visit our websites, call us, or visit our office | ▪ our affiliates or other insurance companies about your transactions with them |

| | |
|---|---|
| | ▪ consumer reporting agencies, Motor Vehicle Departments, and inspection services, to gather your credit history, driving record, claims history, or value and condition of your property |
| | ▪ other public directories and sources |
| | ▪ third parties, including other insurers, brokers and insurance support organizations who you have communicated with about your policy or claim, anti-fraud databases, sanctions lists, court judgments and other databases, government agencies, open electoral register or in the event of a claim, third parties including other parties to the claim witnesses, expert loss adjustors and claim handlers |
| | ▪ other third parties who take out a policy with us and are required to provide your data such as when you are named as a beneficiary or where a family member has taken out a policy which requires your personal data |

For information about how we have collected personal data in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

## How Does Liberty Mutual Use My Data?

Liberty Mutual uses your data to provide you with our products and services, and as otherwise provided in this Privacy Notice. Your data may be used to:

| Business Purpose | Data Categories |
|---|---|
| **Market, sell and provide insurance.** This includes for example:<br>▪ calculating your premium;<br>▪ determining your eligibility for a quote;<br>▪ confirming your identity and service your policy; | ▪ Identifiers<br>▪ Personal Information<br>▪ Protected Classification Characteristics<br>▪ Commercial Information<br>▪ Internet or other similar network activity<br>▪ Professional or employment related information<br>▪ Inferences drawn from other personal information<br>▪ Risk data<br>▪ Claims data |
| **Manage your claim.** This includes, for example:<br>▪ managing your claim, if any;<br>▪ conducting claims investigations;<br>▪ conducting medical examinations;<br>▪ conducting inspections, appraisals;<br>▪ providing roadside assistance;<br>▪ providing rental car replacement, or repairs; | ▪ Identifiers<br>▪ Personal Information<br>▪ Protected Classification Characteristics<br>▪ Commercial Information<br>▪ Internet or other similar network activity<br>▪ Professional or employment related information<br>▪ Inferences drawn from other personal information<br>▪ Risk data<br>▪ Claims data |
| **Day to Day Business and Insurance Operations.** This includes, for example:<br>▪ creating, maintaining, customizing and securing accounts;<br>▪ supporting day-to-day business and insurance related functions;<br>▪ doing internal research for technology development;<br>▪ marketing and creating products and services;<br>▪ conducting audits related to a current contact with a consumer and other transactions; | ▪ Identifiers<br>▪ Personal Information<br>▪ Protected Classification Characteristics<br>▪ Commercial Information<br>▪ Internet or other similar network activity<br>▪ Professional or employment related information<br>▪ Inferences drawn from other personal information<br>▪ Risk data<br>▪ Claims data |

| | |
|---|---|
| ▪ as described at or before the point of gathering personal data or with your authorization; | |
| **Security and Fraud Detection.** This includes for example: <br> ▪ detecting security issues; <br> ▪ protecting against fraud or illegal activity, and to comply with regulatory and law enforcement authorities; <br> ▪ managing risk and securing our systems, assets, infrastructure and premises; roadside assistance, rental car replacement, or repairs <br> ▪ help to ensure the safety and security of Liberty staff, assets and resources, which may include physical and virtual access controls and access rights management; <br> ▪ supervisory controls and other monitoring and reviews, as permitted by law; and emergency and business continuity management; | ▪ Identifiers <br> ▪ Personal Information <br> ▪ Protected Classification Characteristics <br> ▪ Commercial Information <br> ▪ Internet or other similar network activity <br> ▪ Professional or employment related information <br> ▪ Inferences drawn from other personal information <br> ▪ Risk data <br> ▪ Claims data |
| **Regulatory and Legal Requirements.** This includes for example: <br> ▪ controls and access rights management; <br> ▪ to evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of Liberty's assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal data held by Liberty is among the assets transferred; <br> ▪ exercising and defending our legal rights and positions; <br> ▪ to meet Liberty contract obligations; <br> ▪ to respond to law enforcement requests and as required by applicable law, court order, or governmental regulations; <br> ▪ as otherwise permitted by law. | ▪ Identifiers <br> ▪ Personal Information <br> ▪ Protected Classification Characteristics <br> ▪ Commercial Information <br> ▪ Internet or other similar network activity <br> ▪ Professional or employment related information <br> ▪ Inferences drawn from other personal information <br> ▪ Risk data <br> ▪ Claims data |
| **Improve Your Customer Experience and Our Products.** This includes for example: <br> ▪ improve your customer experience, our products and service; <br> ▪ to provide, support, personalize and develop our website, products and services; <br> ▪ create and offer new products and services; | ▪ Identifiers <br> ▪ Personal Information <br> ▪ Commercial Information <br> ▪ Internet or other similar network activity <br> ▪ Professional or employment related information <br> ▪ Inferences drawn from other personal information <br> ▪ Risk data <br> ▪ Claims data |
| **Analytics to identify, understand and manage our risks and products.** This includes for example: <br> ▪ conducting analytics to better identify, understand and manage risk and our products; | ▪ Identifiers <br> ▪ Personal Information <br> ▪ Protected Classification Characteristics <br> ▪ Commercial Information <br> ▪ Internet or other similar network activity <br> ▪ Professional or employment related information <br> ▪ Inferences drawn from other personal information <br> ▪ Risk data <br> ▪ Claims data |
| **Customer service and technical support.** This includes for example: <br> ▪ answer questions and provide notifications; <br> ▪ provide customer and technical support; | ▪ Identifiers <br> ▪ Personal Information <br> ▪ Commercial Information <br> ▪ Internet or other similar network activity <br> ▪ Professional or employment related information |

| | ▪ Inferences drawn from other personal information<br>▪ Risk data<br>▪ Claims data |
| --- | --- |

## How Does Liberty Mutual Share My Data?

Liberty Mutual does not sell your personal data as defined by the California Consumer Privacy Act.

Liberty Mutual shares personal data of California consumers with the following categories of third parties:

- Liberty Mutual affiliates;
- Service Providers;
- Public entities and institutions (e.g. regulatory, quasi-regulatory, tax or other authorities, law enforcement agencies, courts, arbitrational bodies, and fraud prevention agencies);
- Professional advisors including law firms, accountants, auditors, and tax advisors;
- Insurers, re-insurers, policy holders, and claimants; and
- As permitted by law.

Liberty Mutual shares the following categories of personal data regarding California consumers to service providers for business purposes:

| | |
| --- | --- |
| Identifiers | Personal Data; |
| Protected Classification Characteristics; | Commercial Information; |
| Internet or other similar network activity; | Claims Data; |
| Inferences drawn from other personal information; | Risk Data; |
| Professional, employment, and education information; | |

For information about how we have shared personal information in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

## What Privacy Rights Do I Have?

The California Consumer Privacy Act provides California residents with specific rights regarding personal information. These rights are subject to certain exceptions. Our response may be limited as permitted under law.

### Access or Deletion

You may have the right to request that Liberty Mutual disclose certain information to you about our collection and use of your personal data in the twelve (12) months preceding such request, including a copy of the personal data we have collected. You also may have the right to request that Liberty Mutual delete personal data that Liberty Mutual collected from you, subject to certain exceptions.

Specifically, you have the right to request that we disclose the following to you, in each case for the twelve (12) month period preceding your request:

- the categories of personal data we have collected about you;
- the categories of sources from which the personal data was/is collected;
- our business or commercial purpose for collecting personal data;
- the categories of third parties with whom we share personal data;
- the specific pieces of data we have collected about you;
- the categories of personal data about you, if any, that we have disclosed for monetary or other valuable consideration, including the categories of third parties to which we have disclosed the data, by category or categories of personal data for each third party to which we disclosed the personal data; and
- the categories of personal data about you that we disclosed for a business purpose.

**You can make a request by either:**

Calling: 800-344-0197

Online: libertymutualgroup.com/privacy-policy/data-request

Mail: Attn: Privacy Office
Liberty Mutual Insurance Company
175 Berkeley St., 6th Floor
Boston, MA 02116

You may also make a verifiable consumer request on behalf of your minor child.

You or your authorized agent may only make a verifiable consumer request for access or data deletion twice within a twelve (12) month period. The verifiable consumer request must provide sufficient information that allows Liberty Mutual to reasonably verify that you are the person about whom Liberty Mutual collected personal data or an authorized representative of such person; and describe your request with sufficient detail that allows Liberty Mutual to properly understand, evaluate, and respond to it. For more information about how Liberty Mutual will verify your identity and how an authorized agent may make a request on your behalf, go to libertymutual.com/privacy and click on the California Supplemental Privacy Policy.

**Response Timing**

Liberty Mutual will respond to a verifiable consumer request within forty-five (45) days of its receipt. If more time is needed, Liberty Mutual will inform you of the reason and extension period in writing.

Any disclosures that will be provided will only cover the twelve (12) month period preceding our receipt of the verifiable consumer request. If Liberty Mutual is unable to fulfill your request, you will be provided with the reason that the request cannot be completed. For more information about how we will respond to requests, go to libertymutual.com/privacy and click on the California Supplemental Privacy Policy.

**Rights to opt in and out of data selling**

California consumers have the right to direct businesses not to sell your personal data (opt-out rights), and personal data of minors under 16 years of age will not be sold, as is their right, without theirs or their parents' opt-in consent. Liberty Mutual does not sell the personal data of consumers. For more information, go to libertymutual.com/privacy and click on the California Supplemental Privacy Policy.

**No account needed**

You do not need to create an account with Liberty Mutual to exercise your rights. Liberty Mutual will only use personal data provided in a request to review and comply with the request.

**No discrimination**

You have the right not to be discriminated against for exercising any of your CCPA rights. Unless permitted by the CCPA, exercising your rights will not cause Liberty Mutual to:

- Deny you goods or services;
- Charge you different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties;
- Provide you a different level or quality of goods or services; or
- Suggest that you may receive a different price or rate for goods or services, or a different level or quality of goods or services.

 © 2019 Liberty Mutual Insurance

**Will Liberty Mutual Update This Privacy Notice?**

We reserve the right to makes changes to this notice at any time and for any reason. The updated version of this policy will be effective once it is accessible. You are responsible for reviewing this policy to stay informed of any changes or updates.

**Who Do I Contact Regarding Privacy?**

If you have any questions or comments about this Notice or the Supplemental CCPA Notice, your rights, or are requesting the Notice in an alternative format, please do not hesitate to contact Liberty Mutual at:

**Phone:**          800-344-0197

**Email:**          privacy@libertymutual.com

**Postal Address:**     Attn: Privacy Office
                    Liberty Mutual Insurance Company
                    175 Berkeley St., 6th Floor
                    Boston, MA 02116



# PREMIER PROPERTY PROTECTOR™

POLICY COVER PAGE

| POLICY NUMBER: | DATE OF ISSUE: |
|---|---|
| YAC-L9L-450425-020 | 2/26/2020 |

| COMPANY PROVIDING INSURANCE: |
|---|
| Employers Insurance Company of Wausau |
| ( hereafter referred to as **we**, **us** or **our** ) |

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**We** insure:

| Board of Regents of the University of Washington Husky Stadium |
|---|
| ( hereafter referred to as **you** or **your(s)** ) |

The term of this Policy is from 3/1/2020 to 3/1/2021 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

## PRODUCER NAME AND OFFICE

PARKER SMITH & FEEK INC
2233 112TH AVE NE,
BELLEVUE, WA 98004

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote either in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning. Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

IN WITNESS WHEREOF, the company has caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

President            Secretary

# TABLE OF CONTENTS

## POLICY COVER PAGE

SECTION I - DECLARATIONS .................................................................................................... 5
A.   FIRST NAMED INSURED AND MAILING ADDRESS ............................................................ 5
B.   POLICY PERIOD ...................................................................................................................... 5
C.   INSURING AGREEMENT .......................................................................................................... 5
D.   PREMIUM ................................................................................................................................... 5
E.   PREMIUM PAYABLE ................................................................................................................. 6
F.   COVERED LOCATION(S) ......................................................................................................... 7
G.   TERRITORY ............................................................................................................................... 7
H.   JURISDICTION .......................................................................................................................... 8
I.   CURRENCY ................................................................................................................................ 8
J.   DEFINED WORDS ..................................................................................................................... 8
K.   LIMITS OF LIABILITY ............................................................................................................... 8
L.   CANCELLATION TIME SPECIFICATIONS ............................................................................ 12
M.   DEDUCTIBLES ......................................................................................................................... 13
N.   QUALIFYING PERIOD(S) ........................................................................................................ 16

SECTION II – PROPERTY DAMAGE ...................................................................................... 17
A.   COVERED PROPERTY ........................................................................................................... 17
B.   PROPERTY NOT COVERED .................................................................................................. 17
C.   EXCLUSIONS .......................................................................................................................... 18
D.   PROPERTY DAMAGE COVERAGES AND LIMITATIONS ................................................... 22
  1.   ACCOUNTS RECEIVABLE ................................................................................................ 22
  2.   BRANDS AND LABELS ...................................................................................................... 22
  3.   CONTROL OF DAMAGED GOODS ................................................................................... 23
  4.   COURSE OF CONSTRUCTION ......................................................................................... 23
  5.   DATA, PROGRAMS OR SOFTWARE ................................................................................ 23
  6.   DEBRIS REMOVAL ............................................................................................................ 24
  7.   DECONTAMINATION COSTS ............................................................................................ 24
  8.   DEFENSE FOR PERSONAL PROPERTY OF OTHERS ................................................... 25
  9.   DEFERRED PAYMENTS .................................................................................................... 25
  10.  DEMOLITION AND INCREASED COST OF CONSTRUCTION ........................................ 25
  11.  ERRORS AND OMISSIONS ............................................................................................... 26
  12.  EXPEDITING EXPENSE ..................................................................................................... 26
  13.  FINE ARTS .......................................................................................................................... 27

**14.** FIRE DEPARTMENT SERVICE CHARGES ................................................................................................ 27

**15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL .......................................................... 27

**16.** MISCELLANEOUS **PERSONAL PROPERTY** ...................................................................................... 27

**17.** NEWLY ACQUIRED **LOCATIONS** ........................................................................................................ 28

**18.** OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE ..................................... 28

**19.** PROFESSIONAL FEES ........................................................................................................................... 28

**20.** PROTECTION AND PRESERVATION OF PROPERTY ...................................................................... 29

**21.** RADIOACTIVE CONTAMINATION ........................................................................................................ 29

**22.** TAX LIABILITY ........................................................................................................................................ 29

**23.** TEMPORARY REMOVAL OF PROPERTY ........................................................................................... 30

**24.** TRANSIT ................................................................................................................................................... 30

**25.** **VALUABLE PAPERS AND RECORDS** ............................................................................................... 32

SECTION III – TIME ELEMENT ............................................................................................................. 33

**A.** LOSS INSURED ......................................................................................................................................... 33

**B.** TIME ELEMENT COVERAGES .............................................................................................................. 33

**1.** *GROSS EARNINGS* ............................................................................................................................... 33

**2.** EXTRA EXPENSE .................................................................................................................................. 35

**3.** LEASEHOLD INTEREST ....................................................................................................................... 35

**4.** RENTAL INSURANCE ........................................................................................................................... 35

**C.** PERIOD OF LIABILITY ............................................................................................................................ 36

**D.** TIME ELEMENT EXCLUSIONS ............................................................................................................. 37

**E.** TIME ELEMENT COVERAGES AND LIMITATIONS ........................................................................... 38

**1.** *ATTRACTION PROPERTY* ................................................................................................................... 38

**2.** CIVIL OR MILITARY AUTHORITY ...................................................................................................... 38

**3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE ......................................................................... 39

**4.** CONTINGENT TIME ELEMENT ........................................................................................................... 39

**5.** CRISIS MANAGEMENT ......................................................................................................................... 40

**6.** DELAY IN STARTUP .............................................................................................................................. 40

**7.** EXTENDED PERIOD OF LIABILITY .................................................................................................... 40

**8.** INGRESS / EGRESS ................................................................................................................................ 41

**9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT .............................................. 41

**10.** ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT ................................................ 42

**11.** PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT ......................................... 42

**12.** RELATED **LOCATIONS** ........................................................................................................................ 42

**13.** RESEARCH AND DEVELOPMENT ...................................................................................................... 42

**14.** SOFT COSTS ........................................................................................................................................... 42

SECTION IV – DESCRIBED LOSSES ................................................................................................... 44

**A.** *EARTH MOVEMENT*................................................................................................................. 44

**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE............................................................................ 44

**C.** *EQUIPMENT BREAKDOWN*...................................................................................................... 44

**D.** *FLOOD*...................................................................................................................................... 47

**E.** *NAMED STORM*........................................................................................................................ 47

SECTION V - GENERAL POLICY CONDITIONS................................................................... 48

**A.** ASSIGNMENT............................................................................................................................ 48

**B.** CANCELLATION........................................................................................................................ 48

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD............................................................ 48

**D.** CONFORMITY TO STATUTES.................................................................................................. 49

**E.** INSPECTION ............................................................................................................................ 49

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS...................... 49

**G.** LIBERALIZATION ..................................................................................................................... 50

**H.** NO REDUCTION BY LOSS....................................................................................................... 50

**I.** NONRENEWAL .......................................................................................................................... 50

**J.** OTHER INSURANCE................................................................................................................. 50

**K.** PAIR, SET OR PARTS .............................................................................................................. 51

**L.** POLICY MODIFICATION............................................................................................................ 51

**M.** TITLES ..................................................................................................................................... 51

**N.** TRANSFER OF RIGHTS AND DUTIES..................................................................................... 51

**O.** VACANCY................................................................................................................................. 51

**P.** VALUATION............................................................................................................................... 52

SECTION VI – LOSS CONDITIONS .................................................................................... 55

**A.** ABANDONMENT OF PROPERTY............................................................................................. 55

**B.** APPRAISAL .............................................................................................................................. 55

**C.** COLLECTION FROM OTHERS................................................................................................. 55

**D.** COMPANY OPTION.................................................................................................................. 55

**E.** DUTIES AFTER A LOSS........................................................................................................... 55

**F.** LOSS ADJUSTMENT / PAYABLE.............................................................................................. 56

**G.** PAYMENT OF LOSS................................................................................................................. 57

**H.** SUBROGATION........................................................................................................................ 57

**I.** SUIT AGAINST THE COMPANY................................................................................................. 57

SECTION VII – DEFINITIONS.............................................................................................. 58

APPENDIX A - SCHEDULE OF COVERED LOCATIONS ..................................................... 61

APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES ............................................... 62

APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE ................................... 63

APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS
AND TERRITORIES.................................................................................................................... 64

APPENDIX E - *FLOOD* HAZARD **LOCATIONS** ...................................................................... 67

FORMS AND ENDORSEMENTS ............................................................................................... 68

Disclosure Pursuant to Terrorism Risk Insurance Act .................................................................... 68

Important Notice Regarding The Expiration of the Terrorism Risk Insurance Act and the Reduction in Coverage
for Terrorism Losses ...................................................................................................................... 68

Reporting a Commercial Claim 24 Hours a Day............................................................................. 68

Liberty Mutual Group California Privacy Notice.............................................................................. 68

Exclusion of Certified Acts of Terrorism......................................................................................... 68

STATE AMENDATORY ENDORSEMENTS................................................................................. 69

Washington Changes...................................................................................................................... 69

Washington Changes - Cancellation and Nonrenewal ................................................................... 69

# SECTION I - DECLARATIONS

## A. FIRST NAMED INSURED AND MAILING ADDRESS

Board of Regents of the University of Washington Husky Stadium and any subsidiary, and the interest of Board of Regents of the University of Washington Husky Stadium in any partnership or joint venture in which Board of Regents of the University of Washington Husky Stadium has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as **you** or **yours**, including legal representatives.

When any Insured described above is a party to a written contract or agreement on file that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to **covered property** which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any TIME ELEMENT Coverage to the legal entity, except as provided under LEASEHOLD INTEREST of this Policy or as specifically endorsed to the Policy.

Compliance and Risk Services
Box 354964;4300 Roosevelt Way NE
Seattle, WA 98105

## B. POLICY PERIOD

The term of this Policy is from March 1, 2020 to March 1, 2021 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

## C. INSURING AGREEMENT

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

## D. PREMIUM

This Policy is issued in consideration of the following initial premium inclusive of any premium shown on endorsements which are part of the Policy at the time of issue.

| | |
|---|---|
| Policy Premium (Excluding premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended): | $222,626 |
| | |
| Policy Premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended: | Rejected |
| • Policy Premium for Fire Following Acts of **Terrorism** (in States where required) | $14,185 |
| | |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges summary shown below) | $0 |
| | |
| Total Policy Premium/Other Charges for Above Policy Period: | $236,811 |

 © 2016 Liberty Mutual Insurance

| Policy Premium will be billed annual. | |
| --- | --- |
| The Deposit Premium/Other Charges is: | $236,811 |

**E.** PREMIUM PAYABLE

The First Named Insured pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of the First Named Insured.

Premiums will be paid in the currency designated in paragraph **I.** CURRENCY.

 © 2016 Liberty Mutual Insurance

**F.** COVERED LOCATION(S)

This Policy applies at a **location(s)**:

**1.** Listed on a SCHEDULE on file with **us**;

**2.** Listed on the SCHEDULE attached to this Policy;

**3.** Covered as a **Miscellaneous Unnamed Location**; or

**4.** Covered under the terms and conditions of the NEWLY ACQUIRED **LOCATIONS** Coverage or ERRORS AND OMISSIONS Coverage.

**G.** TERRITORY

Coverage under this Policy applies to **covered property** within the continental United States of America, Hawaii and Puerto Rico.

**H.** JURISDICTION

The validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York.

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**I.** CURRENCY

All amounts, including deductibles and LIMITS OF LIABILITY, indicated in this Policy are in U.S. Dollars unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

**J.** DEFINED WORDS

Words in bold face type have special meanings in this Policy and are defined in the DEFINITIONS section of this Policy. These definitions apply to this entire Policy and to any endorsements to it. Definitions that apply to individual sections or paragraphs are italicized and defined in the applicable sections or paragraphs.

**K.** LIMITS OF LIABILITY

When a POLICY LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, **our** maximum LIMIT OF LIABILITY in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the stated POLICY LIMIT OF LIABILITY.

**1.** When a PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, it will apply to all coverages provided throughout this Policy, unless a LIMIT OF LIABILITY or "NCP" (No Coverage Provided) is indicated.

    **a.** When a LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, such limit will be the maximum amount payable for such loss or damage and cannot be combined with any other LIMIT OF LIABILITY.

    **b.** If "NCP" is specified in the LIMITS OF LIABILITY, there is no coverage provided in this Policy.

**2.** LIMITS OF LIABILITY in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

    **a.** When a LIMIT OF LIABILITY that applies in the aggregate during any Policy year is shown, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY during any Policy year.

    **b.** When a LIMIT OF LIABILITY applies to a **location(s)**, specified property, DESCRIBED LOSSES or a specific coverage, the smallest applicable LIMIT OF LIABILITY will be the maximum amount payable.

    **c.** Should an **occurrence** result in liability payable under more than one Policy issued to **you** by **us**, or by **our** subsidiaries, partners, or associated insurance companies, the maximum amount payable in the aggregate under all such policies will be the applicable LIMIT(S) OF LIABILITY indicated in this Policy.

    **d.** When a LIMIT OF LIABILITY applies to TIME ELEMENT only, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY per **occurrence**.

**3.** LIMITS OF LIABILITY specified below or elsewhere in this Policy do not increase and are part of and not in addition to the POLICY LIMIT OF LIABILITY or the PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY.

**4.** LIMITS OF LIABILITY apply per **occurrence** unless otherwise specified, including time and distance limits.

LIMITS OF LIABILITY TABLE – PART ONE

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| POLICY LIMIT OF LIABILITY | $331,055,581 |
| TIME ELEMENT | $23,567,631 |
| ACCOUNTS RECEIVABLE | $25,000,000 |
| *ATTRACTION PROPERTY* | 1 statute miles from a covered **location** 30 consecutive days, not to exceed $1,000,000 |
| BRANDS AND LABELS | $1,000,000 |
| CIVIL OR MILITARY AUTHORITY | 1 statute miles from a covered **location** 30 consecutive days, not to exceed $1,000,000 |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | $500,000 |
| CONTINGENT TIME ELEMENT | |
| • Direct Dependent Contingent Time Element **Location(s)**: Not Scheduled or on file with **us** | $10,000,000 |
| • *Indirect Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** | $25,000 |
| CONTROL OF DAMAGED GOODS | $1,000,000 |
| COURSE OF CONSTRUCTION | $10,000,000 |
| CRISIS MANAGEMENT | 30 consecutive days, not to exceed $1,000,000 |
| DEBRIS REMOVAL | $25,000,000 |
| DECONTAMINATION COSTS | $1,000,000 |
| DEFERRED PAYMENTS | $500,000 |

  © 2016 Liberty Mutual Insurance

| DELAY IN STARTUP | $500,000 |
|---|---|
| DEMOLITION AND INCREASED COST OF CONSTRUCTION<br>DAMAGED, per Section II D.11.b.1, | $25,000,000 |
| UNDAMAGED, per Section II D.11.b.2, | Included |
| ERRORS AND OMISSIONS | $10,000,000 |
| EXPEDITING EXPENSE | $25,000,000 |
| EXTENDED PERIOD OF LIABILITY | 365 consecutive days |
| EXTRA EXPENSE | $10,000,000 |
| **FINE ARTS** | $500,000 |
| FIRE DEPARTMENT SERVICE CHARGES | $2,500,000 |
| IMPOUNDED WATER | 30 consecutive days, not to exceed<br>$1,000,000 |
| INGRESS / EGRESS | 1 statute miles from a covered **location** 30<br>consecutive days, not to exceed<br>$10,000,000 |
| LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL in<br>the **annual aggregate** | $500,000 |
| LEASEHOLD INTEREST | $10,000,000 |
| MISCELLANEOUS **PERSONAL PROPERTY** | $1,000,000 |
| **Miscellaneous Unnamed Locations** | $10,000,000 |
| Mold, Mildew or Fungus directly resulting from a **Covered Loss** | $500,000 |
| NEWLY ACQUIRED **LOCATIONS** | 60 consecutive days, not to exceed<br>$25,000,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY<br>DAMAGE and OFF PREMISES INTERRUPTION OF SERVICES<br>– TIME ELEMENT | $500,000 |

| Ordinary Payroll | 365 consecutive days |
|---|---|
| PRESERVATION OF PROPERTY | $5,000,000 |
| PROFESSIONAL FEES | $1,000,000 |
| RADIOACTIVE CONTAMINATION | $250,000 |
| RENTAL INSURANCE | $1,000,000 |
| RESEARCH AND DEVELOPMENT | $100,000 |
| SOFT COSTS | $500,000 |
| TAX LIABILITY | $500,000 |
| TRANSIT | $2,500,000 |
| VALUABLE PAPERS AND RECORDS | $25,000,000 |

## LIMITS OF LIABILITY TABLE – PART TWO

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| EARTH MOVEMENT in the annual aggregate <br><br> except the following limits apply per occurrence and in the annual aggregate, and are part of and not in addition to the EARTH MOVEMENT annual aggregate limit: <br><br> • Covered property situated in: | $25,000,000 |
| Pacific NW Earth Movement Zone | $25,000,000 |
| EARTH MOVEMENT SPRINKLER LEAKAGE | $25,000,000 |
| EQUIPMENT BREAKDOWN <br><br> PROPERTY DAMAGE and TIME ELEMENT except: | Included |

| | |
|---|---|
| The following limits are part of and not in addition to the EQUIPMENT BREAKDOWN limits specified above: | |
| • Ammonia **Contamination** | $5,000,000 |
| • CONTINGENT TIME ELEMENT | $5,000,000 |
| • Spoilage Damage | $5,000,000 |
| FLOOD in the **annual aggregate** | $100,000,000 |
| except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the FLOOD **annual aggregate** limit: | |
| • **Covered property** at **locations** situated in: | |
| Flood Hazard - Moderate | $25,000,000 |
| Flood Hazard - High | $1,000,000 |
| NAMED STORM | Included |

## ENDORSEMENT LIMITS OF LIABILITY

| Endorsement Number | Endorsement Name | LIMITS OF LIABILITY |
|---|---|---|
| CNP 90 06 01 20 | Disclosure Pursuant to Terrorism Risk Insurance Act | Rejected |
| CNP 90 10 01 19 | Important Notice Regarding The Expiration of the Terrorism Risk Insurance Act and the Reduction in Coverage for Terrorism Losses | |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism | |

## L. CANCELLATION TIME SPECIFICATIONS

| | |
|---|---|
| Cancellation for Nonpayment of Premium | Ten (10) days |
| Cancellation for All Reasons Other Than Nonpayment of Premium | 30 days |

 © 2016 Liberty Mutual Insurance

**M**. DEDUCTIBLES

Subject to the Deductible General Provisions stated below, **we** will not pay unless a **covered loss**, including any insured TIME ELEMENT loss, exceeds the deductible(s) specified below. **We** will then pay the amount of **covered loss** in excess of the deductible, up to the applicable LIMIT OF LIABILITY.

Deductible General Provisions

**We** will be liable only if **you** sustain a **covered loss**, including any insured TIME ELEMENT loss, in a single **occurrence** greater than the applicable deductible specified. When this Policy insures more than one (1) **location**, the deductible(s) will apply against the total loss covered by this Policy in an **occurrence** unless otherwise stated.

1. Unless otherwise stated, if two or more deductibles apply to an **occurrence**, the total deductible will not exceed the largest applicable deductible, except as follows:

   **a.** When a separate PROPERTY DAMAGE and TIME ELEMENT deductible apply, each will be applied separately.

   **b.** If there are multiple **locations** involved in an **occurrence** where two or more deductibles apply to a **location** in an **occurrence**, the largest deductible applying to each **location** will be applied separately to each such **location**, regardless of the number of **locations** involved in the **occurrence**.

   **c.** Unless specified otherwise, if deductibles are specified for a **location**, the largest deductible applicable will be applied to that **location** regardless of the number of **locations** involved in the **occurrence**.

   **d.** Equipment Breakdown: With regard to Equipment Breakdown coverage, if one or more deductible amounts are shown below, each will be applied separately.

   **e.** The stated *EARTH MOVEMENT* deductible will be applied to *EARTH MOVEMENT* loss. The stated *FLOOD* deductible will be applied to *FLOOD* loss. The stated *NAMED STORM* deductible will be applied to *NAMED STORM* loss. Provisions **1.a.** and **1.b.** above will also be applied to each.

2. When a percent deductible is specified, whether separate or combined, the deductible amount will be determined as follows:

   **a.** PROPERTY DAMAGE: The percentage of the total reported values on file with **us** for the **covered property** at the corresponding **location(s)** (including sub-**locations**) where the direct physical loss or damage occurred; plus

   **b.** TIME ELEMENT: The percentage of the full TIME ELEMENT values that would have been earned in the 12-month period following the **occurrence**, had no loss occurred, by use of the facilities at the **location** where the direct physical loss or damage occurred, plus that proportion of the full TIME ELEMENT values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12-month period following the **occurrence**.

   **c.** Equipment Breakdown: The percentage of the gross amount of loss, damage or expense (prior any deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

3. When a minimum deductible is shown, the minimum deductible is the sum of:

   **a.** The specific **location** deductible for each covered **location** where the amount of physical loss or damage exceeds the specific **location** deductible; and

   **b.** The amount of physical loss or damage for each covered **location** where the amount of physical loss or damage is less than the specific **location** deductible.

**4.** When an average daily value deductible is provided, this deductible will be determined as follows:

   **a.** The total amount of TIME ELEMENT loss applicable for the entire **location** where the direct physical loss or damage happens will be included.

   **b.** Divide the result in Paragraph **a.** by the number of days the business would have been open during the PERIOD OF LIABILITY. The result is the average daily value.

   **c.** Multiply the average daily value in Paragraph **b.** by the number of days specified in the DEDUCTIBLE TABLE below.

   If more than one (1) **location** is included in the valuation of the loss, the average daily value will be the combined value of all affected **locations**.

**5.** When a per unit deductible is specified, the following shall be considered a separate unit of insurance:

   **a.** Each separate building, the contents of each separate building and **covered property** in each yard at that covered **location**.

   **b.** TIME ELEMENT loss as applicable, including all other **locations** where TIME ELEMENT loss ensues as provided by this Policy.

**6.** When a time deductible is shown, **we** will not be liable for any loss under that coverage that occurs during that specified time period immediately following the direct physical loss or damage. If a time deductible is shown in days, each day shall mean twenty four (24) consecutive hours.

**7.** When a deductible is shown in the Declarations for a *NAMED STORM*, the following applies:

   **a.** All direct physical loss or damage to **covered property** including TIME ELEMENT loss caused by or resulting from a *NAMED STORM* will be subject to the deductible obtained by calculating all of the following:

   **(1)** The sum of all applicable percentage deductibles calculated as described in Deductible General Provisions Item **2.** above, subject to any applicable minimums or maximums; and

   **(2)** Any other applicable deductible amounts.

## DEDUCTIBLE TABLE – PART ONE

| Coverage | Deductible Percentage / Amounts |
|---|---|
| Policy Deductible (except as otherwise indicated) | $250,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | $250,000 |
| TRANSIT | $250,000 |

| | |
|---|---|
| Fine Arts | $250,000 |

## DEDUCTIBLE TABLE – PART TWO

| Coverage | Deductible Percentage / Amounts |
|---|---|
| *EARTH MOVEMENT* | 2% subject to $250,000 minimum |
| except:<br>• **Covered property** situated in: | |
| Pacific NW Earth Movement Zone | 2% subject to $250,000 minimum |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $250,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE and TIME ELEMENT | $250,000 |
| • Spoilage Damage | $250,000 |
| • Ammonia **Contamination** | $250,000 |
| *FLOOD* | $250,000 |
| except:<br>• **Covered property** at **locations** situated in: | |
| Flood Hazard - Moderate | $250,000 |
| Flood Hazard - High | $500,000 |
| *NAMED STORM* | $250,000 |

## **OCCURRENCE** TIME SPECIFICATIONS

| *EARTH MOVEMENT* | continuous 168 hours |
|---|---|
| *NAMED STORM* | continuous 72 hours |

 © 2016 Liberty Mutual Insurance

**N.** QUALIFYING PERIOD(S)

A *qualifying period* applies for the coverages shown in the Table below. *Qualifying period* is the period of time that must be exceeded for coverage to apply. Once the *qualifying period* has been exceeded, coverage applies from the initial event of loss.

*QUALIFYING PERIOD* TABLE

| Coverage | *QUALIFYING PERIOD* |
|---|---|
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | 24 hours |
| CRISIS MANAGEMENT | 24 hours |
| OFF PREMISES INTERRUPTION OF SERVICES -- PROPERTY DAMAGE AND TIME ELEMENT | 24 hours |

# SECTION II – PROPERTY DAMAGE

**A.** COVERED PROPERTY

**1.** **We** cover **your** insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered **location**, unless otherwise excluded:

**a.** **Real Property**, including new buildings, structures and additions in the COURSE OF CONSTRUCTION.

**b.** **Personal Property**, including *personal property of others*.

*Personal property of others* are tangible things that **you** do not own, other than **real property**, that:

**(1)** are sold by **you** and that **you** have agreed, prior to loss, to insure for the account of the purchaser during delivery;

**(2)** **you** have agreed in writing prior to any loss or damage to provide coverage;

**(3)** are in **your** care, custody or control;

**(4)** **you** have an insurable interest in, or an obligation to provide coverage;

**(5)** **you** are legally liable for;

**(6)** are improvements and betterments consisting of fixtures, alterations, installation or additions comprising part of a building not owned by **you** and acquired or made at **your** expense which **you** cannot legally move, but only to the extent of **your** insurable interest therein; or

**(7)** are **personal property** (other than vehicles) of **your** employees and officers.

**2.** **We** also cover the interest of contractors and subcontractors in **covered property** during construction at or within one-thousand (1,000) feet of a covered **location** to the extent of **your** legal liability for direct physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

**B.** PROPERTY NOT COVERED

**We** do not cover the following types of property:

**1.** Aircraft, except when unfueled and manufactured by **you**;

**2.** Animals, standing timber including undisturbed natural wooded areas, or growing crops;

**3.** Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

**4.** Caves, caverns, mines of any type, or any property contained within them;

**5.** Contraband or property in the course of illegal transportation or trade;

**6.** Currency, money, negotiable and non-negotiable instruments, notes or securities;

**7.** Dams, dikes, levees, docks, wharfs, piers or bulkheads;

8. **Electronic data**, computer programs or software, except when they are stock in process, finished stock manufactured by **you**, raw materials, supplies, other merchandise not manufactured by **you** or as provided in this Policy;

9. Land and any substance in or on land except this exclusion does not apply to **land improvements**;

10. **Land improvements** at a golf course;

11. Overhead transmission and distribution systems located more than one-thousand (1,000) feet away from a covered **location**;

12. *Personal property of others* that is in the care, custody or control of **you** or **your** affiliates for which **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

13. Precious metals or precious stones, except when used in industrial or service operations;

14. Property in transit, except as otherwise provided by this Policy;

15. Property more specifically insured, except for any excess over any LIMITS OF LIABILITY of such more specific insurance;

16. Property sold by **you** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to **your** customers, except as provided by the DEFERRED PAYMENTS coverage of this Policy;

17. Spacecraft, satellites, associated launch vehicles and any property contained therein;

18. Vehicles otherwise insured for physical loss or damage;

19. Water except this exclusion does not apply to water that is contained within any enclosed tank, piping system or any other processing equipment; or

20. Watercraft, except watercraft **you** manufacture and are part of **your** inventory while being stored un-fueled and on dry land at a covered **location**.

C. EXCLUSIONS

The following exclusions apply unless otherwise stated in this Policy:

1. **We** do not cover:

   a. Indirect or remote loss or damage;

   b. Interruption of business, except to the extent provided by this Policy;

   c. Loss of market or loss of use;

   d. Loss or damage or deterioration arising from any delay;

   e. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss;

   f. Loss or damage from enforcement of any law or ordinance:

      **(1)** Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or
      **(2)** Requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this Policy;

**g.** Loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense; or

**h.** Loss or damage caused by or resulting from freezing, disease or drought to landscape gardening, including plants, trees and shrubs.

**2. We** do not cover physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing to the loss concurrently or in any other sequence:

**a. Terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**, but this exclusion applies only when one of the following are attributed to an incident of **terrorism:**

   **(1)** The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive **contamination**; or

   **(2)** Radioactive material is released, and it appears that one purpose of **terrorism** was to release such material; or

   **(3)** The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   **(4)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

   **(5)** Loss or damage to property located outside of the United States, unless there is a law in effect in the jurisdiction where the loss or damage occurs that expressly prohibits this exclusion; or

   **(6)** The total of all damage to property, whether covered by this Policy or otherwise, exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, **we** will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption (TIME ELEMENT) losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any **terrorism** exclusions. Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one (1) incident, for the purpose of determining whether the threshold is exceeded.

   With respect to this item **2.a.(6)**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of **terrorism**, there is no coverage in this Policy.

   However, this exclusion does not apply:

   **(1)** If **terrorism** results in fire, in which case **we** cover the direct physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage occurs that expressly prohibits the exclusion of fire losses resulting from **terrorism.** This exception is subject to all applicable Policy provisions including the LIMIT OF LIABILITY on the affected property. Such coverage for ensuing loss applies only to direct loss or damage by fire to **covered property**. This coverage does not apply to insurance provided under any TIME ELEMENT coverages, or to fire legal liability coverage; or

**(2)** While the United States **Terrorism** Risk Insurance Act (TRIA), as amended, is in effect:

    **(a)** To loss or damage caused by a "Certified Act of **Terrorism**" provided that **you** elected coverage for such, and only to the extent provided by the terms and conditions of the applicable CERTIFIED ACTS OF **TERRORISM** AND DISCLOSURE PURSUANT TO **TERRORISM** RISK INSURANCE ACT endorsement; or

    **(b)** To loss or damage caused by **terrorism** that would have been certified as an "act of **terrorism**", but was not certified solely because the total of all property and casualty insurance losses resulting from the act failed to exceed the $5,000,000 "certified act of **terrorism**" threshold specified under TRIA.

**b.** Nuclear reaction or nuclear radiation or radioactive **contamination**. However, this exclusion does not apply if:

    **(1)** The RADIOACTIVE **CONTAMINATION** PROPERTY DAMAGE COVERAGE AND LIMITATION applies but only to the extent provided; or

    **(2)** Fire directly results from the nuclear reaction, nuclear radiation, or radioactive **contamination**, in which case **we** cover the physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage happens that expressly prohibits the exclusion of fire losses resulting from nuclear reaction, radiation or **contamination**.

**c.** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

    **(1)** Government or sovereign power (de jure or de facto);

    **(2)** Military, naval or air force; or

    **(3)** Agent or authority of any party specified in **(1)** or **(2)** above.

**d.** Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**e.** The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, biological, viral, radioactive or similar agents or matter, whether in time of peace or war and regardless of who commits the act.

**f.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**g.** Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

**h.** Risks of contraband, or illegal transportation or trade.

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

    **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

    **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

 © 2016 Liberty Mutual Insurance

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

j. Lack of the following services:

(1) Incoming electricity, fuel, water, gas, steam or refrigerant;

(2) Outgoing sewerage; or

(3) Incoming or outgoing voice, data or video,

all when caused by an event away from the covered **location** except as provided in the ON/OFF PREMISES INTERRUPTION OF SERVICES coverages of this Policy. But, if the lack of such a service causes physical loss or damage of the type insured by this Policy at a covered **location**, then only that resulting damage is covered.

3. **We** do not cover the following, but, if direct physical loss or damage not excluded by this Policy results, then **we** cover that resulting damage only:

   a. Faulty workmanship, material, construction or design.

   b. Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

   c. Deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

   d. Settling, cracking, shrinking, bulging, or expansion of:

      (1) Foundations (including any pedestal, pad, platform or other property supporting machinery)

      (2) Floors

      (3) Pavements

      (4) Walls, including retaining walls

      (5) Ceilings

      (6) Roofs

   e. Extremes or changes in temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

   f. Cumulative effects of smog, smoke, vapor, liquid and dust.

   g. Insect, animal or vermin damage.

   h. Loss or damage to the interior portion of buildings under construction caused by rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

4. **We** do not cover the following unless directly resulting from a **covered loss**:

   a. **Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy.

   b. Shrinkage.

   **c.** Changes in color, flavor, texture or finish.

   **d.** Remediation, change, correction, repair or assessment of any date or time recognition in any **electronic data processing equipment** or media.

   **e.** Failure of **electronic data processing equipment** or media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times.

**D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS

   **We** provide the following PROPERTY DAMAGE COVERAGES AND LIMITATIONS for a **covered loss** as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

   **1.** ACCOUNTS RECEIVABLE

   **a.** **We** cover the following resulting from a **covered loss** to accounts receivable records located while anywhere within the Policy territory, including while in transit:

      **(1)** Any shortage in the collection of accounts receivable.

      **(2)** The interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum. Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable.

      **(3)** The reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

      **(4)** Any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

   **b.** Accounts receivable records include records stored as **electronic data.** In the event of loss, **you** will:

      **(1)** Use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

      **(2)** Reduce the loss by use of any property or service owned or controlled by **you** or obtainable from other sources.

      **(3)** Reconstruct, if possible, accounts receivable records so that no shortage is sustained.

   **c.** The settlement of loss will be made within ninety (90) days from the date of the **covered loss.** All amounts recovered by **you** on outstanding accounts receivable on the date of loss will belong and be paid to **us** up to the amount of loss paid by **us.** All recoveries exceeding the amount paid will belong to **you**.

   **d.** **We** do not cover shortage resulting from:

      **(1)** Bookkeeping, accounting or billing errors or omissions; or
      **(2)** Alteration, falsification, manipulation; or

      **(3)** Concealment, destruction or disposal, of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

   **2.** BRANDS AND LABELS

In the event of a **covered loss** to **your** branded or labeled merchandise, and **we** elect to take all or any part of that property, **you** may at **our** expense:

**a.** Stamp "salvage" on the property or its containers; or

**b.** Remove or obliterate the brands or labels,

if doing so will not damage the property.

**You** must re-label such property or its containers to be in compliance with any applicable law.

**3.** CONTROL OF DAMAGED GOODS

**We** grant control to **you** of physically damaged **covered property** consisting of finished goods manufactured by or for **you** as follows:

**a.** **You** will have full rights to the possession and control of damaged property in the event of physical damage to **your covered property** provided proper testing is done to show which property is physically damaged.

**b.** Using reasonable judgment, **you** will decide if the physically damaged **covered property** can be reprocessed or sold.

**c.** Property **you** determine to be unfit for reprocessing or selling will not be sold or disposed of except by **you**, or with **your** consent.

Any salvage proceeds received will reduce the recoverable loss.

**4.** COURSE OF CONSTRUCTION

**a.** **We** cover direct physical loss or damage at a covered **location** to buildings or structures that **you** begin to construct during the Policy period.

**b.** **We** also cover materials, supplies, machinery, equipment and fixtures:

**(1)** At a covered **location** and intended for installation in the new construction;

**(2)** After such property has been delivered to **you** or **your** contractor, and while such property is located offsite at a storage **location**; or

**(3)** After such property has been delivered to **you** or **your** contractor, and while such property is in transit from a storage **location** to another storage **location** or to a covered **location.**

**c.** This coverage only applies to the construction of **covered property you** intend to own or occupy once constructed.

**d.** This coverage does not apply to any property owned or rented by any contractor or subcontractor.

**5.** DATA, PROGRAMS OR SOFTWARE

**a.** **We** cover direct physical loss or damage to **your electronic data**, computer programs or software, including direct physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's territory, including:

**(1)** The cost of the following reasonable and necessary actions taken by **you** provided such actions are taken due to actual insured physical loss or damage to **electronic data**, computer programs or software:

   **(a)** Actions to temporarily protect and preserve insured **electronic data**, computer programs or software.

   **(b)** Actions taken for the temporary repair of insured physical loss or damage to **electronic data**, computer programs or software.

   **(c)** Actions taken to expedite the permanent repair or replacement of such damaged property.

   **(2) Your** reasonable and necessary cost to temporarily protect or preserve covered **electronic data**, computer programs or software against immediately impending direct physical loss or damage to **electronic data**, computer programs or software.   In the event that there is no direct physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such direct physical loss or damage.

   **b.** With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the *qualifying period* specified in the *Qualifying Period* Table in the Declarations is exceeded.

   **c.** Any amounts recoverable under this PROPERTY DAMAGE COVERAGE AND LIMITATION are excluded from coverage elsewhere in this Policy.

   **d.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes loss or damage to **electronic data**, computer programs or software when they are stock in process, finished stock manufactured by **you**, raw materials, supplies or other merchandise not manufactured by **you**.

   **e.** With respect to this PROPERTY DAMAGE COVERAGE AND LIMITATION, the following additional exclusions apply:

   **(1)** Errors or omissions in processing or copying; and

   **(2)** Loss or damage to **electronic data**, computer programs or software from errors or omissions in programming or machine instructions.

**6.** DEBRIS REMOVAL

   **a.** **We** cover **your** reasonable and necessary costs to remove debris from a covered **location** that remains as a direct result of a **covered loss**.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION covers the costs of removal of contaminated **covered property** or the **contaminant** in or on **covered property** only if the **contamination**, due to the actual presence of **contaminant(s),** results from a **covered loss**.

   **c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover the costs of removal of:

   **(1)** Contaminated uninsured property; or

   **(2)** The **contaminant** in or on uninsured property,

   whether or not the **contamination** results from a **covered loss**.

**7.** DECONTAMINATION COSTS

   **a.** **We** cover **your** decontamination costs directly resulting from a **covered loss** at a covered **location** subject to the following conditions:

   **(1)** These decontamination costs must be a direct result of enforcement of the law or ordinance that

is in force at the time of the loss regulating decontamination; and

   **(2)** The amount **we** cover includes the increased cost to remove **your** contaminated **covered property** to comply with the law or ordinance.

**b.** **We** do not cover costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** resulted from a **covered loss**.

**8.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS

   **a.** **We** cover the cost to defend that part of any suit against **you** alleging direct physical loss or damage of the type insured by this Policy to personal property of others of the type insured by this Policy, in **your** custody, and while at a covered **location**. **We** may without prejudice undertake any investigation, negotiation or settlement of any such claim or suit as **we** deem appropriate.

   **b.** **We** do not cover the cost to defend any suit against **you** when **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

**9.** DEFERRED PAYMENTS

   **a.** **We** cover direct physical loss or damage to **personal property** of the type insured by this Policy sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property. In the event of loss to property sold under deferred payment plans, **you** will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

   **b.** **We** do not cover loss:

   **(1)** Pertaining to products recalled including **your** costs to recall, test or to advertise such recall.

   **(2)** From theft or conversion by the buyer of the property after the buyer has taken possession of such property.

   **(3)** To the extent the buyer continues payments.

   **(4)** Not within this Policy's territory.

**10.** DEMOLITION AND INCREASED COST OF CONSTRUCTION

   **a.** **We** cover **your** reasonable and necessary costs that are described in Item **b.** below, actually incurred to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of **covered property** consisting of buildings, structures, machinery and equipment at a covered **location**, provided:

   **(1)** Such law or ordinance is in force on the date of the **covered loss**;

   **(2)** Its enforcement is a direct result of a **covered loss**; and

   **(3)** The buildings, structures, machinery and equipment were in compliance with such law or ordinance, regardless of any lack of enforcement, prior to the **covered loss**.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION, as respects the property insured in Item **a.** above, covers:

   **(1)** The cost incurred to demolish, repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

**(2)** The cost incurred:

    **(a)** To demolish the physically undamaged portion of such property insured; and

    **(b)** To rebuild it with materials and in a manner to satisfy such law or ordinance,

    when the demolition of the physically undamaged portion of such property is required to satisfy such law or ordinance, as a result of a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes any costs incurred as a result of the enforcement of any law or ordinance regulating pollution.

**d.** The amount **we** cover for this PROPERTY DAMAGE COVERAGE AND LIMITATION at each covered **location** in any one (1) **occurrence** will not exceed the actual cost incurred in demolishing the physically damaged and undamaged portions of the property covered in item **a**. above plus:

    **(1)** If rebuilt on the same site, the actual cost incurred in rebuilding there; or

    **(2)** If rebuilt on another site, the lesser of:

        **(a)** The actual cost incurred in rebuilding on the other site, excluding the cost of land; or

        **(b)** The cost that would have been incurred to rebuild on the same site.

## 11. ERRORS AND OMISSIONS

**a.** If direct physical loss or damage is not covered under this Policy solely because of an error or unintentional omission made by **you**:

    **(1)** In the description of where **covered property** is physically located; or

    **(2)** To include any **location**:

        **(a)** Owned, rented or leased by **you** on the effective date of this Policy; or

        **(b)** Purchased, rented or leased by **you** during the term of the Policy; or

    **(3)** That results in termination of the coverage provided by this Policy, except for cancellation due to nonpayment of premium,

**we** cover the amount **we** would have paid, including any TIME ELEMENT loss, had the error or omission not been made.

**b.** This coverage does not apply to the failure to report values, or the reporting of inaccurate values of **covered property**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply if coverage is provided elsewhere in this Policy.

**d.** **You** must report such errors or unintentional omissions to **us** in writing as soon as they are discovered.

## 12. EXPEDITING EXPENSE

**a.** **We** cover **your** reasonable and necessary costs:

    **(1)** For the temporary repair of **covered property** from a **covered loss**; and

**(2)** To expedite the permanent repair or replacement of such damaged property.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

**13.** FINE ARTS

**a.** **We** cover direct physical loss or damage to **your fine arts** while anywhere within this Policy's territory, including while in transit.

**b.** The following additional exclusions apply:

**We** do not cover:

**(1)** Loss or damage sustained from any repair, restoration, or retouching process;

**(2)** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, *EARTH MOVEMENT*, *FLOOD*, explosion, vandalism, collision, derailment or overturn of conveyance.

**14.** FIRE DEPARTMENT SERVICE CHARGES

**We** cover the reasonable and necessary:

**a.** Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the **covered property**.

**b.** Costs incurred by **you** to restore and recharge fire protection systems following a **covered loss.**

**15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL

**a.** For uninsured property at a covered **location** consisting of land, water, or any other substance in or on land or water at a covered **location**, **we** cover **your** reasonable and necessary cost for the cleanup, removal and disposal of the actual presence of **contaminant(s)** from that property if the release, discharge or dispersal of such **contaminant(s)** is a result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

**(1)** At any **location** insured for **personal property** only;

**(2)** At any **location**, or to any property, covered under the NEWLY ACQUIRED **LOCATIONS** or ERRORS AND OMISSIONS coverages provided by this Policy or at a **Miscellaneous Unnamed Location**; or

**(3)** If **you** fail to give **us** written notice within one hundred eighty (180) days after the loss.

**16.** MISCELLANEOUS **PERSONAL PROPERTY**

**a.** **We** cover direct physical loss or damage, that occurs away from a covered **location** but within the Policy's territory, to **personal property** of the type covered under this Policy, which is:

**(1)** Owned by **you**; or

**(2)** Owned by others and in **your** care, custody and control, but only to the extent **you** are obligated to insure it for direct physical loss or damage under the type of coverage provided under this Policy.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes coverage that is provided

elsewhere in this Policy.

## 17. NEWLY ACQUIRED **LOCATIONS**

**a.** **We** cover physical loss or damage to property of the type insured from a loss of the type insured at any **location you** purchase, lease or rent after the inception date of this Policy.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION applies:

**(1)** From the date of purchase, lease or rental;

**(2)** Until the first of the following occurs:

**(a)** The **location** is bound by **us**;

**(b)** Agreement is reached that the **location** will not be insured under this Policy; or

**(c)** The time limit specified in the LIMITS OF LIABILITY Table in the Declarations has been reached. The time limit begins on the date of purchase, lease or rental.

## 18. OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE

**a.** **We** cover physical loss or damage to **covered property** at a covered **location** when such physical loss or damage results from:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

by reason of a loss of the type insured by this Policy at the facilities of the supplier of such service located within this Policy's territory, that immediately prevents in whole or in part the delivery of such usable service.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the interruption exceeds the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** For purposes of this PROPERTY DAMAGE COVERAGE AND LIMITATION, the *period of service interruption* is the period starting with the time when an interruption of specified services occurs; and ending when the service could be wholly restored.

**d.** Additional General Provisions:

**(1)** **You** will immediately notify the suppliers of services of any interruption of any such services.

**(2)** **We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

**e.** **We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**f.** Exclusion **C.3.e.** does not apply to this PROPERTY DAMAGE COVERAGE AND LIMITATION.

## 19. PROFESSIONAL FEES

   **a.** **We** cover **your** reasonable costs for **your** employees or auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

   **b.** Professional fees covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION, however, do not include:

      **(1)** Any fees or expenses of attorneys;

      **(2)** Any fees or expenses of public adjusters, loss appraisers or any of their subsidiaries or associated entities;

      **(3)** Fees based on a contingency; or

      **(4)** Fees of loss consultants who provide consultation on coverage or negotiate claims.

   **c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible that applies to the loss.

**20.** PROTECTION AND PRESERVATION OF PROPERTY

   **a.** **We** cover **your** reasonable and necessary costs to temporarily protect or preserve **covered property** provided such actions are necessary due to actual, or to prevent immediately impending threat of, physical loss or damage of the type covered by this Policy to such **covered property**.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the physical loss or damage happened.

**21.** RADIOACTIVE CONTAMINATION

   **a.** **We** cover radioactive **contamination** to property of the type insured by this Policy from a **covered loss**.

     Radioactive **contamination** is:

      **(1)** Sudden and accidental radioactive **contamination**; or

      **(2)** Resultant radiation damage to **covered property**,

     provided that such radioactive **contamination** arises out of radioactive material at a covered **location** and is used as part of **your** business activities.

   **b.** **We** do not cover radioactive **contamination** if:

      **(1)** The covered **location** contains:

         **(a)** A nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or

         **(b)** Any new or used nuclear fuel intended for or used in such a nuclear reactor.

      **(2)** The **contamination** arises from radioactive material located away from a covered **location**.

**22.** TAX LIABILITY

   **We** cover **your** increase in tax liability from a **covered loss** at a covered **location** if the tax treatment of:

   **a.** The profit portion of a loss payment involving finished stock manufactured by **you**; and/or

   **b.** The profit portion of a TIME ELEMENT loss payment;

is greater than the tax treatment of profits that would have been incurred had no loss happened.

**23.** TEMPORARY REMOVAL OF PROPERTY

   **a.** When **covered property** is removed from a covered **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, **we** cover such property:

   **(1)** While at the premises to which such **covered property** has been moved; and

   **(2)** For direct physical loss or damage of the type insured by this Policy at the covered **location** from which such **covered property** was removed.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

   **(1)** To **covered property** removed for normal storage, processing or preparation for sale or delivery; or

   **(2)** If coverage is provided elsewhere in this Policy or by any other insurance policy.

**24.** TRANSIT

   **a.** **We** cover **personal property** not excluded elsewhere in this Policy while it is in transit within the Policy's territory:

   **(1)** Owned by **you**.

   **(2)** Shipped to customers under Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. **Your** contingent interest is admitted.

   **(3)** Of others in **your** actual or constructive custody to the extent of **your** interest or legal liability.

   **(4)** Of others sold by **you** and **you** agreed prior to the loss to insure the **personal property** during course of delivery including:

   **(a)** When shipped by **your** contract service provider or by **your** contract manufacturer to **you** or to **your** customer; or

   **(b)** When shipped by **your** customer to **you** or to **your** contract service provider or to **your** contract manufacturer.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION starts from the time the property leaves the original point of shipment for transit, and continues while in the due course of transit until delivered, subject to the following conditions:

   **(1)** Coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

   **(2)** If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

   **c.** **We** also cover:

   **(1)** General average and salvage charges on shipments covered while waterborne; and

   **(2)** Direct physical loss or damage caused by or resulting from:

    **(a)** Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

    **(b)** Improper parties having gained possession of property through fraud or deceit.

**d.** Additional General Provisions:

    **(1)** This PROPERTY DAMAGE COVERAGE AND LIMITATION will not inure directly or indirectly to the benefit of any carrier or bailee.

    **(2) You** have permission, without prejudicing this insurance, to accept:

        **(a)** Ordinary bills of lading used by carriers;

        **(b)** Released bills of lading;

        **(c)** Undervalued bills of lading; and

        **(d)** Shipping or messenger receipts.

    **(3) You** may waive subrogation against railroads under side track agreements.

    **(4)** Except as otherwise stated, **you** will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

**e.** As respects this PROPERTY DAMAGE COVERAGE AND LIMITATION:

    **(1)** The following additional exclusions apply:

    This Policy excludes:

    **(a)** Samples in the custody of salespeople or selling agents.

    **(b)** Property insured under import or export ocean marine insurance.

    **(c)** Waterborne shipments, unless:

        **(i)** By inland water; or

        **(ii)** By roll-on/roll-off ferries; or

        **(iii)** By coastal shipments.

    **(d)** Airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

    **(e)** Property of others, including **your** legal liability for it, hauled on vehicles owned, leased or operated by **you** when acting as a common or contract carrier.

    **(f)** Any transporting vehicle

    **(g)** Property shipped between continents except by land or air within the Policy territory.

**f.** **We** will value property covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION as follows:

**(1)** Property shipped to or for **your** account will be valued at actual invoice to **you**. Included in the value are accrued costs and charges legally due. Charges may include **your** commission as selling agent.

**(2)** Property sold by **you** and shipped to or for the purchaser's account will be valued at **your** selling invoice amount. Prepaid or advanced freight costs are included.

**(3)** Property not under invoice will be valued:

    **(a)** For **your** property, according to the valuation provisions of this Policy applying at the place from which the property is being transported; or

    **(b)** For other property, at the **actual cash value** at the destination point on the date of loss, less any charges saved which would have become due and payable upon arrival at destination.

## 25. VALUABLE PAPERS AND RECORDS

**a.** **We** cover physical loss or damage to **your valuable papers and records** from a **covered loss** at a covered **location**. **We** cover the value blank, plus the cost of copying from backup or from originals of a previous generation, and **your** reasonable and necessary costs to research, replace or restore the information lost or damaged thereon, except for **electronic data** and software. For **electronic data** and software, **we** cover the value of the blank media, and the cost of reproducing the **electronic data** and software from duplicates or originals of the previous generation of the data.

**b.** This coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

 © 2016 Liberty Mutual Insurance

# SECTION III – TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS:

**A.** Is subject to and part of the applicable LIMIT OF LIABILITY that applies to **your** direct physical loss or damage but in no event for more than any LIMIT OF LIABILITY that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGES AND LIMITATIONS; and

**B.** Will not increase the POLICY LIMIT OF LIABILITY and is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

## A. LOSS INSURED

1. **We** cover **your** actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy:

   **a.** To property described elsewhere in this Policy and not otherwise excluded by this Policy,

   **b.** Used by **you**, or by others with whom **you** have a contract,

   **c.** At a covered **location** or while in transit as provided by this Policy,

   **d.** During the applicable PERIOD OF LIABILITY described in this section.

2. **We** cover TIME ELEMENT loss only to the extent it cannot be reduced through:

   **a.** The use of any property or service owned or controlled by **you**;

   **b.** The use of any property or service obtainable from other sources;

   **c.** Working extra time or overtime; or

   **d.** The use of inventory,

   all whether at a covered **location** or at any other **location**. When measuring the actual loss sustained, the combined operating results of all of **your** associated, affiliated or subsidiary companies will be considered in determining the TIME ELEMENT loss.

3. **We** cover **your** reasonable and necessary expenses to reduce the loss otherwise payable under this section of this Policy. The amount of those recoverable expenses will not exceed the amount by which the insured loss has been reduced.

4. In determining the insured TIME ELEMENT loss, **we** will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. **We** will consider any increase or decrease in demand for **your** goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused the **covered loss**.

## B. TIME ELEMENT COVERAGES

1. *GROSS EARNINGS*

   **a.** *GROSS EARNINGS* loss is the actual loss sustained by **you** due to the necessary interruption of **your** business during the PERIOD OF LIABILITY of the following:

Gross Earnings less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services, plus all other earnings derived from the operation of the business.

**Ordinary payroll,** including taxes and charges dependent on the payment of wages, for a period of time not to exceed the number of consecutive days as specified in the LIMITS OF LIABILITY in the Declarations table immediately following the interruption of production or suspension of business operations or services, and only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

However, if **you** reduce the daily loss payable under **ordinary payroll**, either by:

> **(1)** providing gainful employment for, or
>
> **(2)** paying less than the normal salary rate to,

all or part of its employees, then the number of consecutive days of **ordinary payroll** may be extended. However, this provision will not increase **our** total liability beyond the amount **we** would have been liable for **ordinary payroll** costs without this provision.

**Ordinary payroll** does not cover any portion of salaries or wages included in Gross Earnings.

**b.** *GROSS EARNINGS* will be calculated as follows:

> **(1)** For manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or
>
> **(2)** For mercantile or non-manufacturing operations: the total net sales less the cost of merchandise sold, materials and supplies consumed in the operations or services rendered by **you**.

Any amount payable at selling price will be considered to have been sold to **your** regular customers and will be credited against net sales.

**c.** In determining the amount **we** cover as the actual loss sustained, **we** will consider the continuation of only those charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

**d.** If **you** would have operated at a deficit had no interruption of production or suspension of business operations or services occurred, the following applies:

> **(1)** For Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.
>
> **(2)** For **ordinary payroll**, the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

**e.** We cover TIME ELEMENT loss only to the extent that **you** are:

> **(1)** Wholly or partially prevented from producing goods or continuing business operations or services;
>
> **(2)** Unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;
>
> **(3)** Unable to continue **your** operations or services during the PERIOD OF LIABILITY; and

    **(4)** Able to demonstrate a loss of sales for the operations, services or production prevented.

**2.** EXTRA EXPENSE

  **a.** **We** cover **your** reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable:

    **(1)** To temporarily continue as nearly normal as practicable the conduct of **your** business; and

    **(2)** The temporary use of property or facilities of **yours** or others.

  **b.** **We** will reduce any recoverable loss under this coverage for any value remaining of any property used to temporarily continue **your** business.

  **c.** EXTRA EXPENSE does not include:

    **(1)** Any loss of income.

    **(2)** Costs that would have been incurred in conducting the business during the same period had no physical loss or damage happened.

    **(3)** Costs of permanent repair or replacement of property that has been damaged or destroyed.

    **(4)** Any expense recoverable elsewhere in this Policy.

**3.** LEASEHOLD INTEREST

  **a.** **We** cover the following:

    **(1)** If the lease agreement requires continuation of rent as a result of a **covered loss**, and if the **covered property** is wholly or partially untenantable or unusable, the actual rent payable while the **covered property** is untenantable or until the lease is terminated, but not exceeding the unexpired term of the lease.

    **(2)** If the **covered property** is partially untenantable, **we** cover the proportion of the lease payment for that portion of the untenantable **covered property**.

  **b.** If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law, **we** cover the additional cost to rent similar space for the unexpired term of the lease for the damaged property. That loss will be computed at present value, compounded annually at the prime rate plus 2%, as published in the Wall Street Journal on the date the lease terminated. The additional cost will consider the excess rent paid for the same or similar replacement property over actual rent of the original lease, plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the lease.

  **c.** As respects LEASEHOLD INTEREST, the following applies:

    **(1)** **We** do not cover loss directly resulting from physical loss or damage to **personal property**.

    **(2)** TIME ELEMENT EXCLUSIONS **D.1.**, **D.2.** and **D.3.** do not apply and the following applies instead:

      **We** do not cover any increase in loss resulting from the suspension, lapse or cancellation of any license, or from **you** exercising an option to cancel the lease; or from any act or omission by **you** that constitutes a default under the lease.

**4.** RENTAL INSURANCE

**a. We** cover **your** actual loss sustained of rental income during the PERIOD OF LIABILITY for:

**(1)** The fair rental value of any portion of rental property occupied by **you**;

**(2)** The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

**(3)** The rental income from the rented portions of such property according to written leases, contracts or agreements in force at the time of loss,

all not to include non-continuing charges and expenses.

**b.** RENTAL INSURANCE Exclusions: As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS **D.1.** does not apply and the following applies instead:

**We** do not cover any loss of rental income during any period in which the covered **location** would not have been tenantable for any reason other than a **covered loss**.

**C.** PERIOD OF LIABILITY

**1.** The PERIOD OF LIABILITY applying to CONTINGENT TIME ELEMENT, *GROSS EARNINGS*, EXTRA EXPENSE and RENTAL INSURANCE is as follows:

**a.** For building and equipment, the period:

**(1)** Starting from the time of physical loss or damage of the type insured; and

**(2)** Ending when with due diligence and dispatch the building and equipment could be:

**(a)** Repaired or replaced; and

**(b)** Made ready for operations,

under the same or equivalent physical and operating conditions that existed prior to the damage.

**(3)** Not to be limited by the expiration of this Policy.

**b.** For building(s) and equipment covered under COURSE OF CONSTRUCTION:

**(1)** The equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

**(2)** Due consideration will be given to the actual experience of the business after completion of the construction and startup.

**2.** The PERIOD OF LIABILITY for *GROSS EARNINGS* and EXTRA EXPENSE also includes the following:

**a.** For stock-in-process and mercantile stock, including finished goods not manufactured by **you**, the time required with the exercise of due diligence and dispatch:

**(1)** To restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

**(2)** To replace physically damaged mercantile stock.

**b.** For raw materials and supplies, the period of time:

    **(1)** Of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

    **(2)** Limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

**c.** Impounded Water:

    **(1)** Used for any manufacturing purpose, including as a raw material or for power;

    **(2)** Stored behind dams or in reservoirs; and

    **(3)** On any covered **location**,

    that is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, **our** liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond the number of consecutive days, not to exceed the LIMIT OF LIABILITY specified in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced.

**d.** For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

**e.** For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

**3.** The PERIOD OF LIABILITY applying to *GROSS PROFIT* is as follows:

    **a.** The period starting from the time of physical loss or damage of the type insured and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

    **b.** For property under construction, the period starting on the date that production, business operation or service would have commenced if physical damage of the type insured had not happened and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations, during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

    The *Rate of Gross Profit* and *Standard Sales* will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

**4.** The PERIOD OF LIABILITY does not include any additional time due to **your** inability to resume operations for any reason, including:

    **a.** Making changes to equipment;

    **b.** Making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION clause in the PROPERTY DAMAGE section; and

    **c.** Re-staffing or retraining employees.

    If two or more PERIODS OF LIABILITY apply, such periods will not be cumulative.

**D.** TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

1. Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

   **a.** Physical loss or damage not insured by this Policy on or off of the covered **location**.

   **b.** Planned or rescheduled shutdown.

   **c.** Strikes or other work stoppage.

   **d.** Any reason other than physical loss or damage insured under this Policy.

2. Any increase in loss due to:

   **a.** Suspension, cancellation or lapse of any lease, contract, license or orders.

   **b.** Damages for breach of contract or for late or noncompletion of orders.

   **c.** Fines or penalties.

   **d.** Any other consequential or remote loss.

3. Any loss resulting from physical loss or damage to finished goods manufactured by **you**, or the time required for their reproduction.

**E.** TIME ELEMENT COVERAGES AND LIMITATIONS

TIME ELEMENT COVERAGES are extended to include the following, subject to all Policy terms, conditions and exclusions, and the time, distance and/or dollar amounts specified in the LIMITS OF LIABILITY Table in the Declarations:

1. *ATTRACTION PROPERTY*

   **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by this Policy to property of the type insured at an *attraction property* within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of time that:

      **(1)** Starts at the time such physical loss or damage happens;

      **(2)** Ends when the *attraction property* is:

         **(a)** Repaired or replaced; and

         **(b)** Made ready for operations.

   **b.** As used in this TIME ELEMENT COVERAGE AND LIMITATION, the term *attraction property* is a property that:

      **(1)** Is operated by others; and

      **(2)** **You** depend on to attract customers to **your** covered **location.**

2. CIVIL OR MILITARY AUTHORITY

   **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the *period of interruption* if an order of civil or military authority prohibits access to a covered **location** provided such order is caused by

physical loss or damage of the type insured by this Policy at a covered **location** or within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION does not apply to LEASEHOLD INTEREST.

**c.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time:

**(1)** Starting at the time of such direct physical loss or damage; and

**(2)** Continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

This period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

**3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from the failure of **your electronic data processing equipment** or media to operate, provided that such failure is the direct result of a malicious act directed at **you**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the *period of interruption* is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** As used above, the *period of interruption:*

**(1)** Is the period starting when **your electronic data processing equipment** or media fails to operate and ending when with due diligence and dispatch, **your electronic data processing equipment** or media could be restored to the same or equivalent operating condition that existed prior to the failure.

**(2)** Does not include the additional time to make changes to **your electronic data processing equipment** or media.

**4.** CONTINGENT TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at *Direct Dependent Time Element* **Location(s)** and *Indirect Dependent Time Element* **Location(s)** located within the territory of this Policy.

**b.** **You** agree to take every reasonable and necessary action to mitigate the loss payable hereunder.

 © 2016 Liberty Mutual Insurance

**c.** As used in this Policy, *Direct Dependent Time Element* **Location(s)** are:

**(1)** Any **location(s)** of a direct: customer, supplier, contract manufacturer or contract service provider to **you**; or

**(2)** Any **location(s)** of any company under a royalty, licensing fee or commission agreement with **you.**

*Direct Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from **you**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**d.** As used in this Policy, *Indirect Dependent Time Element* **Location(s)** are:

**(1)** Any **location(s)** of any company that is a direct: customer, supplier, contract manufacturer or contract service provider to **your** *Direct Dependent Time Element* **Location(s)**.

*Indirect Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from, the *Direct Dependent Time Element* **Location(s)** or the *Indirect Dependent Time Element* **Location(s)**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**e.** As respects CONTINGENT TIME ELEMENT:

**(1)** Exclusion **D.3** in the TIME ELEMENT EXCLUSIONS does not apply.

**5.** CRISIS MANAGEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY if an order of civil or military authority prohibits access to a covered **location**, but only if such order is a direct result of a violent crime, suicide, attempted suicide or armed robbery at such covered **location**.

**b.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, coverage applies:

**(1)** Only when the PERIOD OF LIABILITY is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations; and

**(2)** For up to the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations, not to exceed the specified LIMIT OF LIABILITY.

The PERIOD OF LIABILITY is the period of time when the time the civil or military authority prohibits access and continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

**6.** DELAY IN STARTUP

**We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations resulting directly from physical loss or damage to **covered property** as provided under COURSE OF CONSTRUCTION.

**7.** EXTENDED PERIOD OF LIABILITY

**a.** We cover the *GROSS EARNINGS* loss sustained due to the reduction in sales resulting from:

**(1)** The interruption of business;

**(2)** Commencing with the date on which our liability for loss resulting from interruption of business would terminate if this TIME ELEMENT COVERAGE AND LIMITATION had not been included in this Policy; and

**(3)** Continuing for such additional length of time as would be required with the exercise of due diligence and dispatch to restore **your** business to the condition that would have existed had no loss occurred, but no longer than the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** Coverage under this TIME ELEMENT COVERAGE AND LIMITATION for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the EXTENDED PERIOD OF LIABILITY described in Item **7.a.** above.

**c.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, Item **D.2.** in the TIME ELEMENT EXCLUSIONS in this section does not apply and the following applies instead:

   This Policy does not insure against any increase in loss due to damages for breach of contract or for late or non-completion of orders, or fines or penalties.

**8.** INGRESS / EGRESS

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE due to the necessary interruption of **your** business if ingress to or egress from a covered **location** is prevented, whether or not **your** premises or property is damaged, provided that such prevention is a direct result of physical loss or damage of the type insured to property of the type insured.

**b.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time starting at the time of such direct physical loss or damage, and continuing until ingress or egress is no longer prevented, or for the time limit specified in the LIMITS OF LIABILITY Table in the Declarations, whichever is less.

**9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the period of service interruption at a covered **location** when the loss is caused by:

   **(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

   **(2)** The interruption of outgoing sewerage service,

   from physical loss or damage of the type insured, at the facilities of the supplier of such service located within this Policy's territory that immediately prevents in whole or in part the delivery of such usable services.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the period of service interruption as described below is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** The period of service interruption is:

   **(1)** The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could have resumed normal operations following the restoration of service under the same or equivalent physical and operating conditions that existed prior to the interruption of such services;

   **(2)** Is limited to only those hours during which **you** could have used service(s) if it had been available;

   **(3)** Does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

**d.** Additional General Provisions:

**(1) You** will immediately notify the suppliers of services of any interruption of any such services.

**(2) We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

**e. We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**10.** ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a. We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from direct physical loss or damage of the type insured to the following property located at or within one-thousand (1,000) feet of a covered **location**:

**(1)** Electrical equipment and equipment used for the transmission of voice, data or video.

**(2)** Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission systems.

**11.** PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT

**a. We** cover **your** actual loss sustained for a period of time not to exceed forty eight (48) hours prior to and forty eight (48) hours after **you** first took reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage of the type insured to such **covered property**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the direct physical loss or damage occurred.

**12.** RELATED **LOCATIONS**

If **you** report values at related **locations** used by **you** (e.g. branch stores, retail outlets and other facilities), but such related **locations** are not listed on the latest Schedule of Covered **Locations** submitted to, accepted by and on file with **us**, and if a TIME ELEMENT loss results at such related **locations** due to **covered loss**, **we** cover such resulting TIME ELEMENT loss in accordance with the terms and conditions of this Policy.

**13.** RESEARCH AND DEVELOPMENT

**a. We** cover **your** actual loss sustained of fixed charges and **ordinary payroll** directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a **covered loss**.

**b. We** cover these fixed charges only to the extent they continue after the **covered loss** and only during the PERIOD OF LIABILITY.

**c.** To the extent **you** are able to resume operations, **we** cover only that portion of the fixed charges related to that part of the research and development operation that has not yet been restored.

**14.** SOFT COSTS

**a. We** cover **your** actual loss sustained of *Soft Costs* during the *period of delay* directly resulting from a delay of completion of **covered property** under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS.

**b.** *Soft Costs* are costs over and above those that are normal at a covered **location** undergoing renovation or in the course of construction, limited to the following:

    **(1)** Construction loan fees – **your** additional cost to rearrange loans necessary for the completion of construction, repairs or reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

    **(2)** Commitment fees, leasing and marketing expenses – the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

    **(3)** Additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction repairs or reconstruction.

    **(4)** Property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**c.** *Period of delay* is the period of time between:

    **(1)** The date on which the construction, alteration, extension or renovation would have been complete in the absence of a **covered loss** to property under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS; and

    **(2)** The date on which construction, alteration, extension or renovation is actually complete.

## SECTION IV – DESCRIBED LOSSES

**We** only cover the following DESCRIBED LOSSES as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

**A.** *EARTH MOVEMENT*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *EARTH MOVEMENT*.

2. **Y o u** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

3. *EARTH MOVEMENT* is:

   Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption; regardless of any other cause or event contributing concurrently or in any other sequence of loss.

   However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE

1. **We** cover physical loss or damage to **covered property,** including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, resulting from sprinkler leakage caused by *EARTH MOVEMENT*.

**C.** *EQUIPMENT BREAKDOWN*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS, as provided by this Policy if such loss or damage is caused by an *accident* to *covered equipment*.

   The coverage provided in this DESCRIBED LOSS is limited to loss or damage caused by an *accident* to *covered equipment*. **We** will not pay for physical loss or damage from any other cause under this DESCRIBED LOSS.

   The following coverages apply solely to Equipment Breakdown:

   **a.** Spoilage Damage

   **We** cover physical loss or damage caused by change in temperature or humidity or by the interruption of power, heat, air-conditioning, or refrigeration as the result of an *accident* to *covered equipment*.

   **b.** Ammonia **Contamination**

   **We** cover physical loss or damage to **covered property** contaminated by ammonia, including any salvage expense as a direct result of an *accident* to *covered equipment*. No coverage for Ammonia **Contamination** is available under DECONTAMINATION COSTS with respects to an *accident* to *covered equipment*.

**2.** Conditions

**a.** Suspension

If coverage for Equipment Breakdown is provided by this Policy, and **we** discover a dangerous condition relating to an object, **we** may immediately suspend the insurance provided by this coverage for that *covered equipment* by written notice mailed or delivered to **you** either at **your** address or at the **location** of any object. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this Policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

**3.** Valuation

If *covered equipment* requires replacement due to an *accident*, **we** cover **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

**a.** However, **we** do not cover more than 150% of what the cost would have been to repair or replace *covered equipment* with like kind and quality.

**b.** This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable LIMIT OF LIABILITY.

**c.** The PERIOD OF LIABILITY will not be increased by any of the above.

**4.** Definitions

**a.** *Accident*: Physical loss or damage to *covered equipment* that necessitates its repair or replacement due to:

(1) Failure of pressure or vacuum equipment;

(2) Mechanical breakdown including rupture or bursting caused by centrifugal force;

(3) Artificially generated electrical current, including electrical arcing that damages electrical devices, appliances or wires; or

(4) Explosion of:

(a) Steam boiler

(b) Electric steam generator

(c) Steam piping

(d) Steam turbine

(e) Moving or rotating machinery when such explosion is caused by centrifugal force,

unless such loss or damage is otherwise excluded within this Policy.

*Accident* does not include:

(5) Fire, including water or other means used to extinguish the fire;

(6) Malfunction, misalignment, miscalibration, tripping off line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning or by the performance of maintenance;

**(7)** Combustion explosion;

**(8)** Discharge of molten material from equipment including the heat from such discharged materials;

**(9)** Lightning;

**(10)** Depletion, deterioration, rust, corrosion, erosion, settling, or wear or tear or any other gradually developing condition;

**(11)** Defects, erasures, error limitations or viruses in computer equipment and programs including the inability to recognize and process any date or time or provide instructions to *covered equipment*;

**(12)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(13)** Damage to any structure or foundation supporting the *covered equipment* or any of its parts;

**(14)** Any loss or damage caused by or resulting from any type of electrical insulation breakdown test;

**(15)** Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test;

**(16)** The functioning of any safety or protective device; or

**(17)** The cracking of any part on an internal combustion turbine exposed to the products of combustion.

**b.** *Covered equipment*:

   **(1)** Equipment that generates, transmits, controls or utilizes energy; including electronic communications and data processing equipment; and

   **(2)** Equipment which, during normal usage, operates under vacuum or pressure, other than weight of contents.

*Covered equipment* does not mean or include:

   **(3) Electronic data**;

   **(4)** Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

   **(5)** Insulating or refractory material;

   **(6)** Nonmetallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or other appropriate and approved code;

   **(7)** Catalyst;

   **(8)** Buried vessels or piping; waste, drainage or sewer piping; piping, valves or fittings forming part of a sprinkler or fire suppression system; water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

   **(9)** Structure, foundation, cabinet or compartment supporting or containing the *covered equipment* or part of the *covered equipment* including penstock, draft tube or well casing;

   **(10)** Vehicle or any *covered equipment* that is mounted on or used solely with a vehicle;

**(11)** Dragline, excavation or construction equipment including any *covered equipment* that is mounted on or used solely with any one or more dragline(s), excavation or construction equipment;

**(12)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, nonelectrical cable, chain, belt, rope, clutch plate, brake pad, nonmetal part or tool subject to periodic replacement;

**(13)** Cyclotron used for other than medical purposes, satellite or spacecraft including any *covered equipment* mounted on or used solely with any satellite or spacecraft;

**(14)** Equipment manufactured by **you** for sale.

**c.** *Production machinery* is any machine or apparatus that processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in process or finished products including any *covered equipment* that is mounted on or used solely with any one or more production machines or apparatus.

## D. *FLOOD*

**1. We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *FLOOD*.

**2.** *FLOOD* is:

**a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

**b.** Sewer back-up resulting from any of the foregoing; or

**c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.

**Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

## E. *NAMED STORM*

**1. We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from a *NAMED STORM*. However, physical loss or damage caused by fire, explosion, sprinkler leakage or *FLOOD* will not be considered loss by *NAMED STORM* within the terms and conditions of this Policy.

**2. You** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

*NAMED STORM* is any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any authorized meteorological authority in the country where the storm or weather disturbance happened.

# SECTION V - GENERAL POLICY CONDITIONS

## A. ASSIGNMENT

**Your** assignment of this Policy will not be valid except with **our** written consent.

## B. CANCELLATION

1. **You** may cancel this Policy by mailing or delivering to **us** advance written notice of cancellation.

2. **We** may cancel this Policy by mailing or delivering to **you** written notice of cancellation at least:

   a. ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   b. thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason.

3. **We** will mail or deliver **our** written notice of cancellation to **your** last mailing address known to **us**.

4. **Our** written notice of cancellation will state the effective date of cancellation and the Policy period will end on that date.

5. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void, if with the actual intent to deceive

1. **You**;

2. **Your** representatives; or

3. Any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning:

   a. This Policy;

   b. The **covered property**;

   c. **Your** interest in the **covered property**; or

   d. A claim under this Policy.

 © 2016 Liberty Mutual Insurance

**D.** CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by **us** shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for covered **locations** within such jurisdictions.

**E.** INSPECTION

1. During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards.

2. This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

1. When specified in the Policy or in Certificates of Insurance on file with **us**, **we** cover loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear.

2. The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

   **a.** Any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

   **b.** Foreclosure, notice of sale, or similar proceedings with respect to the property, but only to the extent of a deficiency as provided by state law.

   **c.** Change in the title or ownership of the property.

   **d.** Change to a more hazardous occupancy.

   The Lender or Mortgagee will notify **us** of any known change in ownership, occupancy, or hazard and, within ten (10) days of **our** written request, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

3. If this Policy is cancelled at **your** request or by the request of **your** agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after **we** send to the Lender or Mortgagee written notice of cancellation, unless:

   **a.** Sooner terminated by authorization, consent, approval, acceptance, or ratification of **your** action by the Lender or Mortgagee, or its agent.

   **b.** This Policy is replaced by **you**, with a Policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement Policy, notwithstanding any other provision of this Policy.

 © 2016 Liberty Mutual Insurance

**4.** **We** may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, **we** may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

**5.** If **we** pay the Lender or Mortgagee for any loss, and deny payment to the debtor, mortgagor or owner, **we** will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At **our** option, **we** may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to **us**, and the remaining debt or mortgage will be paid to **us**.

**6.** If **you** fail to render proof of loss, the Lender or Mortgagee, upon notice of **your** failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, COMPANY OPTION, and SUIT AGAINST THE COMPANY.

**7.** In the event of a claim, upon request by **us**, the Lender or Mortgagee will cooperate in any claim investigation.

**8.** In no event will the amount payable to a Lender or Mortgagee exceed the amount which would otherwise have been payable to **you.**

## G. LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute in any State or jurisdiction within the United States of America so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to **your** benefit within such jurisdiction, effective the date of the change specified in such statute.

## H. NO REDUCTION BY LOSS

Except for those coverages written with an **annual aggregate** LIMIT OF LIABILITY, **we** cover a **covered loss** without reducing any other applicable LIMIT OF LIABILITY. The reinstatement of any exhausted **annual aggregate** is not permitted unless authorized by **us** in writing.

## I. NONRENEWAL

**1.** If **we** decide not to renew this Policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this Policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

**2.** Proof of mailing will be sufficient evidence of notice.

## J. OTHER INSURANCE

**1.** **We** will not be liable if, at the time of loss or damage, there is any other insurance that would apply in the absence of this Policy; except that this Policy will apply only as excess or DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS and in no event as contributing insurance, and then only after all other insurance has been exhausted, notwithstanding paragraph **5.** below.

**2.** **We** will not be liable if, at the time of loss or damage, there is any insurance with the National Flood Insurance Program (NFIP), except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

3. **We** will not be liable if, at the time of loss or damage, there is any insurance for the construction of new buildings and additions under a specific policy for the construction of such new buildings and additions, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

4. **We** will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

5. If this Policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable LIMIT OF LIABILITY. **Our** share will be the proportion that the applicable LIMIT OF LIABILITY of this Policy bears to the total applicable LIMITS OF LIABILITY available from all insurance.

6. **You** are permitted to have other insurance over any LIMITS OF LIABILITY specified in this Policy.

7. The existence of such insurance will not reduce any LIMIT OF LIABILITY in this Policy.

8. To the extent this Policy replaces another Policy, coverage under this Policy shall not become effective until such other Policy has terminated.

9. **You** are permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only as excess and only after such other insurance has been exhausted.

## K. PAIR, SET OR PARTS

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1. The cost to repair or replace any part to restore the pair or set to its value before the loss; or

2. The difference between the value of the pair or set before and after the loss.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

## L. POLICY MODIFICATION

This Policy contains all of the agreements between **you** and **us** concerning this insurance. **You** and **we** may request changes to this Policy. Only endorsements issued by **us** and made a part of this Policy can change this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent **us** from asserting any rights under the Policy.

## M. TITLES

The titles of the paragraphs of this Policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

## N. TRANSFER OF RIGHTS AND DUTIES

**Your** rights and duties under this Policy may not be transferred without us giving written consent.

## O. VACANCY

1. If any of **your real property** is vacant at the inception of this Policy, or becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the Policy period, **you** must:

   a. Notify **us** in writing of the vacancy prior to loss or damage; and

   b. Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include:

      (1) Automatic sprinkler systems;
      (2) Fire alarm systems;
      (3) Guard or watchman services;
      (4) Burglary systems; and
      (5) Monitoring systems.

2. If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this Policy, **we** will:

   a. Not pay for any loss or damage caused by or resulting from any of the following:

      (1) Breakage of building glass;
      (2) Mold, mildew or fungus;
      (3) Sprinkler leakage, unless the system has been protected against freezing;
      (4) Theft or attempted theft;
      (5) Vandalism;
      (6) Malicious mischief; or
      (7) Water damage.

   b. Not pay under DEMOLITION AND INCREASED COST OF CONSTRUCTION;

   c. Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the lesser of:

      (1) The **actual cash value**;
      (2) The actual cost to repair; or
      (3) The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

3. **Real property** is considered vacant when it does not contain sufficient property and personnel to conduct **your** customary business operations.

4. **Real property** is not considered vacant during its ongoing construction or renovation.

## P. VALUATION

1. Adjustment of the physical loss or damage amount under this Policy will be computed as of the date of loss or damage at the place of the loss or damage. Unless stated otherwise in a PROPERTY DAMAGE COVERAGE AND LIMITATION, adjustment of physical loss or damage to **covered property** will be subject to the following:

   a. On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

   b. On finished goods manufactured by **you**, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no physical loss or damage happened.

   c. On raw materials, supplies or merchandise not manufactured by **you**:

(1) If repaired or replaced, **your** actual expenditure in repairing or replacing the damaged or destroyed property; or

(2) If not repaired or replaced, the **actual cash value**.

**d.** On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

**e.** On property that is:

(1) Damaged by fire that directly results from **terrorism** or nuclear reaction; and

(2) Is located in a jurisdiction that has a statute that expressly prohibits the exclusion of fire losses resulting from **terrorism** or nuclear reaction,

the **actual cash value** of the fire damage. Any remaining fire damage not attributable to **terrorism** or nuclear reaction shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy.

**f.** On computer equipment of others which **you** are required to insure for direct physical loss or damage while being installed, maintained or repaired, the cost to replace with new if so specified in the contract between **you** and **your** customer.

**g.** On Data, Programs and Software, the actual cost incurred to repair, replace or restore data, programs or software including the costs to recreate and research.

**h.** On **Fine Arts**, the loss amount will not exceed the lesser of the following:

(1) The cost to repair or restore such property to the physical condition that existed on the date of loss;

(2) The cost to replace; or

(3) The stated value on file with **us**.

**i.** On all other property, the lesser of the following:

(1) The cost to repair.

(2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

(3) The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

(4) The selling price of **real property** or machinery and equipment, other than stock, offered for sale on the date of loss.

(5) The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

(6) The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

    **(7)** The unamortized value of improvements and betterments, if such property is not repaired or replaced at **your** expense.

    **(8)** The **actual cash value** if such property is:

        **(a)** Useless to **you**; or

        **(b)** Not repaired, replaced or rebuilt on the same or another site within two (2) years from the date of loss, unless such time is extended by **us**.

**2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

**3.** **We** will not pay more than **your** financial interest in the **covered property**.

 © 2016 Liberty Mutual Insurance

# SECTION VI – LOSS CONDITIONS

## A. ABANDONMENT OF PROPERTY

**You** may not abandon property to **us**.

## B. APPRAISAL

1. If **you** and **we** fail to agree on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** occurred, to select an umpire.

3. The appraisers will then determine the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will determine the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

## C. COLLECTION FROM OTHERS

**We** will reduce any payment to **you** for a **covered loss** to the extent **you** have collected for that loss from others.

## D. COMPANY OPTION

1. In the event of **covered loss**, **we** may, at **our** option, either:

   a. Pay the value of **covered property** lost, damaged or destroyed as set forth in VALUATION above;

   b. Pay the cost of repairing or replacing the **covered property** lost, damaged or destroyed;

   c. Take all or any part of the **covered property** at any agreed valuation; or

   d. Repair, rebuild or replace the **covered property** with other property of like kind and quality.

2. **We** will give notice of **our** intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

## E. DUTIES AFTER A LOSS

In case of loss **you** will:

1. Give **us** immediate written notice of the loss;

2. Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

3. As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

4. Take all reasonable steps to protect the **covered property** from further damage;

5. Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

6. Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the Policy;

7. Keep an accurate record of all repair costs;

8. Keep all bills, receipts and related documents that establish the amount of loss;

9. As often as may reasonably be required:

   a. Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

   b. Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

   c. Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

   The time and cause of the loss;

   a. **Your** interest and the interest of all others in the property involved;

   b. Any other policies of insurance that may provide coverage for the loss;

   c. Any changes in title or occupancy of the property during the Policy period; and

   d. The amount of **your** claimed loss.

   **You** shall also submit with the Proof of Loss:

   (1) A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

   (2) An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

   (3) Specifications for any damaged building; and

   (4) Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

## F. LOSS ADJUSTMENT / PAYABLE

Loss will be adjusted with the First Named Insured. **We** may, at **our** option, adjust the loss to property of others directly with the owner of the property. Such loss will be payable to the First Named Insured or as may be directed by the First Named Insured.

 © 2016 Liberty Mutual Insurance

Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee either on a Certificate of Insurance or other evidence of insurance on file with **us**. When named on a Certificate of Insurance or other evidence of insurance, such additional interests are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance. The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

## G. PAYMENT OF LOSS

**We** will pay the insured loss within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

1. **You** have complied with all the terms of this Policy;

2. **We** have reached agreement with **you** on the amount of the loss, or

3. Within thirty (30) days of when an appraisal award is made as provided for in LOSS CONDITIONS **B.** APPRAISAL.

## H. SUBROGATION

1. If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

2. **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

## I. SUIT AGAINST THE COMPANY

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years next after the inception of the loss.

# SECTION VII – DEFINITIONS

1. **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, with proper deduction for physical depreciation and obsolescence, but in no event more than the fair market value.

2. **Annual aggregate**: The maximum amount of loss or damage payable in any one (1) Policy year regardless of the number of **occurrences** within the same Policy year.

3. **Contaminant**: Any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

4. **Contamination**: Any condition of property that results from a **contaminant**.

5. **Covered loss**: A loss to **covered property** caused by direct physical loss or damage insured by this Policy.

6. **Covered property**: Property insured by this Policy.

7. **Electronic Data**: Information (including computer programs) stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, drives, **electronic data processing equipment** or any storage medium**.**

8. **Electronic data processing equipment:** Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether **your** property or not.

9. **Fine Arts**: Property of rarity, historical value, antiquity or artistic merit, including paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains

10. **Land improvements**: Landscape gardening, car parks, parking lots, pavement, roadways, sidewalks, walkways, railways or transformer enclosures; but does not include fill beneath such property, including buildings, structures or additions.

11. **Location(s)**:

   a. As specified in Appendix A – Schedule of Covered **Location(s)**;

   b. Listed on a SCHEDULE on file with **us;** or

   c. If not so specified in Appendix A – Schedule of Covered **Location(s)** or listed on a SCHEDULE on file with **us**, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

12. **Miscellaneous Unnamed Location**: A **location** owned, leased or rented by **you**, but not listed in a Schedule of **locations** on file with **us** or attached to this Policy.

   **Miscellaneous Unnamed Location** does not include:

   a. Newly Acquired **Locations**; or

   b. A **location** for which coverage is found elsewhere in this Policy including ERRORS AND OMISSIONS.

13. **Occurrence**: All loss or damage attributable directly or indirectly to one (1) cause or series of similar

causes. All such loss or damage will be added together and the total loss or damage will be treated as one (1) **occurrence.**

Unless otherwise amended by an endorsement attached to this Policy:

  **a.** All loss or damage resulting from a continuous *FLOOD* event, irrespective of the amount of time or area over which such loss or damage occurs, will be considered a single **occurrence**.

  **b.** All loss or damage from *EARTH MOVEMENT* or *NAMED STORM* within the time specified in the **OCCURRENCE** TIME SPECIFICATIONS will be considered a single **occurrence**.

**14. Ordinary payroll**: Payroll expenses for all of **your** employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums **you** pay.

**15. Personal Property**: **Your** tangible things, other than **real property** owned by **you** and used in **your** business, including:

  **a.** Furniture, fixtures, machinery**, electronic data processing equipment** and stock;

  **b.** Materials, supplies, machinery, equipment and fixtures, including those that are *personal property of others*, which are intended by **you** for use in construction of new additions and buildings at an existing covered **location**, that **you** begin to construct during the Policy period and intend to own or occupy once constructed**,** while located on the construction site awaiting use in construction.

  **c.** Property, other than **real property**, **you** lease for use in **your** business that **you** have a responsibility to insure;

  **d.** **Your** interest in improvements and betterments **you** have made in buildings **you** do not own;

  **e.** **Your valuable papers and records**.

**16. Real Property**: Building(s) and any other structure, including:

  **a.** New buildings and additions under construction, in which **you** have an insurable interest;

  **b.** Completed additions, extensions or permanent fixtures;

  **c.** Machinery and equipment used to service the buildings;

  **d.** Yard Fixtures.

**17. Terrorism**: Activities against persons, organizations or property of any nature:

  **a.** That involve the following or preparation for the following:

  **(1)** Use or threat of force or violence; or

  **(2)** Commission or threat of a dangerous act; or

  **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

  **b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**18. Valuable papers and records**: Written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

**19. We, us** and **our(s)**: The company issuing this Policy, as shown on the Declarations.

**20. You** and **your(s)**: The First Named Insured shown on the Declarations.

## APPENDIX A - SCHEDULE OF COVERED LOCATIONS

Per schedule on file with us

## APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES

| STATE | ZONE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|---|
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Green, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St. Francis, White, Woodruff |
| ARKANSAS | 2 | Arkansas, Fulton, Izard, Lonoke, Prairie, Sharp, |
| ILLINOIS | 1 | Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, Washington, Williamson |
| ILLINOIS | 2 | Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Jasper, Lawrence, Madison, Marion, Monroe, Richland, Saint Clair, Wabash, Wayne, White |
| INDIANA | 2 | Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick |
| KENTUCKY | 1 | Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, McCracken, |
| KENTUCKY | 2 | Caldwell, Christian, Daviess, Henderson, Hopkins, McLean, Muhlenberg, Todd, Trigg, Union, Webster |
| MISSISSIPPI | 1 | DeSoto, Marshall, Tate, Tunica |
| MISSISSIPPI | 2 | Alcorn, Benton, Coahoma, Lafayette, Panola, Quitman, Tippah |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Madison, Mississippi, New Madrid, Pemiscott, Perry, Ripley, Scott, Stoddard, Wayne |
| MISSOURI | 2 | Independent City of St. Louis, Iron, Jefferson, Oregon, Reynolds, Shannon, St. Francois, St. Louis, Ste. Genevieve, Washington |
| TENNESSEE | 1 | Benton, Carroll, Chester, Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Henderson, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, Weakley |
| TENNESSEE | 2 | Decatur, Hardin, Houston, Humphreys, McNairy, Montgomery, Perry, Stewart, |

 © 2016 Liberty Mutual Insurance

## APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE

| REGION / STATE | COUNTIES / COORDINATES |
|---|---|
| CANADA: BRITISH COLUMBIA and VANCOUVER ISLAND | South of 50° N latitude and west of 120° W longitude |
| OREGON | Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill |
| WASHINGTON | Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom |

 © 2016 Liberty Mutual Insurance

## APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

SOUTHERN TIER ONE: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|-------------------------------------------|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantly, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Pierce, Wayne |
| Louisiana | Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Tyrrell, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |

## APPENDIX D (continued)

### NAMED STORM TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

#### NORTHERN TIER ONE: VIRGINIA TO MAINE

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------------------------------------------|
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Sussex |
| Maine | Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington, York |
| Maryland | Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Rockingham |
| New Jersey | Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk |
| Rhode Island | Bristol, Newport, Washington |
| Virginia | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York |
| | Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg |

#### SOUTHERN TIER TWO: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------------------------------------------|
| Alabama | Clarke, Coffee, Conecuh, Covington, Dale, Escambia, Geneva, Houston, Monroe, Washington |
| Louisiana | Allen, Avoyelles, Beauregard, Evangeline, St. Helena, St. Landry, West Feliciana |
| Mississippi | Forrest, Greene, Jones, Lamar, Marion, Perry, Pike, Walthall, Wayne |
| North Carolina | Cumberland, Edgecombe, Greene, Johnston, Robeson, Sampson, Wilson |
| South Carolina | Bamberg, Calhoun, Clarendon, Dillon, Florence, Hampton, Marion, Orangeburg |
| Texas | Austin, Brazos, Colorado, De Witt, Duval, Fayette, Gonzales, Grimes, Jim Hogg, Karnes, Lavaca, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Walker, Waller, Washington |

## APPENDIX D (continued)

### NAMED STORM TIERS FOR USA INCLUDING
### ITS COMMONWEALTHS AND TERRITORIES

| Other States, Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | TIER | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| HAWAII | 1 | Entire State |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

 © 2016 Liberty Mutual Insurance

## APPENDIX E - *FLOOD* HAZARD **LOCATIONS**

High Hazard **Location(s)**
NCP

Moderate Hazard **Location(s)**
NCP

## FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this Policy at time of issue:

| Form or Endorsement Number | Form or Endorsement Name |
|---|---|
| CNP 90 06 01 20 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| CNP 90 10 01 19 | Important Notice Regarding The Expiration of the Terrorism Risk Insurance Act and the Reduction in Coverage for Terrorism Losses |
| CNI 90 11 07 18 | Reporting a Commercial Claim 24 Hours a Day |
| SNI 04 01 01 20 | Liberty Mutual Group California Privacy Notice |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism |

## STATE AMENDATORY ENDORSEMENTS

| Endorsement Number | Endorsement Name |
| --- | --- |
| PY 01 37 01 17 | Washington Changes |
| PY 02 49 01 17 | Washington Changes - Cancellation and Nonrenewal |

Policy Number YAC-L9L-450425-020
Issued by     Employers Insurance Company of Wausau

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### **EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

**We** will not pay for loss or damage directly or indirectly caused by or resulting from a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence.

**C.** Exception Covering Certain Fire Losses

The following exception to the exclusion in Paragraph **B.** applies only in the following states: California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, U.S. Virgin Islands, Washington, West Virginia, and Wisconsin.

If a "certified act of terrorism" results in fire, **we** will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to **covered property**. Therefore, for example, the coverage does not apply to insurance provided under TIME ELEMENT.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.** Application Of Exclusions

The terms and limitations of SECTION **II.C.** EXCLUSIONS, **2.a.** do not serve to create coverage for any loss which would otherwise be excluded under this endorsement or the Policy, such as losses excluded under SECTION **II.C.** EXCLUSIONS, **2. b., c., d.,** or **e.**

**PY 04 04 01 17**            © 2016 Liberty Mutual Insurance            Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  YAC-L9L-450425-020
Issued by      Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## WASHINGTON CHANGES

This endorsement applies only to **covered property** located in Washington and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™
EXCLUSION OF CERTIFIED ACTS OF TERRORISM

A. Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

**H.** JURISDICTION

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

B. The first paragraph of item **2.** of SECTION II – PROPERTY DAMAGE, **C.** EXCLUSIONS is replaced with the following:

**We** do not cover any of the excluded events listed below.  Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

C. Paragraph **i.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is replaced by the following:

i. Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

(1) By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

(2) By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

This exclusion will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Paragraph **3.** of SECTION IV – DESCRIBED LOSSES, **A.** EARTH MOVEMENT is replaced by the following:

  **3.** *EARTH MOVEMENT* is:

  Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

  However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**E.** Paragraph **2.** of SECTION IV – DESCRIBED LOSSES, **D.** FLOOD is replaced by the following:

  **2.** *FLOOD* is:

  **a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

  **b.** Sewer back-up resulting from any of the foregoing; or

  **c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

  that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

  **Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

**F.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

  **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

  This entire Policy is void if **you** intentionally conceal or misrepresent any material fact or circumstance relating to it.

  However, this will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**G.** Paragraph **E.** INSPECTION of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

    **E.** INSPECTION

        **1.** During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards. **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

        **2.** This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**H.** Paragraph **F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS of SECTION V - GENERAL POLICY CONDITIONS is deleted and replaced by endorsement PY 03 21 Washington Lender's Loss Payable Endorsement as required by the Washington Insurance Commissioner.

**I.** Paragraph **5.** of SECTION V - GENERAL POLICY CONDITIONS, OTHER INSURANCE is replaced by the following:

    **5.** **You** may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If **you** do, **we** will pay **our** share of the **covered loss** or damage. **Our** share is the proportion that the applicable LIMIT OF LIABILITY under this Policy bears to the limits of liability of all insurance covering on the same basis.

**J.** Paragraph **2.** of SECTION V - GENERAL POLICY CONDITIONS, VALUATION is replaced by the following:

    **2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or *replacement cost* basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

    *Replacement cost* means the cost to replace **covered property**:

        **a.** With new materials of like kind and quality and used for the same purpose; and

        **b.** At the location where the loss happened.

    But *replacement cost* excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**K.** Paragraph **2.** of  SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is replaced by the following:

    **2.** **We** will be entitled to a recovery only after **you** have been fully compensated for damages.

**L.** Paragraph **1.** of  SECTION VII – DEFINITIONS is replaced by the following:

    **1.** **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, but in no event more than the fair market value.

© 2016 Liberty Mutual Insurance<br>Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**M.** Paragraph **B.** of endorsement PY 04 04 EXCLUSION OF CERTIFIED ACTS OF TERRORISM is replaced by the following:

   **B.** The following exclusion is added:

   CERTIFIED ACT OF TERRORISM EXCLUSION

   **We** will not pay for loss or damage caused by or resulting from a "certified act of terrorism". Loss or damage will be considered to have been caused by or resulting from a "certified act of terrorism" if the **occurrence** of that "certified act of terrorism" directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number YAC-L9L-450425-020
Issued by Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WASHINGTON CHANGES – CANCELLATION AND NONRENEWAL**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **B.** CANCELLATION of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

**B.** CANCELLATION

1. **You** may cancel this Policy by notifying **us** or **your** insurance agent or broker in one of the following ways:

   **a.** Written notice by mail, fax or e-mail;

   **b.** Surrender of the Policy or binder; or

   **c.** Verbal notice.

   Upon receipt of such notice, **we** will cancel this Policy or any binder issued as evidence of coverage, effective on the later of the following:

   **a.** The date on which notice is received or the Policy or binder is surrendered; or

   **b.** The date of cancellation requested by **you**.

2. **We** may cancel this Policy by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to **us**, at least:

   **a.** Ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   **b.** Forty-five (45) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason;

   except as provided in Paragraph **3.** below.

3. **We** may cancel the Policy, by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation at least five (5) days before the effective date of cancellation for any **real property** where two or more of the following conditions exist:

   **a.** Without reasonable explanation, the **real property** is unoccupied for more than sixty (60) consecutive days, or at least 65% of the rental units are unoccupied for more than one hundred twenty (120) consecutive days, unless the **real property** is maintained for seasonal occupancy or is under construction or repair;

   **b.** Without reasonable explanation, progress toward completion of permanent repairs to the **real property** has not occurred within sixty (60) days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

**PY 02 49 01 17**
© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Page 1 of 2

    **c.** Because of its physical condition, the **real property** is in danger of collapse;

    **d.** Because of its physical condition, a vacation or demolition order has been issued for the **real property**, or it has been declared unsafe in accordance with applicable law;

    **e.** Fixed and salvageable items have been removed from the **real property**, indicating an intent to vacate the **real property**;

    **f.** Without reasonable explanation, heat, water, sewer and electricity are not furnished for the **real property** for sixty (60) consecutive days; or

    **g.** The **real property** is not maintained in substantial compliance with fire, safety and building codes.

**4.** **We** will also mail or deliver to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to **you**. If cancellation is for a reason contained in Paragraph **A.3.** above, **we** will mail or deliver this notice at least twenty (20) days prior to the effective date of cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

**6.** If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if **we** have not made or offered a refund.

**7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The NONRENEWAL provision of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

NONRENEWAL

**We** may decide not to renew this Policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to **you** and **your** insurance agent or broker at their last mailing addresses known to **us**. If notice is mailed, proof of mailing will be sufficient evidence of notice. **We** will also mail to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of nonrenewal. **We** will mail or deliver these notices at least sixty (60) days before the:

**1.** Expiration of the Policy; or

**2.** Anniversary date of this Policy if this Policy has been written for a term of more than one (1) year.

If notice of nonrenewal is not received by **you** as outlined above, **you** and **your** insurance agent or broker will receive written notice of **our** intent to renew this Policy. This notice will be sent at least twenty (20) days prior to the Policy expiration or anniversary date. Included in this notice will be changes, if any, in rates, terms, or conditions made to the expiring Policy. **We** will mail or deliver the notice to **you** and **your** insurance agent or broker, at their last mailing address known to **us**.

This notice will not be sent if **we** have received written notice, prior to the expiration date of this Policy, of **your** intent to obtain replacement coverage elsewhere or that **you** have already done so.

Endorsement number 1 for policy number YAC-L9L-450425-020

Named Insured Board of Regents of the University of Washington Husky Stadium

This endorsement is effective 03/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Change Endorsement

DESCRIPTION OF CHANGE

PREMIUM

REMOVAL OF VACANCY CONDITION, Form PY 04 10 01 17 is added per the attached.

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

IC9999

Policy Number  YAC-L9L-450425-020
Issued by  Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### REMOVAL OF VACANCY CONDITION

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The VACANCY condition of SECTION V – GENERAL POLICY CONDITIONS does not apply to the **location(s)** shown in the Schedule of this endorsement.

Schedule

| Location(s) |
| --- |
| As per SOV on file with Company |

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance

Endorsement number 1 for policy number YAC-L9L-450425-020

Named Insured Board of Regents of the University of Washington Husky Stadium

This endorsement is effective 03/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Change Endorsement

DESCRIPTION OF CHANGE                                                                                          PREMIUM

REMOVAL OF VACANCY CONDITION, Form PY 04 10 01 17 is added per the attached.

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Policy Number   YAC-L9L-450425-020
Issued by         Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### REMOVAL OF VACANCY CONDITION

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The VACANCY condition of SECTION V – GENERAL POLICY CONDITIONS does not apply to the **location(s)** shown in the Schedule of this endorsement.

Schedule

| Location(s) |
|---|
| As per SOV on file with Company |

All other terms and conditions remain unchanged.

               © 2016 Liberty Mutual Insurance

Endorsement number 2 for policy number YAC-L9L-450425-020

Named Insured The Board of Regents of the University of Washington and any subsidiary, associated or allied company, corporation, firm, organization, and the Board of Regents of the University of Washington's interest in any partnership or joint venture in which the Board of Regents of the University of Washington has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear.

This endorsement is effective 03/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Change Endorsement

#### DESCRIPTION OF CHANGE                                                                                                    PREMIUM

POLICY COVER PAGE, Form PY 00 00 01 17 is amended as follows:

The Named Insured on the Policy Cover Page is changed to: The Board of Regents of the University of Washington and any subsidiary, associated or allied company, corporation, firm, organization, and the Board of Regents of the University of Washington's interest in any partnership or joint venture in which the Board of Regents of the University of Washington has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear.

Formerly: Board of Regents of the University of Washington Husky Stadium

SECTION I - DECLARATIONS, Form PY 00 01 02 17 is amended as follows:

The First Named Insured on the Declarations is changed to: The Board of Regents of the University of Washington and any subsidiary, associated or allied company, corporation, firm, organization, and the Board of Regents of the University of Washington's interest in any partnership or joint venture in which the Board of Regents of the University of Washington has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear.

Formerly: Board of Regents of the University of Washington Husky Stadium

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Endorsement number 2 for policy number YAC-L9L-450425-020

Named Insured The Board of Regents of the University of Washington and any subsidiary, associated or allied company, corporation, firm, organization, and the Board of Regents of the University of Washington's interest in any partnership or joint venture in which the Board of Regents of the University of Washington has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear.

This endorsement is effective 03/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## **Change Endorsement**

### DESCRIPTION OF CHANGE

PREMIUM

POLICY COVER PAGE, Form PY 00 00 01 17 is amended as follows:

The Named Insured on the Policy Cover Page is changed to: The Board of Regents of the University of Washington and any subsidiary, associated or allied company, corporation, firm, organization, and the Board of Regents of the University of Washington's interest in any partnership or joint venture in which the Board of Regents of the University of Washington has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear.

Formerly: Board of Regents of the University of Washington Husky Stadium

SECTION I - DECLARATIONS, Form PY 00 01 02 17 is amended as follows:

The First Named Insured on the Declarations is changed to: The Board of Regents of the University of Washington and any subsidiary, associated or allied company, corporation, firm, organization, and the Board of Regents of the University of Washington's interest in any partnership or joint venture in which the Board of Regents of the University of Washington has management control or ownership as now constituted or hereafter is acquired, as the respective interest of each may appear.

Formerly: Board of Regents of the University of Washington Husky Stadium

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Issued: 10/20/2020

IC9999
10-11

Page 1 of 1

Exhibit 5

# PARKER, SMITH & FEEK
## Vacancy Clause

This policy contains a vacancy clause, coverage will be reduced or eliminated in the event the building is vacant in excess of 60 days.

Please call us if you anticipate this situation.

Thank you

**Toll Free: 800-457-0220**

**Bellevue: 425-709-3600**
**Anchorage: 907-562-2225**
**Portland: 503-416-6870**
**Fax: 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**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**A.** Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, **we** are required to provide **you** with a notice disclosing the portion of **your** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of **your** premium attributable to such coverage is shown in D. PREMIUM in the Declarations.

**B.** Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. Beginning in calendar year 2020, the federal share equals 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.** Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© 2020 Liberty Mutual Insurance

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**IMPORTANT NOTICE REGARDING THE EXPIRATION OF THE TERRORISM RISK INSURANCE ACT AND THE REDUCTION IN COVERAGE FOR TERRORISM LOSSES**

**PLEASE READ THIS NOTICE CAREFULLY**

This is to notify **you** of a change in coverage for terrorism losses under **your** Premier Property Protector insurance policy when the Terrorism Risk Insurance Act ("TRIA") expires, which is scheduled to occur on December 31, 2020.

TRIA, as amended, is a temporary program that spreads losses from government "certified" acts of terrorism between insurers and the federal government. In summary, TRIA requires insurers to make coverage for "certified acts of terrorism" available, and to pay losses from "certified acts of terrorism" up to a deductible amount. If an individual insurer's losses exceed this amount, the government will reimburse the insurer a certain percentage (81% in 2019 and 80% in 2020) of losses paid in excess of the deductible.

Policyholders have the option to accept or reject this coverage.

TRIA will expire on December 31, 2020, unless Congress and the President act to extend it. Otherwise, after 2020, the federal government will no longer "certify" acts of terrorism or reimburse losses caused by "certified acts of terrorism."

**If you purchase coverage** for "certified acts of terrorism," and TRIA expires on or after December 31, 2020, **your insurance coverage will be reduced**. After the date TRIA expires, where permitted by state law\*, **your** policy will exclude coverage for losses from acts of terrorism.

**If you elect not to purchase** coverage for "certified acts of terrorism," and TRIA expires on or after December 31, 2020, losses caused by terrorist acts will continue to be excluded from **your** policy, where and as permitted by state law\*.

The terrorism exclusion in **your** policy is not a complete exclusion.  While the exclusion applies to terrorism events directly or indirectly involving nuclear or radioactive agents or materials, or pathogenic or poisonous biological or chemical agents or materials, it does not apply to so-called "conventional" acts of terrorism until the total event wide insured property damage (including business income) is in excess of $25,000,000.  Please refer to Section II – PROPERTY DAMAGE, **C.** EXCLUSIONS, **2.a.**to review the exclusion and subsection **(6)** to understand the coverage available.

\* Exclusion **2.a.** does not apply to locations in New York.

 © 2019 Liberty Mutual Insurance

**CNI 90 11 07 18**

## REPORTING A COMMERCIAL CLAIM 24 HOURS A DAY

**Liberty Mutual Insurance claims professionals across the United States are ready to resolve your claim quickly and fairly, so you and your team can focus on your business. Our claims teams are specialized, experienced and dedicated to a high standard of service.**

### We're Just a Call Away — One Phone Number to Report All Commercial Insurance Claims

Reporting a new claim has never been easier. A Liberty Mutual customer service representative is available to you 24/7 at **800-362-0000** for reporting new property, auto, liability and workers' compensation claims. With contact centers strategically located throughout the country for continuity and accessibility, we're there when we're needed!

### Additional Resource for Workers' Compensation Customers

In many states, employers are required by law to use state-specific workers compensation claims forms and posting notices. This type of information can be found in the Policyholders Toolkit section of our website along with other helpful resources such as:

- Direct links to state workers compensation websites where you can find state-specific claim forms
- Assistance finding local medical providers
- First Fill pharmacy forms — part of our managed care pharmacy program committed to helping injured workers recover and return to work

Our Policyholder Toolkit can be accessed at **www.libertymutualgroup.com/toolkit.**

For all claims inquiries please call us at **800-362-0000.**

**LIBERTY MUTUAL GROUP CALIFORNIA PRIVACY NOTICE**
Commercial Lines (excluding Workers' Compensation)
(Effective January 1, 2020)

Liberty Mutual Group and its affiliates, subsidiaries, and partners (collectively "Liberty Mutual" or "we", "us" and "our") provide insurance to companies and other insurers. This Privacy Notice explains how we gather, use, and share your data. This Privacy Notice applies to you if you are a **Liberty Mutual commercial line insured or are a commercial line claimant residing in California**. It does not apply to covered employees or claimants under Workers' Compensation policies. If this notice does not apply to you, go to libertymutual.com/privacy to review the applicable Liberty Mutual privacy notice.

## What Data Does Liberty Mutual Gather?

We may collect the following categories of data:

- **Identifiers**, including a real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security Number, driver's license number, or other similar identifiers;
- **Personal information described in California Civil Code § 1798.80(e)**, such as your name, signature, Social Security Number, physical characteristics or description, address, telephone number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, financial information, medical information, or health insurance information;
- **Protected classification characteristics**, including age, race, color, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, or veteran or military status;
- **Commercial information**, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories and tendencies;
- **Internet or other similar network activity**, including browsing history, search history, information on a consumer's interaction with a website, application, or advertisement;
- **Professional or employment related information**, including current or past job history or performance evaluations;
- **Inferences drawn from other personal information**, such as a profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes;
- **Risk data**, including data about your driving and/or accident history; this may include data from consumer reporting agencies, such as your motor vehicle records and loss history information, health data, or criminal convictions; and
- **Claims data**, including data about your previous and current claims, which may include data regarding your health, criminal convictions, third party reports, or other personal data.

For information about the types of personal data we have collected about California consumers in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

## How We Get the Personal Data:

| We gather your personal data **directly from you**. For example, you provide us with data when you: | We also gather your personal data **from other people**. For example: |
|---|---|
| ▪ ask about, buy insurance or file a claim | ▪ your insurance agent or broker |
| ▪ pay your policy | ▪ your employer, association or business (if you are insured through them) |
| ▪ visit our websites, call us, or visit our office | ▪ our affiliates or other insurance companies about your transactions with them |

| | |
|---|---|
| | ▪ consumer reporting agencies, Motor Vehicle Departments, and inspection services, to gather your credit history, driving record, claims history, or value and condition of your property |
| | ▪ other public directories and sources |
| | ▪ third parties, including other insurers, brokers and insurance support organizations who you have communicated with about your policy or claim, anti-fraud databases, sanctions lists, court judgments and other databases, government agencies, open electoral register or in the event of a claim, third parties including other parties to the claim witnesses, expert loss adjustors and claim handlers |
| | ▪ other third parties who take out a policy with us and are required to provide your data such as when you are named as a beneficiary or where a family member has taken out a policy which requires your personal data |

For information about how we have collected personal data in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

## How Does Liberty Mutual Use My Data?

Liberty Mutual uses your data to provide you with our products and services, and as otherwise provided in this Privacy Notice. Your data may be used to:

| Business Purpose | Data Categories |
|---|---|
| **Market, sell and provide insurance.** This includes for example:<br>▪ calculating your premium;<br>▪ determining your eligibility for a quote;<br>▪ confirming your identity and service your policy; | ▪ Identifiers<br>▪ Personal Information<br>▪ Protected Classification Characteristics<br>▪ Commercial Information<br>▪ Internet or other similar network activity<br>▪ Professional or employment related information<br>▪ Inferences drawn from other personal information<br>▪ Risk data<br>▪ Claims data |
| **Manage your claim.** This includes, for example:<br>▪ managing your claim, if any;<br>▪ conducting claims investigations;<br>▪ conducting medical examinations;<br>▪ conducting inspections, appraisals;<br>▪ providing roadside assistance;<br>▪ providing rental car replacement, or repairs; | ▪ Identifiers<br>▪ Personal Information<br>▪ Protected Classification Characteristics<br>▪ Commercial Information<br>▪ Internet or other similar network activity<br>▪ Professional or employment related information<br>▪ Inferences drawn from other personal information<br>▪ Risk data<br>▪ Claims data |
| **Day to Day Business and Insurance Operations.**<br>This includes, for example:<br>▪ creating, maintaining, customizing and securing accounts;<br>▪ supporting day-to-day business and insurance related functions;<br>▪ doing internal research for technology development;<br>▪ marketing and creating products and services;<br>▪ conducting audits related to a current contact with a consumer and other transactions; | ▪ Identifiers<br>▪ Personal Information<br>▪ Protected Classification Characteristics<br>▪ Commercial Information<br>▪ Internet or other similar network activity<br>▪ Professional or employment related information<br>▪ Inferences drawn from other personal information<br>▪ Risk data<br>▪ Claims data |

| | |
|---|---|
| • as described at or before the point of gathering personal data or with your authorization; | |
| **Security and Fraud Detection.** This includes for example:<br>• detecting security issues;<br>• protecting against fraud or illegal activity, and to comply with regulatory and law enforcement authorities;<br>• managing risk and securing our systems, assets, infrastructure and premises; roadside assistance, rental car replacement, or repairs<br>• help to ensure the safety and security of Liberty staff, assets and resources, which may include physical and virtual access controls and access rights management;<br>• supervisory controls and other monitoring and reviews, as permitted by law; and emergency and business continuity management; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Regulatory and Legal Requirements.** This includes for example:<br>• controls and access rights management;<br>• to evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of Liberty's assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal data held by Liberty is among the assets transferred;<br>• exercising and defending our legal rights and positions;<br>• to meet Liberty contract obligations;<br>• to respond to law enforcement requests and as required by applicable law, court order, or governmental regulations;<br>• as otherwise permitted by law. | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Improve Your Customer Experience and Our Products.** This includes for example:<br>• improve your customer experience, our products and service;<br>• to provide, support, personalize and develop our website, products and services;<br>• create and offer new products and services; | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Analytics to identify, understand and manage our risks and products.** This includes for example:<br>• conducting analytics to better identify, understand and manage risk and our products; | • Identifiers<br>• Personal Information<br>• Protected Classification Characteristics<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information<br>• Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
| **Customer service and technical support.** This includes for example:<br>• answer questions and provide notifications;<br>• provide customer and technical support; | • Identifiers<br>• Personal Information<br>• Commercial Information<br>• Internet or other similar network activity<br>• Professional or employment related information |

| | • Inferences drawn from other personal information<br>• Risk data<br>• Claims data |
|---|---|

## How Does Liberty Mutual Share My Data?

Liberty Mutual does not sell your personal data as defined by the California Consumer Privacy Act.

Liberty Mutual shares personal data of California consumers with the following categories of third parties:

- Liberty Mutual affiliates;
- Service Providers;
- Public entities and institutions (e.g. regulatory, quasi-regulatory, tax or other authorities, law enforcement agencies, courts, arbitrational bodies, and fraud prevention agencies);
- Professional advisors including law firms, accountants, auditors, and tax advisors;
- Insurers, re-insurers, policy holders, and claimants; and
- As permitted by law.

Liberty Mutual shares the following categories of personal data regarding California consumers to service providers for business purposes:

Identifiers
Protected Classification Characteristics;
Internet or other similar network activity;
Inferences drawn from other personal information;
Professional, employment, and education information;

Personal Data;
Commercial Information;
Claims Data;
Risk Data;

For information about how we have shared personal information in the past twelve (12) months, please go to libertymutual.com/privacy and click on the link for the California Supplemental Privacy Policy.

## What Privacy Rights Do I Have?

The California Consumer Privacy Act provides California residents with specific rights regarding personal information.  These rights are subject to certain exceptions.  Our response may be limited as permitted under law.

### Access or Deletion

You may have the right to request that Liberty Mutual disclose certain information to you about our collection and use of your personal data in the twelve (12) months preceding such request, including a copy of the personal data we have collected.  You also may have the right to request that Liberty Mutual delete personal data that Liberty Mutual collected from you, subject to certain exceptions.

Specifically, you have the right to request that we disclose the following to you, in each case for the twelve (12) month period preceding your request:

- the categories of personal data we have collected about you;
- the categories of sources from which the personal data was/is collected;
- our business or commercial purpose for collecting personal data;
- the categories of third parties with whom we share personal data;
- the specific pieces of data we have collected about you;
- the categories of personal data about you, if any, that we have disclosed for monetary or other valuable consideration, including the categories of third parties to which we have disclosed the data, by category or categories of personal data for each third party to which we disclosed the personal data; and
- the categories of personal data about you that we disclosed for a business purpose.

**You can make a request by either:**

Calling: 800-344-0197

Online: libertymutualgroup.com/privacy-policy/data-request

Mail: Attn: Privacy Office
Liberty Mutual Insurance Company
175 Berkeley St., 6th Floor
Boston, MA 02116

You may also make a verifiable consumer request on behalf of your minor child.

You or your authorized agent may only make a verifiable consumer request for access or data deletion twice within a twelve (12) month period. The verifiable consumer request must provide sufficient information that allows Liberty Mutual to reasonably verify that you are the person about whom Liberty Mutual collected personal data or an authorized representative of such person; and describe your request with sufficient detail that allows Liberty Mutual to properly understand, evaluate, and respond to it. For more information about how Liberty Mutual will verify your identity and how an authorized agent may make a request on your behalf, go to libertymutual.com/privacy and click on the California Supplemental Privacy Policy.

**Response Timing**

Liberty Mutual will respond to a verifiable consumer request within forty-five (45) days of its receipt. If more time is needed, Liberty Mutual will inform you of the reason and extension period in writing.

Any disclosures that will be provided will only cover the twelve (12) month period preceding our receipt of the verifiable consumer request. If Liberty Mutual is unable to fulfill your request, you will be provided with the reason that the request cannot be completed. For more information about how we will respond to requests, go to libertymutual.com/privacy and click on the California Supplemental Privacy Policy.

**Rights to opt in and out of data selling**

California consumers have the right to direct businesses not to sell your personal data (opt-out rights), and personal data of minors under 16 years of age will not be sold, as is their right, without theirs or their parents' opt-in consent. Liberty Mutual does not sell the personal data of consumers. For more information, go to libertymutual.com/privacy and click on the California Supplemental Privacy Policy.

**No account needed**

You do not need to create an account with Liberty Mutual to exercise your rights. Liberty Mutual will only use personal data provided in a request to review and comply with the request.

**No discrimination**

You have the right not to be discriminated against for exercising any of your CCPA rights. Unless permitted by the CCPA, exercising your rights will not cause Liberty Mutual to:

- Deny you goods or services;
- Charge you different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties;
- Provide you a different level or quality of goods or services; or
- Suggest that you may receive a different price or rate for goods or services, or a different level or quality of goods or services.

**Will Liberty Mutual Update This Privacy Notice?**

We reserve the right to makes changes to this notice at any time and for any reason.  The updated version of this policy will be effective once it is accessible.  You are responsible for reviewing this policy to stay informed of any changes or updates.

**Who Do I Contact Regarding Privacy?**

If you have any questions or comments about this Notice or the Supplemental CCPA Notice, your rights, or are requesting the Notice in an alternative format, please do not hesitate to contact Liberty Mutual at:

**Phone:**            800-344-0197

**Email:**            privacy@libertymutual.com

**Postal Address:**   Attn:  Privacy Office
                      Liberty Mutual Insurance Company
                      175 Berkeley St., 6th Floor
                      Boston, MA 02116



# PREMIER PROPERTY PROTECTOR™

POLICY COVER PAGE

| POLICY NUMBER:<br>YAC-L9L-450425-030 | DATE OF ISSUE:<br>2/26/2020 |
|---|---|
| COMPANY PROVIDING INSURANCE:<br>Employers Insurance Company of Wausau<br>( hereafter referred to as **we**, **us** or **our** ) | |

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**We** insure:

| Board of Regents of the University of Washington Athletics<br>( hereafter referred to as **you** or **your(s)** ) |
|---|

The term of this Policy is from 3/1/2020 to 3/1/2021 at 12:01 a.m., local time.  In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

PRODUCER NAME AND OFFICE

PARKER SMITH & FEEK INC
2233 112TH AVE NE,
BELLEVUE, WA  98004

Your policy is issued by a stock insurance company subsidiary of the Liberty Mutual Holding Company Inc., a Massachusetts mutual holding company. The named insured first named in the Declarations is a member of Liberty Mutual Holding Company Inc.

As a member of Liberty Mutual Holding Company Inc., the named insured first named is entitled, among other things, to vote in person or by proxy at the annual meeting or special meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is at its offices located at 175 Berkeley Street, Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning. Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02116, Attention: Corporate Secretary.

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

IN WITNESS WHEREOF, the company has caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

President                    Secretary

PY 00 00 01 17                    © 2016 Liberty Mutual Insurance                    Page 1 of 1

# TABLE OF CONTENTS

## POLICY COVER PAGE

SECTION I - DECLARATIONS ................................................................................................. 5
A. FIRST NAMED INSURED AND MAILING ADDRESS ............................................................. 5
B. POLICY PERIOD ................................................................................................................. 5
C. INSURING AGREEMENT ..................................................................................................... 5
D. PREMIUM .......................................................................................................................... 5
E. PREMIUM PAYABLE ........................................................................................................... 6
F. COVERED LOCATION(S) ................................................................................................... 7
G. TERRITORY ....................................................................................................................... 7
H. JURISDICTION ................................................................................................................... 8
I. CURRENCY ....................................................................................................................... 8
J. DEFINED WORDS .............................................................................................................. 8
K. LIMITS OF LIABILITY ......................................................................................................... 8
L. CANCELLATION TIME SPECIFICATIONS ........................................................................... 12
M. DEDUCTIBLES ................................................................................................................. 12
N. QUALIFYING PERIOD(S) .................................................................................................. 16

SECTION II – PROPERTY DAMAGE ................................................................................... 17
A. COVERED PROPERTY ..................................................................................................... 17
B. PROPERTY NOT COVERED ............................................................................................. 17
C. EXCLUSIONS .................................................................................................................. 18
D. PROPERTY DAMAGE COVERAGES AND LIMITATIONS ................................................... 22
   1. ACCOUNTS RECEIVABLE ............................................................................................ 22
   2. BRANDS AND LABELS ................................................................................................ 22
   3. CONTROL OF DAMAGED GOODS ................................................................................ 23
   4. COURSE OF CONSTRUCTION ..................................................................................... 23
   5. DATA, PROGRAMS OR SOFTWARE ............................................................................ 23
   6. DEBRIS REMOVAL ..................................................................................................... 24
   7. DECONTAMINATION COSTS ....................................................................................... 24
   8. DEFENSE FOR PERSONAL PROPERTY OF OTHERS ................................................... 25
   9. DEFERRED PAYMENTS .............................................................................................. 25
   10. DEMOLITION AND INCREASED COST OF CONSTRUCTION ......................................... 25
   11. ERRORS AND OMISSIONS ......................................................................................... 26
   12. EXPEDITING EXPENSE .............................................................................................. 26
   13. FINE ARTS ................................................................................................................ 27

| | | |
|---|---|---|
| **14.** | FIRE DEPARTMENT SERVICE CHARGES | 27 |
| **15.** | LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL | 27 |
| **16.** | MISCELLANEOUS **PERSONAL PROPERTY** | 27 |
| **17.** | NEWLY ACQUIRED **LOCATIONS** | 28 |
| **18.** | OFF PREMISES INTERRUPTION OF SERVICES -- PROPERTY DAMAGE | 28 |
| **19.** | PROFESSIONAL FEES | 28 |
| **20.** | PROTECTION AND PRESERVATION OF PROPERTY | 29 |
| **21.** | RADIOACTIVE CONTAMINATION | 29 |
| **22.** | TAX LIABILITY | 29 |
| **23.** | TEMPORARY REMOVAL OF PROPERTY | 30 |
| **24.** | TRANSIT | 30 |
| **25.** | **VALUABLE PAPERS AND RECORDS** | 32 |

**SECTION III – TIME ELEMENT** .......................................................................................... **33**

| | | |
|---|---|---|
| **A.** | LOSS INSURED | 33 |
| **B.** | TIME ELEMENT COVERAGES | 33 |
| **1.** | *GROSS EARNINGS* | 33 |
| **2.** | EXTRA EXPENSE | 35 |
| **3.** | LEASEHOLD INTEREST | 35 |
| **4.** | RENTAL INSURANCE | 35 |
| **C.** | PERIOD OF LIABILITY | 36 |
| **D.** | TIME ELEMENT EXCLUSIONS | 37 |
| **E.** | TIME ELEMENT COVERAGES AND LIMITATIONS | 38 |
| **1.** | *ATTRACTION PROPERTY* | 38 |
| **2.** | CIVIL OR MILITARY AUTHORITY | 38 |
| **3.** | COMPUTER SYSTEMS NON PHYSICAL DAMAGE | 39 |
| **4.** | CONTINGENT TIME ELEMENT | 39 |
| **5.** | CRISIS MANAGEMENT | 40 |
| **6.** | DELAY IN STARTUP | 40 |
| **7.** | EXTENDED PERIOD OF LIABILITY | 40 |
| **8.** | INGRESS / EGRESS | 41 |
| **9.** | OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | 41 |
| **10.** | ON PREMISES INTERRUPTION OF SERVICES -- TIME ELEMENT | 42 |
| **11.** | PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT | 42 |
| **12.** | RELATED **LOCATIONS** | 42 |
| **13.** | RESEARCH AND DEVELOPMENT | 42 |
| **14.** | SOFT COSTS | 42 |

**SECTION IV – DESCRIBED LOSSES** .................................................................................. **44**

**A.** *EARTH MOVEMENT*............................................................................................................ 44

**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE..................................................................... 44

**C.** *EQUIPMENT BREAKDOWN*........................................................................................... 44

**D.** *FLOOD*........................................................................................................................... 47

**E.** *NAMED STORM*.............................................................................................................. 47

## SECTION V - GENERAL POLICY CONDITIONS.................................................. 48

**A.** ASSIGNMENT.................................................................................................................. 48

**B.** CANCELLATION.............................................................................................................. 48

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD..................................................... 48

**D.** CONFORMITY TO STATUTES ........................................................................................ 49

**E.** INSPECTION .................................................................................................................. 49

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS................. 49

**G.** LIBERALIZATION ........................................................................................................... 50

**H.** NO REDUCTION BY LOSS.............................................................................................. 50

**I.** NONRENEWAL ............................................................................................................... 50

**J.** OTHER INSURANCE....................................................................................................... 50

**K.** PAIR, SET OR PARTS .................................................................................................... 51

**L.** POLICY MODIFICATION.................................................................................................. 51

**M.** TITLES .......................................................................................................................... 51

**N.** TRANSFER OF RIGHTS AND DUTIES............................................................................ 51

**O.** VACANCY....................................................................................................................... 51

**P.** VALUATION.................................................................................................................... 52

## SECTION VI – LOSS CONDITIONS ................................................................. 55

**A.** ABANDONMENT OF PROPERTY.................................................................................... 55

**B.** APPRAISAL .................................................................................................................... 55

**C.** COLLECTION FROM OTHERS........................................................................................ 55

**D.** COMPANY OPTION......................................................................................................... 55

**E.** DUTIES AFTER A LOSS ................................................................................................. 55

**F.** LOSS ADJUSTMENT / PAYABLE..................................................................................... 56

**G.** PAYMENT OF LOSS........................................................................................................ 57

**H.** SUBROGATION.............................................................................................................. 57

**I.** SUIT AGAINST THE COMPANY....................................................................................... 57

## SECTION VII – DEFINITIONS.......................................................................... 58

## APPENDIX A - SCHEDULE OF COVERED LOCATIONS ...................................... 61

## APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES ................................. 62

## APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE...................... 63

APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES ................................................................................................................... 64

APPENDIX E - *FLOOD* HAZARD **LOCATIONS** ...................................................................... 67

FORMS AND ENDORSEMENTS ............................................................................................. 68

Disclosure Pursuant to Terrorism Risk Insurance Act .................................................................... 68

Important Notice Regarding The Expiration of the Terrorism Risk Insurance Act and the Reduction in Coverage for Terrorism Losses .......................................................................................................................... 68

Reporting a Commercial Claim 24 Hours a Day............................................................................... 68

Liberty Mutual Group California Privacy Notice................................................................................. 68

Exclusion of Certified Acts of Terrorism........................................................................................... 68

STATE AMENDATORY ENDORSEMENTS ............................................................................. 69

Washington Changes......................................................................................................................... 69

Washington Changes - Cancellation and Nonrenewal ..................................................................... 69

 © 2016 Liberty Mutual Insurance

# SECTION I - DECLARATIONS

**A.** FIRST NAMED INSURED AND MAILING ADDRESS

Board of Regents of the University of Washington Athletics and any subsidiary, and the interest of Board of Regents of the University of Washington Athletics in any partnership or joint venture in which Board of Regents of the University of Washington Athletics has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as **you** or **yours**, including legal representatives.

When any Insured described above is a party to a written contract or agreement on file that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to **covered property** which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any TIME ELEMENT Coverage to the legal entity, except as provided under LEASEHOLD INTEREST of this Policy or as specifically endorsed to the Policy.

Compliance and Risk Services
Box 354964; 4300 Roosevelt Way NE
Seattle, WA 98105

**B.** POLICY PERIOD

The term of this Policy is from March 1, 2020 to March 1, 2021 at 12:01 a.m., local time. In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

**C.** INSURING AGREEMENT

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**D.** PREMIUM

This Policy is issued in consideration of the following initial premium inclusive of any premium shown on endorsements which are part of the Policy at the time of issue.

| | |
|---|---|
| Policy Premium (Excluding premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended): | $103,032 |
| | |
| Policy Premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended: | Rejected |
| • Policy Premium for Fire Following Acts of **Terrorism** (in States where required) | $4,077 |
| | |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges summary shown below) | $0 |
| | |
| Total Policy Premium/Other Charges for Above Policy Period: | $107,109 |

| Policy Premium will be billed annual. | |
| --- | --- |
| The Deposit Premium/Other Charges is: | $107,109 |

**E.** PREMIUM PAYABLE

The First Named Insured pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of the First Named Insured.

Premiums will be paid in the currency designated in paragraph **I.** CURRENCY.

**F.** COVERED LOCATION(S)

This Policy applies at a **location(s)**:

1. Listed on a SCHEDULE on file with **us**;

2. Listed on the SCHEDULE attached to this Policy;

3. Covered as a **Miscellaneous Unnamed Location**; or

4. Covered under the terms and conditions of the NEWLY ACQUIRED **LOCATIONS** Coverage or ERRORS AND OMISSIONS Coverage.

**G.** TERRITORY

Coverage under this Policy applies to **covered property** within the continental United States of America, Hawaii and Puerto Rico.

**H.** JURISDICTION

The validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York.

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**I.** CURRENCY

All amounts, including deductibles and LIMITS OF LIABILITY, indicated in this Policy are in U.S. Dollars unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

**J.** DEFINED WORDS

Words in bold face type have special meanings in this Policy and are defined in the DEFINITIONS section of this Policy. These definitions apply to this entire Policy and to any endorsements to it. Definitions that apply to individual sections or paragraphs are italicized and defined in the applicable sections or paragraphs.

**K.** LIMITS OF LIABILITY

When a POLICY LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, **our** maximum LIMIT OF LIABILITY in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the stated POLICY LIMIT OF LIABILITY.

1. When a PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, it will apply to all coverages provided throughout this Policy, unless a LIMIT OF LIABILITY or "NCP" (No Coverage Provided) is indicated.

   **a.** When a LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, such limit will be the maximum amount payable for such loss or damage and cannot be combined with any other LIMIT OF LIABILITY.

   **b.** If "NCP" is specified in the LIMITS OF LIABILITY, there is no coverage provided in this Policy.

2. LIMITS OF LIABILITY in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

   **a.** When a LIMIT OF LIABILITY that applies in the aggregate during any Policy year is shown, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY during any Policy year.

   **b.** When a LIMIT OF LIABILITY applies to a **location(s)**, specified property, DESCRIBED LOSSES or a specific coverage, the smallest applicable LIMIT OF LIABILITY will be the maximum amount payable.

   **c.** Should an **occurrence** result in liability payable under more than one Policy issued to **you** by **us**, or by **our** subsidiaries, partners, or associated insurance companies, the maximum amount payable in the aggregate under all such policies will be the applicable LIMIT(S) OF LIABILITY indicated in this Policy.

   **d.** When a LIMIT OF LIABILITY applies to TIME ELEMENT only, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY per **occurrence**.

3. LIMITS OF LIABILITY specified below or elsewhere in this Policy do not increase and are part of and not in addition to the POLICY LIMIT OF LIABILITY or the PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY.

4. LIMITS OF LIABILITY apply per **occurrence** unless otherwise specified, including time and distance limits.

 © 2016 Liberty Mutual Insurance

LIMITS OF LIABILITY TABLE – PART ONE

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| PROPERTY DAMAGE | $250,000,000 |
| TIME ELEMENT | $4,345,657 |
| ACCOUNTS RECEIVABLE | $25,000,000 |
| *ATTRACTION PROPERTY* | 1 statute miles from a covered **location** 30 consecutive days, not to exceed $25,000 |
| BRANDS AND LABELS | $1,000,000 |
| CIVIL OR MILITARY AUTHORITY | 3 statute miles from a covered **location** 30 consecutive days, not to exceed $10,000,000 |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | $50,000 |
| CONTINGENT TIME ELEMENT<br><br>• *Direct Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us**<br><br>• *Indirect Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** | $10,000,000<br><br><br>NCP |
| CONTROL OF DAMAGED GOODS | $100,000 |
| COURSE OF CONSTRUCTION | $10,000,000 |
| CRISIS MANAGEMENT | 30 consecutive days, not to exceed $250,000 |
| DEBRIS REMOVAL | $25,000,000 |
| DECONTAMINATION COSTS | $1,000,000 |
| DEFERRED PAYMENTS | $500,000 |

© 2016 Liberty Mutual Insurance

| | |
|---|---|
| DELAY IN STARTUP | $500,000 |
| DEMOLITION AND INCREASED COST OF CONSTRUCTION <br> DAMAGED, per Section II D.11.b.1, <br><br> UNDAMAGED, per Section II D.11.b.2, | $25,000,000 <br><br><br> Included |
| ERRORS AND OMISSIONS | $10,000,000 |
| EXPEDITING EXPENSE | $25,000,000 |
| EXTENDED PERIOD OF LIABILITY | 365 consecutive days |
| EXTRA EXPENSE | $10,000,000 |
| **FINE ARTS** | $1,000,000 |
| FIRE DEPARTMENT SERVICE CHARGES | $25,000 |
| IMPOUNDED WATER | 30 consecutive days, not to exceed $25,000 |
| INGRESS / EGRESS | 3 statute miles from a covered **location** 30 consecutive days, not to exceed $10,000,000 |
| LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL in the **annual aggregate** | $50,000 |
| LEASEHOLD INTEREST | $50,000 |
| MISCELLANEOUS **PERSONAL PROPERTY** | $2,500,000 |
| **Miscellaneous Unnamed Locations** | $10,000,000 |
| Mold, Mildew or Fungus directly resulting from a **Covered Loss** | $100,000 |
| NEWLY ACQUIRED **LOCATIONS** | 60 consecutive days, not to exceed $25,000,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE and OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | $10,000,000 |

| Ordinary Payroll | NCP |
|---|---|
| PRESERVATION OF PROPERTY | $5,000,000 |
| PROFESSIONAL FEES | $1,000,000 |
| RADIOACTIVE **CONTAMINATION** | $25,000 |
| RENTAL INSURANCE | $500,000 |
| RESEARCH AND DEVELOPMENT | $250,000 |
| *SOFT COSTS* | $500,000 |
| TAX LIABILITY | $25,000 |
| TRANSIT | $5,000,000 |
| **VALUABLE PAPERS AND RECORDS** | $25,000,000 |

LIMITS OF LIABILITY TABLE -- PART TWO

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| *EARTH MOVEMENT* in the **annual aggregate** | NCP |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | Included |
| EQUIPMENT BREAKDOWN<br><br>PROPERTY DAMAGE and TIME ELEMENT except: | Included |
| The following limits are part of and not in addition to the EQUIPMENT BREAKDOWN limits specified above: | |
| • Ammonia **Contamination** | $1,000,000 |
| • CONTINGENT TIME ELEMENT | $1,000,000 |
| • Spoilage Damage | $1,000,000 |

| | |
|---|---|
| *FLOOD* in the **annual aggregate** | |
| except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *FLOOD* annual aggregate limit: | |
| • **Covered property** at **locations** situated in: | |
| Flood Hazard - Low | $100,000,000 |
| Flood Hazard - High | $1,000,000 |
| *NAMED STORM* | NCP |

## ENDORSEMENT LIMITS OF LIABILITY

| Endorsement Number | Endorsement Name | LIMITS OF LIABILITY |
|---|---|---|
| CNP 90 06 01 20 | Disclosure Pursuant to Terrorism Risk Insurance Act | Rejected |
| CNP 90 10 01 19 | Important Notice Regarding The Expiration of the Terrorism Risk Insurance Act and the Reduction in Coverage for Terrorism Losses | |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism | |

## L. CANCELLATION TIME SPECIFICATIONS

| Cancellation for Nonpayment of Premium | Ten (10) days |
|---|---|
| Cancellation for All Reasons Other Than Nonpayment of Premium | 30 days |

## M. DEDUCTIBLES

Subject to the Deductible General Provisions stated below, **we** will not pay unless a **covered loss**, including any insured TIME ELEMENT loss, exceeds the deductible(s) specified below. **We** will then pay the amount of **covered loss** in excess of the deductible, up to the applicable LIMIT OF LIABILITY.

Deductible General Provisions

**We** will be liable only if **you** sustain a **covered loss**, including any insured TIME ELEMENT loss, in a single **occurrence** greater than the applicable deductible specified. When this Policy insures more than one (1) **location**, the deductible(s) will apply against the total loss covered by this Policy in an **occurrence** unless otherwise stated.

1. Unless otherwise stated, if two or more deductibles apply to an **occurrence**, the total deductible will not exceed the largest applicable deductible, except as follows:

    **a.** When a separate PROPERTY DAMAGE and TIME ELEMENT deductible apply, each will be applied separately.

    **b.** If there are multiple **locations** involved in an **occurrence** where two or more deductibles apply to a **location** in an **occurrence**, the largest deductible applying to each **location** will be applied separately to each such **location**, regardless of the number of **locations** involved in the **occurrence**.

    **c.** Unless specified otherwise, if deductibles are specified for a **location**, the largest deductible applicable will be applied to that **location** regardless of the number of **locations** involved in the **occurrence**.

    **d.** Equipment Breakdown: With regard to Equipment Breakdown coverage, if one or more deductible amounts are shown below, each will be applied separately.

    **e.** The stated *EARTH MOVEMENT* deductible will be applied to *EARTH MOVEMENT* loss. The stated *FLOOD* deductible will be applied to *FLOOD* loss. The stated *NAMED STORM* deductible will be applied to *NAMED STORM* loss. Provisions **1.a.** and **1.b.** above will also be applied to each.

**2.** When a percent deductible is specified, whether separate or combined, the deductible amount will be determined as follows:

    **a.** PROPERTY DAMAGE: The percentage of the total reported values on file with **us** for the **covered property** at the corresponding **location(s)** (including sub-**locations**) where the direct physical loss or damage occurred; plus

    **b.** TIME ELEMENT: The percentage of the full TIME ELEMENT values that would have been earned in the 12-month period following the **occurrence**, had no loss occurred, by use of the facilities at the **location** where the direct physical loss or damage occurred, plus that proportion of the full TIME ELEMENT values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12-month period following the **occurrence**.

    **c.** Equipment Breakdown: The percentage of the gross amount of loss, damage or expense (prior any deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**3.** When a minimum deductible is shown, the minimum deductible is the sum of:

    **a.** The specific **location** deductible for each covered **location** where the amount of physical loss or damage exceeds the specific **location** deductible; and

    **b.** The amount of physical loss or damage for each covered **location** where the amount of physical loss or damage is less than the specific **location** deductible.

**4.** When an average daily value deductible is provided, this deductible will be determined as follows:

    **a.** The total amount of TIME ELEMENT loss applicable for the entire **location** where the direct physical loss or damage happens will be included.

    **b.** Divide the result in Paragraph **a.** by the number of days the business would have been open during the PERIOD OF LIABILITY. The result is the average daily value.

**c.** Multiply the average daily value in Paragraph **b.** by the number of days specified in the DEDUCTIBLE TABLE below.

If more than one (1) **location** is included in the valuation of the loss; the average daily value will be the combined value of all affected **locations**.

**5.** When a per unit deductible is specified, the following shall be considered a separate unit of insurance:

**a.** Each separate building, the contents of each separate building and **covered property** in each yard at that covered **location**.

**b.** TIME ELEMENT loss as applicable, including all other **locations** where TIME ELEMENT loss ensues as provided by this Policy.

**6.** When a time deductible is shown, **we** will not be liable for any loss under that coverage that occurs during that specified time period immediately following the direct physical loss or damage. If a time deductible is shown in days, each day shall mean twenty four (24) consecutive hours.

**7.** When a deductible is shown in the Declarations for a *NAMED STORM*, the following applies:

**a.** All direct physical loss or damage to **covered property** including TIME ELEMENT loss caused by or resulting from a *NAMED STORM* will be subject to the deductible obtained by calculating all of the following:

**(1)** The sum of all applicable percentage deductibles calculated as described in Deductible General Provisions Item **2.** above, subject to any applicable minimums or maximums; and

**(2)** Any other applicable deductible amounts.

### DEDUCTIBLE TABLE – PART ONE

| Coverage | Deductible Percentage / Amounts |
|---|---|
| PROPERTY DAMAGE | $250,000 |
| TIME ELEMENT | $250,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | $250,000 |
| TRANSIT | $25,000 |
| Fine Arts | $25,000 |

### DEDUCTIBLE TABLE – PART TWO

| Coverage | Deductible Percentage / Amounts |
|---|---|
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $250,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE and TIME ELEMENT | $250,000 |

 © 2016 Liberty Mutual Insurance

| | |
|---|---|
| • Spoilage Damage | $250,000 |
| • Ammonia **Contamination** | $250,000 |

| | |
|---|---|
| *FLOOD* | |
| • **Covered property** at **locations** situated in: | |
| Flood Hazard - Low | $250,000 |
| Flood Hazard - High | $500,000 Real Property<br>$500,000 Personal Property<br>$250,000 Other<br>applying per location |

 © 2016 Liberty Mutual Insurance

**N.** QUALIFYING PERIOD(S)

A *qualifying period* applies for the coverages shown in the Table below. *Qualifying period* is the period of time that must be exceeded for coverage to apply. Once the *qualifying period* has been exceeded, coverage applies from the initial event of loss.

*QUALIFYING PERIOD* TABLE

| Coverage | *QUALIFYING PERIOD* |
|---|---|
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | 24 hours |
| CRISIS MANAGEMENT | 24 hours |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | 24 hours |

# SECTION II – PROPERTY DAMAGE

### A. COVERED PROPERTY

1. **We** cover **your** insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered **location**, unless otherwise excluded:

   a. **Real Property**, including new buildings, structures and additions in the COURSE OF CONSTRUCTION.

   b. **Personal Property**, including *personal property of others*.

   *Personal property of others* are tangible things that **you** do not own, other than **real property**, that:

   (1) are sold by **you** and that **you** have agreed, prior to loss, to insure for the account of the purchaser during delivery;

   (2) **you** have agreed in writing prior to any loss or damage to provide coverage;

   (3) are in **your** care, custody or control;

   (4) **you** have an insurable interest in, or an obligation to provide coverage;

   (5) **you** are legally liable for;

   (6) are improvements and betterments consisting of fixtures, alterations, installation or additions comprising part of a building not owned by **you** and acquired or made at **your** expense which **you** cannot legally move, but only to the extent of **your** insurable interest therein; or

   (7) are **personal property** (other than vehicles) of **your** employees and officers.

2. **We** also cover the interest of contractors and subcontractors in **covered property** during construction at or within one-thousand (1,000) feet of a covered **location** to the extent of **your** legal liability for direct physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

### B. PROPERTY NOT COVERED

**We** do not cover the following types of property:

1. Aircraft, except when unfueled and manufactured by **you**;

2. Animals, standing timber including undisturbed natural wooded areas, or growing crops;

3. Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

4. Caves, caverns, mines of any type, or any property contained within them;

5. Contraband or property in the course of illegal transportation or trade;

6. Currency, money, negotiable and non-negotiable instruments, notes or securities;

7. Dams, dikes, levees, docks, wharfs, piers or bulkheads;

8. **Electronic data**, computer programs or software, except when they are stock in process, finished stock manufactured by **you**, raw materials, supplies, other merchandise not manufactured by **you** or as provided in this Policy;

9. Land and any substance in or on land except this exclusion does not apply to **land improvements**;

10. **Land improvements** at a golf course;

11. Overhead transmission and distribution systems located more than one-thousand (1,000) feet away from a covered **location**;

12. *Personal property of others* that is in the care, custody or control of **you** or **your** affiliates for which **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

13. Precious metals or precious stones, except when used in industrial or service operations;

14. Property in transit, except as otherwise provided by this Policy;

15. Property more specifically insured, except for any excess over any LIMITS OF LIABILITY of such more specific insurance;

16. Property sold by **you** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to **your** customers, except as provided by the DEFERRED PAYMENTS coverage of this Policy;

17. Spacecraft, satellites, associated launch vehicles and any property contained therein;

18. Vehicles otherwise insured for physical loss or damage;

19. Water except this exclusion does not apply to water that is contained within any enclosed tank, piping system or any other processing equipment; or

20. Watercraft, except watercraft **you** manufacture and are part of **your** inventory while being stored un-fueled and on dry land at a covered **location**.

**C.** EXCLUSIONS

The following exclusions apply unless otherwise stated in this Policy:

1. **We** do not cover:

   a. Indirect or remote loss or damage;

   b. Interruption of business, except to the extent provided by this Policy;

   c. Loss of market or loss of use;

   d. Loss or damage or deterioration arising from any delay;

   e. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss;

   f. Loss or damage from enforcement of any law or ordinance:

      (1) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or
      (2) Requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this Policy;

**g.** Loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense; or

**h.** Loss or damage caused by or resulting from freezing, disease or drought to landscape gardening, including plants, trees and shrubs.

**2. We** do not cover physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing to the loss concurrently or in any other sequence:

**a. Terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**, but this exclusion applies only when one of the following are attributed to an incident of **terrorism:**

**(1)** The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive **contamination**; or

**(2)** Radioactive material is released, and it appears that one purpose of **terrorism** was to release such material; or

**(3)** The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(4)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

**(5)** Loss or damage to property located outside of the United States, unless there is a law in effect in the jurisdiction where the loss or damage occurs that expressly prohibits this exclusion; or

**(6)** The total of all damage to property, whether covered by this Policy or otherwise, exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, **we** will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption (TIME ELEMENT) losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would not be covered by any insurance but for the application of any **terrorism** exclusions. Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one (1) incident, for the purpose of determining whether the threshold is exceeded.

With respect to this item **2.a.(6)**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of **terrorism**, there is no coverage in this Policy.

However, this exclusion does not apply:

**(1)** If **terrorism** results in fire, in which case **we** cover the direct physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage occurs that expressly prohibits the exclusion of fire losses resulting from **terrorism.** This exception is subject to all applicable Policy provisions including the LIMIT OF LIABILITY on the affected property. Such coverage for ensuing loss applies only to direct loss or damage by fire to **covered property**. This coverage does not apply to insurance provided under any TIME ELEMENT coverages, or to fire legal liability coverage; or

**(2)** While the United States **Terrorism** Risk Insurance Act (TRIA), as amended, is in effect:

  **(a)** To loss or damage caused by a "Certified Act of **Terrorism**" provided that **you** elected coverage for such, and only to the extent provided by the terms and conditions of the applicable CERTIFIED ACTS OF **TERRORISM** AND DISCLOSURE PURSUANT TO **TERRORISM** RISK INSURANCE ACT endorsement; or

  **(b)** To loss or damage caused by **terrorism** that would have been certified as an "act of **terrorism**", but was not certified solely because the total of all property and casualty insurance losses resulting from the act failed to exceed the $5,000,000 "certified act of **terrorism**" threshold specified under TRIA.

**b.** Nuclear reaction or nuclear radiation or radioactive **contamination**. However, this exclusion does not apply if:

  **(1)** The RADIOACTIVE **CONTAMINATION** PROPERTY DAMAGE COVERAGE AND LIMITATION applies but only to the extent provided; or

  **(2)** Fire directly results from the nuclear reaction, nuclear radiation, or radioactive **contamination**, in which case **we** cover the physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage happens that expressly prohibits the exclusion of fire losses resulting from nuclear reaction, radiation or **contamination**.

**c.** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

  **(1)** Government or sovereign power (de jure or de facto);

  **(2)** Military, naval or air force; or

  **(3)** Agent or authority of any party specified in **(1)** or **(2)** above.

**d.** Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**e.** The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, biological, viral, radioactive or similar agents or matter, whether in time of peace or war and regardless of who commits the act.

**f.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**g.** Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

**h.** Risks of contraband, or illegal transportation or trade.

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

  **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

  **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

**j.** Lack of the following services:

   **(1)** Incoming electricity, fuel, water, gas, steam or refrigerant;

   **(2)** Outgoing sewerage; or

   **(3)** Incoming or outgoing voice, data or video,

   all when caused by an event away from the covered **location** except as provided in the ON/OFF PREMISES INTERRUPTION OF SERVICES coverages of this Policy. But, if the lack of such a service causes physical loss or damage of the type insured by this Policy at a covered **location**, then only that resulting damage is covered.

**3. We** do not cover the following, but, if direct physical loss or damage not excluded by this Policy results, then **we** cover that resulting damage only:

   **a.** Faulty workmanship, material, construction or design.

   **b.** Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

   **c.** Deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

   **d.** Settling, cracking, shrinking, bulging, or expansion of:

   **(1)** Foundations (including any pedestal, pad, platform or other property supporting machinery)

   **(2)** Floors

   **(3)** Pavements

   **(4)** Walls, including retaining walls

   **(5)** Ceilings

   **(6)** Roofs

   **e.** Extremes or changes in temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

   **f.** Cumulative effects of smog, smoke, vapor, liquid and dust.

   **g.** Insect, animal or vermin damage.

   **h.** Loss or damage to the interior portion of buildings under construction caused by rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

**4. We** do not cover the following unless directly resulting from a **covered loss**:

   **a.** **Contamination,** and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy.

   **b.** Shrinkage.

 © 2016 Liberty Mutual Insurance

c. Changes in color, flavor, texture or finish.

d. Remediation, change, correction, repair or assessment of any date or time recognition in any **electronic data processing equipment** or media.

e. Failure of **electronic data processing equipment** or media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times.

**D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS

**We** provide the following PROPERTY DAMAGE COVERAGES AND LIMITATIONS for a **covered loss** as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

**1.** ACCOUNTS RECEIVABLE

a. **We** cover the following resulting from a **covered loss** to accounts receivable records located while anywhere within the Policy territory, including while in transit:

(1) Any shortage in the collection of accounts receivable.

(2) The interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum. Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable.

(3) The reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

(4) Any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

b. Accounts receivable records include records stored as **electronic data**. In the event of loss, **you** will:

(1) Use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

(2) Reduce the loss by use of any property or service owned or controlled by **you** or obtainable from other sources.

(3) Reconstruct, if possible, accounts receivable records so that no shortage is sustained.

c. The settlement of loss will be made within ninety (90) days from the date of the **covered loss**. All amounts recovered by **you** on outstanding accounts receivable on the date of loss will belong and be paid to **us** up to the amount of loss paid by **us.** All recoveries exceeding the amount paid will belong to **you**.

d. **We** do not cover shortage resulting from:

(1) Bookkeeping, accounting or billing errors or omissions; or
(2) Alteration, falsification, manipulation; or

(3) Concealment, destruction or disposal, of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

**2.** BRANDS AND LABELS

In the event of a **covered loss** to **your** branded or labeled merchandise, and **we** elect to take all or any part of that property, **you** may at **our** expense:

**a.** Stamp "salvage" on the property or its containers; or

**b.** Remove or obliterate the brands or labels,

if doing so will not damage the property.

**You** must re-label such property or its containers to be in compliance with any applicable law.

**3.** CONTROL OF DAMAGED GOODS

**We** grant control to **you** of physically damaged **covered property** consisting of finished goods manufactured by or for **you** as follows:

**a.** **You** will have full rights to the possession and control of damaged property in the event of physical damage to **your covered property** provided proper testing is done to show which property is physically damaged.

**b.** Using reasonable judgment, **you** will decide if the physically damaged **covered property** can be reprocessed or sold.

**c.** Property **you** determine to be unfit for reprocessing or selling will not be sold or disposed of except by **you**, or with **your** consent.

Any salvage proceeds received will reduce the recoverable loss.

**4.** COURSE OF CONSTRUCTION

**a.** **We** cover direct physical loss or damage at a covered **location** to buildings or structures that **you** begin to construct during the Policy period.

**b.** **We** also cover materials, supplies, machinery, equipment and fixtures:

**(1)** At a covered **location** and intended for installation in the new construction;

**(2)** After such property has been delivered to **you** or **your** contractor, and while such property is located offsite at a storage **location**; or

**(3)** After such property has been delivered to **you** or **your** contractor, and while such property is in transit from a storage **location** to another storage **location** or to a covered **location.**

**c.** This coverage only applies to the construction of **covered property you** intend to own or occupy once constructed.

**d.** This coverage does not apply to any property owned or rented by any contractor or subcontractor.

**5.** DATA, PROGRAMS OR SOFTWARE

**a.** **We** cover direct physical loss or damage to **your electronic data**, computer programs or software, including direct physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's territory, including:

**(1)** The cost of the following reasonable and necessary actions taken by **you** provided such actions are taken due to actual insured physical loss or damage to **electronic data**, computer programs or software:

**(a)** Actions to temporarily protect and preserve insured **electronic data**, computer programs or software.

**(b)** Actions taken for the temporary repair of insured physical loss or damage to **electronic data**, computer programs or software.

**(c)** Actions taken to expedite the permanent repair or replacement of such damaged property.

**(2) Your** reasonable and necessary cost to temporarily protect or preserve covered **electronic data**, computer programs or software against immediately impending direct physical loss or damage to **electronic data**, computer programs or software.   In the event that there is no direct physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such direct physical loss or damage.

**b.** With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the *qualifying period* specified in the *Qualifying Period* Table in the Declarations is exceeded.

**c.** Any amounts recoverable under this PROPERTY DAMAGE COVERAGE AND LIMITATION are excluded from coverage elsewhere in this Policy.

**d.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes loss or damage to **electronic data**, computer programs or software when they are stock in process, finished stock manufactured by **you**, raw materials, supplies or other merchandise not manufactured by **you**.

**e.** With respect to this PROPERTY DAMAGE COVERAGE AND LIMITATION, the following additional exclusions apply:

**(1)** Errors or omissions in processing or copying; and

**(2)** Loss or damage to **electronic data**, computer programs or software from errors or omissions in programming or machine instructions.

**6.** DEBRIS REMOVAL

**a. We** cover **your** reasonable and necessary costs to remove debris from a covered **location** that remains as a direct result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION covers the costs of removal of contaminated **covered property** or the **contaminant** in or on **covered property** only if the **contamination**, due to the actual presence of **contaminant(s),** results from a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover the costs of removal of:

**(1)** Contaminated uninsured property; or

**(2)** The **contaminant** in or on uninsured property,

whether or not the **contamination** results from a **covered loss**.

**7.** DECONTAMINATION COSTS

**a. We** cover **your** decontamination costs directly resulting from a **covered loss** at a covered **location** subject to the following conditions:

**(1)** These decontamination costs must be a direct result of enforcement of the law or ordinance that

is in force at the time of the loss regulating decontamination; and

**(2)** The amount **we** cover includes the increased cost to remove **your** contaminated **covered property** to comply with the law or ordinance.

**b.** **We** do not cover costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** resulted from a **covered loss**.

**8.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS

**a.** **We** cover the cost to defend that part of any suit against **you** alleging direct physical loss or damage of the type insured by this Policy to personal property of others of the type insured by this Policy, in **your** custody, and while at a covered **location**. **We** may without prejudice undertake any investigation, negotiation or settlement of any such claim or suit as **we** deem appropriate.

**b.** **We** do not cover the cost to defend any suit against **you** when **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

**9.** DEFERRED PAYMENTS

**a.** **We** cover direct physical loss or damage to **personal property** of the type insured by this Policy sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer. Coverage is limited to the unpaid balance for such property. In the event of loss to property sold under deferred payment plans, **you** will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

**b.** **We** do not cover loss:

**(1)** Pertaining to products recalled including **your** costs to recall, test or to advertise such recall.

**(2)** From theft or conversion by the buyer of the property after the buyer has taken possession of such property.

**(3)** To the extent the buyer continues payments.

**(4)** Not within this Policy's territory.

**10.** DEMOLITION AND INCREASED COST OF CONSTRUCTION

**a.** **We** cover **your** reasonable and necessary costs that are described in Item **b.** below, actually incurred to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of **covered property** consisting of buildings, structures, machinery and equipment at a covered **location**, provided:

**(1)** Such law or ordinance is in force on the date of the **covered loss**;

**(2)** Its enforcement is a direct result of a **covered loss**; and

**(3)** The buildings, structures, machinery and equipment were in compliance with such law or ordinance, regardless of any lack of enforcement, prior to the **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION, as respects the property insured in Item **a.** above, covers:

**(1)** The cost incurred to demolish, repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

**(2)** The cost incurred:

**(a)** To demolish the physically undamaged portion of such property insured; and

**(b)** To rebuild it with materials and in a manner to satisfy such law or ordinance,

when the demolition of the physically undamaged portion of such property is required to satisfy such law or ordinance, as a result of a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes any costs incurred as a result of the enforcement of any law or ordinance regulating pollution.

**d.** The amount **we** cover for this PROPERTY DAMAGE COVERAGE AND LIMITATION at each covered **location** in any one (1) **occurrence** will not exceed the actual cost incurred in demolishing the physically damaged and undamaged portions of the property covered in item **a**. above plus:

**(1)** If rebuilt on the same site, the actual cost incurred in rebuilding there; or

**(2)** If rebuilt on another site, the lesser of:

**(a)** The actual cost incurred in rebuilding on the other site, excluding the cost of land; or

**(b)** The cost that would have been incurred to rebuild on the same site.

## 11. ERRORS AND OMISSIONS

**a.** If direct physical loss or damage is not covered under this Policy solely because of an error or unintentional omission made by **you**:

**(1)** In the description of where **covered property** is physically located; or

**(2)** To include any **location**:

**(a)** Owned, rented or leased by **you** on the effective date of this Policy; or

**(b)** Purchased, rented or leased by **you** during the term of the Policy; or

**(3)** That results in termination of the coverage provided by this Policy, except for cancellation due to nonpayment of premium,

**we** cover the amount **we** would have paid, including any TIME ELEMENT loss, had the error or omission not been made.

**b.** This coverage does not apply to the failure to report values, or the reporting of inaccurate values of **covered property**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply if coverage is provided elsewhere in this Policy.

**d.** **You** must report such errors or unintentional omissions to **us** in writing as soon as they are discovered.

## 12. EXPEDITING EXPENSE

**a.** **We** cover **your** reasonable and necessary costs:

**(1)** For the temporary repair of **covered property** from a **covered loss**; and

**(2)** To expedite the permanent repair or replacement of such damaged property.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

**13.** FINE ARTS

**a.** **We** cover direct physical loss or damage to **your fine arts** while anywhere within this Policy's territory, including while in transit.

**b.** The following additional exclusions apply:

**We** do not cover:

**(1)** Loss or damage sustained from any repair, restoration, or retouching process;

**(2)** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, *EARTH MOVEMENT*, *FLOOD*, explosion, vandalism, collision, derailment or overturn of conveyance.

**14.** FIRE DEPARTMENT SERVICE CHARGES

**We** cover the reasonable and necessary:

**a.** Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the **covered property**.

**b.** Costs incurred by **you** to restore and recharge fire protection systems following a **covered loss**.

**15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL

**a.** For uninsured property at a covered **location** consisting of land, water, or any other substance in or on land or water at a covered **location**, **we** cover **your** reasonable and necessary cost for the cleanup, removal and disposal of the actual presence of **contaminant(s)** from that property if the release, discharge or dispersal of such **contaminant(s)** is a result of a **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

**(1)** At any **location** insured for **personal property** only;

**(2)** At any **location**, or to any property, covered under the NEWLY ACQUIRED **LOCATIONS** or ERRORS AND OMISSIONS coverages provided by this Policy or at a **Miscellaneous Unnamed Location**; or

**(3)** If **you** fail to give **us** written notice within one hundred eighty (180) days after the loss.

**16.** MISCELLANEOUS **PERSONAL PROPERTY**

**a.** **We** cover direct physical loss or damage, that occurs away from a covered **location** but within the Policy's territory, to **personal property** of the type covered under this Policy, which is:

**(1)** Owned by **you**; or

**(2)** Owned by others and in **your** care, custody and control, but only to the extent **you** are obligated to insure it for direct physical loss or damage under the type of coverage provided under this Policy.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes coverage that is provided

elsewhere in this Policy.

## 17. NEWLY ACQUIRED **LOCATIONS**

**a.** **We** cover physical loss or damage to property of the type insured from a loss of the type insured at any **location you** purchase, lease or rent after the inception date of this Policy.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION applies:

**(1)** From the date of purchase, lease or rental,

**(2)** Until the first of the following occurs:

**(a)** The **location** is bound by **us**;

**(b)** Agreement is reached that the **location** will not be insured under this Policy; or

**(c)** The time limit specified in the LIMITS OF LIABILITY Table in the Declarations has been reached. The time limit begins on the date of purchase, lease or rental.

## 18. OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE

**a.** **We** cover physical loss or damage to **covered property** at a covered **location** when such physical loss or damage results from:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

by reason of a loss of the type insured by this Policy at the facilities of the supplier of such service located within this Policy's territory, that immediately prevents in whole or in part the delivery of such usable service.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the interruption exceeds the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** For purposes of this PROPERTY DAMAGE COVERAGE AND LIMITATION, the *period of service interruption* is the period starting with the time when an interruption of specified services occurs; and ending when the service could be wholly restored.

**d.** Additional General Provisions:

**(1)** **You** will immediately notify the suppliers of services of any interruption of any such services.

**(2)** **We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

**e.** **We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**f.** Exclusion **C.3.e.** does not apply to this PROPERTY DAMAGE COVERAGE AND LIMITATION.

## 19. PROFESSIONAL FEES

**a.** **We** cover **your** reasonable costs for **your** employees or auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

**b.** Professional fees covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION, however, do not include:

(1) Any fees or expenses of attorneys;

(2) Any fees or expenses of public adjusters, loss appraisers or any of their subsidiaries or associated entities;

(3) Fees based on a contingency; or

(4) Fees of loss consultants who provide consultation on coverage or negotiate claims.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible that applies to the loss.

**20.** PROTECTION AND PRESERVATION OF PROPERTY

**a.** **We** cover **your** reasonable and necessary costs to temporarily protect or preserve **covered property** provided such actions are necessary due to actual, or to prevent immediately impending threat of, physical loss or damage of the type covered by this Policy to such **covered property**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the physical loss or damage happened.

**21.** RADIOACTIVE CONTAMINATION

**a.** **We** cover radioactive **contamination** to property of the type insured by this Policy from a **covered loss**.

Radioactive **contamination** is:

(1) Sudden and accidental radioactive **contamination**; or

(2) Resultant radiation damage to **covered property**,

provided that such radioactive **contamination** arises out of radioactive material at a covered **location** and is used as part of **your** business activities.

**b.** **We** do not cover radioactive **contamination** if:

(1) The covered **location** contains:

(a) A nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or

(b) Any new or used nuclear fuel intended for or used in such a nuclear reactor.

(2) The **contamination** arises from radioactive material located away from a covered **location**.

**22.** TAX LIABILITY

**We** cover **your** increase in tax liability from a **covered loss** at a covered **location** if the tax treatment of:

**a.** The profit portion of a loss payment involving finished stock manufactured by **you**; and/or

**b.** The profit portion of a TIME ELEMENT loss payment;

is greater than the tax treatment of profits that would have been incurred had no loss happened.

**23.** TEMPORARY REMOVAL OF PROPERTY

**a.** When **covered property** is removed from a covered **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, **we** cover such property:

    **(1)** While at the premises to which such **covered property** has been moved; and

    **(2)** For direct physical loss or damage of the type insured by this Policy at the covered **location** from which such **covered property** was removed.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

    **(1)** To **covered property** removed for normal storage, processing or preparation for sale or delivery; or

    **(2)** If coverage is provided elsewhere in this Policy or by any other insurance policy.

**24.** TRANSIT

**a.** **We** cover **personal property** not excluded elsewhere in this Policy while it is in transit within the Policy's territory:

    **(1)** Owned by **you**.

    **(2)** Shipped to customers under Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. **Your** contingent interest is admitted.

    **(3)** Of others in **your** actual or constructive custody to the extent of **your** interest or legal liability.

    **(4)** Of others sold by **you** and **you** agreed prior to the loss to insure the **personal property** during course of delivery including:

        **(a)** When shipped by **your** contract service provider or by **your** contract manufacturer to **you** or to **your** customer; or

        **(b)** When shipped by **your** customer to **you** or to **your** contract service provider or to **your** contract manufacturer.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION starts from the time the property leaves the original point of shipment for transit, and continues while in the due course of transit until delivered, subject to the following conditions:

    **(1)** Coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

    **(2)** If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

**c.** **We** also cover:

    **(1)** General average and salvage charges on shipments covered while waterborne; and

    **(2)** Direct physical loss or damage caused by or resulting from:

 © 2016 Liberty Mutual Insurance

      **(a)** Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

      **(b)** Improper parties having gained possession of property through fraud or deceit.

**d.** Additional General Provisions:

    **(1)** This PROPERTY DAMAGE COVERAGE AND LIMITATION will not inure directly or indirectly to the benefit of any carrier or bailee.

    **(2)** **You** have permission, without prejudicing this insurance, to accept:

      **(a)** Ordinary bills of lading used by carriers;

      **(b)** Released bills of lading;

      **(c)** Undervalued bills of lading; and

      **(d)** Shipping or messenger receipts.

    **(3)** **You** may waive subrogation against railroads under side track agreements.

    **(4)** Except as otherwise stated, **you** will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

**e.** As respects this PROPERTY DAMAGE COVERAGE AND LIMITATION:

    **(1)** The following additional exclusions apply:

    This Policy excludes:

      **(a)** Samples in the custody of salespeople or selling agents.

      **(b)** Property insured under import or export ocean marine insurance.

      **(c)** Waterborne shipments, unless:

        **(i)** By inland water; or

        **(ii)** By roll-on/roll-off ferries; or

        **(iii)** By coastal shipments.

      **(d)** Airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

      **(e)** Property of others, including **your** legal liability for it, hauled on vehicles owned, leased or operated by **you** when acting as a common or contract carrier.

      **(f)** Any transporting vehicle

      **(g)** Property shipped between continents except by land or air within the Policy territory.

**f.** **We** will value property covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION as follows:

 © 2016 Liberty Mutual Insurance

**(1)** Property shipped to or for **your** account will be valued at actual invoice to **you**. Included in the value are accrued costs and charges legally due. Charges may include **your** commission as selling agent.

**(2)** Property sold by **you** and shipped to or for the purchaser's account will be valued at **your** selling invoice amount. Prepaid or advanced freight costs are included.

**(3)** Property not under invoice will be valued:

    **(a)** For **your** property, according to the valuation provisions of this Policy applying at the place from which the property is being transported; or

    **(b)** For other property, at the **actual cash value** at the destination point on the date of loss, less any charges saved which would have become due and payable upon arrival at destination.

## 25. VALUABLE PAPERS AND RECORDS

**a.** **We** cover physical loss or damage to **your valuable papers and records** from a **covered loss** at a covered **location**. **We** cover the value blank, plus the cost of copying from backup or from originals of a previous generation, and **your** reasonable and necessary costs to research, replace or restore the information lost or damaged thereon, except for **electronic data** and software. For **electronic data** and software, **we** cover the value of the blank media, and the cost of reproducing the **electronic data** and software from duplicates or originals of the previous generation of the data.

**b.** This coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

 © 2016 Liberty Mutual Insurance

# SECTION III – TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS:

**A.** Is subject to and part of the applicable LIMIT OF LIABILITY that applies to **your** direct physical loss or damage but in no event for more than any LIMIT OF LIABILITY that is stated as applying to the specific TIME ELEMENT COVERAGE and/or TIME ELEMENT COVERAGES AND LIMITATIONS; and

**B.** Will not increase the POLICY LIMIT OF LIABILITY and is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

**A. LOSS INSURED**

1.  **We** cover **your** actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy:

    **a.** To property described elsewhere in this Policy and not otherwise excluded by this Policy,

    **b.** Used by **you**, or by others with whom **you** have a contract,

    **c.** At a covered **location** or while in transit as provided by this Policy,

    **d.** During the applicable PERIOD OF LIABILITY described in this section.

2.  **We** cover TIME ELEMENT loss only to the extent it cannot be reduced through:

    **a.** The use of any property or service owned or controlled by **you**;

    **b.** The use of any property or service obtainable from other sources;

    **c.** Working extra time or overtime; or

    **d.** The use of inventory,

    all whether at a covered **location** or at any other **location**. When measuring the actual loss sustained, the combined operating results of all of **your** associated, affiliated or subsidiary companies will be considered in determining the TIME ELEMENT loss.

3.  **We** cover **your** reasonable and necessary expenses to reduce the loss otherwise payable under this section of this Policy. The amount of those recoverable expenses will not exceed the amount by which the insured loss has been reduced.

4.  In determining the insured TIME ELEMENT loss, **we** will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. **We** will consider any increase or decrease in demand for **your** goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused the **covered loss**.

**B. TIME ELEMENT COVERAGES**

1.  *GROSS EARNINGS*

    **a.** *GROSS EARNINGS* loss is the actual loss sustained by **you** due to the necessary interruption of **your** business during the PERIOD OF LIABILITY of the following:

 © 2016 Liberty Mutual Insurance

Gross Earnings less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services, plus all other earnings derived from the operation of the business.

**Ordinary payroll,** including taxes and charges dependent on the payment of wages, for a period of time not to exceed the number of consecutive days as specified in the LIMITS OF LIABILITY in the Declarations table immediately following the interruption of production or suspension of business operations or services, and only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

However, if **you** reduce the daily loss payable under **ordinary payroll**, either by:

      **(1)** providing gainful employment for, or

      **(2)** paying less than the normal salary rate to,

all or part of its employees, then the number of consecutive days of **ordinary payroll** may be extended. However, this provision will not increase **our** total liability beyond the amount **we** would have been liable for **ordinary payroll** costs without this provision.

**Ordinary payroll** does not cover any portion of salaries or wages included in Gross Earnings.

**b.** *GROSS EARNINGS* will be calculated as follows:

      **(1)** For manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

      **(2)** For mercantile or non-manufacturing operations: the total net sales less the cost of merchandise sold, materials and supplies consumed in the operations or services rendered by **you**.

      Any amount payable at selling price will be considered to have been sold to **your** regular customers and will be credited against net sales.

**c.** In determining the amount **we** cover as the actual loss sustained, **we** will consider the continuation of only those charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

**d.** If **you** would have operated at a deficit had no interruption of production or suspension of business operations or services occurred, the following applies:

      **(1)** For Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.

      **(2)** For **ordinary payroll**, the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

**e.** We cover TIME ELEMENT loss only to the extent that **you** are:

      **(1)** Wholly or partially prevented from producing goods or continuing business operations or services;

      **(2)** Unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

      **(3)** Unable to continue **your** operations or services during the PERIOD OF LIABILITY; and

**(4)** Able to demonstrate a loss of sales for the operations, services or production prevented.

**2.** EXTRA EXPENSE

    **a.** **We** cover **your** reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable:

        **(1)** To temporarily continue as nearly normal as practicable the conduct of **your** business; and

        **(2)** The temporary use of property or facilities of **yours** or others.

    **b.** **We** will reduce any recoverable loss under this coverage for any value remaining of any property used to temporarily continue **your** business.

    **c.** EXTRA EXPENSE does not include:

        **(1)** Any loss of income.

        **(2)** Costs that would have been incurred in conducting the business during the same period had no physical loss or damage happened.

        **(3)** Costs of permanent repair or replacement of property that has been damaged or destroyed.

        **(4)** Any expense recoverable elsewhere in this Policy.

**3.** LEASEHOLD INTEREST

    **a.** **We** cover the following:

        **(1)** If the lease agreement requires continuation of rent as a result of a **covered loss**, and if the **covered property** is wholly or partially untenantable or unusable, the actual rent payable while the **covered property** is untenantable or until the lease is terminated, but not exceeding the unexpired term of the lease.

        **(2)** If the **covered property** is partially untenantable, **we** cover the proportion of the lease payment for that portion of the untenantable **covered property**.

    **b.** If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law, **we** cover the additional cost to rent similar space for the unexpired term of the lease for the damaged property. That loss will be computed at present value, compounded annually at the prime rate plus 2%, as published in the Wall Street Journal on the date the lease terminated. The additional cost will consider the excess rent paid for the same or similar replacement property over actual rent of the original lease, plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the lease.

    **c.** As respects LEASEHOLD INTEREST, the following applies:

        **(1)** **We** do not cover loss directly resulting from physical loss or damage to **personal property**.

        **(2)** TIME ELEMENT EXCLUSIONS **D.1.**, **D.2.** and **D.3.** do not apply and the following applies instead:

            **We** do not cover any increase in loss resulting from the suspension, lapse or cancellation of any license, or from **you** exercising an option to cancel the lease; or from any act or omission by **you** that constitutes a default under the lease.

**4.** RENTAL INSURANCE

**a.** **We** cover **your** actual loss sustained of rental income during the PERIOD OF LIABILITY for:

    **(1)** The fair rental value of any portion of rental property occupied by **you**;

    **(2)** The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

    **(3)** The rental income from the rented portions of such property according to written leases, contracts or agreements in force at the time of loss,

    all not to include non-continuing charges and expenses.

**b.** RENTAL INSURANCE Exclusions: As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS **D.1.** does not apply and the following applies instead:

    **We** do not cover any loss of rental income during any period in which the covered **location** would not have been tenantable for any reason other than a **covered loss**.

**C.** PERIOD OF LIABILITY

  **1.** The PERIOD OF LIABILITY applying to CONTINGENT TIME ELEMENT, *GROSS EARNINGS*, EXTRA EXPENSE and RENTAL INSURANCE is as follows:

    **a.** For building and equipment, the period:

      **(1)** Starting from the time of physical loss or damage of the type insured; and

      **(2)** Ending when with due diligence and dispatch the building and equipment could be:

        **(a)** Repaired or replaced; and

        **(b)** Made ready for operations,

      under the same or equivalent physical and operating conditions that existed prior to the damage.

      **(3)** Not to be limited by the expiration of this Policy.

    **b.** For building(s) and equipment covered under COURSE OF CONSTRUCTION:

      **(1)** The equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

      **(2)** Due consideration will be given to the actual experience of the business after completion of the construction and startup.

  **2.** The PERIOD OF LIABILITY for *GROSS EARNINGS* and EXTRA EXPENSE also includes the following:

    **a.** For stock-in-process and mercantile stock, including finished goods not manufactured by **you**, the time required with the exercise of due diligence and dispatch:

      **(1)** To restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

      **(2)** To replace physically damaged mercantile stock.

    **b.** For raw materials and supplies, the period of time:

    **(1)** Of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

    **(2)** Limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

**c.** Impounded Water:

    **(1)** Used for any manufacturing purpose, including as a raw material or for power;

    **(2)** Stored behind dams or in reservoirs; and

    **(3)** On any covered **location**,

    that is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, **our** liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond the number of consecutive days, not to exceed the LIMIT OF LIABILITY specified in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced.

**d.** For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

**e.** For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

**3.** The PERIOD OF LIABILITY applying to *GROSS PROFIT* is as follows:

    **a.** The period starting from the time of physical loss or damage of the type insured and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

    **b.** For property under construction, the period starting on the date that production, business operation or service would have commenced if physical damage of the type insured had not happened and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations, during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

The *Rate of Gross Profit* and *Standard Sales* will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

**4.** The PERIOD OF LIABILITY does not include any additional time due to **your** inability to resume operations for any reason, including:

    **a.** Making changes to equipment;

    **b.** Making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION clause in the PROPERTY DAMAGE section; and

    **c.** Re-staffing or retraining employees.

If two or more PERIODS OF LIABILITY apply, such periods will not be cumulative.

**D.** TIME ELEMENT EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

**1.** Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

  **a.** Physical loss or damage not insured by this Policy on or off of the covered **location**.

  **b.** Planned or rescheduled shutdown.

  **c.** Strikes or other work stoppage.

  **d.** Any reason other than physical loss or damage insured under this Policy.

**2.** Any increase in loss due to:

  **a.** Suspension, cancellation or lapse of any lease, contract, license or orders.

  **b.** Damages for breach of contract or for late or noncompletion of orders.

  **c.** Fines or penalties.

  **d.** Any other consequential or remote loss.

**3.** Any loss resulting from physical loss or damage to finished goods manufactured by **you**, or the time required for their reproduction.

**E.** TIME ELEMENT COVERAGES AND LIMITATIONS

TIME ELEMENT COVERAGES are extended to include the following, subject to all Policy terms, conditions and exclusions, and the time, distance and/or dollar amounts specified in the LIMITS OF LIABILITY Table in the Declarations:

**1.** *ATTRACTION PROPERTY*

  **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by this Policy to property of the type insured at an *attraction property* within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of time that:

    **(1)** Starts at the time such physical loss or damage happens;

    **(2)** Ends when the *attraction property* is:

      **(a)** Repaired or replaced; and

      **(b)** Made ready for operations.

  **b.** As used in this TIME ELEMENT COVERAGE AND LIMITATION, the term *attraction property* is a property that:

    **(1)** Is operated by others; and

    **(2)** **You** depend on to attract customers to **your** covered **location.**

**2.** CIVIL OR MILITARY AUTHORITY

  **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the *period of interruption* if an order of civil or military authority prohibits access to a covered **location** provided such order is caused by

physical loss or damage of the type insured by this Policy at a covered **location** or within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION does not apply to LEASEHOLD INTEREST.

**c.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time:

   **(1)** Starting at the time of such direct physical loss or damage; and

   **(2)** Continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

   This period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

**3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE

   **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from the failure of **your electronic data processing equipment** or media to operate, provided that such failure is the direct result of a malicious act directed at **you**.

   **b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the *period of interruption* is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

   **c.** As used above, the *period of interruption:*

   **(1)** Is the period starting when **your electronic data processing equipment** or media fails to operate and ending when with due diligence and dispatch, **your electronic data processing equipment** or media could be restored to the same or equivalent operating condition that existed prior to the failure.

   **(2)** Does not include the additional time to make changes to **your electronic data processing equipment** or media.

**4.** CONTINGENT TIME ELEMENT

   **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at *Direct Dependent Time Element* **Location(s)** and *Indirect Dependent Time Element* **Location(s)** located within the territory of this Policy.

   **b.** **You** agree to take every reasonable and necessary action to mitigate the loss payable hereunder.

**c.** As used in this Policy, *Direct Dependent Time Element* **Location(s)** are:

    **(1)** Any **location(s)** of a direct: customer, supplier, contract manufacturer or contract service provider to **you**; or

    **(2)** Any **location(s)** of any company under a royalty, licensing fee or commission agreement with **you.**

    *Direct Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from **you**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**d.** As used in this Policy, *Indirect Dependent Time Element* **Location(s)** are:

    **(1)** Any **location(s)** of any company that is a direct: customer, supplier, contract manufacturer or contract service provider to **your** *Direct Dependent Time Element* **Location(s)**.

    *Indirect Dependent Time Element* **Location(s)** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from, the *Direct Dependent Time Element* **Location(s)** or the *Indirect Dependent Time Element* **Location(s)**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

**e.** As respects CONTINGENT TIME ELEMENT:

    **(1)** Exclusion **D.3** in the TIME ELEMENT EXCLUSIONS does not apply.

**5.** CRISIS MANAGEMENT

    **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY if an order of civil or military authority prohibits access to a covered **location**, but only if such order is a direct result of a violent crime, suicide, attempted suicide or armed robbery at such covered **location**.

    **b.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, coverage applies:

        **(1)** Only when the PERIOD OF LIABILITY is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations; and

        **(2)** For up to the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations, not to exceed the specified LIMIT OF LIABILITY.

    The PERIOD OF LIABILITY is the period of time when the time the civil or military authority prohibits access and continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

**6.** DELAY IN STARTUP

    **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations resulting directly from physical loss or damage to **covered property** as provided under COURSE OF CONSTRUCTION.

**7.** EXTENDED PERIOD OF LIABILITY

    **a.** We cover the *GROSS EARNINGS* loss sustained due to the reduction in sales resulting from:

        **(1)** The interruption of business;

        **(2)** Commencing with the date on which our liability for loss resulting from interruption of business would terminate if this TIME ELEMENT COVERAGE AND LIMITATION had not been included in this Policy; and

**(3)** Continuing for such additional length of time as would be required with the exercise of due diligence and dispatch to restore **your** business to the condition that would have existed had no loss occurred, but no longer than the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** Coverage under this TIME ELEMENT COVERAGE AND LIMITATION for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the EXTENDED PERIOD OF LIABILITY described in Item **7.a.** above.

**c.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, Item **D.2.** in the TIME ELEMENT EXCLUSIONS in this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or non-completion of orders, or fines or penalties.

**8.** INGRESS / EGRESS

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE due to the necessary interruption of **your** business if ingress to or egress from a covered **location** is prevented, whether or not **your** premises or property is damaged, provided that such prevention is a direct result of physical loss or damage of the type insured to property of the type insured.

**b.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time starting at the time of such direct physical loss or damage, and continuing until ingress or egress is no longer prevented, or for the time limit specified in the LIMITS OF LIABILITY Table in the Declarations, whichever is less.

**9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the period of service interruption at a covered **location** when the loss is caused by:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

from physical loss or damage of the type insured, at the facilities of the supplier of such service located within this Policy's territory that immediately prevents in whole or in part the delivery of such usable services.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the period of service interruption as described below is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** The period of service interruption is:

**(1)** The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could have resumed normal operations following the restoration of service under the same or equivalent physical and operating conditions that existed prior to the interruption of such services;

**(2)** Is limited to only those hours during which **you** could have used service(s) if it had been available;

**(3)** Does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

**d.** Additional General Provisions:

**(1) You** will immediately notify the suppliers of services of any interruption of any such services.

**(2) We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

**e. We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**10.** ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a. We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from direct physical loss or damage of the type insured to the following property located at or within one-thousand (1,000) feet of a covered **location**:

**(1)** Electrical equipment and equipment used for the transmission of voice, data or video.

**(2)** Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission systems.

**11.** PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT

**a. We** cover **your** actual loss sustained for a period of time not to exceed forty eight (48) hours prior to and forty eight (48) hours after **you** first took reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage of the type insured to such **covered property**.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the direct physical loss or damage occurred.

**12.** RELATED **LOCATIONS**

If **you** report values at related **locations** used by **you** (e.g. branch stores, retail outlets and other facilities), but such related **locations** are not listed on the latest Schedule of Covered **Locations** submitted to, accepted by and on file with **us**, and if a TIME ELEMENT loss results at such related **locations** due to **covered loss**, **we** cover such resulting TIME ELEMENT loss in accordance with the terms and conditions of this Policy.

**13.** RESEARCH AND DEVELOPMENT

**a. We** cover **your** actual loss sustained of fixed charges and **ordinary payroll** directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a **covered loss**.

**b. We** cover these fixed charges only to the extent they continue after the **covered loss** and only during the PERIOD OF LIABILITY.

**c.** To the extent **you** are able to resume operations, **we** cover only that portion of the fixed charges related to that part of the research and development operation that has not yet been restored.

**14.** SOFT COSTS

**a. We** cover **your** actual loss sustained of *Soft Costs* during the *period of delay* directly resulting from a delay of completion of **covered property** under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS.

 © 2016 Liberty Mutual Insurance

**b.** *Soft Costs* are costs over and above those that are normal at a covered **location** undergoing renovation or in the course of construction, limited to the following:

    **(1)** Construction loan fees – **your** additional cost to rearrange loans necessary for the completion of construction, repairs or reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

    **(2)** Commitment fees, leasing and marketing expenses – the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

    **(3)** Additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction repairs or reconstruction.

    **(4)** Property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**c.** *Period of delay* is the period of time between:

    **(1)** The date on which the construction, alteration, extension or renovation would have been complete in the absence of a **covered loss** to property under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS; and

    **(2)** The date on which construction, alteration, extension or renovation is actually complete.

# SECTION IV – DESCRIBED LOSSES

**We** only cover the following DESCRIBED LOSSES as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

## A. *EARTH MOVEMENT*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *EARTH MOVEMENT*.

2. **You** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

3. *EARTH MOVEMENT* is:

   Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption; regardless of any other cause or event contributing concurrently or in any other sequence of loss.

   However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

## B. *EARTH MOVEMENT* SPRINKLER LEAKAGE

1. **We** cover physical loss or damage to **covered property,** including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, resulting from sprinkler leakage caused by *EARTH MOVEMENT*.

## C. *EQUIPMENT BREAKDOWN*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS, as provided by this Policy if such loss or damage is caused by an *accident* to *covered equipment*.

   The coverage provided in this DESCRIBED LOSS is limited to loss or damage caused by an *accident* to *covered equipment*. **We** will not pay for physical loss or damage from any other cause under this DESCRIBED LOSS.

   The following coverages apply solely to Equipment Breakdown:

   a. Spoilage Damage

      **We** cover physical loss or damage caused by change in temperature or humidity or by the interruption of power, heat, air-conditioning, or refrigeration as the result of an *accident* to *covered equipment*.

   b. Ammonia **Contamination**

      **We** cover physical loss or damage to **covered property** contaminated by ammonia, including any salvage expense as a direct result of an *accident* to *covered equipment*. No coverage for Ammonia **Contamination** is available under DECONTAMINATION COSTS with respects to an *accident* to *covered equipment.*

 © 2016 Liberty Mutual Insurance

**2.** Conditions

   **a.** Suspension

     If coverage for Equipment Breakdown is provided by this Policy, and **we** discover a dangerous condition relating to an object, **we** may immediately suspend the insurance provided by this coverage for that *covered equipment* by written notice mailed or delivered to **you** either at **your** address or at the **location** of any object. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this Policy. **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

**3.** Valuation

   If *covered equipment* requires replacement due to an *accident*, **we** cover **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

   **a.** However, **we** do not cover more than 150% of what the cost would have been to repair or replace *covered equipment* with like kind and quality.

   **b.** This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable LIMIT OF LIABILITY.

   **c.** The PERIOD OF LIABILITY will not be increased by any of the above.

**4.** Definitions

   **a.** *Accident:* Physical loss or damage to *covered equipment* that necessitates its repair or replacement due to:

     **(1)** Failure of pressure or vacuum equipment;

     **(2)** Mechanical breakdown including rupture or bursting caused by centrifugal force;

     **(3)** Artificially generated electrical current, including electrical arcing that damages electrical devices, appliances or wires; or

     **(4)** Explosion of:

       **(a)** Steam boiler

       **(b)** Electric steam generator

       **(c)** Steam piping

       **(d)** Steam turbine

       **(e)** Moving or rotating machinery when such explosion is caused by centrifugal force,

     unless such loss or damage is otherwise excluded within this Policy.

     *Accident* does not include:

     **(5)** Fire, including water or other means used to extinguish the fire;

     **(6)** Malfunction, misalignment, miscalibration, tripping off line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning or by the performance of maintenance;

(7) Combustion explosion;

(8) Discharge of molten material from equipment including the heat from such discharged materials;

(9) Lightning;

(10) Depletion, deterioration, rust, corrosion, erosion, settling, or wear or tear or any other gradually developing condition;

(11) Defects, erasures, error limitations or viruses in computer equipment and programs including the inability to recognize and process any date or time or provide instructions to *covered equipment*;

(12) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(13) Damage to any structure or foundation supporting the *covered equipment* or any of its parts;

(14) Any loss or damage caused by or resulting from any type of electrical insulation breakdown test;

(15) Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test;

(16) The functioning of any safety or protective device; or

(17) The cracking of any part on an internal combustion turbine exposed to the products of combustion.

**b.** *Covered equipment*:

(1) Equipment that generates, transmits, controls or utilizes energy; including electronic communications and data processing equipment; and

(2) Equipment which, during normal usage, operates under vacuum or pressure, other than weight of contents.

*Covered equipment* does not mean or include:

(3) **Electronic data**;

(4) Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

(5) Insulating or refractory material;

(6) Nonmetallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or other appropriate and approved code;

(7) Catalyst;

(8) Buried vessels or piping; waste, drainage or sewer piping; piping, valves or fittings forming part of a sprinkler or fire suppression system; water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

(9) Structure, foundation, cabinet or compartment supporting or containing the *covered equipment* or part of the *covered equipment* including penstock, draft tube or well casing;

(10) Vehicle or any *covered equipment* that is mounted on or used solely with a vehicle;

 © 2016 Liberty Mutual Insurance

**(11)** Dragline, excavation or construction equipment including any *covered equipment* that is mounted on or used solely with any one or more dragline(s), excavation or construction equipment;

**(12)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, nonelectrical cable, chain, belt, rope, clutch plate, brake pad, nonmetal part or tool subject to periodic replacement;

**(13)** Cyclotron used for other than medical purposes, satellite or spacecraft including any *covered equipment* mounted on or used solely with any satellite or spacecraft;

**(14)** Equipment manufactured by **you** for sale.

**c.** *Production machinery* is any machine or apparatus that processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in process or finished products including any *covered equipment* that is mounted on or used solely with any one or more production machines or apparatus.

### D. *FLOOD*

**1.** **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *FLOOD*.

**2.** *FLOOD* is:

**a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

**b.** Sewer back-up resulting from any of the foregoing; or

**c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.

**Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

### E. *NAMED STORM*

**1.** **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from a *NAMED STORM*. However, physical loss or damage caused by fire, explosion, sprinkler leakage or *FLOOD* will not be considered loss by *NAMED STORM* within the terms and conditions of this Policy.

**2.** **You** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

*NAMED STORM* is any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any authorized meteorological authority in the country where the storm or weather disturbance happened.

# SECTION V - GENERAL POLICY CONDITIONS

**A.** ASSIGNMENT

**Your** assignment of this Policy will not be valid except with **our** written consent.

**B.** CANCELLATION

1. **You** may cancel this Policy by mailing or delivering to **us** advance written notice of cancellation.

2. **We** may cancel this Policy by mailing or delivering to **you** written notice of cancellation at least:

   **a.** ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   **b.** thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason.

3. **We** will mail or deliver **our** written notice of cancellation to **your** last mailing address known to **us**.

4. **Our** written notice of cancellation will state the effective date of cancellation and the Policy period will end on that date.

5. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void, if with the actual intent to deceive

1. **You**;

2. **Your** representatives; or

3. Any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning:

   **a.** This Policy;

   **b.** The **covered property**;

   **c.** **Your** interest in the **covered property**; or

   **d.** A claim under this Policy.

**D.** CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by **us** shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for covered **locations** within such jurisdictions.

**E.** INSPECTION

1. During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards.

2. This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

   **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

1. When specified in the Policy or in Certificates of Insurance on file with **us**, **we** cover loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear.

2. The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

   **a.** Any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

   **b.** Foreclosure, notice of sale, or similar proceedings with respect to the property, but only to the extent of a deficiency as provided by state law.

   **c.** Change in the title or ownership of the property.

   **d.** Change to a more hazardous occupancy.

   The Lender or Mortgagee will notify **us** of any known change in ownership, occupancy, or hazard and, within ten (10) days of **our** written request, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

3. If this Policy is cancelled at **your** request or by the request of **your** agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after **we** send to the Lender or Mortgagee written notice of cancellation, unless:

   **a.** Sooner terminated by authorization, consent, approval, acceptance, or ratification of **your** action by the Lender or Mortgagee, or its agent.

   **b.** This Policy is replaced by **you**, with a Policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement Policy, notwithstanding any other provision of this Policy.

 © 2016 Liberty Mutual Insurance

4. **We** may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, **we** may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

5. If **we** pay the Lender or Mortgagee for any loss, and deny payment to the debtor, mortgagor or owner, **we** will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At **our** option, **we** may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to **us**, and the remaining debt or mortgage will be paid to **us**.

6. If **you** fail to render proof of loss, the Lender or Mortgagee, upon notice of **your** failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, COMPANY OPTION, and SUIT AGAINST THE COMPANY.

7. In the event of a claim, upon request by **us**, the Lender or Mortgagee will cooperate in any claim investigation.

8. In no event will the amount payable to a Lender or Mortgagee exceed the amount which would otherwise have been payable to **you.**

**G.** LIBERALIZATION

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute in any State or jurisdiction within the United States of America so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to **your** benefit within such jurisdiction, effective the date of the change specified in such statute.

**H.** NO REDUCTION BY LOSS

Except for those coverages written with an **annual aggregate** LIMIT OF LIABILITY, **we** cover a **covered loss** without reducing any other applicable LIMIT OF LIABILITY. The reinstatement of any exhausted **annual aggregate** is not permitted unless authorized by **us** in writing.

**I.** NONRENEWAL

1. If **we** decide not to renew this Policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this Policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

2. Proof of mailing will be sufficient evidence of notice.

**J.** OTHER INSURANCE

1. **We** will not be liable if, at the time of loss or damage, there is any other insurance that would apply in the absence of this Policy; except that this Policy will apply only as excess or DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS and in no event as contributing insurance, and then only after all other insurance has been exhausted, notwithstanding paragraph **5.** below.

2. **We** will not be liable if, at the time of loss or damage, there is any insurance with the National Flood Insurance Program (NFIP), except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

3. **We** will not be liable if, at the time of loss or damage, there is any insurance for the construction of new buildings and additions under a specific policy for the construction of such new buildings and additions, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

4. **We** will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

5. If this Policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable LIMIT OF LIABILITY. **Our** share will be the proportion that the applicable LIMIT OF LIABILITY of this Policy bears to the total applicable LIMITS OF LIABILITY available from all insurance.

6. **You** are permitted to have other insurance over any LIMITS OF LIABILITY specified in this Policy.

7. The existence of such insurance will not reduce any LIMIT OF LIABILITY in this Policy.

8. To the extent this Policy replaces another Policy, coverage under this Policy shall not become effective until such other Policy has terminated.

9. **You** are permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only as excess and only after such other insurance has been exhausted.

### K. PAIR, SET OR PARTS

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1. The cost to repair or replace any part to restore the pair or set to its value before the loss; or

2. The difference between the value of the pair or set before and after the loss.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

### L. POLICY MODIFICATION

This Policy contains all of the agreements between **you** and **us** concerning this insurance. **You** and **we** may request changes to this Policy. Only endorsements issued by **us** and made a part of this Policy can change this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not create a waiver or change any part of this Policy or prevent **us** from asserting any rights under the Policy.

### M. TITLES

The titles of the paragraphs of this Policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

### N. TRANSFER OF RIGHTS AND DUTIES

**Your** rights and duties under this Policy may not be transferred without us giving written consent.

### O. VACANCY

1. If any of **your real property** is vacant at the inception of this Policy, or becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the Policy period, **you** must:

   a. Notify **us** in writing of the vacancy prior to loss or damage; and

   b. Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include:

      (1) Automatic sprinkler systems;
      (2) Fire alarm systems;
      (3) Guard or watchman services;
      (4) Burglary systems; and
      (5) Monitoring systems.

2. If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this Policy, **we** will:

   a. Not pay for any loss or damage caused by or resulting from any of the following:

      (1) Breakage of building glass;
      (2) Mold, mildew or fungus;
      (3) Sprinkler leakage, unless the system has been protected against freezing;
      (4) Theft or attempted theft;
      (5) Vandalism;
      (6) Malicious mischief; or
      (7) Water damage.

   b. Not pay under DEMOLITION AND INCREASED COST OF CONSTRUCTION;

   c. Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the lesser of:

      (1) The **actual cash value**;
      (2) The actual cost to repair; or
      (3) The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

3. **Real property** is considered vacant when it does not contain sufficient property and personnel to conduct **your** customary business operations.

4. **Real property** is not considered vacant during its ongoing construction or renovation.


**P.** VALUATION

1. Adjustment of the physical loss or damage amount under this Policy will be computed as of the date of loss or damage at the place of the loss or damage. Unless stated otherwise in a PROPERTY DAMAGE COVERAGE AND LIMITATION, adjustment of physical loss or damage to **covered property** will be subject to the following:

   a. On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

   b. On finished goods manufactured by **you**, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no physical loss or damage happened.

   c. On raw materials, supplies or merchandise not manufactured by **you**:

(1) If repaired or replaced, **your** actual expenditure in repairing or replacing the damaged or destroyed property; or

(2) If not repaired or replaced, the **actual cash value**.

d. On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

e. On property that is:

(1) Damaged by fire that directly results from **terrorism** or nuclear reaction; and

(2) Is located in a jurisdiction that has a statute that expressly prohibits the exclusion of fire losses resulting from **terrorism** or nuclear reaction,

the **actual cash value** of the fire damage. Any remaining fire damage not attributable to **terrorism** or nuclear reaction shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy.

f. On computer equipment of others which **you** are required to insure for direct physical loss or damage while being installed, maintained or repaired, the cost to replace with new if so specified in the contract between **you** and **your** customer.

g. On Data, Programs and Software, the actual cost incurred to repair, replace or restore data, programs or software including the costs to recreate and research.

h. On **Fine Arts**, the loss amount will not exceed the lesser of the following:

(1) The cost to repair or restore such property to the physical condition that existed on the date of loss;

(2) The cost to replace; or

(3) The stated value on file with **us**.

i. On all other property, the lesser of the following:

(1) The cost to repair.

(2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

(3) The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

(4) The selling price of **real property** or machinery and equipment, other than stock, offered for sale on the date of loss.

(5) The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

(6) The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

 © 2016 Liberty Mutual Insurance

**(7)** The unamortized value of improvements and betterments, if such property is not repaired or replaced at **your** expense.

**(8)** The **actual cash value** if such property is:

   **(a)** Useless to **you**; or

   **(b)** Not repaired, replaced or rebuilt on the same or another site within two (2) years from the date of loss, unless such time is extended by **us**.

**2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

**3.** **We** will not pay more than **your** financial interest in the **covered property**.

 © 2016 Liberty Mutual Insurance

# SECTION VI – LOSS CONDITIONS

**A.** ABANDONMENT OF PROPERTY

**You** may not abandon property to **us**.

**B.** APPRAISAL

1. If **you** and **we** fail to agree on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** occurred, to select an umpire.

3. The appraisers will then determine the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will determine the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

**C.** COLLECTION FROM OTHERS

**We** will reduce any payment to **you** for a **covered loss** to the extent **you** have collected for that loss from others.

**D.** COMPANY OPTION

1. In the event of **covered loss**, **we** may, at **our** option, either:

   **a.** Pay the value of **covered property** lost, damaged or destroyed as set forth in VALUATION above;

   **b.** Pay the cost of repairing or replacing the **covered property** lost, damaged or destroyed;

   **c.** Take all or any part of the **covered property** at any agreed valuation; or

   **d.** Repair, rebuild or replace the **covered property** with other property of like kind and quality.

2. **We** will give notice of **our** intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

**E.** DUTIES AFTER A LOSS

In case of loss **you** will:

1. Give **us** immediate written notice of the loss;

2. Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

3. As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;
4. Take all reasonable steps to protect the **covered property** from further damage;

5.  Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

6.  Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the Policy;

7.  Keep an accurate record of all repair costs;

8.  Keep all bills, receipts and related documents that establish the amount of loss;

9.  As often as may reasonably be required:

    a.  Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

    b.  Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

    c.  Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

    The time and cause of the loss;

    a.  **Your** interest and the interest of all others in the property involved;

    b.  Any other policies of insurance that may provide coverage for the loss;

    c.  Any changes in title or occupancy of the property during the Policy period; and

    d.  The amount of **your** claimed loss.

    **You** shall also submit with the Proof of Loss:

    (1) A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

    (2) An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

    (3) Specifications for any damaged building; and

    (4) Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

## F. LOSS ADJUSTMENT / PAYABLE

Loss will be adjusted with the First Named Insured. **We** may, at **our** option, adjust the loss to property of others directly with the owner of the property. Such loss will be payable to the First Named Insured or as may be directed by the First Named Insured.

Additional insured interests will also be included in loss payment as their interests may appear  when named as additional named insured, lender, mortgagee and/or loss payee either on a  Certificate of Insurance or other evidence of insurance on file with **us**.  When named on a Certificate of Insurance or other evidence of insurance, such additional interests  are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance.  The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of  this Policy.

## G. PAYMENT OF LOSS

**We** will pay the insured loss within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

1. **You** have complied with all the terms of this Policy;

2. **We** have reached agreement with **you** on the amount of the loss, or

3. Within thirty (30) days of when an appraisal award is made as provided for in LOSS CONDITIONS **B.** APPRAISAL.

## H. SUBROGATION

1. If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

2. **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

## I. SUIT AGAINST THE COMPANY

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years next after the inception of the loss.

# SECTION VII – DEFINITIONS

1. **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, with proper deduction for physical depreciation and obsolescence, but in no event more than the fair market value.

2. **Annual aggregate**: The maximum amount of loss or damage payable in any one (1) Policy year regardless of the number of **occurrences** within the same Policy year.

3. **Contaminant**: Any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

4. **Contamination**: Any condition of property that results from a **contaminant**.

5. **Covered loss**: A loss to **covered property** caused by direct physical loss or damage insured by this Policy.

6. **Covered property**: Property insured by this Policy.

7. **Electronic Data**: Information (including computer programs) stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, drives, **electronic data processing equipment** or any storage medium.

8. **Electronic data processing equipment:** Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether **your** property or not.

9. **Fine Arts**: Property of rarity, historical value, antiquity or artistic merit, including paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains

10. **Land improvements**: Landscape gardening, car parks, parking lots, pavement, roadways, sidewalks, walkways, railways or transformer enclosures; but does not include fill beneath such property, including buildings, structures or additions.

11. **Location(s)**:

    a. As specified in Appendix A – Schedule of Covered **Location(s)**;

    b. Listed on a SCHEDULE on file with **us;** or

    c. If not so specified in Appendix A – Schedule of Covered **Location(s)** or listed on a SCHEDULE on file with **us**, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

12. **Miscellaneous Unnamed Location**: A **location** owned, leased or rented by **you**, but not listed in a Schedule of **locations** on file with **us** or attached to this Policy.

    **Miscellaneous Unnamed Location** does not include:

    a. Newly Acquired **Locations**; or

    b. A **location** for which coverage is found elsewhere in this Policy including ERRORS AND OMISSIONS.

13. **Occurrence**: All loss or damage attributable directly or indirectly to one (1) cause or series of similar

causes. All such loss or damage will be added together and the total loss or damage will be treated as one (1) **occurrence.**

Unless otherwise amended by an endorsement attached to this Policy:

**a.** All loss or damage resulting from a continuous *FLOOD* event, irrespective of the amount of time or area over which such loss or damage occurs, will be considered a single **occurrence**.

**b.** All loss or damage from *EARTH MOVEMENT* or *NAMED STORM* within the time specified in the **OCCURRENCE** TIME SPECIFICATIONS will be considered a single **occurrence**.

**14. Ordinary payroll**: Payroll expenses for all of **your** employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums **you** pay.

**15. Personal Property**: **Your** tangible things, other than **real property** owned by **you** and used in **your** business, including:

    **a.** Furniture, fixtures, machinery, **electronic data processing equipment** and stock;

    **b.** Materials, supplies, machinery, equipment and fixtures, including those that are *personal property of others*, which are intended by **you** for use in construction of new additions and buildings at an existing covered **location**, that **you** begin to construct during the Policy period and intend to own or occupy once constructed, while located on the construction site awaiting use in construction.

    **c.** Property, other than **real property**, **you** lease for use in **your** business that **you** have a responsibility to insure;

    **d.** **Your** interest in improvements and betterments **you** have made in buildings **you** do not own;

    **e.** **Your valuable papers and records**.

**16. Real Property**: Building(s) and any other structure, including:

    **a.** New buildings and additions under construction, in which **you** have an insurable interest;

    **b.** Completed additions, extensions or permanent fixtures;

    **c.** Machinery and equipment used to service the buildings;

    **d.** Yard Fixtures.

**17. Terrorism**: Activities against persons, organizations or property of any nature:

    **a.** That involve the following or preparation for the following:

        **(1)** Use or threat of force or violence; or

        **(2)** Commission or threat of a dangerous act; or

        **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**18. Valuable papers and records**: Written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

**19. We, us** and **our(s)**: The company issuing this Policy, as shown on the Declarations.

**20. You** and **your(s)**: The First Named Insured shown on the Declarations.

 © 2016 Liberty Mutual Insurance

## APPENDIX A - SCHEDULE OF COVERED LOCATIONS

Per schedule on file with us

## APPENDIX B - NEW MADRID EARTH MOVEMENT ZONES

| STATE | ZONE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------|------------------------------------------|
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Green,  Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St. Francis, White, Woodruff |
| ARKANSAS | 2 | Arkansas, Fulton, Izard, Lonoke, Prairie, Sharp, |
| ILLINOIS | 1 | Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, Washington, Williamson |
| ILLINOIS | 2 | Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Jasper, Lawrence, Madison, Marion, Monroe, Richland, Saint Clair, Wabash, Wayne, White |
| INDIANA | 2 | Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick |
| KENTUCKY | 1 | Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, McCracken, |
| KENTUCKY | 2 | Caldwell, Christian, Daviess, Henderson, Hopkins, McLean, Muhlenberg, Todd, Trigg, Union, Webster |
| MISSISSIPPI | 1 | DeSoto, Marshall, Tate, Tunica |
| MISSISSIPPI | 2 | Alcorn, Benton, Coahoma, Lafayette, Panola, Quitman, Tippah |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Madison, Mississippi, New Madrid, Pemiscott, Perry, Ripley, Scott, Stoddard, Wayne |
| MISSOURI | 2 | Independent City of St. Louis, Iron, Jefferson, Oregon, Reynolds, Shannon, St. Francois, St. Louis, Ste. Genevieve, Washington |
| TENNESSEE | 1 | Benton, Carroll, Chester, Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Henderson, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, Weakley |
| TENNESSEE | 2 | Decatur, Hardin, Houston, Humphreys, McNairy, Montgomery, Perry, Stewart, |

 © 2016 Liberty Mutual Insurance

## APPENDIX C - PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE

| REGION / STATE | COUNTIES / COORDINATES |
|---|---|
| CANADA: BRITISH COLUMBIA and VANCOUVER ISLAND | South of 50° N latitude and west of 120° W longitude |
| OREGON | Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill |
| WASHINGTON | Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom |

## APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

SOUTHERN TIER ONE: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantly, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Pierce, Wayne |
| Louisiana | Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Tyrrell, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |

 © 2016 Liberty Mutual Insurance

## APPENDIX D (continued)

### *NAMED STORM* TIERS FOR USA INCLUDING
### ITS COMMONWEALTHS AND TERRITORIES

#### NORTHERN TIER ONE: VIRGINIA TO MAINE

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------------------------------------------|
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Sussex |
| Maine | Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington, York |
| Maryland | Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Rockingham |
| New Jersey | Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk |
| Rhode Island | Bristol, Newport, Washington |
| Virginia | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York |
| | Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg |

#### SOUTHERN TIER TWO: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------------------------------------------|
| Alabama | Clarke, Coffee, Conecuh, Covington, Dale, Escambia, Geneva, Houston, Monroe, Washington |
| Louisiana | Allen, Avoyelles, Beauregard, Evangeline, St. Helena, St. Landry, West Feliciana |
| Mississippi | Forrest, Greene, Jones, Lamar, Marion, Perry, Pike, Walthall, Wayne |
| North Carolina | Cumberland, Edgecombe, Greene, Johnston, Robeson, Sampson, Wilson |
| South Carolina | Bamberg, Calhoun, Clarendon, Dillon, Florence, Hampton, Marion, Orangeburg |
| Texas | Austin, Brazos, Colorado, De Witt, Duval, Fayette, Gonzales, Grimes, Jim Hogg, Karnes, Lavaca, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Walker, Waller, Washington |

 © 2016 Liberty Mutual Insurance

## APPENDIX D (continued)

### *NAMED STORM* TIERS FOR USA INCLUDING
### ITS COMMONWEALTHS AND TERRITORIES

| Other States, Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | **TIER** | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| HAWAII | 1 | Entire State |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

# APPENDIX E - *FLOOD* HAZARD **LOCATIONS**

High Hazard **Location(s)**
NCP

Moderate Hazard **Location(s)**
NCP

## FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this Policy at time of issue:

| Form or Endorsement Number | Form or Endorsement Name |
| --- | --- |
| CNP 90 06 01 20 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| CNP 90 10 01 19 | Important Notice Regarding The Expiration of the Terrorism Risk Insurance Act and the Reduction in Coverage for Terrorism Losses |
| CNI 90 11 07 18 | Reporting a Commercial Claim 24 Hours a Day |
| SNI 04 01 01 20 | Liberty Mutual Group California Privacy Notice |
| PY 04 04 01 17 | Exclusion of Certified Acts of Terrorism |

   © 2016 Liberty Mutual Insurance

## STATE AMENDATORY ENDORSEMENTS

| Endorsement Number | Endorsement Name |
|---|---|
| PY 01 37 01 17 | Washington Changes |
| PY 02 49 01 17 | Washington Changes - Cancellation and Nonrenewal |

Policy Number  YAC-L9L-450425-030
Issued by  Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

**We** will not pay for loss or damage directly or indirectly caused by or resulting from a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence.

**C.** Exception Covering Certain Fire Losses

The following exception to the exclusion in Paragraph **B.** applies only in the following states: California, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, U.S. Virgin Islands, Washington, West Virginia, and Wisconsin.

If a "certified act of terrorism" results in fire, **we** will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to **covered property**. Therefore, for example, the coverage does not apply to insurance provided under TIME ELEMENT.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.** Application Of Exclusions

The terms and limitations of SECTION **II.C.** EXCLUSIONS, **2.a.** do not serve to create coverage for any loss which would otherwise be excluded under this endorsement or the Policy, such as losses excluded under SECTION **II.C.** EXCLUSIONS, **2. b.**, **c.**, **d.**, or **e.**

   © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  YAC-L9L-450425-030
Issued by  Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WASHINGTON CHANGES**

This endorsement applies only to **covered property** located in Washington and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™
EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

**H.** JURISDICTION

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** The first paragraph of item **2.** of SECTION II – PROPERTY DAMAGE, **C.** EXCLUSIONS is replaced with the following:

**We** do not cover any of the excluded events listed below.  Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**C.** Paragraph **i.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is replaced by the following:

**i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

**(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

**(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

This exclusion will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Paragraph **3.** of SECTION IV – DESCRIBED LOSSES, **A.** EARTH MOVEMENT is replaced by the following:

**3.** *EARTH MOVEMENT* is:

Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**E.** Paragraph **2.** of SECTION IV – DESCRIBED LOSSES, **D.** FLOOD is replaced by the following:

**2.** *FLOOD* is:

**a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

**b.** Sewer back-up resulting from any of the foregoing; or

**c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

**F.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void if **you** intentionally conceal or misrepresent any material fact or circumstance relating to it.

However, this will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

**G.** Paragraph **E.** INSPECTION of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

  **E.** INSPECTION

  **1.** During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards. **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

  **2.** This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**H.** Paragraph **F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS of SECTION V - GENERAL POLICY CONDITIONS is deleted and replaced by endorsement PY 03 21 Washington Lender's Loss Payable Endorsement as required by the Washington Insurance Commissioner.

**I.** Paragraph **5.** of SECTION V - GENERAL POLICY CONDITIONS, OTHER INSURANCE is replaced by the following:

  **5.** **You** may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If **you** do, **we** will pay **our** share of the **covered loss** or damage. **Our** share is the proportion that the applicable LIMIT OF LIABILITY under this Policy bears to the limits of liability of all insurance covering on the same basis.

**J.** Paragraph **2.** of SECTION V - GENERAL POLICY CONDITIONS, VALUATION is replaced by the following:

  **2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or *replacement cost* basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

  *Replacement cost* means the cost to replace **covered property**:

  **a.** With new materials of like kind and quality and used for the same purpose; and

  **b.** At the location where the loss happened.

  But *replacement cost* excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

**K.** Paragraph **2.** of SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is replaced by the following:

  **2.** **We** will be entitled to a recovery only after **you** have been fully compensated for damages.

**L.** Paragraph **1.** of SECTION VII – DEFINITIONS is replaced by the following:

  **1.** **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, but in no event more than the fair market value.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**M.** Paragraph **B.** of endorsement PY 04 04 EXCLUSION OF CERTIFIED ACTS OF TERRORISM is replaced by the following:

**B.** The following exclusion is added:

CERTIFIED ACT OF TERRORISM EXCLUSION

**We** will not pay for loss or damage caused by or resulting from a "certified act of terrorism". Loss or damage will be considered to have been caused by or resulting from a "certified act of terrorism" if the **occurrence** of that "certified act of terrorism" directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number YAC-L9L-450425-030
Issued by      Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### WASHINGTON CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **B.** CANCELLATION of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

**B.** CANCELLATION

1. **You** may cancel this Policy by notifying **us** or **your** insurance agent or broker in one of the following ways:

   **a.** Written notice by mail, fax or e-mail;

   **b.** Surrender of the Policy or binder; or

   **c.** Verbal notice.

   Upon receipt of such notice, **we** will cancel this Policy or any binder issued as evidence of coverage, effective on the later of the following:

   **a.** The date on which notice is received or the Policy or binder is surrendered; or

   **b.** The date of cancellation requested by **you**.

2. **We** may cancel this Policy by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to **us**, at least:

   **a.** Ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   **b.** Forty-five (45) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason;

   except as provided in Paragraph **3.** below.

3. **We** may cancel the Policy, by mailing or delivering to **you** and **your** insurance agent or broker written notice of cancellation at least five (5) days before the effective date of cancellation for any **real property** where two or more of the following conditions exist:

   **a.** Without reasonable explanation, the **real property** is unoccupied for more than sixty (60) consecutive days, or at least 65% of the rental units are unoccupied for more than one hundred twenty (120) consecutive days, unless the **real property** is maintained for seasonal occupancy or is under construction or repair;

   **b.** Without reasonable explanation, progress toward completion of permanent repairs to the **real property** has not occurred within sixty (60) days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

**PY 02 49 01 17**                    © 2016 Liberty Mutual Insurance                    Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **c.** Because of its physical condition, the **real property** is in danger of collapse;

    **d.** Because of its physical condition, a vacation or demolition order has been issued for the **real property**, or it has been declared unsafe in accordance with applicable law;

    **e.** Fixed and salvageable items have been removed from the **real property**, indicating an intent to vacate the **real property**;

    **f.** Without reasonable explanation, heat, water, sewer and electricity are not furnished for the **real property** for sixty (60) consecutive days; or

    **g.** The **real property** is not maintained in substantial compliance with fire, safety and building codes.

  **4.** **We** will also mail or deliver to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.3.** above, this notice will be the same as that mailed or delivered to **you**. If cancellation is for a reason contained in Paragraph **A.3.** above, **we** will mail or deliver this notice at least twenty (20) days prior to the effective date of cancellation.

  **5.** Notice of cancellation will state the effective date of cancellation. The Policy period will end on that date.

  **6.** If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if **we** have not made or offered a refund.

  **7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The NONRENEWAL provision of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

NONRENEWAL

**We** may decide not to renew this Policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to **you** and **your** insurance agent or broker at their last mailing addresses known to **us**. If notice is mailed, proof of mailing will be sufficient evidence of notice. **We** will also mail to any mortgagee, pledgee or other person shown in this Policy to have an interest in any loss which may be covered under this Policy, at their last mailing address known to **us**, written notice of nonrenewal. **We** will mail or deliver these notices at least sixty (60) days before the:

**1.** Expiration of the Policy; or

**2.** Anniversary date of this Policy if this Policy has been written for a term of more than one (1) year.

If notice of nonrenewal is not received by **you** as outlined above, **you** and **your** insurance agent or broker will receive written notice of **our** intent to renew this Policy. This notice will be sent at least twenty (20) days prior to the Policy expiration or anniversary date. Included in this notice will be changes, if any, in rates, terms, or conditions made to the expiring Policy. **We** will mail or deliver the notice to **you** and **your** insurance agent or broker, at their last mailing address known to **us**.

This notice will not be sent if **we** have received written notice, prior to the expiration date of this Policy, of **your** intent to obtain replacement coverage elsewhere or that **you** have already done so.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Endorsement number 1 for policy number YAC-L9L-450425-030

Named Insured The Board of Regents of the University of Washington

This endorsement is effective 03/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### **Change Endorsement**

#### DESCRIPTION OF CHANGE                                                                                                  PREMIUM

POLICY COVER PAGE, Form PY 00 00 01 17 is amended as follows:

The named insured on the Policy Cover Page is changed to:
The Board of Regents of the University of Washington

Formerly: Board of Regents of the University of Washington Athletics

SECTION I - DECLARATIONS, Form PY 00 01 02 17 is amended as follows:

The First Named Insured on the Declarations is changed to:
The Board of Regents of the University of Washington

Formerly: Board of Regents of the University of Washington Athletics

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Endorsement number 2 for policy number YAC-L9L-450425-030

Named Insured The Board of Regents of the University of Washington

This endorsement is effective 03/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

DESCRIPTION OF CHANGE                                          PREMIUM

REMOVAL OF VACANCY CONDITION, Form PY 04 10 01 17 is added per the attached.

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Endorsement number 2 for policy number YAC-L9L-450425-030
Issued by     Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**REMOVAL OF VACANCY CONDITION**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The VACANCY condition of SECTION V – GENERAL POLICY CONDITIONS does not apply to the **location(s)** shown in the Schedule of this endorsement.

Schedule

| **Location(s)** |
| --- |
| As per SOV on file with Company |

All other terms and conditions remain unchanged.

Endorsement number 2 for policy number YAC-L9L-450425-030

Named Insured The Board of Regents of the University of Washington

This endorsement is effective 03/01/2020 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Change Endorsement

DESCRIPTION OF CHANGE

PREMIUM

REMOVAL OF VACANCY CONDITION, Form PY 04 10 01 17 is added per the attached.

No change in premium.

PREMIUM (EXCLUDING TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM):
TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
OTHER CHARGES:

TOTAL AMOUNT PAYABLE FOR ENDORSEMENT:

Endorsement number 2 for policy number YAC-L9L-450425-030
Issued by      Employers Insurance Company of Wausau

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### REMOVAL OF VACANCY CONDITION

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

The VACANCY condition of SECTION V – GENERAL POLICY CONDITIONS does not apply to the **location(s)** shown in the Schedule of this endorsement.

Schedule

| Location(s) |
| --- |
| As per SOV on file with Company |

All other terms and conditions remain unchanged.

Exhibit 6



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**

**OFFICE OF THE GOVERNOR**

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

# PROCLAMATION BY THE GOVERNOR

## 20-05

**WHEREAS**, On January 21, 2020, the Washington State Department of Health confirmed the first case of the novel coronavirus (COVID-19) in the United States in Snohomish County, Washington, and local health departments and the Washington State Department of Health have since that time worked to identify, contact, and test others in Washington State potentially exposed to COVID-19 in coordination with the United States Centers for Disease Control and Prevention (CDC); and

**WHEREAS**, COVID-19, a respiratory disease that can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily spread from person to person; and

**WHEREAS**, The CDC identifies the potential public health threat posed by COVID-19 both globally and in the United States as "high", and has advised that person-to-person spread of COVID-19 will continue to occur globally, including within the United States; and

**WHEREAS**, On January 31, 2020, the United States Department of Health and Human Services Secretary Alex Azar declared a public health emergency for COVID-19, beginning on January 27, 2020; and

**WHEREAS**, The CDC currently indicates there are 85,688 confirmed cases of COVID-19 worldwide with 66 of those cases in the United States, and the Washington State Department of Health has now confirmed localized person-to-person spread of COVID-19 in Washington State, significantly increasing the risk of exposure and infection to Washington State's general public and creating an extreme public health risk that may spread quickly; and

**WHEREAS**, The Washington State Department of Health has instituted a Public Health Incident Management Team to manage the public health aspects of the incident; and

**WHEREAS**, The Washington State Military Department, State Emergency Operations Center, is coordinating resources across state government to support the Department of Health and local officials in alleviating the impacts to people, property, and infrastructure, and is assessing the magnitude and long-term effects of the incident with the Washington State Department of Health; and

**WHEREAS,** The worldwide outbreak of COVID-19 and the effects of its extreme risk of person-to-person transmission throughout the United States and Washington State significantly impacts the life and health of our people, as well as the economy of Washington State, and is a public disaster that affects life, health, property or the public peace.

**NOW, THEREFORE**, I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a State of Emergency exists in all counties in the state of Washington, and direct the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented.  State agencies and departments are directed to utilize state resources and to do everything reasonably possible to assist affected political subdivisions in an effort to respond to and recover from the outbreak.

As a result of this event, I also hereby order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I direct the Washington State Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

Signed and sealed with the official seal of the state of Washington this 29th day of February, A.D., Two Thousand and Twenty at Olympia, Washington.


By:


_____/s/_____
Jay Inslee, Governor


BY THE GOVERNOR:


_____/s/_____
Secretary of State

Exhibit 7



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**
OFFICE OF THE GOVERNOR
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

PROCLAMATION BY THE GOVERNOR
AMENDING PROCLAMATIONS 20-05 AND 20-06

20-07

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** on March 10, 2020, as a result of significant risks from COVID-19 to persons living in congregate care settings, I issued Proclamation 20-06 amending Proclamation 20-05 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** COVID-19, a respiratory disease that spreads easily from person to person and may result in serious illness or death, has been confirmed in 9 counties of Washington State resulting in 24 deaths, with significant community spread in King, Pierce, and Snohomish counties; and

**WHEREAS,** to reduce spread of COVID-19, the United States Centers for Disease Control and Prevention and the Washington State Department of Health (DOH) recommend implementation of community mitigation strategies to increase containment of the virus, including cancellation of large gatherings and social distancing in smaller gatherings; and

**WHEREAS,** implementation of limitations on large gatherings and use of social distancing prevent initial exposure and secondary transmission to our most vulnerable populations, and are especially important for people who are over 60 years old and those with chronic health conditions due to the higher risk of severe illness and death from COVID-19; and

**WHEREAS,** the worldwide outbreak of COVID-19 and the resulting epidemic in Washington State continue to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property and the public peace; and

**WHEREAS**, the DOH continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE**, I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that Proclamations 20-05 and 20-06 remain in effect and are amended to impose restrictions on large gatherings in King, Pierce, and

Snohomish counties as provided herein, and that a State of Emergency continues to exist in all counties of Washington State. I again direct that the plans and procedures of the *Washington State Comprehensive Emergency Management Plan* be implemented throughout state government.  State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the *Washington State Comprehensive Emergency Management Plan* and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 epidemic.

As a result of this event, I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(b) and RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit the following activities in King, Pierce and Snohomish counties related to social, spiritual, and recreational gatherings, which restrictions shall remain in effect until midnight on March 31, 2020, unless extended beyond that date:

> Gatherings of 250 people or more for social, spiritual and recreational activities including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 11th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State

# Exhibit 8



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**

**OFFICE OF THE GOVERNOR**

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

### PROCLAMATION BY THE GOVERNOR
### AMENDING PROCLAMATION 20-05

**20-13**
**Statewide Limits:  Food and Beverage Services, Areas of Congregation**

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, and 20-12, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** the spread of COVID-19 has been classified by the World Health Organization as a pandemic that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the COVID-19 disease has and continues to spread quickly across the state of Washington, beyond the original community outbreaks in King, Pierce and Snohomish counties, drastically increasing the threat of significant associated health risks statewide; and

**WHEREAS**, on March 9, confirmed cases of COVID-19 infection in Washington totaled 162 in nine counties, including 21 deaths; and on March 13, confirmed cases increased to a total of 568 in 15 counties, including 37 deaths; and on March 15, confirmed cases further increased to 769 in 17 counties, including 42 deaths, with these 17 counties representing 85% of the State's total population;

**WHEREAS**, as of March 15, 2020, Washington State represents 2% of the nation's population and has 21% of confirmed COVID-19 cases, and 64% of COVID-19-related deaths, in the United States;

**WHEREAS**, on March 15, 2020, the United States Center for Disease Control and Prevention revised its guidance to reduce the size of gatherings from 250 persons to 50 persons;

**WHEREAS,** to curtail the spread of the COVID-19 pandemic in Washington State and protect our most vulnerable populations, it is necessary to immediately prohibit any number of people from congregating in public venues for purposes of public entertainment, recreation, food or beverage service, theater, bowling, and other similar activities, in order to limit opportunities for disease exposure and transmission in the State; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression in Washington State continues to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Department of Health (DOH) continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a state of emergency continues to exist in all counties of Washington State, that Proclamation 20-05 is amended to prohibit any number of people from gathering in any public venue in which people congregate for purposes of public entertainment, recreation, food and beverage service, theater, bowling, fitness and other similar activities, to include all public venues in which the serving, provision, or consumption of prepared food or beverages occurs at a table, bar, or for consumption within.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit the  onsite consumption of food and/or beverages in a public venue, including but not limited to, the following venues, and which prohibition shall remain in effect until midnight on March 31, 2020, unless extended beyond that date:

1.   Restaurants;
2.   Food courts;
3.   Bars;
4.   Taverns;
5.   Coffee shops;
6.   Catered events;
7.   Clubs;
8.   Bowling alleys;
9.   All other similar venues in which people congregate for the consumption of food or beverages.

For purposes of this Proclamation, "public venue" has its ordinary meaning and also includes, but is not limited to, social clubs, private clubs, tennis clubs, golf clubs, faith-based organizations/facilities, and other similar venues.

This Proclamation does not prohibit the sale of prepared food or beverages that are otherwise legally delivered or taken out of the venue for consumption or the purchasing of groceries that are not consumed within the premises, more commonly known as drive-through, take-out, and delivery services.

This Proclamation does not apply to a broad range of businesses and services, including but not limited to grocery stores, pharmacies, convenience stores, gas stations, pet stores, and libraries; however, any sit-down food or beverage services within these facilities are prohibited.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit the operation of public venues in which people congregate for entertainment, social or recreational purposes, including but not limited to theaters, bowling alleys, gyms, fitness centers, non-tribal card rooms, barbershops and hair/nail salons, tattoo parlors, pool halls, and other similar venues, which prohibition shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, for all other retail businesses except pharmacies and grocery stores, I hereby prohibit the operation of all retail stores unless they designate an employee or officer who must establish and implement social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines, which prohibition shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 16th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____

Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____

Secretary of State

# Exhibit 9



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**

## OFFICE OF THE GOVERNOR

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

### PROCLAMATION BY THE GOVERNOR
### AMENDING PROCLAMATIONS 20-05, 20-07, and 20-11

### 20-14
### Reduction of Statewide Limits on Gatherings

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, and 20-13, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** the spread of COVID-19 has been classified by the World Health Organization as a pandemic that spreads easily from person to person and may result in serious illness or death; and

**WHEREAS,** the COVID-19 disease has and continues to spread quickly across the state of Washington, beyond the original community outbreaks in King, Pierce, and Snohomish counties, significantly increasing the threat of significant associated health risks statewide; and

**WHEREAS,** to curtail the spread of the COVID-19 pandemic in Washington State and protect our most vulnerable populations, it is necessary to immediately expand the restrictions on large gatherings of 250 or more as amended under Proclamation 20-11 to gatherings of 50 people or more; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression in Washington State continue to threaten the life and health of our people as well as the economy of Washington State and remain a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health (DOH) continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE,** I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a state of emergency

continues to exist in all counties of Washington State, that Proclamations 20-05 and all amendments thereto remain in effect, and Proclamations 20-07 and 20-11, pertaining to gatherings of 250 people or more, is amended to reduce the size of gatherings to 50 people or less. Furthermore, activities of less than 50 people are also prohibited, unless organizers of those activities comply with social distancing and sanitation measures established by the United States Centers for Disease Control and Prevention or the Washington State Department of Health guidelines. The provisions of this order shall remain in effect until midnight on March 31, 2020, unless extended beyond that date.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 16th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____

Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____

Secretary of State

Exhibit 10



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**

**OFFICE OF THE GOVERNOR**

*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

**PROCLAMATION BY THE GOVERNOR**
**AMENDING PROCLAMATION 20-05**

**20-24**
**Restrictions on Non Urgent Medical Procedures**

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, 20-13, 20-14, 20-15, 20-16, 20-17, 20-18, 20-19, 20-20, 20-21, 20-22, and 20-23, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** the COVID-19 disease, caused by a virus that spreads easily from person to person which may result in serious illness or death and has been classified by the World Health Organization as a worldwide pandemic, has broadly spread throughout Washington State, and significantly increasing the threat of serious associated health risks statewide; and

**WHEREAS,** the health care personal protective equipment supply chain in Washington State has been severely disrupted by the significant increased use of such equipment worldwide, such that there are now critical shortages of this equipment for health care workers. To curtail the spread of the COVID-19 pandemic in Washington State and to protect our health care workers as they provide health care services, it is necessary to immediately prohibit all hospitals, ambulatory surgery centers, and dental, orthodontic and endodontic offices in Washington State from providing health care services, procedures and surgeries that require personal protective equipment, which if delayed, are not anticipated to cause harm to the patient within the next three months, except as provided herein; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression throughout Washington State continues to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health (DOH) continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of this ongoing incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the DOH and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the DOH in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE,** I, Jay Inslee, Governor of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a State of Emergency continues to exist in all Washington State counties, that Proclamation 20-05 and all amendments thereto remain in effect, and that Proclamation 20-05 is amended to immediately prohibit certain medical and dental procedures, with exceptions, and as provided herein.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Also, I continue to direct the DOH, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE**: based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit all hospitals, ambulatory surgical facilities, dental, orthodontic and endodontic offices in Washington State from providing health care services, procedures, and surgeries that, if delayed, are not anticipated to cause harm to the patient within the next three months, with exceptions and as provided below. This does not include outpatient visits delivered in hospital based clinics.

Examples of procedures to delay include, but are not limited to: most joint replacements, most cataract and lens surgeries, non-urgent cardiac procedures, cosmetic procedures, some endoscopy, and some interventional radiology services.

**EXCEPTION**: The above prohibition does not apply to the full suite of family planning services and procedures or to treatment for patients with emergency/urgent needs (examples of the latter include, but are not limited to, people with heart attacks, strokes, or motor vehicle accidents). Hospitals and ambulatory surgical facilities may perform any surgery that if delayed or canceled would result in the patient's condition worsening (for example,

removal of a serious cancerous tumor or dental care related to the relief of pain and management of infection.)

Ambulatory surgical facilities are encouraged to work with their local hospitals to assist with surge capacity needs.

This Proclamation shall remain in effect until May 18, 2020.

Violators of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 19th day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State

# Exhibit 11



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**
**OFFICE OF THE GOVERNOR**
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

**PROCLAMATION BY THE GOVERNOR**
**AMENDING PROCLAMATION 20-05**

**20-25**

**STAY HOME – STAY HEALTHY**

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, 20-13, 20-14, 20-15, 20-16, 20-17, 20-18, 20-19, 20-20, 20-21, 20-22, 20-23, and 20-24, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** the COVID-19 disease, caused by a virus that spreads easily from person to person which may result in serious illness or death and has been classified by the World Health Organization as a worldwide pandemic, has broadly spread throughout Washington State, significantly increasing the threat of serious associated health risks statewide; and

**WHEREAS,** there are currently at least 2,221 cases of COVID-19 in Washington State and, tragically, 110 deaths of Washingtonians associated with COVID-19; and

**WHEREAS,** models predict that many hospitals in Washington State will reach capacity or become overwhelmed with COVID-19 patients within the next several weeks unless we substantially slow down the spread of COVID-19 throughout the state; and

**WHEREAS,** hospitalizations for COVID-19 like illnesses are significantly elevated in all adults, and a sharply increasing trend in COVID-19 like illness hospitalizations has been observed for the past three (3) weeks; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression in Washington State continues to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the Department of Health and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the Department of Health in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE**, I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim: that a State of Emergency continues to exist in all counties of Washington State; that Proclamation 20-05 and all amendments thereto remain in effect as otherwise amended; and that Proclamations 20-05, 20-07, 20-11, 20-13, and 20-14 are amended and superseded by this Proclamation to impose a Stay Home – Stay Healthy Order throughout Washington State by prohibiting all people in Washington State from leaving their homes or participating in social, spiritual and recreational gatherings of any kind regardless of the number of participants, and all non-essential businesses in Washington State from conducting business, within the limitations provided herein.

I again direct that the plans and procedures of the Washington State Comprehensive Emergency Management Plan be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the Washington State Comprehensive Emergency Management Plan and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE,** based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, and to implement the Stay Home—Stay Healthy Order described above, I hereby impose the following necessary restrictions on participation by all people in Washington State by prohibiting each of the following activities by all people and businesses throughout

Washington State, which prohibitions shall remain in effect until midnight on April 6, 2020, unless extended beyond that date:

1. **All people in Washington State shall immediately cease leaving their home or place of residence except: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business services.** This prohibition shall remain in effect until midnight on April 6, 2020, unless extended beyond that date.

   **To implement this mandate, I hereby order** that all people in Washington State are immediately prohibited from leaving their home or place of residence except to conduct or participate in (1) essential activities, and/or (2) employment in providing essential business services:

   a. **Essential activities** permitted under this Proclamation are limited to the following:
      1) **Obtaining necessary supplies and services** for family or household members and pets, such as groceries, food and supplies for household consumption and use, supplies and equipment needed to work from home, and products necessary to maintain safety, sanitation and essential maintenance of the home or residence.
      2) **Engaging in activities essential for the health and safety** of family, household members and pets, including things such as seeking medical or behavioral health or emergency services and obtaining medical supplies or medication.
      3) **Caring for** a family member, friend, or pet in another household or residence, and to transport a family member, friend or their pet for essential health and safety activities, and to obtain necessary supplies and services.
      4) **Engaging in outdoor exercise activities**, such as walking, hiking, running or biking, but only if appropriate social distancing practices are used.

   b. **Employment in essential business services** means an essential employee performing work for an essential business as identified in the "[Essential Critical Infrastructure Workers](#)" list, or carrying out minimum basic operations (as defined in Section 3(d) of this Order) for a non-essential business.

   c. **This prohibition shall not apply to** individuals whose homes or residences are unsafe or become unsafe, such as victims of domestic violence. These individuals are permitted and urged to leave their homes or residences and stay at a safe alternate location.

   d. **This prohibition also shall not apply to** individuals experiencing homelessness, but they are urged to obtain shelter, and governmental and other entities are strongly encouraged to make such shelter available as soon as possible and to the maximum extent practicable.

e.  For purposes of this Proclamation, homes or residences include hotels, motels, shared rental units, shelters, and similar facilities.

2.  **All people in Washington State shall immediately cease participating in all public and private gatherings and multi-person activities for social, spiritual and recreational purposes, regardless of the number of people involved, except as specifically identified herein.** Such activity includes, but is not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities. This prohibition also applies to planned wedding and funeral events.  This prohibition shall remain in effect until midnight on April 6, 2020, unless extended beyond that date.

    **To implement this mandate, I hereby order** that all people in Washington State are immediately prohibited from participating in public and private gatherings of any number of people for social, spiritual and recreational purposes. **This prohibition shall not apply to** activities and gatherings solely including those people who are part of a single household or residential living unit.

3.  **Effective midnight on March 25, 2020, all non-essential businesses in Washington State shall cease operations except for performing basic minimum operations. All essential businesses are encouraged to remain open and maintain operations, but must establish and implement social distancing and sanitation measures established by the United States Department of Labor or the Washington State Department of Health Guidelines.** This prohibition shall remain in effect until midnight on April 8, 2020, unless extended beyond that date.

    **To implement this mandate, I hereby order** that, effective midnight on March 25, 2020, all non-essential businesses in Washington State are prohibited from conducting all activities and operations except minimum basic operations.

    a.  **Non-essential businesses** are strongly encouraged to immediately cease operations other than performance of basic minimum operations, but must do so no later than midnight on March 25, 2020.
    b.  **Essential businesses** are prohibited from operating under this Proclamation unless they establish and implement social distancing and sanitation measures established by the United States Department of Labor's Guidance on Preparing Workplaces for COVID-19 at https://www.osha.gov/Publications/OSHA3990.pdf and the Washington State Department of Health Workplace and Employer Resources & Recommendations at https://www.doh.wa.gov/Coronavirus/workplace.
    c.  **This prohibition does not apply to** businesses consisting exclusively of employees or contractors performing business activities at their home or residence, and who do not engage in in-person contact with clients.

    d.   For purposes of this Proclamation, minimum basic operations are the minimum activities necessary to maintain the value of the business' inventory, preserve the condition of the business' physical plant and equipment, ensure security, process payroll and employee benefits, facilitate employees of the business being able to continue to work remotely from their residences, and related functions.

This Proclamation shall not be construed to prohibit working from home, operating a single owner business with no in-person, on-site public interaction, or restaurants and food services providing delivery or take-away services, so long as proper social distancing and sanitation measures are established and implemented.

No business pass or credentialing program applies to any activities or operations under this Proclamation.

Violators of this of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 23rd day of March, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____
Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____
Secretary of State

Exhibit 12



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**
OFFICE OF THE GOVERNOR
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

## PROCLAMATION BY THE GOVERNOR
## AMENDING AND EXTENDING PROCLAMATIONS 20-05 AND 20-24

### 20-24.1
### Reducing Restrictions on, and Safe Expansion of,
### Non-Urgent Medical and Dental Procedures

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06 through 20-53 and 20-55, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations; and

**WHEREAS,** the COVID-19 disease, caused by a virus that spreads easily from person to person which may result in serious illness or death and has been classified by the World Health Organization as a worldwide pandemic, has broadly spread throughout Washington State, and significantly increasing the threat of serious associated health risks statewide; and

**WHEREAS,** the health care personal protective equipment supply chain in Washington State has been severely disrupted by the significant increased use of such equipment worldwide, such that there are now critical shortages of this equipment for health care workers. To curtail the spread of the COVID-19 pandemic in Washington State and to protect our health care workers as they provide health care services, it is necessary to prohibit all medical, dental and dental specialty facilities, practices, and practitioners in Washington State from providing non-urgent health care and dental services, procedures and surgeries unless specific procedures and criteria are met; and

**WHEREAS**, the extensive public-private collaboration between our state and local governments, and the state's hospitals, health systems, and other providers of clinical services in addressing the health care issues created for people and communities by the COVID-19 pandemic is commendable; and

**WHEREAS**, Washington State's collaborative approach has been effective in addressing the significant public health issues associated with the disease, while greatly expanding the clinical and operational capacity of the health system to effectively care for COVID-19 patients and safely provide preventive, diagnostic, outpatient, ambulatory, acute, and post-acute care for all people in need of care

via both in-person and virtual means. The professionalism, expertise, and compassion of Washington's clinicians, nurses, and other health care professionals during the COVID-19 pandemic has been exemplary; and

**WHEREAS** in the early days of the pandemic, I, in collaboration with the Washington State Department of Health and health care system partners, established a data-driven approach to addressing the health and safely of Washington's citizens and communities. The actions taken pursuant to this approach reduced the impact of the disease in the State. As the State moves into its Safe Start of the economy, it is important that the healthcare system move rapidly towards a more normal operating position and expand  access to care for patients in a manner that is safe and equitable; and

**WHEREAS**, I support extending Proclamation 20-29, which requires telemedicine payment parity through year-end 2020, when the new parity law in SB 5385 will formally take effect. However, the extension must be approved by the Legislature.

**WHEREAS**, recognizing that health status is impacted both by social determinants of health and untreated health conditions, it is vital that public and private sector participants in the health care system work to enhance public health capabilities and capacity, such as testing, contact tracing and follow-up, and that access to appropriate care be expanded as safely as possible; and

**WHEREAS**, the exercise of clinical judgement by healthcare and dental professionals related to the care of patients is essential, and it is essential for all of our health and dental partners to follow the same procedures as outlined in this proclamation and work together to protect the health of all of our residents; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression throughout Washington State continues to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of this ongoing incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the Department of Health and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the Department of Health in assessing the impacts and long-term effects of the incident on Washington State and its people.

**NOW, THEREFORE,** I, Jay Inslee, Governor of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim that a State of Emergency continues to exist in all Washington State counties, that Proclamation 20-05 and all amendments thereto remain in effect, and that Proclamations 20-05 and 20-24 are amended to immediately prohibit certain medical and dental procedures, with exceptions, and as provided herein.

I again direct that the plans and procedures of the *Washington State Comprehensive Emergency Management Plan* be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the *Washington State Comprehensive Emergency Management Plan* and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Also, I continue to direct the Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

**FURTHERMORE**: based on the above situation and under the provisions of RCW 43.06.220(1)(h), to help preserve and maintain life, health, property or the public peace, I hereby prohibit all  medical, dental and dental specialty facilities, practices, and practitioners in Washington State from providing non-urgent health care and dental services, procedures, and surgeries unless they act in good faith and with reasonable clinical judgment to meet and follow the procedures and criteria provided below:

COVID Assessment:
Local health jurisdictions (LHJs) in collaboration with their health partners, should assess the COVID-19 status in the communities they serve. This assessment should be updated on a regular basis. Important COVID-19 disease information relevant to this assessment is available at https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard, and LHJs should have relevant information as well.

Expansion/Contraction of Care Plan
Each health care, dental or dental specialty facility, practice, or practitioner must develop an expansion/contraction of care plan that is both congruent with community COVID-19 assessment described above, consistent with the clinical and operational capabilities and capacities of the organization, and responsive to the criteria provided below.

Expansion/contraction of care plans should be operationalized based on the standards of care that are in effect in the health care facility, practice or practitioner's relevant geography as determined by that region's emergency health care coalition, as follows:

- Conventional Care Phase – All appropriate clinical care can be provided.
- Contingency Care Phase – All appropriate clinical care can be provided so long as there is sufficient access to PPE and, for hospitals, surge capacity is at least 20%.
- Crisis Care Phase – All emergent and urgent care shall be provided; elective care, that the postponement of which for more than 90 days would, in the judgement of the clinician, cause harm; the full suite of family planning services and procedures, newborn care, infant and pediatric vaccinations, and other preventive care, such as annual flu vaccinations, can continue.

Criteria for Resuming Non-Urgent Procedures

Until there is an effective vaccine, effective treatment, or herd immunity and until supply chains for PPE return to a more normal status, hospitals and LHJs will work together to maintain some level of surge capacity in our health care system and prudently use PPE so that we can keep health care workers safe and provide the needed health care to our communities. To this end, the following must be met by health care, dental and dental specialty facilities, practices, and practitioners:

- Exercise clinical judgment to determine the need to deliver a health care service, in the context of the broader health care and dental needs of patients and communities and in the context of the pandemic, and within the parameters of operation provided by the health care, dental or dental specialty facility, practice or practitioner setting in which they are providing services.
- Continuously monitor capacity in the system to ensure there are resources, including ventilators, beds, PPE, blood and blood products, pharmaceuticals, and trained staff available to combat any potential surges of COVID-19, participation, as required by Department of Health guidelines, with the WA HEALTH data reporting system to allow for a state-wide common operating perspective on resource availability.
- Follow Department of Health's current PPE conservation guidance, which will be regularly reviewed and updated by the Department of Health, as published on the Department of Health website at https://www.doh.wa.gov/Emergencies/Coronavirus. If the health care facility, practice or practitioner's PPE status deteriorates, adjustments to expansion of care will be required.
- Review infection prevention policies and procedures and update, as necessary, to reflect current best practice guidelines for universal precautions.
- Develop a formal employee feedback process to obtain direct input regarding care delivery processes, PPE, and technology availability related to expansion of care.
- Appropriately use telemedicine. Appropriate use of telemedicine will facilitate access to care while helping minimize the spread of the virus to other patients and/or health care workers.
- Use on-site fever screening and self-reporting of COVID-19 symptom screening for all patients, visitors and staff prior to (the preferred approach), or immediately upon, entering a facility or practice.
- For clinical procedures and surgeries, develop and implement setting-appropriate, pre-procedure COVID-19 testing protocols that are based on availability, Department of Health guidance, if any, and/or relevant and reputable professional clinical sources and research.
- Implement policies for non-punitive sick leave that adhere to U.S. Centers for Disease Control and Prevention (CDC) return-to-work guidance.
- Post signage that strongly encourages staff, visitors and patients to practice frequent hand hygiene with soap and water or hand sanitizer, avoid touching their face, and practice cough etiquette.
- Maintain strict social distancing in patient scheduling, check-in processes, positioning and movement within a facility. Set up waiting rooms and patient care areas to facilitate patients, visitors and staff to maintain ≥6 feet of distance between them whenever possible, consider rooming patients directly from cars or parking lots, space out appointments, and consider scheduling or spatially separating well visits from sick visits.

- Limit visitors to those essential for the patient's well-being and care. Visitors should be screened for symptoms prior to entering a health care facility and ideally telephonically prior to arriving. Visitors who are able should wear a mask or other appropriate face covering at all times while in the health care facility as part of universal source control.
- Ambulatory patients, who are able and when consistent with the care being received, should wear a mask or other appropriate face covering at all times while in the health care facility as part of universal source control.
- Frequently clean and disinfect high-touch surfaces regularly using an EPA-registered disinfectant.
- Identify and implement strategies for addressing employees who have had unprotected exposures to COVID-19 positive patients, are symptomatic, or ill, which should include requiring COVID-19 positive employees to stay at home while infectious, and potentially restricting employees who were directly exposed to the COVID-19 positive employee. Timely notification of employees with potential COVID-19 exposure and appropriate testing of employees who are symptomatic should be a component of these strategies. Follow CDC cleaning guidelines to deep clean after reports of an employee with suspected or confirmed COVID-19 illness. This may involve the closure of the business until the location can be properly disinfected.
- Educate patients about COVID-19 in a language they best understand.  The education should include the signs, symptoms, and risk factors associated with COVID-19 and how to prevent its spread.
- Follow requirements in Governor Inslee's Proclamation 20-46 - *High-Risk Employees – Workers' Rights*.

**ADDITIONALLY,** for purposes of this Proclamation, evaluation of "harm" is the same as described in the May 7, 2020, Updated Interpretive Statement related to Proclamation 20-24, and is repeated here:  The decision to perform any surgery or procedure in hospitals, ambulatory surgical facilities, dental, orthodontic, and endodontic offices, including examples of those that could be delayed should be weighed against the following criteria when considering potential harm to a patient's health and well-being:

- Expected advancement of disease process
- Possibility that delay results in more complex future surgery or treatment
- Increased loss of function
- Continuing or worsening of significant or severe pain
- Deterioration of the patient's condition or overall health
- Delay would be expected to result in a less-positive ultimate medical or surgical outcome
- Leaving a condition untreated could render the patient more vulnerable to COVID-19 contraction, or resultant disease morbidity and/or mortality
- Non-surgical alternatives are not available or appropriate per current standards of care
- Patient's co-morbidities or risk factors for morbidity or mortality, if inflicted with COVID-19 after procedure is performed

Furthermore, diagnostic imaging, diagnostic procedures or testing should continue in all settings based on clinical judgement that uses the same definition of harm and criteria as listed above.

5

**ADDITIONALLY**, when making health system care capacity decisions, health care, dental and dental specialty facilities, practices, and practitioners must, in addition to the above, consider 1) the level and trending of COVID-19 infections in the relevant geography, 2) the availability of appropriate PPE, 3) collaborative activities with relevant emergency preparedness organizations and/or LHJ, 4) surge capacity of the hospital/care setting, and 5) the availability of appropriate post-discharge options addressing transitions of care.

**ADDITIONALLY**, given the geographic diversity of Washington, the variability in COVID-19 disease burden within the state, and health care system capabilities and capacity, no uniform approach to expanding access to care is possible nor would any such approach be effective or wise. It is essential that health care system participants act with good judgment within the context of their patients' needs, their environment, and their capabilities and capacity.

This Proclamation is retroactive to 11:59 PM on May 17, 2020, and shall remain in effect until the state of emergency, issued on February 29, 2020, pursuant to Proclamation 20-05, is rescinded, or until this order is amended or rescinded, whichever occurs first.

Violators of this order may be subject to penalties pursuant to RCW 43.06.220(5).

Signed and sealed with the official seal of the state of Washington on this 18th day of May, A.D., Two Thousand and Twenty at Olympia, Washington.

By:


_____/s/_____
Jay Inslee, Governor




BY THE GOVERNOR:


_____/s/_____
Secretary of State

# Exhibit 13



**JAY INSLEE**
**Governor**

**STATE OF WASHINGTON**
**OFFICE OF THE GOVERNOR**
*P.O. Box 40002 • Olympia, Washington 98504-0002 • (360) 902-4111 • www.governor.wa.gov*

**PROCLAMATION BY THE GOVERNOR**
**AMENDING PROCLAMATIONS 20-05, 20-25, 20-25.1, 20-25.2 and 20-25.3**

**20-25.4**

**TRANSITION FROM "STAY HOME – STAY HEALTHY" TO**
**"SAFE START – STAY HEALTHY" COUNTY-BY-COUNTY PHASED**
**REOPENING**

**WHEREAS**, on February 29, 2020, I issued Proclamation 20-05, proclaiming a State of Emergency for all counties throughout the state of Washington as a result of the coronavirus disease 2019 (COVID-19) outbreak in the United States and confirmed person-to-person spread of COVID-19 in Washington State; and

**WHEREAS,** as a result of the continued worldwide spread of COVID-19, its significant progression in Washington State, and the high risk it poses to our most vulnerable populations, I have subsequently issued amendatory Proclamations 20-06 through 20-53 and 20-55 through 20-57, exercising my emergency powers under RCW 43.06.220 by prohibiting certain activities and waiving and suspending specified laws and regulations, including issuance of Proclamations 20-25, 20-25.1, 20-25.2 and 20-25.3 *(Stay Home – Stay Healthy)*, prohibiting all people in Washington State from leaving their homes except to participate in essential services or essential work and preventing all non-essential businesses in Washington State from conducting business, within the limitations therein; and

**WHEREAS,** the COVID-19 disease, caused by a virus that spreads easily from person to person which may result in serious illness or death and has been classified by the World Health Organization as a worldwide pandemic, has broadly spread throughout Washington State and remains a significant health risk to all of our people, especially members of our most vulnerable populations; and

**WHEREAS**, when I last amended the *Stay Home – Stay Healthy* order (Proclamation 20-25.3) on May 4, 2020, there were approximately 15,462 cases of COVID-19 in Washington State with 841 deaths; and, now, as of May 31 2020, the Department of Health indicated that there have been 21,349 cases and 1,118 deaths, demonstrating the ongoing, present threat of this lethal disease; and

**WHEREAS**, the health professionals and epidemiological modeling experts predict that although we have passed the peak of the first wave of COVID-19 in the State and we have made adequate progress as a state to modify some of the initial community mitigation efforts, the nature of COVID-19 viral transmission, including both asymptomatic and symptomatic spread as well as the relatively high infectious nature, suggests it is appropriate to slowly re-open Washington State only through a careful, phased, and science-based approach. Modelers continue to agree that fully relaxing social distancing measures will result in a sharp increase in the number of cases; and

**WHEREAS,** although the judicial system, an essential service, has undergone significant disruption and modification to operate safely during this crisis, and by order of the Supreme Court has delayed most jury trials in criminal and civil matters, in-person proceedings are necessary in many circumstances, and the judicial system is currently working with health officials to innovate and plan for the safe resumption of jury trials and other court services including at offsite facilities; and the efforts undertaken to innovate and plan are equally essential to the resumption of our judicial system, and should be conducted remotely if possible but otherwise may be conducted in person if appropriate physical distancing and protective measures are in place; and

**WHEREAS**, this unprecedented health crisis has caused extraordinary anxiety and a significant disruption of routine and important activities for every Washingtonian; and I recognize the extraordinary resiliency, strength, adaptability, and courage of every Washingtonian during this difficult time; and

**WHEREAS,** many people in Washington State attend religious services on a regular basis, making such services a vital part of the spiritual and mental health of our community, and previous guidance issued related to remote services, drive-in services, counseling, outdoor services, and Phase 2 indoor services, all subject to restrictions outlined in those guidance documents, remain in place and may be further expanded or modified as the science and data support; and

**WHEREAS,** the science also suggests that by ensuring safe social distancing and hygiene practices, many business activities can be conducted with limited exposure to customers, which is important to revitalizing Washington State's economy, restoring jobs, and providing necessary goods and services; and

**WHEREAS,** in Proclamation 20-25.3 I established an initial four-phased approach to reopening Washington State; and, while all counties started in Phase I on May 4, 2020, a total of 28 counties are now either in or eligible to apply for Phase 2; and

**WHEREAS,** the Washington State Department of Health's data and modeling demonstrate that many counties have significantly reduced or eliminated the number of new COVID-19 cases sufficiently to enable those counties to control and respond to virus outbreaks within the capacity of existing local and regional health care systems without significant increased risk of being overwhelmed, and this data supports

providing all counties with an opportunity to lift some restrictions, subject to certain conditions and requirements; and

**WHEREAS,** the worldwide COVID-19 pandemic and its progression in Washington State continue to threaten the life and health of our people as well as the economy of Washington State, and remain a public disaster affecting life, health, property or the public peace; and

**WHEREAS**, the Washington State Department of Health continues to maintain a Public Health Incident Management Team in coordination with the State Emergency Operations Center and other supporting state agencies to manage the public health aspects of the incident; and

**WHEREAS**, the Washington State Military Department Emergency Management Division, through the State Emergency Operations Center, continues coordinating resources across state government to support the Department of Health and local health officials in alleviating the impacts to people, property, and infrastructure, and continues coordinating with the Department of Health in assessing the impacts and long-term effects of the incident on Washington State and its people; and

**NOW, THEREFORE**, I, Jay Inslee, Governor of the state of Washington, as a result of the above-noted situation, and under Chapters 38.08, 38.52 and 43.06 RCW, do hereby proclaim and order that a State of Emergency continues to exist in all counties of Washington State, that Proclamation 20-05 and all amendments thereto remain in effect as otherwise amended, and that, to help preserve and maintain life, health, property or the public peace pursuant to RCW 43.06.220(1)(h), Proclamations 20-25, 20-25.1, 20-25.2, and 20-25.3 (*Stay Home – Stay Healthy*) are amended to extend all of the prohibitions and each expiration date therein to 11:59 p.m. on July 1, 2020, and are renamed (*Safe Start – Stay Healthy*), and that except as otherwise provided in this order or the *Safe Start Washington* Phased Reopening County-by-County Plan found here, all other provisions of Proclamations 20-25, 20-25.1, 20-25.2, and 20-25.3 shall remain in full force and effect.

**FURTHERMORE,** in collaboration with the Washington State Department of Health, and based on analysis of the data and epidemiological modeling, I hereby order that, beginning on June 1, 2020, the *Safe Start Washington* Phased Reopening Plan will be applied on a county-by-county basis, and will allow any county that has been in Phase 1 or 2 for three weeks to apply to the Secretary of Health to move in whole or in part to the next phase; and further, the application process will include target metrics (intended to be applied as "targets" and not hard-line measures) set by the Secretary of Health, and the application must be submitted by the County Executive, or, in the absence of a County Executive, with the approval of the County Council or Commission, in accordance with the instructions provided by the Secretary of Health; and

**FURTHERMORE**, in evaluating any application to move forward, the Secretary of Health may approve a county moving in whole to the next phase, or may only approve certain activities moving to the next phase; and

**FURTHERMORE**, until there is an effective vaccine, effective treatment or herd immunity, it is crucial to maintain some level of community interventions to suppress the spread of COVID-19 throughout all phases of recovery; and, therefore, throughout all phases, individuals should continue to engage in personal protective behaviors including: practice physical distancing, staying at least six feet away from other people; wear cloth face coverings in public places when not eating or drinking; stay home if sick; avoid others who are sick; wash hands frequently; cover coughs and sneezes; avoid touching eyes, nose and mouth with unwashed hands; and disinfect surfaces and objects regularly; and

**FURTHERMORE**, I hereby order, in addition to other requirements detailed in the *Safe Start Washington* Phased Reopening Plan, that, beginning on June 8, 2020, when on the job, all employees must wear a facial covering except when working alone or when the job has no in-person interaction as detailed in the *Safe Start Washington* Phased Reopening Plan; and, further, that employers must provide cloth facial coverings to employees, unless their exposure dictates a higher level of protection; and

**FURTHERMORE,** I continue to permit the low-risk activities previously permitted as reflected or clarified in formal guidance documents here, and which may be updated or modified as the science and data supports; and

**FURTHERMORE,** in collaboration with the Washington State Department of Health, in furtherance of the physical, mental, and economic well-being of all Washingtonians, I will continue to analyze the data and epidemiological modeling and adjust the *Safe Start Washington* Phased Reopening Plan accordingly.

I again direct that the plans and procedures of the *Washington State Comprehensive Emergency Management Plan* be implemented throughout state government. State agencies and departments are directed to continue utilizing state resources and doing everything reasonably possible to support implementation of the *Washington State Comprehensive Emergency Management Plan* and to assist affected political subdivisions in an effort to respond to and recover from the COVID-19 pandemic.

I continue to order into active state service the organized militia of Washington State to include the National Guard and the State Guard, or such part thereof as may be necessary in the opinion of The Adjutant General to address the circumstances described above, to perform such duties as directed by competent authority of the Washington State Military Department in addressing the outbreak. Additionally, I continue to direct the Department of Health, the Washington State Military Department Emergency Management Division, and other agencies to identify and provide appropriate personnel for conducting necessary and ongoing incident related assessments.

All persons are again reminded that no credentialing program or requirement applies to any activities or operations under this Proclamation.

Violators of this order may be subject to criminal penalties pursuant to RCW 43.06.220(5). Further, if people fail to comply with the required social distancing and other protective measures while engaging in this phased reopening, I may be forced to reinstate the prohibitions established in earlier proclamations.

This order goes into effect on June 1, 2020, and expires at 11:59 pm on July 1, 2020.

Signed and sealed with the official seal of the state of Washington on this 31st day of May, A.D., Two Thousand and Twenty at Olympia, Washington.

By:

_____/s/_____

Jay Inslee, Governor

BY THE GOVERNOR:

_____/s/_____

Secretary of State